Kathryn Diemer
Diemer, Whitman & Cardosi, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
Phone: 408-971-6270
Fax: 408-971-6271
kdiemer@diemeerwhitman.com
CA Bar No.: 133977
Counsel for Plaintiff Alice C. Svenson

ORIGINAL FILED

SEP 03 2013

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Alice Svenson, individually and on behalf of all others similarly situated, | ) ) ) Case No.: CV 13-04080 HRL |
| Plaintiff, | ) ) **CLASS ACTION** |
| v. | ) ) COMPLAINT FOR VIOLATIONS ) OF THE STORED ) COMMUNICATIONS ACT, ) BREACH OF CONTRACT, ) AND, CAL. BUS. PROF. CODE § ) 17200 |
| Google, Inc., a Delaware Corporation, and Google Payment Corporation, a Delaware Corporation, | ) ) ) ) **DEMAND FOR JURY TRIAL** |
| Defendants. | ) |

ADR
e-filing

## Class Action Complaint

NOW COMES Plaintiff, Alice Svenson, individually and on behalf of all others who are similarly situated, by and through her counsel, and, upon personal knowledge as to facts known to Plaintiff, and upon information and belief following investigation of counsel as to other facts, alleges as follows against Defendants Google, Inc. and Google Payment Corporation:

### Introduction

1.    This case seeks relief for Plaintiff and similarly situated users of Defendants' online mobile application market ("Google Play") and payment processing services ("Google Wallet"),

Class Action Complaint

1

1  whose private information was disclosed to third-parties without authorization, in violation of

2  applicable law, and in violation of Defendants' terms of use.

3  2.      Defendants have at relevant times disclosed to third-party software developers, via Google

4  Play and Google Wallet, user information without their knowledge, consent, or authorization.

5  The terms of use for Defendants' services do not allow for this activity, the result of which is that

6  users' names, home cities, states, and zip codes, Google account names and/or email addresses,

7  and in some instances telephone numbers have been unnecessarily proliferated across the globe to

8  third-party software developers without purpose or user recourse.

9                                    **Parties**

10  3.      Plaintiff is an individual and a citizen of the State of Illinois.

11  4.      Defendant Google, Inc. ("Google") is a Delaware corporation with its principal place of

12  business in Mountain View, California.

13  5.      Defendant Google Payment Corporation ("Google Payment Corp") is a Delaware

14  corporation and wholly-owned subsidiary of Google that shares Google's principal place of

15  business in Mountain View, California.

16                                  **Jurisdiction**

17  6.      This Court has subject matter jurisdiction over the federal claims in this complaint

18  pursuant to 28 U.S.C § 1331 as those claims arise under the laws of the United States.

19  7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) Plaintiff

20  Svenson is a citizen of the State of Illinois; (ii) Defendants Google and Google Payment Corp

21  have their principal place of business in the State of California; and (iii) based on the total value

22  of the claims and relief sought by Plaintiff individually and on behalf of the Class, the total

23  amount in controversy exceeds $5,000,000.00.   The proposed Class numbers in excess of 100

24  persons.

25  8.      Alternatively, pursuant to 28 U.S.C. § 1367(a) this Court has supplemental jurisdiction

26  over the claims in this complaint that arise under state law, because the state law claims are so

27  related to the federal claims that they form part of the same case or controversy and derive from a

28  common nucleus of operative facts.

Class Action Complaint

**Venue**

9.     Venue is proper before the Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, this is a judicial district in which Google and Google Payment Corp reside and in which a substantial part of the events or omissions giving rise to the claims occurred.

**Factual Allegations**

***Google's Operation***

10.     Google provides internet search functionality, email services, virtual filing cabinet "cloud" storage services, multimedia electronic distribution platforms, social media services, advertising services, and payment processing services, among many others (collectively, the "Google Services").

11.     All of these services are integrated for users who register for Google Accounts.

12.     Google's Services utilize and store personal information on data center server farms dotted throughout the country and/or the world.

13.     On information and belief, Google Payment Corp's services are provided via Google's data center server farms.

14.     Google Payment Corp, a privately-held and wholly-owned subsidiary of Google, provides Google with the payment processing services incorporated into Google Wallet.

15.     Google Payment Corp's shares its principal place of business – 1600 Amphitheatre Parkway Mountain View, CA 94043 – with Google.

16.     Google Payment Corp shares its registered agent in California with Google and Kent Walker, a Google Payment Corp director, is Google's Senior Vice President & General Counsel.

***Google Wallet and Google Play***

17.     Google Wallet, formerly known as Google Checkout, is Google's electronic and mobile payment processing service. Since 2011, Google Wallet has allowed Google account users to store electronic payment card information within their Google accounts and utilize those means to complete payment with various sellers including:

        a.   Brick-and-mortar merchants who sell and/or deliver physical goods;

        b.   Online, virtual merchants who sell and deliver physical goods; and

Class Action Complaint

3

c.   Vendors who sell electronically-delivered digital content and software applications – collectively, "Apps" – and digitally distribute Apps to users via Google Play.[1]

18.   "Google Wallet is the company's payments platform and answer to PayPal, which allows users to store their debit and credit cards in a secure service for easy access."[2]

19.   By using Google Wallet, users expect to benefit from a safe, centralized way to pay for goods and services, especially when those transactions occur online, with Defendants acting as the intermediaries which securely process and effect the transactions.   Indeed, Google has represented to users, in google.com web pages, that "Google takes the privacy of your information seriously," and has further stated as follows:

> When you use Google Wallet, your financial information is safely encrypted and stored on secure servers, and all transactions are monitored 24/7 to prevent fraudulent activity.
> ….
> The credit and debit cards you store in Google Wallet are safely encrypted on secure servers in secure locations.[3]

20.   Users wishing to utilize Google Wallet must have existing Google Accounts, and Google purports to require Google Account and Google Wallet users to abide by the Google Terms of Service ("GToS") and Google Privacy Policy ("GPP") (individually and collectively hereinafter, unless otherwise or as specifically noted, the "Google Terms") and promises to deliver the Google Services according to these terms.[4]

21.   The Google Wallet Terms of Service ("GWToS") provide that users "understand and agree that personal information provided to Google or Google Payment Corp in connection with the Services is subject to the Google Wallet Privacy Policy" and that "[b]y agreeing to these Terms of Service [user] hereby agree[s] to the Google Wallet Privacy Policy" ("GWPP").

---

[1] https://support.google.com/checkout/sell/answer/173779?hl=en, visited September 3, 2013.

[2] http://techcrunch.com/2013/07/25/google-wallet-for-gmail-invites-start-rolling-out-to-more-users/, visited July 26, 2013.

[3] http://www.google.com/wallet/send-money/; http://techcrunch.com/2013/07/25/google-wallet-for-gmail-invites-start-rolling-out-to-more-users/, visited July 26, 2013.

[4] See, https://wallet.google.com/legaldocument?family=0.buyertos&gl=US, accessed [hereinafter GWToS].

Class Action Complaint

22.     The GWToS, incorporating the GWPP (hereinafter jointly, the "Wallet Terms"), at relevant times purported to be a "legal agreement" between the user, "Google, and Google Payment Corp., a wholly-owned subsidiary of Google Inc., which governs [user's] access to and use of Google Wallet."

23.     The user initiates the Google Wallet registration process by using her Google account information (*e.g.*, Google email address and password) and agreeing to abide by the Wallet Terms.

24.     The Wallet Terms require the user to agree to, among others, the following term: "By agreeing to these Terms of Service, you authorize Google Wallet to charge your selected card," and "[y]ou understand and agree that personal information provided to Google or GPC [Google Payment Corp] in connection with the Services is subject to the Google Wallet Privacy Notice: http://www.google.com/wallet/."

25.     Utilizing Google Wallet to make payments requires that the user "add a payment method" to her account.  Selecting to do so prompts the user to enter a credit or debit card number, "Expiration Date" (MM/YY), "Security Code" (CVC), "Billing Information" (including, *e.g.*, Name, Apt./Suite, City, State, and Zip Code), and Phone Number.

26.     Google Play is Google's digital multimedia content distribution platform that is accessible via mobile devices and other internet-capable computing equipment.  Google Wallet may be used to purchase digital content via Google Play.

27.     A user wishing to utilize Google Play to obtain digital content is required to first have an existing Google Account.  The user initiates the Google Play registration by, while being logged into his Google Account, agreeing to Google Play's Terms of Service ("GPToS").[5]

28.     Utilizing Google Wallet on a computing device to purchase digital services or content from the Google Play store requires users to activate Google Wallet prior to payment for and instant download of the desired services or content onto their electronic device – a process which

---

[5] *See*, http://play.google.com/intl/en_us/about/play-terms.html, accessed September 3, 2013.

Class Action Complaint

1    requires or purports to require user agreement to all of the herein described and incorporated

2    terms of service and privacy policies.

3    29.      Speaking to the user, the Google Play Terms of Service provide that "[i]n order to access

4    certain services in Google Play, you may be required to provide information about yourself such

5    as your name and billing details.  Google's privacy policies explain how we treat your personal

6    data and protect your privacy when using Google Play.  You agree that any such information you

7    provide to Google will always be accurate, correct and up to date."

8    30.      Google Play does not have a separate privacy policy, but the Google Play Terms of

9    Service incorporate the above-referenced Google Privacy Policy.

10   31.      Upon registration with Google Play, the user is allowed to access a library of digitally-

11   distributed content, including Apps.  A user wishing to purchase an App through Google Play is

12   prompted to agree again to the GWToS and confirm their intent to purchase, and if not signed in

13   enter her previously-supplied Google Wallet account information or, if the user has not

14   previously registered with Google Wallet or is prompted by Defendants, is prompted to provide

15   Google Wallet a "payment method" by entering a credit or debit card number, "Expiration Date"

16   (MM/YY), "Security Code" (CVC), "Billing Information" (including *e.g.* Name,  Apt./Suite,

17   City, State, and Zip Code), and Phone Number.

18   32.      After a user makes a purchase, Google and/or Google Payment Corp use the user's linked

19   Gmail email address to communicate with the user; *e.g.*, to provide receipts for purchases.

20   33.      At relevant times the GPToS established that Google operates the Google Play store.

21   34.      The GWPP in effect at relevant times identifies both Google and Google Payment Corp as

22   contracting parties who jointly make promises with regard to the provision of Google Wallet to

23   the public and as the entities storing, protecting, and/or processing the personal information of

24   Google Wallet Users, *e.g.* "Google Wallet refers to Google payment services that are provided by

25   both Google Inc. and its wholly owned subsidiaries…[f]or US users, that subsidiary is Google

26   Payment Corporation ("GPC");" and, "Google takes the privacy of your information seriously.

27

28

Class Action Complaint

6

Your payment information and shipping addresses can be saved in your Google Account to make future purchases more convenient and secure."[6]

### Google and Google Payment Corp's Privacy Promises and Rules for Disclosure

35.     Speaking to the user, the GToS provide that "Google's privacy policies explain how we treat your personal data and protect your privacy when you use our Services.   By using our Services, you agree that Google can use such data in accordance with our privacy policies."[7]

36.     Speaking to the user, the GPP has provided, at relevant times, that Google will "not share personal information with companies, organizations and individuals outside of Google unless one of the following circumstances apply:

- **With your consent**
  We will share personal information with companies, organizations or individuals outside of Google when we have your consent to do so. We require opt-in consent for the sharing of any sensitive personal information.
- **With domain administrators**
  If your Google Account is managed for you by a domain administrator (for example, for Google Apps users) then your domain administrator and resellers who provide user support to your organization will have access to your Google Account information (including your email and other data). Your domain administrator may be able to:
  o   view statistics regarding your account, like statistics regarding applications you install.
  o   change your account password.
  o   suspend or terminate your account access.
  o   access or retain information stored as part of your account.
  o   receive your account information in order to satisfy applicable law, regulation, legal process or enforceable governmental request.
  o   restrict your ability to delete or edit information or privacy settings.
  o   Please refer to your domain administrator's privacy policy for more information.
- **For external processing**
  We provide personal information to our affiliates or other trusted businesses or persons to process it for us, based on our instructions and in compliance with our Privacy Policy and any other appropriate confidentiality and security measures.
- **For legal reasons**

---

[6] *See* https://support.google.com/wallet/answer/39332?hl=en, accessed August 6, 2013.

[7] *See* http://www.google.com/intl/en/policies/terms/, accessed September 3, 2013 [hereinafter GToS].

Class Action Complaint

1  We will share personal information with companies, organizations or individuals outside of Google if we have a good-faith belief that access, use, preservation or
2  disclosure of the information is reasonably necessary to:
3    o  meet any applicable law, regulation, legal process or enforceable governmental request.
4    o  enforce applicable Terms of Service, including investigation of potential violations.
5    o  detect, prevent, or otherwise address fraud, security or technical issues.
6    o  protect against harm to the rights, property or safety of Google, our users or the public as required or permitted by law.
7

8  37.    The GWPP, incorporated into the GWToS (the GWPP and GWToS are, collectively

9  hereinafter, the "Wallet Terms" unless otherwise noted), provides:

10    The Google Privacy Policy describes how we treat personal information when you use Google's products and services. "Google Wallet" is a product offered to
11    Google Account holders. Your use of Google Wallet is therefore subject to the Google Privacy Policy. In addition, the following notice describes our privacy
12    practices that are specific to Google Wallet.

13  and that Google and Google Payment Corp will only share a user's personal information with

14  other companies or individuals outside of Google: (i) as permitted under the GPP; (ii) as

15  necessary to process the users' transaction and maintain the user's account; and (iii) to complete

16  the user's registration for a service provided by a third party.[8]

17                                   ***Third-Party Vendors***

18  38.    A third-party vendor wishing to utilize Google Play to sell and electronically distribute

19  Apps is required to first have an existing Google Account.

20  39.    Third-party vendors using Google Play are also required to have a Google Checkout

21  Account, which is the merchant side of the Google Wallet service, and to pay a $25 Google Play

22  registration fee to Google via Google Wallet in order to use the Google Services to market their

23  Apps.

24  40.    Upon a user's purchase of a third-party vendor's App, Defendant Google Payment Corp

25  charges and collects fees from the user and remit the remainder to the third-party vendor via

26  Google Checkout.

27  ───────────────
   [8] *See*, http://wallet.google.com/files/privacy.html, accessed September 3, 2013 [hereinafter
28  GWPP].

   Class Action Complaint

41.     Users are customers of Defendants' services and Defendants earn money as a result of users' utilization of Defendants' services to digitally obtain Apps.

42.     In exchange for registering for Google Checkout, third-party App vendors can access a record of every Google Wallet purchase of one of their Apps, including SID of the buyer via the Google Checkout vendor portal.  The Google Checkout vendor portal resembles an email inbox with new purchases in one list and a list of all older purchases in an archive list.  If third-party App vendors select any specific entry from either list they can see the personally identifiable user information in question in the "Shipping Information" field.  This information is available to vendors from the time of purchase and continues to be available on an ongoing basis thereafter. A vendor can continue to sign on and view every prior purchase in the "archive" section of the vendor portal, including the purchasers' identifying information, long after the purchase was originally made and the product provided to the user.

43.     The Google Checkout vendor portal also tells the third-party App vendor whether the payment is guaranteed by Google and/or Google Payment Corp in advance of the actual transfer of funds and notifies the vendor once payment has been effected, after processing the user's credit card or other payment method for that purchase.[9]

44.     None of the above-described personal information, including *e.g.* the user's full name need be given to the vendor to effectuate the electronic sale or electronically deliver payment from Google Checkout to the vendor.

### *Unauthorized and Unlawful Disclosures*

45.     Plaintiff and the Class are paying customers of Defendants' services and purchasers of third-party vendor Apps electronically provided via Defendants' services.

46.     As described more fully above, Plaintiff and similarly situated customers, and Google and/or Google Payment Corp, are parties to overlapping Relevant Terms governing the benefits,

---

[9] *See, e.g.,*
http://www.scroogled.com/Content/documents/Microsoft_S3_Apps_SubstantiationFinal_032213.
pptx, pgs. 10-12, accessed May 13, 2013 [hereinafter Microsoft Presentation] ·

Class Action Complaint

1   rights, and responsibilities of Defendants and users of Google Play store and/or Google Wallet.

2   The "Relevant Terms" include the Wallet Terms, the Google Terms, and the GPToS.

3   47.    When a user purchases an App from the Google Play store, Google transmits the App to

4   the user via the Google Play store and Google Wallet processes the payment of monies from the

5   user to the third-party vendor via Google Wallet.  Users may pay into Google Wallet by credit

6   card or by charging the transaction to their wireless carrier account, but Google Wallet is the only

7   choice available to process the payment for Google Play Apps regardless of the source of the

8   monies.

9   48.    Users utilizing Google Wallet to purchase an App through Google Play first select the

10   desired App and initiate the purchase.  The user is then prompted to agree to the GWToS and

11   agree to the purchase, and at relevant times, users have additionally been prompted to select a

12   pre-stored Google Wallet payment method or fill out payment information with which the user

13   wishes to make the payment, using Google Wallet, as described above.

14   49.    Then, the user is prompted to verify the purchase and Defendants process the payment.

15   After Defendants process the user's payment, Defendants automatically remit funds to the third-

16   party vendor in addition to the user's name, email address, Google account name, home city and

17   state, zip code, and in some instances telephone number.

18   50.    However, the blanket disclosure of the user's name, email address, telephone number

19   and/or geographic information ("Sensitive Identifiable Data," or "SID") to the third-party vendor

20   is not necessary to process the user's payment for the third-party vendor's App.

21   51.    At no time do Defendants tell users that their SID is being passed on to third-party

22   vendors.  Nor do Defendants appear to give third-party vendors an option to choose to receive, or

23   not to receive SID, for any reason.

24   52.    The SID disclosed by Defendants is made available to App vendors as alleged "Shipping

25   Information" despite the facts that: (i) Google provides the software Apps electronically via its

26   Google Play store with no physical product being 'shipped;' and (ii) Google Payment Corp

27   processes the payment for the software electronically via Google Wallet.

28

Class Action Complaint

53.     The SID disclosed by Defendants to third-party vendors is made available to them, at a minimum, via the third-party vendor's Google Checkout vendor portal.

54.     At no point do users intend for or agree that the SID they provide Defendants, for the purposes of processing payments, be disclosed to third party vendors, nor did Defendants ask them to agree to such disclosure.

55.     As described more fully above, the SID that is made available via the Google Checkout vendor portal to third-party vendors is collected by Google and Google Payment Corp when users register for a Google Account and/or Gmail, the Google Play store, and/or Google Wallet.

56.     Contrary to the above-described terms regarding when and to whom Defendants would disclose a user's personal information, Defendants have provided and continue to provide users' personal information to third-party vendors.  None of the limited purposes for which Plaintiff and the Class members' SID could be disclosed, as set forth in the GWPP and GPP, permit disclosure of their information as set forth above.  *See* ¶¶ 36-37.

57.     Apps are digital products which are electronically processed and transmitted by way of the Google Play store.  Apps do not require shipping of any physical product and are merely electronically communicated from Google to the user's device (*e.g.* smartphone, tablet, or other computing device) which are sent without the need for vendors to have customers' physical location, phone contact information, and/or identity.

58.     Google's competitor Microsoft does not share personally identifiable information with third-party vendors on its similarly-offered Windows Phone Store, yet users are still able to purchase apps through the Windows Phone Store.

59.     The Google Play store and Google Wallet services are integrated on the user end.  The transaction which results in the unauthorized disclosure of SID is a result of the joint efforts of Google and Google Payment Corp.  On information and belief, Google and/or Google Payment Corp are responsible for the design, implementation, and control of the App purchasing process, including without limitation transmission of user information to the vendor, and the Google Checkout vendor portal that shows users' SID being made available to vendors on an ongoing basis without authorization by the user.

Class Action Complaint

11

60.     On February 21, 2013, Hank C. Johnson, U.S. Representative and member of the House Judiciary Committee and Intellectual Property, Competition, and the Internet Subcommittee issued a letter to Google[10] raising a number of concerns over Google's herein alleged practice and specifically requested that Google, in discussing the types of information shared with vendors through Google Wallet, explain how sharing SID with vendor-developers was necessary to process the user's transaction.

61.     Congressman Johnson followed with additional comment on March 14, 2013, reiterating the need for terms that actually disclose the sharing of personal information: "...A short notice stating the types of personal information that Google shares with third parties and reasons for sharing would provide users with greater transparency.  Unlike a broad statement buried in the Wallet Privacy Notice, a contextual approach might also prevent the consumer surprise and public alarm that predicated my letter."

62.     Defendants' practice of forwarding SID to third-party vendors without authorization has drawn recent comment from third-party App vendors who themselves wonder why they are needlessly receiving such data and have disclaimed the need for it.[11]

63.     Due to Defendants' actions, on many occasions users' SID has been disclosed and made accessible, with neither authorization nor necessity, to remote third-party App vendors.

---

[10] Letter from Hank C. Johnson, Representative of the 4th District of Georgia, to Larry Page, CEO, Google, Inc. (Feb. 21, 2013), available at http://hankjohnson.house.gov/sites/hankjohnson.house.gov/files/documents/Letter_to_Google.pdf [hereinafter Johnson Letter].

[11] *See, e.g.,* Jessica Guynn, *Google under fire for sending users' information to developers*, L.A. Times, Jan. 14, 2013, available at http://articles.latimes.com/2013/feb/14/business/la-fi-tn-google-under-fire-for-sending-users-information-to-developers-20130213;  Charles Arthur, *Google raises privacy fears as personal details are released to app developers*, The Guardian, Feb. 25 2013, available at www.guardian.co.uk/technology/2013/feb/25/google-privacy-fears-app-developers; Chris Tomassucci , *Google Play(ing with your personal info.)*, The Daily News, Feb. 17, 2013, available at http://www.ironmountaindailynews.com/page/blogs.detail/display/1309/Google-Play-ing-with-your-personal-info-.html.

***Google and Google Payment Corp's Disclosures are not Permitted Under the Relevant Terms***

64.    As described more fully above, Google and/or Google Payment Corp promise in the Relevant Terms to only disclose SID in limited and specific circumstances. None of those circumstances permit the SID disclosures in which Google and/or Google Payment Corp have and continue to engage as described above.

65.    The Wallet Terms do not permit the disclosures. The blanket disclosure to third-party App vendors of a combination of users' names, Google account names, Gmail·addresses, location information, and in some cases telephone numbers is not: (i) permitted under the GPP, as described more fully below; (ii) necessary to process the user's transaction and maintain the user's account, as the payment processing and electronic app transmission are handled by Google Payment Corp via Google Wallet/Checkout and Google via the Google Play Store, respectively; or (iii) necessary to complete the user's registration for a service provided by a third party, as processing payment for purchase of Apps in the Google Play Store does not require Google to register users for third-party services and, moreover, once a user downloads an App the third-party vendor and the user can interact directly (*e.g.*, via email without the need for the users' names).   Indeed, Defendant Google provides third-party vendors' contact information in App detail pages expressly so that users may contact them.

66.    Nor does the GPP permit the above-described SID disclosures.  The GPP outlines limited situations in which Google may disclose personal information, none of which apply to the facts at hand (namely, the purchase and download of Apps using Google Wallet and Google Play):

a.    Users have not given their consent for these disclosures and in fact most users are likely completely unaware of these disclosures, as described more fully above.

b.    The third-party App vendors in question are not domain administrators for the users' accounts and thus that exception does not apply to the facts alleged herein.

c.    The third-party App vendors in question are not engaged in external processing of personal information on Google's behalf and thus that exception does not apply to the facts alleged herein.

Class Action Complaint

d.      None of the legal bases for disclosure specified in the GPP applies to the facts herein alleged.  The disclosures at issue are not related to or reasonably necessary to:  meet any applicable law, regulation, legal process or enforceable governmental request; enforce applicable Terms of Service, including investigation of potential violations; detect, prevent, or otherwise address fraud, security or technical issues; protect against harm to the rights, property or safety of Google, users or the public as required or permitted by law.

67.     Thus, neither of the above described Google and Google Wallet privacy policies permits the disclosures of SID to third-party App vendors via the Google Checkout vendor portal as described more fully above.

*Plaintiff's Experience*

68.     On or about November 12, 2012, Plaintiff registered an email account with Google and thereby, according to Google, agreed with Google to the Google Terms of Service and Google Privacy Policy.

69.     On or about May 6, 2013, Plaintiff registered a Google Play account and thereby, according to Google, agreed to the Google Play Terms of Service with Google.

70.     On May 6, 2013, Plaintiff registered with Google Wallet and thereby, according to Google and Google Payment Corp, agreed to the Google Wallet Terms of Service and the Google Wallet Privacy Policy with Google and Google Payment Corp.

71.     In the process of registering for the above services Plaintiff provided, at relevant times and at the prompting of Defendants, her full name, and her credit card and billing information such as the city and zip code in which she resides and her phone number, as set forth more fully above.

72.     Upon creation of her Gmail account Google assigned her a username and email which are associated, by Google, with the above-described Google services and which was used by Google and/or Google Payment Corp to send her, among other things, receipt information for her App purchase made using the Google Play Store and Google Wallet.

73.     On information and belief, when Plaintiff purchased Apps through the Google Play store her SID, including for example her name, Google account name and email address, city and/or

Class Action Complaint

1   zip code were transmitted and made available on a continuing basis to the third-party App vendor

2   via the Google Checkout vendor portal.

3   74.    On May 6, 2013, Plaintiff, through Google Play and using Google Wallet, purchased, for

4   $1.77, the "SMS MMS to Email" App published by third party vendor YCDroid, which, upon

5   purchase was instantly downloaded for use on Plaintiff's mobile device.

6   75.    Plaintiff did not expect that her SID would be disclosed in a blanket fashion with no

7   regard to necessity to the maker of the SMS MMS to Email App as described above – nor was she

8   informed by Defendants as such.

9   76.    Google Wallet processed her payment and remitted the amount paid, minus the transaction

10  fee retained by Google Payment Corp as the payment processor, to YCDroid.

11  77.    Following her purchase, as with all transactions using Google Wallet and the Google Play

12  store, Google and/or Google Payment Corp transmitted and/or made available on an ongoing

13  basis Plaintiff's SID to YCDroid via the Google Checkout vendor portal as described more fully

14  above.

15                     ***Harm Resulting from Defendants' Disclosures***

16  78.    Google Play and Google Wallet work in conjunction to provide a service wherein users

17  can purchase and download Apps. Users pay the cost of the App, which includes built-in monies

18  and transaction fees pocketed by Defendant Google Payment Corp, in order to download the App

19  directly from the Google Play store, by using Defendants' payment services and without needing

20  to visit a third-party App developers' separate and potentially less secure websites. The payment

21  is verified and processed by Google Wallet and payment and SID is submitted to the vendor via

22  Google Checkout by Google and/or Google Payment Corp.

23  79.    Consumers expect Google and Google Payment Corp to perform these integrated

24  transactions consistent with and pursuant to the Relevant Terms and accompanying protections,

25  including without limitation Google's and Google Payment Corp's privacy promises, and their

26  promises that they will not share users' SID unless necessary to complete a transaction or under

27  other specified circumstances not relevant here, as described more fully above. See, *supra* ¶¶ 36-

28  37, 65-67.

Class Action Complaint

80.     By improperly disclosing Plaintiff and other users' SID to third-party vendors, Defendants denied them the service bargained for (*i.e.*, the receipt of paid-for content without unnecessary disclosure of SID), failed to provide payment and download services as promised and without disclosure of SID except as consistent with and pursuant to the above-described protections in the Relevant Terms, and denied them the benefit of the bargain and diminished the value of their purchases using Google Play and Google Wallet.

81.     Defendants have pocketed monies from Plaintiff and Class' App purchases, despite their undisclosed transmission of SID to vendors contrary to the Relevant Terms.

82.     Defendants, by virtue of their above-described disclosures, have conferred a benefit to third-party vendors, and an accompanying loss of economic and proprietary value to Plaintiff and the Class by virtue of their payment of monies for the App purchases and the nature of the disclosures.

83.     The SID improperly disclosed by Defendants to third-party vendors – and any unknown individuals operating those third-party vendors – is a merchantable asset of the sort that is priced, bought, and sold in discrete units for marketing and other purposes.  It has been observed that "[w]ebsites and stores can...easily buy and sell information...with the intention of merging behavioral data with demographic and geographic data in ways that will create social categories that advertisers covet and target with ads tailored to them or people like them."[12]  The FTC has observed that companies will pay premiums for the ability to precisely target certain consumers.[13]  On February 28, 2011, the *Wall Street Journal* published the article "Web's Hot New Commodity: Privacy" that highlighted Allow, Ltd., one of nearly a dozen companies which offer to sell people's personal information for profit.  Further, in *Property, Privacy, and Personal Data*, Professor Paul M. Schwartz wrote:

---

[12] Joseph Turow, Jennifer Kig, Chris Jay Hoofnagle, Amy Bleakley & Michael Hennessy, *Americans Reject Tailored Advertising and Three Activities That Enable It*, Sept. 29, 2009, available at http://papers.ssrn.com/sol3/papers/papers.cfm?abstract_id=1478214

[13] F.T.C., *Protecting Consumer Privacy in an Era of Rapid Change*, Preliminary Staff Report (Dec. 2010), at 24.

Class Action Complaint

16

[P]ersonal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from this trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[14]

84.     Speaking to the users Defendants state that in the GWPP they "are not responsible for which vendors or other third parties you choose to share information with from Google Wallet." Despite that affirmation, Defendants' have, by assuming responsibility for disclosing the SID at issue without necessity or user consent, provided a marketable asset to third-party vendors and denied Plaintiff and the Class the value of choosing whether to reveal their identities, contact information and/or other personal information to those same online vendors.

### Defendants Expose Plaintiff and the Class to Imminent Harm

85.     Identity theft is rampant online, and often results in expenditures in the name of those victimized. The FTC reported that in 2012, consumers' out-of-pocket expenditures due to identity theft reached nearly $1.5 billion.[15] The 2013 Identity Fraud Report released in February 2013 by Javelin Strategy & Research found that in 2012 more than $21 billion was stolen via identity theft, and there were more than 12.6 million victims of identity fraud in the United States in the past year.[16]

86.     An identity thief needs only a name to begin the process of ultimately obtaining access to an individual's financial account information.[17]

---

[14] Paul M. Schwartz, *Property Privacy, and Personal Data*, 117 Harv. L. Rev. 2055, 2056-57 (2004).

[15] Consumer Sentinel Network, F.T.C., Data Book, at 7 (2012), available at http://www.ftc.gov/sentinel/reports/sentinel-annual-reports/sentinel-cy2012.pdf.

[16] Javelin Strategy & Research. (2013). *2013 IDENTITY FRAUD REPORT: Data Breaches Becoming a Treasure Trove for Fraudsters*, [Brochure], available at https://www.javelinstrategy.com/uploads/web_brochure/1303.R_2013IdentityFraudBrochure.pdf.

[17] *See, e..g.,* Herbert H. Thompson, *How I Stole Someone's Identity*, Scientific American, Aug. 18, 2008, available at, http://www.scientificamerican.com/article.cfm?id=anatomy-of-a-social-hack.

Class Action Complaint

87.     Google has acknowledged that the most sought after information in online security attacks is personal information, sought primarily for the purpose of ultimately using the personal information to steal money.[18]

88.     The magnitude of harm in the event of identity theft is significant, creating on average of nearly $5,000 of loss and requiring victims to spend an average of 330 hours and hundreds of dollars to resolve the damage.[19]

89.     Defendants' disclosure of Plaintiff and the Class' SID to third parties without Plaintiff and the Class' knowledge exposes Plaintiff and the Class to a significant and imminently greater risk of identity theft than the risk faced by Plaintiff and the Class in the absence of Defendants' disclosures.

**Class Allegations**

90.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action as a class action on behalf of herself and the following presently defined Class:  all persons in the United States who utilized the Google Wallet service to purchase Apps via Google Play between September 19, 2011 and the date of class certification ("Class Period").  Excluded from the proposed Class are Plaintiff's counsel, Defendants' counsel, Defendants' current and former officers and directors, and any member of the judiciary presiding over this action.[20]

91.     Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that individual joinder of their claims is impracticable.

92.     Pursuant to Fed. Rs. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to Plaintiff and the other Class members, which common questions predominate over

---

[18] *See, e.g.,* Google Tech Talks, "How Cybercriminals Steal Money" by Neil Daswani at 5:25 (June 16, 2008), (citing Breach Security, Web Hacking Incidents Database Report), available at http://www.youtube.com/watch?v=jC6Q1uCnbMo, accessed August 7, 2013.

[19] Sam Franada, *Identity Theft Why You Should Be Worried,* http://rack.3.mshcdn.com/media/ZgkyMDEyLzEyLzA2LzFkL2lkdGhlZnRzbS40QWwuanBnCn AJdGh1bWIJMTIwMHg5NjAwPg/2997b5cf/a59/id-theft-sm.jpg accessed  also available at Linda Foley and Jay Foley, Identity Theft Resource Center, *IDENTITY THEFT: THE AFTERMATH 2004*, September 2005, available at http://leg.mt.gov/content/committees/interim/2005_2006/econ_affairs/minutes/10282005exhibits/ EACM10282005_exhibit8.pdf, accessed September 3, 2013.

[20] The class definition is subject to modification as appropriate and/or pursuant to discovery.

Class Action Complaint

18

any questions affecting only individual members. Pursuant to Defendants' above-described conduct, the common questions of law and fact include, but are not limited to:

    a.  Did Defendants disclose Plaintiff and Class members' SID to third-party vendors;

    b.  Was Defendants' disclosure of SID to third-party vendors necessary to process App purchases;

    c.  Did Defendants employ standardized promises, relating to disclosure of user information, in connection with App sales via Google Play and/or Wallet?

    d.  Did Defendants employ standardized policies, relating to disclosure of user information, in connection with App sales via Google Play and/or Wallet?

    e.  Did Defendants' blanket disclosure of SID to third-party vendors breach the Relevant Terms and/or portions thereof;

    f.  Did Defendants' blanket disclosure of SID to third-party vendors breach Defendants' duties of good faith and fair dealing stemming from the Relevant Terms;

    g.  Do Defendants qualify as electronic communications services as that term is defined in the Stored Communications Act, 18 U.S.C. § 2510(15);

    h.  Do Defendants qualify as remote computing services as that term is defined in the Stored Communications Act, 18 U.S.C. § 2711(2);

    i.  Did Defendants' blanket disclosure of SID to third-party vendors purchases violate 18 U.S.C. § 2701;

    j.  Did Defendants' blanket disclosure of SID to third-party vendors in the process of completing Plaintiff and the Class members' Google Play App purchases violate 18 U.S.C. § 2702;

    k.  Did Defendants' herein-described conduct violate the Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq.*; and

    l.  Did Plaintiff and the Class lose money and/or property due to Defendants' herein-described conduct?

93.    Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of other members of the Class, who used the Google Wallet processing service during the Class Period and whose SID was disclosed to third party vendors without authorization.

94.    Plaintiff has no adverse or antagonistic interests to those of the Class and has retained counsel experienced in complex consumer class action litigation.

95.    A class action is superior to other available means for the fair and efficient adjudication of this controversy and concerns standardized conduct and terms. The damage suffered by individual Class members is relatively small compared to the burden and expense entailed by

Class Action Complaint

1   individual litigation of the claims against Defendants.  Even if select Class members could afford

2   individualized litigation, the court system could not.  Individualized litigation would also increase

3   the delay and expense to all parties and the court system from the issues raised by this action.  By

4   contrast, the class action device provides the benefit of a single adjudication of the issues at bar,

5   and presents no unusual management difficulties under the circumstances here.

6   96.      Alternatively, per Fed. R. Civ. P. 23(b)(2), here Defendants have acted or refused to act on

7   grounds that apply generally to the Class, so that final injunctive relief or corresponding

8   declaratory relief is appropriate respecting the class as a whole.

9   97.      The claims asserted herein are based on California law, which, Defendants purport, is

10  applicable to the Class as a whole by virtue of the Google Terms of Service and Google Wallet

11  Terms of Service choice of law provisions.

12  <center>**Count I – Breach of Contract**</center>

13  98.      Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings

14  this cause of action individually and on behalf of the Class.

15  99.      The Relevant Terms describe rights, obligations and services provided through the use of

16  the Google Play store and Google Wallet.

17  100.     At relevant times, Defendants each and/or jointly solicited Plaintiff and the Class to

18  provide personal contact and billing information, which Defendants used to establish Google

19  accounts, email addresses, and/or to provide the Google Services, consistent with the above-

20  described terms.  In exchange, Plaintiff and the Class agreed to register with the Google Play

21  store and Google Wallet to allow Defendants to process their purchase and payment transactions

22  in connection with provision and sale of Apps.  These transactions thereby allow Google Payment

23  Corp to earn a fee for processing the payment.

24  101.     According to Defendants, Plaintiff and the Class, upon using the Google Wallet service to

25  purchase Apps delivered via Google Play during the Class Period, agreed to Defendants' above-

26  described terms.

27  102.     As set forth above, according to Defendants, Plaintiff and the Class accepted the Relevant

28  Terms by registering with Google and Google Wallet and purchasing Apps with Google Wallet

Class Action Complaint

1  via the Google Play store. As such, the GWPP and GPP, as incorporated into the GWToS,

2  constitute a valid and enforceable contract between Plaintiff and the Class and Defendants.

3  103.   In the GWPP, Google and Google Payment Corp agreed at relevant times, among other

4  things, to share Plaintiff and the Class's information with third parties only: (i) as permitted under

5  the GPP; (ii) as necessary to process the user's transaction and maintain the user's account; and

6  (iii) to complete the user's registration for a service provided by a third party.

7  104.   The GPP lists a discrete set of circumstances under which user personal information will

8  be shared with vendors and none of those exceptions is applicable to the disclosure of SID

9  described herein to third-party App vendors, as described more fully above. See *supra.* ¶¶ 36-37.

10 105.   As more fully set forth above in ¶¶ 36-37, disclosure of SID to third-party App vendors

11 was not permitted under any of these limited exceptions, and Defendants breached said contracts

12 with Plaintiff and the Class by needlessly disclosing their SID to third-party vendors in the course

13 of processing their Google Wallet App purchases without authorization.

14 106.   Effectively functioning as a middle-man, Defendants insulate users from third-party App

15 vendors by processing the users' credit card transactions, transmitting payments to the third-party

16 vendors, and delivering the Apps to users via the Google Play Store. As such, the SID disclosed

17 by Defendants is neither necessary to deliver software Apps nor to transmit payment for said

18 Apps. Nor is it necessary to disclose the SID to third-party vendors to maintain the users' Google

19 services accounts as the third-party vendors do not maintain Google service accounts. Nor is it

20 necessary to disclose the users' SID to third-party vendors, upon purchase of an App, to register

21 users for a "third party service" as users are free to interact directly with the third-party vendors

22 via the App if the App provides a service and requires any registration. Nor are these disclosures

23 expressly allowed by the GPP or any of the other relevant terms as described more fully above.

24 107.   Plaintiff and the Class did all or substantially all of the significant things required of them

25 by the Relevant Terms and registered with Google, Google Wallet, and Google Play, and

26 purchased an App via Google Play and Wallet. In return Plaintiff and the Class expected Google

27 and Google Payment Corp to fulfill their obligations under the Relevant Terms and only disclose

28 SID in the limited instances outlined therein. As discussed above, Defendants instead provided

Class Action Complaint

1   blanket disclosures to third-party vendors without necessity, consent or any other legitimate

2   justification under the contract.

3   108.   Plaintiff and the Class are damaged and are alternatively entitled to restitution for

4   Defendants' unjust enrichment due to Defendants' aforesaid breaches.

5   **Count II - Breach of Covenant of Good Faith and Fair Dealing**

6   109.   Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings

7   this cause of action individually and on behalf of the Class, and insofar as required by applicable

8   facts or law, in the alternative to Count I.

9   110.   As part of the above-described contract, Defendants owed Plaintiff and the Class an

10   implied duty of good faith and fair dealing.

11   111.   The Relevant Terms give Plaintiff and the Class the reasonable expectation that their SID

12   would not be given to third-party App vendors when purchasing Apps via the Google Play store

13   and Google Wallet, as more fully set forth above. *See* ¶¶ 36-37.

14   112.   However, the Relevant Terms are standardized and non-negotiable terms, which

15   Defendants, at their own discretion, interpreted to carry out the above-described privacy promises

16   as they saw fit, in a way that resulted in transmission of Plaintiff and other Class members' SID to

17   third-party App vendors.

18   113.   For example, while Defendants may share personal information, like *e.g.* SID, with third-

19   parties if "necessary to process the user's transaction and maintain the user's account" as per the

20   GWPP, that provision is not reasonably interpreted to allow blanket disclosure of any or all of the

21   SID to App vendors on grounds of necessity or account maintenance, as set forth more fully

22   above.

23   114.   Defendants' SID disclosures run contrary to the parties' reasonable expectations and a

24   reasonable interpretation of the Relevant Terms, and interfered with Plaintiff and the Class's right

25   to receive the full benefits of the contract – namely, the purchase and download of Apps without

26   the unnecessary and unauthorized disclosure of SID to third-parties and certainly including App

27   vendors.

28   115.   As a result, Plaintiff and the Class were damaged and Defendants were and continue to be

Class Action Complaint

1   unjustly enriched.

2   **Count III– Violation of the Stored Communications Act, 18 U.S.C. § 2701**

3   116.    Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings

4   this cause of action individually and on behalf of the Class.

5   117.    The Stored Communications Act provides that "[w]hoever…intentionally accesses

6   without authorization a facility through which an electronic communication service is

7   provided…or…intentionally exceeds an authorization to access that facility…and thereby

8   obtains, alters, or prevents authorized access to a wire or electronic communication while it is in

9   electronic storage in such system shall be punished as provided in subsection (b) of this section."

10   18 U.S.C. §§ 2701(a)(1), (2).

11   118.    Defendants, individually and/or jointly, solicited Plaintiff and the Class to electronically

12   provide personal contact and billing information, *e.g.* including without limitation Google's

13   request for users' names to create a Google account and/or Gmail address, Google Payment

14   Corp's request for billing and credit card information for the purpose of processing payments, and

15   Defendants' request for the above-described SID as part of Google Wallet registration and/or

16   purchases using Google Play and Google Wallet, pursuant to the Relevant Terms, as more fully

17   set forth above.

18   119.    Defendants both utilize server facilities in order to provide their electronic communication

19   and/or remote computing services at issue as that term is defined in 18 U.S.C. § 2510(15) and

20   store personal information in said server facilities.

21   120.    Pursuant to the Relevant Terms, Defendants are only authorized to disclose to third parties

22   a user's personal information with third-party companies or individuals: (i) as permitted under the

23   GPP; (ii) as necessary to process the user's transaction and maintain the user's account; and (iii)

24   to complete the user's registration for a service provided by a third party.

25   121.    Defendants had no authorization to disclose, to third-party vendors, Plaintiff's and other

26   Class members' SID: disclosure of this information was not necessary to process their purchase

27   transactions, to maintain their Wallet (or Google) accounts, to complete registration by Google

28

Class Action Complaint

1    for user's with third-party Apps, or for the limited purposes or exceptions set forth in the GPP as

2    described above.

3    122.    Plaintiff and the Class did not expressly or specifically authorize Defendants to provide

4    third-party vendors with their SID in a blanket fashion or with access to all of it in a blanket

5    manner.

6    123.    The transactions at issue – the remote download of and payment for software – do not

7    require all the SID at issue to be transferred to the third-party App vendor who receives payment

8    from Google Payment Corp and/or Google. No specific exceptions to Defendants' privacy

9    promises apply to the transactions at issue or the blanket disclosures of SID alleged herein, as

10   described more fully above. ¶¶ 36-37.

11   124.    In the course of processing Plaintiff and the Class's Google Wallet App online purchases,

12   Defendants exceeded their authorized access to the facilities through which Defendants provide

13   the electronic communications services at issue and within which their SID was stored on

14   Defendants' servers, by unnecessarily transmitting or making available their SID to third-party

15   App vendors.

16   125.    Defendants thereby altered access to the SID while it was at least temporarily maintained

17   on Defendants' servers by transmitting and/or allowing third-party vendors access to the SID via

18   the Google Checkout vendor portal.

19   126.    Defendants intentionally disclosed Plaintiff and the Class' SID to third-parties as

20   described more fully above.

21   127.    Defendants neither had authorization nor received authorization from Plaintiff and the

22   Class to effect a blanketed disclosure to third-parties of the SID at issue.

23   128.    As a result of Google's unauthorized and unlawful disclosure of Plaintiff's and the Class

24   members' SID, Plaintiff and members of the Class have suffered damages from Google's

25   violations of 18 U.S.C. § 2701.

26   129.    Plaintiff and Class members are aggrieved persons who have suffered damage as a result

27   of knowing violation of the Stored Communications Act within the meaning of 18 U.S.C. §

28   2707(a).

Class Action Complaint

130.   Plaintiff and members of the Class seek all available remedies as provided by 18 U.S.C. § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with § 2707(c), and any applicable punitive damages to be proven at trial, and attorneys' fees and costs.

**Count IV – Violation of the Stored Communications Act, 18 U.S.C. § 2702**

131.   Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class.

132.   The Stored Communications Act provides that "…a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

133.   The Stored Communications Act provides that "…a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service…on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

134.   Google, at relevant times, has provided a variety of electronic communication services to account holders, including Plaintiff and the Class, such as the electronic transmission of Apps and payment instrument information by way of Google Play and Google Wallet, and qualifies as an electronic communication service under 18 U.S.C. § 2510(15).

135.   Google publicly provides a variety of computer processing services, including without limitation digital content distribution services via Google Play, and qualifies as a remote computing service under 18 U.S.C. § 2711(2).

136.   Google Payment Corp provides electronic communications service to Google and account holders, including without limitation the transmission of payment instrument information by and among financial institutions to process electronic payment transactions via Google Wallet, and qualifies as an electronic communications service under 18 U.S.C. § 2510(15).

Class Action Complaint

25

137.   Google Payment Corp, which publicly provides electronic payment processing services, qualifies as a remote computing service under 18 U.S.C. § 2711(2).

138.   At relevant times, Plaintiff and the Class members were subscribers to and customers of Defendants' services.

139.   Defendants at relevant times solicited users to electronically communicate personal contact and billing information which both Defendants have maintained in electronic storage on servers in connection with processing and communicating related to Google Play App purchases and downloads and Google Wallet App payment transactions for Plaintiff and the Class during the Class period.

140.   In the course of processing Plaintiff and the Class members' above-described payments, Defendants knowingly and without authorization divulged to third-party vendors, via the Google Checkout vendor portal and as a direct result of purchases of Apps from the Google Play store, Plaintiff and the Class members' customer SID which: (i) they had electronically communicated to Defendants; (ii) was at least temporarily maintained on Defendants' servers; (iii) is not needed to process Google Wallet payment transactions and/or deliver the Apps purchased through Google Play; and (iv) does not serve to protect any of Defendants' rights or property.

141.   The transactions at issue, remote download of and payment for software, do not require blanket transfers of SID to the third-party vendor who provides the app via Google Play and receives payment from Google Payment Corp and/or Google, nor do any of the other specific exceptions to Defendants' privacy promises, described more fully above, apply to the transactions at issue or the blanket disclosures of SID alleged herein.

142.   Plaintiff and the Class did not consent to Defendants' blanket disclosure of the SID to third-party App vendors, and did not consent or intend for their SID to be unnecessarily divulged to third-party vendors.

143.   Defendants, by disclosing the SID of Plaintiff and the Class without authorization, have knowingly divulged the contents of communications of Plaintiff and members of the Class while those communications were in electronic storage on its service, and continue to do so, in violation of 18 U.S.C. §§ 2702(a)(1), 2702(a)(2).

Class Action Complaint

144.   Defendants intentionally disclosed users' SID to third parties as described more fully above.

145.   As a result of Defendants' unauthorized and unlawful disclosure of Plaintiff's and the Class' SID, Defendants are in violation of 18 U.S.C. § 2702, and Plaintiff and the Class have suffered damages.

146.   Plaintiff and the Class are "person[s] aggrieved by [a] violation of [the SCA] in which the conduct constituting the violation is engaged in with a knowing or intentional state or mind…" within the meaning of 18 U.S.C. § 2707(a), and seek all available remedies as provided for by 18 U.S.C. § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be appropriate, as well as damages consistent with § 2707(c) and punitive damages in amounts to be proven at trial, and attorneys' fees and costs.

**Count V – Violation of the Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200**

147.   Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class.

148.   Defendants' conduct and decisions giving rise to Plaintiff and the Class's claims, on information and belief, in substantial part took place at Defendants' shared primary place of business in California.   Defendants, via the Relevant Terms' choice of law provisions, have asserted that the laws of the State of California shall apply to litigation concerning their services.

149.   Defendants' acts and practices as alleged herein constitute unlawful and unfair business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq*.

*Unlawful Conduct*

150.   Class Defendants' above-described conduct violates the Stored Communications Act, §§ 2701, 2702(a)(1), and 2702(a)(2), and Defendants' own proffered contractual terms, as set forth more fully above.

151.   Additionally, California Business & Professions Code § 22576 prohibits Defendants from violating their own privacy policies as set forth above.   For example, according to GWPP, Defendants would only share Plaintiff and the Class' personal information with other companies

Class Action Complaint

1    outside of Google: (i) as permitted under the GPP; (ii) as necessary to process the transaction and

2    maintain the account; and (iii) to complete the registration for a service provided by a third party.

3    152.    Google's business acts and practices of unnecessary and unauthorized disclosures to third-

4    party vendors of identity, location, phone number, and information provided to Defendants by

5    Plaintiff and the Class are unlawful because they violate the Relevant Terms and the Defendants'

6    duties of good faith and fair dealing with regard to said terms.

7    ***Unfair Conduct***

8    153.    In the alternative, Google's conduct, as alleged herein, is oppressive, immoral, unethical,

9    and unscrupulous and caused Plaintiff and the Class substantial injury, in violation of the UCL's

10   prohibition against "unfair" conduct, Cal. Bus. and Prof. Code § 17200, *et seq.*

11   154.    Defendants have no reasonable or legitimate justification under the Relevant Terms to

12   disclose SID to third party vendors in the blanket fashion described above, and Defendants'

13   practice violates the reasonable expectations created by the Relevant Terms.

14   155.    As set forth above, Defendants' processing of Plaintiff and the Class' App purchases is

15   accompanied by Defendants' request for agreement to the Relevant Terms, which promise to

16   protect their privacy, but which Defendants did not do, and which do not authorize unnecessary

17   transfer of SID to third-party vendors as Defendants have done.

18   156.    Defendant Google Payment Corp is unjustly enriched and unfairly profit – in the form of

19   transaction fees – from Plaintiff and other Class members' purchases of Apps via Google Wallet

20   and the Google Play store because Plaintiff and the Class did not authorize Defendants to disclose

21   the SID to third party vendors.

22   157.    Plaintiff and the Class paid Defendants for the benefit of using the Google Play store and

23   Google Wallet to purchase and pay for Apps in a fashion that protects, according to the terms and

24   conditions outlined above, their privacy.

25   158.    Defendants, by providing and continuing to provide SID to third-party vendors in what

26   would otherwise be an anonymous online transaction, have caused substantial harm to Plaintiff

27   and the Class.

28

Class Action Complaint

159.    Defendants could have easily avoided causing the injuries suffered by Plaintiff and the Class by simply refraining from making the SID accessible to third-party vendors via the Google Checkout portal, but Plaintiff and the Class were powerless to stop Defendants from disclosing their SID to App vendors because Defendants' exercised their own discretion to share this information, which enhances their business with their vendor-seller customers to the detriment of Plaintiff and the Class without providing countervailing benefit to Plaintiff and the Class.

160.    Defendants' practice offends the public policy tethered to the State constitutional right of privacy, Const. art. I, § 1.

161.    Defendants' practice directly contradicts the policy underlying the California Attorney General's Joint Statement of Principles ("Statement") to which Google and other major App marketers (including, *e.g.*, Apple and Microsoft) agreed on or about February 22, 2012.[21]  For example, Google has agreed that any App developer, presumptively including Google itself where it directly markets Google Apps, "must conspicuously post a privacy policy or other statement describing the app's privacy practices that provides clear and complete information regarding how personal data is collected, used and shared."  However, as such Defendants' posted privacy policies do not provide such a statement and are incomplete, as described more fully above.  For example, the Relevant Terms promise to disclose users' SID where necessary or with explicit permission (neither of which is the case with regard to the blanket disclosures of SID at issue).

162.    Defendants' practice directly contradicts the policy outlined in the Consumer Privacy Bill of Rights, introduced by the White House in February of 2012.[22]  Specifically, Defendants' conduct violates the following provisions of that policy:

- Individual Control: Consumers have a right to exercise control over what personal data companies collect from them and how they use it.

[21] Available at http://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-secures-global-agreement-strengthen-privacy, viewed on July 23, 2013.

[22] Available at http://www.whitehouse.gov/sites/default/files/privacy-final.pdf, viewed on July 23, 2013, as *CONSUMER DATA PRIVACY IN A NETWORKED WORLD: A FRAMEWORK FOR PROTECTING PRIVACY AND PROMOTING INNOVATION IN THE GLOBAL DIGITAL ECONOMY* (February 2012).

- Transparency: Consumers have a right to easily understandable and accessible information about privacy and security practices.
- Respect for Context: Consumers have a right to expect that companies will collect, use, and disclose personal data in ways that are consistent with the context in which consumers provide the data.
- Security: Consumers have a right to secure and responsible handling of personal data.

By contrast, as set forth above Defendants' conduct has failed to provide users meaningful individual control over what personal data vendors collect and/or how Defendants use the personal data they collect; Defendants' Relevant Terms provide *faux* transparency as they are inaccurate and/or incomplete with regard to how SID is used and/or what SID is transmitted by Defendants to third-party vendors; Defendants have also shown no respect for context (*e.g.* by providing a users' real name to a third-party vendor with every purchase despite having no need or authorization to do so); and Defendants have failed to securely and responsibly handle the SID collected from users.

163.    Defendants' practice significantly and imminently increases the risk of identity theft faced by Plaintiff and the Class.

164.    As a direct and proximate result of Defendant's above-described unlawful and unfair conduct, Plaintiff and the Class have lost money or property, and are entitled injunctive relief, restitution, restitutionary disgorgement of monies received by Defendants pursuant to their App purchases, and applicable relief allowed under §17200 *et seq.*

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

a.    An order certifying the Class as defined above, and appointing Plaintiff as Class representative and Plaintiff's counsel as class counsel;

b.    A finding and declaration that Defendants, by their above-described conduct, have violated the Stored Communications Act, the California Unfair Competition Law, Cal. Bus. & Prof. Code Sec. 17200 *et seq.*, and California law as set forth above;

c.    An award of injunctive and other equitable relief including, *inter alia*: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described

Class Action Complaint

herein; (ii) an order requiring Defendants to refrain from disclosing users information in the absence of those users' specific authorization; and (iii) an order requiring Defendants to conspicuously, precisely, and truthfully display in the Relevant Terms the manner in which they collect data from users and thereafter distribute such data;

d.   An award of all damages to Plaintiff and the Class available under applicable law, including statutory damages in the amount of $1,000 per violation under the Stored Communications Act, 18 U.S.C. § 2707(c) and punitive damages as applicable in an amount to be determined at trial;

e.   An award of restitution and/or restitutionary disgorgement, including interest thereon, to Plaintiff and the Class;

f.   Establishment of a constructive trust, until further order of the Court, consisting of monies Defendants improperly collected or received from their above-described illicit conduct, including a reasonable portion of the monies collected, from Plaintiff and the Class, in connection with the marketing and sale of Apps via the Google Play store and/or the processing of associated payments via Google Wallet;

g.   Reasonable attorneys' fees and costs; and

h.   Such other and further relief as the Court deems appropriate.

\\
\\
\\
\\
\\
\\
\\
\\
\\

Class Action Complaint

1

**Jury Demand**

2

Plaintiff demands a jury trial as to all matters so triable.

3

4

Respectfully submitted,

5

6

Kathryn Diemer

7

Diemer, Whitman & Cardosi, LLP

75 East Santa Clara Street, Suite 290

8

San Jose, CA 95113

Phone: 408-971-6270

9

Fax: 408-971-6271

kdiemer@diemerwhitman.com

10

CA Bar No.: 133977

11

Counsel for Plaintiff Alice C. Svenson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint

32