1   Susan D. Fahringer (CA Bar No. 162978)
    SFahringer@perkinscoie.com
2   Rebecca S. Engrav (Pro Hac Vice)
    REngrav@perkinscoie.com
3   PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
4   Seattle, WA  98101-3099
    Telephone: (206) 359-8000
5   Facsimile:  (206) 359-9000

6   Sunita B. Bali (CA Bar No. 274108)
    SBali@perkinscoie.com
7   PERKINS COIE LLP
    4 Embarcadero Center, Suite 2400
8   San Francisco, CA 94111
    Telephone: (415) 344-7000
9   Facsimile:  (415) 344-7050

10  Attorneys for Defendants
    Google Inc. and Google Payment Corporation
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14

15
    ALICE SVENSON, individually and on      Case No. CV-13-04080-EJD
16  behalf of all others similarly situated,
                                             **DEFENDANTS GOOGLE INC. AND**
17                Plaintiff,                  **GOOGLE PAYMENT CORPORATION'S**
                                             **NOTICE OF MOTION AND MOTION TO**
18          v.                               **DISMISS COMPLAINT; MEMORANDUM**
                                             **OF POINTS AND AUTHORITIES IN**
19  GOOGLE INC., a Delaware Corporation,     **SUPPORT**
    and GOOGLE PAYMENT
20  CORPORATION, a Delaware Corporation,     Date:      March 28, 2014
                                             Time:      9:00 AM
21                Defendants.                Place:     Courtroom 4, 5th Floor
                                             Judge:     Hon. Edward J. Davila
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    NOTICE OF MOTION ............................................................................................... 1

II.   MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

    A.    STATEMENT OF ISSUES TO BE DECIDED ........................................ 2

    B.    INTRODUCTION ..................................................................................... 2

    C.    STATEMENT OF FACTS ....................................................................... 3

    D.    ARGUMENT ............................................................................................ 6

        1.    Plaintiff Has Failed to Establish Article III Standing ................................. 6

        2.    Plaintiff Has Failed to State Any Claim Upon Which Relief May Be Granted ......................................................................................... 8

            a.    Plaintiff Has Failed to State a Claim for Breach of Contract ......................................................................................... 8

            b.    Plaintiff Has Failed to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing ............................. 11

            c.    Plaintiff Has Failed to State a Claim for Violation of the SCA ....................................................................................... 13

                (i)    Section 2701 cannot be asserted based on allegations of disclosure rather than access and cannot be asserted against a provider ......................... 13

                    (a)    Plaintiff's section 2701 claim fails because Plaintiff alleges improper disclosure, not improper access .......................... 14

                    (b)    Plaintiff's section 2701 claim fails because section 2701 does not prohibit conduct by service providers .................. 15

                (ii)    Plaintiff Has Failed to State a Claim Under § 2702 ......................................................................... 16

            d.    Plaintiff Has Failed to State a Claim Under the UCL Because She Lacks Statutory Standing to Sue Under that Statute ........................................................................... 19

                (i)    Plaintiff does not allege she lost "money or property" as a "result" of Defendants' actions as required to state a UCL claim ...................................... 20

                (ii)    Plaintiff has failed to plead reliance ................................. 22

III.   CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ............................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 8, 11

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 8, 11

*Bohach v. City of Reno*,
932 F. Supp. 1232 (D. Nev. 1996) ......................................................................... 16

*Buza v. Yahoo!, Inc.*,
No. C 11-4422 RS, 2011 WL 5041174 (N.D. Cal. Oct. 24, 2011) ......................................... 16

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ........................................................................................ 7

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................... 21

*Cravalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ................................................................................. 16

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........................................................... 15, 16

*Edwards v. First Am. Corp.*,
610 F.3d 514 (9th Cir. 2010) .................................................................................. 7

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) ................................................................................ 15

*Harris v. Wells Fargo Bank, N.A.*,
No. 12-cv-05629-JST, 2013 WL 1820003 (N.D. Cal. Apr. 30, 2013) ............................ 11, 12

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................. 22, 23

*Hill v. MCI WorldCom Commc'ns*,
120 F. Supp. 2d 1194 (S.D. Iowa 2000) ......................................................... 18, 19

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*In re Doubleclick Inc. Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)................................................................. 13

4

5

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................... 8, 21

6

7

*In re Facebook Privacy Litig.*,
    No. C 10-02389 JW, 2011 WL 6176208 (N.D. Cal. Nov. 22, 2011) .................................... 10

8

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)................................ 4

9

10

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................. 6, 7, 11, 16

11

*Jessup-Morgan v. AmericaOnline, Inc.*,
    20 F. Supp. 2d 1105 (E.D. Mich. 1998)......................................................... 18, 19

12

13

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008)...................................................................... 8

14

15

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)............... 7, 10

16

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................... 9, 13

17

18

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)...................... 6, 7, 10

19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................ 6

20

21

*Martinez v. Welk Grp., Inc.*,
    907 F. Supp. 2d 1123 (S.D. Cal. 2012) .......................................................... 9, 10

22

23

*Merced Irrigation Dist. v. Cnty. of Mariposa*,
    No. 1:12-cv-01645-LJO-SKO, 2013 WL 1749904 (E.D. Cal. Apr. 23, 2013)...................... 12

24

*Rubio v. Capital One Bank*,
    613 F. 3d 1195 (9th Cir. 2010)...................................................................... 4

25

26

*Rudgayzer v. Yahoo! Inc.*,
    No. 5:12-CV-01399 EJD, 2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) .............................. 10

27

28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Ruiz v. Gap, Inc.*
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......................................................................... 21

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd* 380 F. App'x 689 (9th Cir. 2010) ............... 9, 11

*Simpson v. Cal. Pizza Kitchen, Inc.*,
    No. 13-cv-164 JLS (JMA), 2013 WL 5718479 (N.D. Cal. Oct. 1, 2013).............................. 22

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................................................ 6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................................................... 6

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)........................................................................................... 4

*United States v. Councilman*,
    418 F.3d 67 (1st Cir. 2004) (en banc) .......................................................................... 15

*United States v. Smith*,
    155 F.3d 1051 (9th. Cir 1998).................................................................................... 14

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................ 7, 8

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)................................ 6

**STATE CASES**

*Archer v. United Rentals, Inc.*,
    195 Cal. App. 4th 807 (2011) ................................................................................... 21

*Bassil v. Sarkis*,
    No. A136401, 2013 WL 3853199 (Cal. Ct. App. July 24, 2013) ......................................... 12

*Buttram v. Owens-Corning Fiberglas Corp.*,
    16 Cal. 4th 520 (1997) ............................................................................................... 9

*Digerati Holdings, LLC v. Young Money Entm't, LLC*,
    194 Cal. App. 4th 873 (2011) ..................................................................................... 12

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) .................................................................................. 23

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ........................................................................... 21

4

5

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal. 4th 317 (2000) .................................................................................... 12

6

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .................................................................................... 23

7

8

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ............................................................................... 20, 23

9

10

*Patent Scaffolding Co. v. William Simpson Const. Co.*,
    256 Cal. App. 2d 506 (1967).............................................................................. 9

11

*Racine & Laramie, Ltd. v. Dept. of Parks & Recreation*,
    11 Cal. App. 4th 1026 (1992) ........................................................................... 12

12

13

*Ragland v. U.S. Bank Nat'l Ass'n*,
    209 Cal. App. 4th 182 (2012) ........................................................................... 13

14

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038 (2002) ........................................................................... 8

15

16

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798 (1995) ............................................................................. 12

17

18

**FEDERAL STATUTES**

19

18 U.S.C. § 2510(8) ............................................................................................ 19

20

18 U.S.C. § 2701 .......................................................................................... passim

21

18 U.S.C. § 2701(c) ........................................................................................... 16

22

18 U.S.C. § 2701(c)(1) ....................................................................................... 15

23

18 U.S.C. § 2702 .......................................................................................... passim

24

18 U.S.C. § 2702(b)(3)........................................................................................ 19

25

18 U.S.C. §§ 2702(c)(6)...................................................................................... 17

26

18 U.S.C. § 2703(c) ........................................................................................... 17

27

18 U.S.C. § 2703(c)(1)........................................................................................ 18

28

v

# TABLE OF AUTHORITIES
**(continued)**

Page

18 U.S.C. § 2703(c)(2) ............................................................................................ 18

Stored Communications Act, 18 U.S.C. Chapter 121 ............................................. passim

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200-17210 .................................................................. 19

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................. passim

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................. 23

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 8, 15, 19

**REGULATIONS**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III ............................................................................................ passim

**OTHER AUTHORITIES**

H. Rep. No. 99-647 ....................................................................................... 13, 15, 17

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208 (2004) ............................................ 13

U.S. Dep't of Justice, Computer Crime & Intellectual Property Section, Criminal Division, *Prosecuting Computer Crimes* (2009) ...................................................... 15

U.S. Dep't of Justice, Computer Crime & Intellectual Property Section, Criminal Division, *Searching and Seizing Computer and Obtaining Electronic Evidence in Criminal Investigations* (2009) ........................................................................ 14

# I.    NOTICE OF MOTION

Please take notice that on March 28, 2014, at 9:00 a.m., or on such other date as the Court directs, in Courtroom 4, 5th Floor of the United States District Court, Northern District of California, San Jose Division, before the Hon. Edward J. Davila, Defendants Google Inc. ("**Google**") and Google Payment Corporation ("**GPC**") will respectfully move this Court for an Order dismissing the Complaint for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, Request for Judicial Notice and accompanying Exhibits, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court.

DATED:  October 30, 2013                    **PERKINS COIE** LLP

                                            By: */s/ Susan D. Fahringer*
                                               Susan D. Fahringer, Bar No. 162978
                                               SFahringer@perkinscoie.com

                                            Attorneys for Defendants
                                            Google Inc. and Google Payment Corporation

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

## II.     MEMORANDUM OF POINTS AND AUTHORITIES

### A.     STATEMENT OF ISSUES TO BE DECIDED

1.     Should the Court dismiss the Complaint because Plaintiff has failed to allege an injury in fact sufficient to confer standing under Article III of the United States Constitution?

2.     Should the Court dismiss the Complaint because Plaintiff has failed to state a claim upon which relief may be granted for each of the five causes of action she asserts?

### B.     INTRODUCTION

Plaintiff Svenson brings this Complaint as a purported nationwide class action based on her purchase of a mobile application ("**App**") to use on her mobile device.  She bought the App in the Google Play store, a website through which third parties may offer and consumers may obtain content such as books, movies, and Apps.  She purchased the App using Google Wallet, an online payment method.[1]  Plaintiff alleges that in the process of facilitating this payment, Defendants disclosed her name, address, phone number, and email address to the seller of the App.  She alleges that the Google Wallet Privacy Notice (the "**Wallet Privacy Notice**") stated that Google may disclose such information "as necessary to process the users' transaction and maintain the user's account," Compl. ¶ 37, but that the disclosure of her information was nonetheless not acceptable.  Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Stored Communications Act, 18 U.S.C. Ch. 121 ("**SCA**"), and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("**UCL**").

Plaintiff's Complaint should be dismissed.  Plaintiff's allegations do not establish injury in fact necessary for this Court to have Article III standing.  Further, she fails to state any of the claims she purports to allege.  Plaintiff's conclusory allegations of harm and speculation as to injury she might suffer in the future are insufficient to allege damage necessary for a breach of contract claim (even if there were a breach, which Defendants do not concede).  Her claim under the implied covenant fails for the same reason and is otherwise impermissibly duplicative of her contract claim.  Plaintiff's federal statutory SCA claims fail because the conduct alleged—even if

---

[1] Google owns Google Play.  GPC owns Google Wallet.  GPC is wholly-owned by Google.

1   not expressly permitted by the Wallet Privacy Notice (as Google asserts)—is not prohibited under

2   the SCA.  Finally, Plaintiff's UCL claim fails because she does not have the statutory standing

3   required to state such a claim after Proposition 64.  The Court should dismiss Plaintiff's

4   Complaint, and the dismissal should be with prejudice as to her SCA claims.

5   **C.      STATEMENT OF FACTS**

6          Google provides Google Play, a digital multimedia content distribution platform that is

7   accessible by mobile devices and over the Internet.[2]  Compl. ¶¶ 10, 26.  GPC operates an

8   electronic and mobile payment processing service known as Google Wallet.  *Id*. ¶ 17.  One can

9   purchase digital content, such as Apps, via Google Play using Google Wallet.  *Id.* ¶ 26.  Plaintiff

10  alleges that in doing so, the buyer pays the seller of the App, using Google Wallet to process the

11  payment, and the App is sent to the purchaser via the Google Play store.  *Id.* ¶ 47.  Google Wallet

12  and Google Play are free to buyers such as Plaintiff, and Plaintiff does not allege otherwise.

13         The transaction that Plaintiff alleges gives rise to her claim is her May 6, 2013 purchase of

14  an App from YCDroid (the "**Seller**").  Plaintiff alleges she purchased the App for $1.77 through

15  Google Play, using Google Wallet.  *Id.* ¶ 74.  Plaintiff alleges that she provided contact

16  information to Defendants in connection with the purchase:  her name, home city and state, zip

17  code, and telephone number.  *Id.* ¶¶ 50, 71.  She also alleges that Google assigned her an account

18  name and email address when she registered with Google Wallet.  *Id.* ¶ 72.  (Collectively,

19  Plaintiff's "**Contact Information**").  Plaintiff alleges that Defendants disclosed her Contact

20  Information to the Seller in connection with her purchase.[3]  *Id.* ¶ 73.

21         Plaintiff alleges that she is party to several contracts with Defendants, and that their terms

22  apply to her purchase of the App.  *See, e.g.*, *id.* ¶¶ 101, 102.  These alleged contracts are the

23  Google Terms of Service, the Google Play Terms of Service, and the Google Wallet Terms of

24  Service (collectively, the "**Terms**"), as well as the Google Privacy Policy ("**GPP**") and the

25

26         [2] This Statement of Facts is based on the allegations in the Complaint.  In many instances
those allegations are incorrect.  Defendants nonetheless assume them to be true solely for
27  purposes of this Motion.

28         [3] Plaintiff does not allege she did not otherwise disclose her Contact Information to the Seller, for
example in connection with using or preparing to use the App.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

Google Wallet Privacy Notice ("**Wallet Privacy Notice**").  *Id.* ¶¶ 20, 21, 23, 24, 27, 28.  Plaintiff does not allege that she read any of the Terms, the GPP, or the Wallet Privacy Notice before purchasing her App, much less that she relied on them in making her purchase.

The Wallet Privacy Notice and the Wallet Terms of Service[4] specifically discuss purchase and sale transactions such as the one at issue here.  *See id.* ¶¶ 101-102; Request for Judicial Notice, Exs. A, B.  As Plaintiff acknowledges, the Wallet Privacy Notice specifically provides that Plaintiff's personal information may be shared with other companies or individuals outside of Google in certain circumstances, including "as necessary to process [Plaintiff's] transaction and maintain [her] account."  *Id.* ¶ 37.  Plaintiff makes the conclusory allegation (without alleging any facts in support), that disclosing her Contact Information to the Seller was not necessary to process her transaction or to maintain her account.[5]  *Id.* ¶ 50.

The Wallet ToS make clear that there is no fee for buyers to use Google Wallet.  Request for Judicial Notice, Ex. A, Wallet ToS ¶ 3.7 ("GPC does not charge a fee to use the Processing Service as a Buyer.  The financial institution that issues, or the Carrier that provides, your Payment Instrument may charge a fee in connection with the debiting or charging of the Payment Instrument resulting from the Payment Transaction.").  The Wallet ToS further provide that the Plaintiff's purchase of the App was a purchase from, and her payment was to, the Seller, not Defendants.  *Id.*, Wallet ToS ¶ 3.2 (Buyers "acknowledge and agree that your purchases of Products are transactions between you and the Seller, and not with GPC, Google or any of their affiliates.").  Plaintiff alleges that GPC received a transaction fee for the purchase.  Compl. ¶ 78.  But Plaintiff does not—and cannot—allege that she paid that transaction fee to GPC.

---

[4] The Wallet Terms of Service alleged by Plaintiff to apply to her purchase ("**Wallet ToS**") are available at https://wallet.google.com/legaldocument?family=0.buyertos&gl=US.  Compl. at 4 n.4.  The Wallet Privacy Notice is available at http://wallet.google.com/files/privacy.html.  Compl. at 8 n.8.  Copies are attached as Exhibits A and B, respectively, to Defendants' Request for Judicial Notice.  The Court may take judicial notice of these, *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007), and may consider them "under the incorporation by reference doctrine on a motion to dismiss," *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *7 (N.D. Cal. Sept. 20, 2011) (citing *Rubio v. Capital One Bank*, 613 F. 3d 1195, 1199 (9th Cir. 2010)).

[5] This is among the allegations in the Complaint that are incorrect.  Defendants dispute this allegation, but will nonetheless assume it to be true solely for purposes of this Motion.

4

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

Plaintiff claims that by disclosing her Contact Information to the Seller, Defendants (1) breached her alleged contracts with Defendants and the implied covenant of good faith and fair dealing; (2) violated the SCA; and (3) violated the UCL.

Plaintiff conclusorily alleges that as the result of Defendants' alleged disclosure of her Contact Information to the Seller, she lost some "economic and proprietary" value, but she does not further identify the loss.  *See, e.g., id.* ¶ 82.  Plaintiff vaguely alleges that it is:

- The difference between the value of Plaintiff's App *without* the disclosure of her Contact Information to the Seller, versus the value of the App *with* such disclosure. *See id.* ¶ 80 (alleging Defendants "diminished the value of her *purchase*" by their alleged improper disclosures) (emphasis supplied).  However, while Plaintiff alleges she could have purchased her App elsewhere, *id.* ¶ 78, she does not allege that the cost of the App "without unnecessary disclosure" of her Contact Information would have been any different from the price she paid to the Seller.

- The "benefit of [her] bargain," which Plaintiff alleges is the value of the "*service* bargained for (i.e., the receipt of paid-for content without unnecessary disclosure of [Plaintiff's Contact Information])."  *Id.* ¶ 80 (emphasis supplied).  However, Plaintiff fails to allege that she paid anything extra in return for the alleged promise not to disclose her Contact Information to the Seller.

- "[T]he value of choosing whether to reveal [her] identit[y], contact information and/or other personal information to [the Seller]."  *Id.* ¶ 84.  Of course, even if Plaintiff had not accepted the Wallet Privacy Notice disclosures regarding disclosure of her Contact Information, any diminished value of that information has been soundly rejected as cognizable damage, *see infra* § II.D.2.a).  Nonetheless, Plaintiff has made no allegations quantifying the loss here.

None of the above allegations quantify any losses flowing from Defendants' alleged disclosure, nor does Plaintiff allege any facts indicating how one might determine whether any loss occurred at all.  Plaintiff also alleges that Defendants' disclosure of her Contact Information to the Seller somehow increases the risk she will someday experience identity theft. Compl. ¶¶ 89, 163.  Plaintiff makes no allegations to support this speculative claim, either.[6]

Plaintiff asserts her claims on behalf of herself and "all persons in the United States who utilized the Google Wallet service to purchase Apps via Google Play between September 19, 2011 and the date of class certification . . . ."  *Id.* ¶ 90.  She seeks injunctive and equitable relief,

---

[6] Plaintiff also alleges that Defendants and the Seller benefited from Defendants' disclosure of her Contact Information to the Seller.  *See, e.g.*, Compl. ¶¶ 41, 81, 82.  This does not, of course, allege any damage to the Plaintiff.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

1  damages (including statutory damages under the SCA and punitive damages), restitution and/or

2  restitutionary disgorgement, a constructive trust, and attorney's fees and costs.

3  **D.      ARGUMENT**

4  **1.      Plaintiff Has Failed to Establish Article III Standing**

5  In Article III, the U.S. Constitution sets a "hard floor of . . . jurisdiction that cannot be

6  removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  The first

7  requirement of this "irreducible constitutional minimum" is "an injury in fact—an invasion of a

8  legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

9  conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

10  Article III also requires a causal connection between the injury and the conduct complained of,

11  and it must be likely, not merely speculative, that the injury will be redressed by a favorable

12  decision.  "The party invoking federal jurisdiction bears the burden of establishing these

13  elements." *Id.* at 560.  A suit brought by a plaintiff without Article III standing is not a "case or

14  controversy."  An Article III federal court lacks subject matter jurisdiction over such a suit and

15  should dismiss the case under Rule 12(b)(1).  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

16  101, 109-10 (1998).

17  Plaintiff here has failed to meet her burden to establish injury in fact.  The loss of

18  theoretical commercial value in personal information is not an injury-in-fact sufficient to confer

19  Article III standing.  *See Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL

20  1282980, at *3, *4 (N.D. Cal. Mar. 26, 2013) (collecting cases from district courts in the Ninth

21  Circuit, which have been "reluctant to find standing based solely on a theory that the value of a

22  plaintiff's [personal information] has been diminished," and holding that a "purported diminution

23  in value of [plaintiff's] [personal information]" as a result of it being made available to third

24  parties was not an injury-in-fact); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040,

25  1054 (N.D. Cal. 2012) ("theoretical allegations that personal information has independent

26  economic value" did not confer standing); *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011

27  WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (allegation that personal information collected

28  from plaintiffs had economic value was "too abstract and hypothetical to support Article III

6

1   standing"); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532,

2   at *4-5 (C.D. Cal. Apr. 28, 2011) (plaintiffs did not allege economic injury where they did not

3   allege how they were deprived of economic value as to their personal information).  Here,

4   Plaintiff's conclusory allegations of economic loss fail because they merely allege loss of

5   theoretical commercial value, not an injury in fact resulting from Defendants' actions.

6          Similarly, Plaintiffs' allegations that she fears an increased future risk of identity theft

7   cannot confer standing, because the alleged risk is not sufficiently actual and imminent to qualify

8   as an injury-in-fact.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("threatened

9   injury must be certainly impending to constitute injury in fact, and . . . allegations of possible

10  future injury are not sufficient") (emphasis, internal quotation marks and citation omitted).  While

11  a "substantial risk" of future injury may in some cases establish injury in fact, "plaintiffs bear the

12  burden of pleading and proving concrete facts showing that the defendant's actual action has

13  caused the substantial risk of harm."  *Id.* at 1150 n.5.  Plaintiff has failed to meet that burden here:

14  she makes only unsupported and conclusory allegations and cites to news stories, academic

15  publications, and online videos, none of which suffice to confer standing.  Compl. ¶¶ 85-89.

16         Courts have held that the creation of a statutory right may be sufficient to confer standing,

17  and Plaintiff has alleged an SCA violation here.  *See Edwards v. First Am. Corp.*, 610 F.3d 514,

18  517 (9th Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  In such cases, however,

19  "the standing question . . . is whether the constitutional or statutory provision on which the claim

20  rests properly can be understood as granting persons in the plaintiff's position a right to judicial

21  relief."  *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1055 (internal quotation marks and

22  citation omitted).  Here, the statutory right created by the SCA is not sufficient to overcome the

23  standing hurdle.  *See Low*, 2011 WL 5509848, at *6, n.1 (alleged violation of SCA might not

24  suffice to create Article III standing, but deferring decision because leave to amend was granted).

25  Plaintiff here has not alleged unlawful access as required by section 2701 of the SCA, and she has

26  failed to allege facts sufficient to show that the alleged disclosure of her Contact Information

27  violated section 2702.  *See infra* § II.D.2.c.  A Plaintiff alleging violation of the SCA must at least

28  show she is an aggrieved party under that statute by alleging facts that will permit the Court to

7

draw that conclusion under the law.  Here, the SCA cannot be understood to grant a person in Plaintiff's position a right to judicial relief.  *Warth*, 422 U.S. at 500.  Plaintiff's conclusory allegations that the SCA was violated, unsupported by factual allegations establishing this is the case, and contrary to the language of the statute itself, cannot suffice to confer Article III standing.

### 2.   Plaintiff Has Failed to State Any Claim Upon Which Relief May Be Granted

To state a claim, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  While specific facts are not necessary so long as the complaint gives the defendant notice of the claim and its grounds, a complaint nonetheless must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Although the complaint's factual allegations are assumed true for purposes of a motion brought under Federal Rule of Civil Procedure 12(b)(6), they must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555.

When a complaint fails to state a claim upon which relief may be granted, this deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id.* at 558 (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) therefore is appropriate when the plaintiff either lacks a "cognizable legal theory" or has failed to present "sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  Plaintiff here has failed in both regards.

### a.   Plaintiff Has Failed to State a Claim for Breach of Contract

To state a claim for breach of contract under California law, a plaintiff must plead "the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (internal quotation marks and citation omitted).  A plaintiff claiming breach of contract therefore must plead she suffered actual damage as the result of defendant's breach.  *St. Paul Fire &*

1   *Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002)

2   ("An essential element of a claim for breach of contract are damages resulting from the breach.")

3   (emphasis omitted); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506,

4   511 (1967) ("A breach of contract claim without damage is not actionable.").  The purpose of

5   contract damages is to put the nonbreaching party in the same economic position as she would

6   have been had the contract been performed.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1017

7   (N.D. Cal. 2012).  Accordingly, California courts require that the alleged damage be both

8   "appreciable and actual" and "clearly ascertainable in both their nature and origin."  *Martinez v.*

9   *Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1131 (S.D. Cal. 2012).

10          Merely alleging the threat of future damage, including, for example, the fear of future

11   identity theft, is not enough.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th

12   Cir. 2000) (fear of future layoff insufficient to sustain breach of contract claim); *Ruiz v. Gap, Inc.*,

13   622 F. Supp. 2d 908, 917, 918 (N.D. Cal. 2009) (plaintiff "cannot show he was actually damaged

14   by pointing to his fear of future identity theft," and therefore "presented no evidence of legally

15   cognizable damage under California contract law"), *aff'd* 380 F. App'x 689 (9th Cir. 2010).  Nor

16   are conclusory allegations that a plaintiff is entitled to damages or was injured, or allegations of

17   emotional distress, embarrassment, or nominal damages.  *Low*, 900 F. Supp. 2d at 1028-29

18   (allegations of "embarrassment and humiliation" insufficient to establish cognizable damage;

19   rejecting theory that plaintiff's personal information had independent economic value, or that,

20   even if it did, its loss would constitute cognizable damage for breach of contract); *Buttram v.*

21   *Owens-Corning Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997) ("[T]o be actionable, harm must

22   constitute something more than nominal damages, speculative harm, or the threat of future

23   harm—not yet realized.") (internal quotation marks and citation omitted).

24          Here, even assuming Defendants breached a contract with Plaintiff (which Defendants

25   dispute), Plaintiff's conclusory allegations of economic loss, her fear of an increased risk of

26   future identity theft, and her allegations that Defendants and the Seller benefited from the alleged

27   disclosure of her Contact Information, all fall well short of the "appreciable" and "actual" damage

28   she must plead to withstand a motion to dismiss.

First, Plaintiff's allegations of lost economic value appear to be premised on some diminishment in the value of her alleged personal information.  But courts routinely reject allegations that a plaintiff's personal information has value sufficient to state a claim for breach of contract, or that any value it might have is diminished by the information's disclosure.  *Rudgayzer v. Yahoo! Inc.*, No. 5:12-CV-01399 EJD, 2012 WL 5471149, at *6 (N.D. Cal. Nov. 9, 2012) ("[A]n allegation of the disclosure of personal or private information does not constitute actionable damages for a breach of contract claim."); *In re Facebook Privacy Litig.*, No. C 10-02389 JW, 2011 WL 6176208, at *5 (N.D. Cal. Nov. 22, 2011) (rejecting argument that plaintiff's personally identifiable information has value sufficient to state a claim for breach of contract); *Martinez*, 907 F. Supp. 2d at 1131-32 (where plaintiffs failed to produce evidence of diminution in value, damages were too speculative to state a claim for breach of contract.)  Such theories do not establish that the plaintiffs who are allegedly harmed by disclosure of their private information are in any different an economic position before the disclosure than after.  *Low*, 2011 WL 5509848, at *4-6 (allegation that personal information had market value insufficient to support Article III requirement of injury in fact); *LaCourt*, 2011 WL 1661532, at *4-5 (allegation of harm through disclosure of personal information insufficient to establish injury in fact).

Second, Plaintiff here cannot otherwise show she suffered any actual damage.  All of Plaintiff's theories require that there be a difference in the value of the product or services she purchased *with* disclosure of her Contact Information to the seller, versus its value *without* such disclosure.  But Plaintiff does not allege any facts showing that this alleged difference exists.  Plaintiff does not even allege her App was available elsewhere for any different price, much less relate any difference in price to disclosure of her Contact Information to the Seller.  *See* Compl. ¶ 78 (Plaintiff suggests she could have purchased her App from the vendor's website, but does not allege that the price she would have paid on the vendor's website would  been any different from the price she paid).  Google Wallet is free to buyers such as Plaintiff, Wallet ToS ¶ 3.2, and Plaintiff does not allege that she paid anything for the alleged promise not to disclose her Contact Information to the Seller.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

Third, Plaintiff's alleged fear of future identity theft has been expressly rejected by California courts as insufficient to constitute actual and appreciable damage.  *See, e.g.*, *Ruiz*, 622 F. Supp. 2d at 917-18 (risk of future identity theft did not rise to the level of appreciable harm necessary to assert breach of contract claim).  Possible future harm is not cognizable damage, and is insufficient to state a claim for breach of contract.

Finally, to the extent Plaintiff's allegations focus on the alleged benefits enjoyed by Defendants; they do not qualify as damage sufficient to state a claim for breach of contract.  A request for restitution does not satisfy the requirement to show actual and appreciable damage.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1075 (restitution is an alternative remedy, available in tort or quasi-contract claims).  Accordingly, Plaintiff's allegations that her Contact Information has some value to Defendants, Compl. ¶ 83, and that GPC receives a fee in connection with purchase transactions, Compl. ¶¶ 76, 78, 81, cannot suffice to establish Plaintiff was damaged.

Plaintiff is in exactly the same economic position before Defendants' alleged breach as after.  Plaintiff's conclusory and speculative allegations trying to establish cognizable damage do not satisfy the requirements of *Twombly* and *Iqbal*, nor do they meet the "appreciable," "actual," "clearly ascertainable in their nature and origin" standard required by California courts.  The Court should therefore dismiss Plaintiff's breach of contract claim.

**b.     Plaintiff Has Failed to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing**

To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff "must allege that (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Harris v. Wells Fargo Bank, N.A.*, No. 12-cv-05629-JST, 2013 WL 1820003, at *9 (N.D. Cal. Apr. 30, 2013).  If there is a contract between the parties, "the implied covenant is limited to assuring compliance with the express terms of the

1   contract, and cannot be extended to create obligations not contemplated in the contract." *Racine*

2   *& Laramie, Ltd. v. Dept. of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).

3        The implied covenant must be distinct from the contract's express promises.  "A covenant

4   of good faith and fair dealing must be *implied* from the terms of a contract.  It is distinct from the

5   contract's *express* promises.  Thus, there can be no implied covenant of good faith as to a subject

6   completely covered by a contract." *Bassil v. Sarkis*, No. A136401, 2013 WL 3853199, at *6 (Cal.

7   Ct. App. July 24, 2013) (citing *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 804

8   (1995)).  A claim for breach of the implied covenant of good faith that merely realleges and

9   repeats the same allegations that support a claim for breach of contract is properly dismissed as

10  superfluous. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 352-53 (2000).

11       Here, the allegations supporting Plaintiff's claim for breach of the implied covenant of

12  good faith and fair dealing are the same as those supporting her claim for breach of contract.  In

13  each claim, the alleged breach is Defendants' disclosure of Plaintiff's Contact Information to the

14  product seller, contrary to the express provisions of the Wallet Privacy Notice, which permits

15  disclosures "as necessary to process [Plaintiff's] transaction and maintain [her] account."  Compl.

16  ¶ 37; *compare* Compl. ¶ 111 (breach of implied covenant) *with* ¶ 107 (breach of contract).

17  Consequently, Plaintiff's claim for breach of the implied covenant should be dismissed. *Bassil*,

18  2013 WL 3853199 at *6.

19       Plaintiff also alleges that Defendants incorrectly interpreted the Terms, GPP and Wallet

20  Privacy Notice.  Compl. ¶ 112.  This is not enough to support a claim for breach of the implied

21  covenant:  "establishing breach of the implied covenant requires more than showing a party has

22  advanced an erroneous interpretation of a contract term or an erroneous position with respect to

23  the validity of, or the parties' obligations under, the contract." *Merced Irrigation Dist. v. Cnty. of*

24  *Mariposa*, No. 1:12-cv-01645-LJO-SKO, 2013 WL 1749904, at *40 (E.D. Cal. Apr. 23, 2013).

25       Finally, even if Plaintiff had properly alleged an implied term and its breach, she must

26  establish harm resulting from breach of the implied covenant of good faith and fair dealing.

27  *Harris*, 2013 WL 1820003, at *9; *Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal.

28  App. 4th 873, 885 (2011).  The harm required to establish breach of the implied covenant is

1    contract damage, not any other type of damage, such as damages in tort.  *Ragland v. U.S. Bank*

2    *Nat'l Ass'n*, 209 Cal. App. 4th 182, 206 (2012) ("The implied covenant of good faith and fair

3    dealing is a contractual relationship and does not give rise to an independent duty of care. . . .

4    Outside of the insured-insurer relationship and others with similar qualities, breach of the implied

5    covenant of good faith and fair dealing does not give rise to tort damages.") (citations omitted).

6    For the same reasons Plaintiff cannot establish damage resulting from Defendants' alleged breach

7    of contract, Plaintiff cannot establish the requisite harm resulting from Defendants' breach of the

8    implied covenant, and her claim for breach of the implied covenant should be dismissed on that

9    separate and independent basis.

10                       **c.      Plaintiff Has Failed to State a Claim for Violation of the SCA**

11           The SCA "has a narrow scope: '[it] is not a catch-all statute . . . .'"  *Low*, 900 F. Supp. 2d

12   at 1022 (quoting Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a*

13   *Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1214 (2004)).  Two sections of

14   the SCA, sections 2701 and 2702, may form the basis for private claims.  Congress addressed a

15   distinct issue in each:  section 2701 protects against unlawful *access* to electronic

16   communications facilities, while section 2702 limits permissible *disclosure* of information by

17   service providers.  18 U.S.C. §§ 2701, 2702.

18                       **(i)      Section 2701 cannot be asserted based on allegations of**
                                   **disclosure rather than access and cannot be asserted against a**
19                                  **provider**

20           In passing section 2701 of the SCA, Congress "provide[d] a new criminal offense" to

21   address "the growing problem of unauthorized persons deliberately gaining access to, and

22   sometimes tampering with, electronic or wire communications."  H. Rep. No. 99-647, at 62.  The

23   section "aim[ed] to prevent hackers from obtaining, altering or destroying certain stored

24   electronic communications."  *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507

25   (S.D.N.Y. 2001).  Section 2701 therefore prohibits "intentionally ***accessing*** without

26   authorization," or exceeding authorized access to, a facility through which an electronic

27   communications service is provided and "thereby obtain[ing], alter[ing], or prevent[ing]

28

13

1   authorized access to a wire or electronic communication while in electronic storage in such

2   system."  18 U.S.C. § 2701 (emphasis supplied).

3

               **(a)**      **Plaintiff's section 2701 claim fails because Plaintiff**
                               **alleges improper disclosure, not improper access**

4

5        Section 2701 is inapplicable to Plaintiff's claims because it prohibits only wrongful

6   access, whereas Plaintiff alleges improper disclosure.  Allegations of unauthorized disclosures do

7   not state a claim under section 2701.  *See* U.S. Dep't of Justice, Computer Crime & Intellectual

8   Property Section, Criminal Division, *Searching and Seizing Computer and Obtaining Electronic*

9   *Evidence in Criminal Investigations* at 115 (2009) (section 2701 "prohibits unlawful *access* to

10   certain stored communications"; distinguishing section 2701 from section 2702, which is about

11   disclosure) (emphasis supplied).

12        Plaintiff, however, complains about Defendants' *disclosure* of her Contact Information.

13   For example:

14
- "Defendants had no authorization to ***disclose*** . . . Plaintiff's . . . SID: ***disclosure*** of this information was not necessary . . . ," Compl. ¶ 121 (emphases supplied);

15
16
- "Defendants intentionally ***disclosed*** Plaintiff and the Class' SID to third-parties . . . ," *id.* ¶ 125 (emphasis supplied); and

17
- "Defendants neither had authorization nor received authorization from Plaintiff . . . to effect a blanketed ***disclosure*** . . . ," *id.* ¶ 126 (emphasis supplied).

18

19        Plaintiff's conclusory (and incorrect) characterization of Defendants' actions as "access"

20   rather than disclosure cannot compel a different conclusion.  *See, e.g.*, Compl. ¶ 124 ("Defendants

21   exceeded their authorized access to the facilities through which Defendants provide the electronic

22   communications services at issue and within which their SID was stored on Defendant's

23   servers.").  In other words, Plaintiff alleges that because Plaintiff did not authorize Defendant's

24   *disclosure* of her Contact Information, Defendants exceeded their authorization to *access* that

25   information.  This is nothing more than a claim for wrongful disclosure masquerading as a claim

26   for unlawful access and cannot state a claim under § 2701.[7]

27          [7] "Access" covers actions such as gaining unauthorized access to another's communications

28   facility.  *See United States v. Smith*, 155 F.3d 1051, 1058 (9th. Cir 1998) (finding that the ordinary meaning of "access," undefined in the SCA, is "to get at" or "gain access to") (citation omitted); H. Rep.

14

**(b)      Plaintiff's section 2701 claim fails because section 2701 does not prohibit conduct by service providers**

Further, Plaintiff's attempt to rely on section 2701 is misplaced because this section of the SCA does not reach conduct by the service provider of the facility.  Not only is this the natural implication of the language used in section 2701 (of course the provider of a facility must "access" the facility and information in it), but to avoid any doubt, Congress made this clear by stating in section 2701 that its prohibitions do "not apply with respect to conduct authorized . . . by the person or entity providing a wire or electronic communications service."  18 U.S.C. § 2701(c)(1).[8]  Consequently, consistent with the Congressional focus on prohibiting external access or gaining unauthorized access to an electronic communications facility, "[s]ervice providers cannot violate section 2701, regardless of their motives in accessing stored communications."  U.S. Dep't of Justice, Computer Crime & Intellectual Property Section, Criminal Division, *Prosecuting Computer Crimes* at 94 (2009) (citing 18 U.S.C. § 2701(c)(1) and *United States v. Councilman*, 418 F.3d 67, 81-82 (1st Cir. 2004) (en banc)).

Plaintiff alleges that Defendants are the service providers for Google Wallet and Google Play.  Compl. ¶¶ 119, 124; *see also* ¶¶ 134, 135.  She then attempts to allege that Defendants accessed (incorrect, as described above) information stored in Defendants' *own facilities*.  *See, e.g.*, Compl. ¶ 124 ("Defendants exceeded their authorized access to the facilities through which Defendants provide the electronic communications services at issue and within which their SID was stored on Defendant's servers.").  As described above, this result is nonsensical and the Court should dismiss Plaintiff's section 2701 claim with prejudice as other courts have done in similar circumstances.  *See, e.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (dismissing, on a Rule 12(b)(6) motion, a section 2701 claim against Amazon because "Amazon's access to its own systems is not limited under the [SCA]"); *see also Fraser v.*

---

No. 99-647 at 62-63 (section 2701 "addresses the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications").

    [8] Plaintiff's allegation that she did not "expressly or specifically authorize [Google] to provide third-party vendors" with her information "in a blanket fashion or with access to all of it in a blanket manner," Compl. ¶ 122, is irrelevant.  By the statute's plain language and consistent with the statute's purpose and uniform case law, the fact that section 2701 does not apply to Google's access to its own communications facility does not turn on whether Plaintiff authorized the conduct.  18 U.S.C. § 2701(c)(1); *see also* U.S. Dep't. of Justice, *Prosecuting Computer Crimes* at 94.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

1    *Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003) (defendant's access to plaintiff's

2    email, which was stored on the defendant's email system, "falls within § 2701(c)'s exception to

3    [the SCA]"; *Buza v. Yahoo!, Inc.*, No. C 11-4422 RS, 2011 WL 5041174, at *1 (N.D. Cal. Oct.

4    24, 2011) (plaintiff failed to state a claim for violations of section 2701 against Yahoo! where

5    Yahoo! was the provider and was alleged only to have wrongfully accessed its own servers and

6    service); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) ("[Section] 2701(c)(1)

7    allows service providers to do as they wish when it comes to accessing communications in

8    electronic storage [and cannot] be liable under § 2701.").

9           Plaintiff's 2701 claim fails for the additional reason that an allegation by a plaintiff that

10   *she* provided the information at issue to the defendant cannot form the basis for a claim under

11   section 2701.  *Crowley*, 166 F. Supp. 2d at 1271-72 (where a customer provided Amazon with his

12   name, address, telephone number, e-mail address, and credit card information, the fact that

13   plaintiff "sent his information to Amazon electronically" and "Amazon did not gain access to his

14   computer[9] in order to obtain the personal information" meant that Amazon "did not access the

15   information as that term is used in the [SCA]").  Plaintiff here alleges that she provided her

16   Contact Information to Defendants.  Compl. ¶¶ 71 (Plaintiff provided Contact Information to

17   Defendants in the process of registering for Google Play and Google Wallet).  Defendants

18   therefore could not have, and did not, "access" that information as that term is used in the SCA.

19          Plaintiff cannot cure the defects in her section 2701 claim by amendment.  Because any

20   amendment would be futile, the Court should dismiss Plaintiff's section 2701 claim with

21   prejudice.  *Cravalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010).

22                      **(ii)        Plaintiff Has Failed to State a Claim Under § 2702**

23          Plaintiff alleges that Defendants disclosed her Contact Information to the Seller.  She

24   acknowledges that the Wallet Privacy Notice expressly advises that her information may be

25   shared outside of Google as permitted in the GPP and, for example, "as necessary to process [her]

26   _____

27          [9] *Crowley* and subsequent case law have also provided that a personal computer or a mobile device
     is not a "facility" under section 2701 so, even if Defendants had accessed Plaintiff's mobile device, it
     could not support a section 2701 claim.  *See Crowley*, 166 F. Supp. 2d at 1270-71; *see also In re iPhone*

28   *Application Litig.*, 844 F. Supp. 2d at 1057-58.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

1   transaction and maintain [her] account," Compl. ¶ 37, but alleges in a conclusory manner that

2   disclosure was not necessary in her case.  Even assuming that this is true (which Google

3   disputes), Plaintiff fails to state a claim under section 2702 because—despite her conclusory

4   allegations to the contrary—Plaintiff's Contact Information is not defined under the SCA as the

5   content of communications, but rather is defined under the SCA as record or other information

6   pertaining to a subscriber to or customer of a service.

7           Throughout the SCA, Congress distinguished between "record information pertaining to a

8   subscriber or customer" and the "content of communications" such as email and voicemail

9   contents.  Congress expressly permitted service providers[10] to disclose record or other

10  information pertaining to a subscriber or customer of such service to parties other than

11  governmental entities.  *See* 18 U.S.C. §§ 2702(c)(6) ("A provider . . . may divulge a record or

12  other information pertaining to a subscriber to or customer of such service . . . to any person other

13  than a governmental entity."); 2702(a)(3) (prohibiting disclosure of record information only to

14  governmental entity); *cf.* H. Rep. No. 99-647, at 69 (providing that a governmental entity can

15  obtain records or other transactional information with a subpoena or court order).  This permitted

16  conduct is precisely the conduct that Plaintiff alleges here.

17          The SCA makes clear that Plaintiff's Contact Information is record or other information

18  pertaining to a subscriber or customer of a service.  In section 2703(c), the SCA specifically

19  identifies "record or other information pertaining to a subscriber to or customer of such service."

20  This is the subscriber or customer's:

21          • Name;

22          • Address;

23          • Local and long distance telephone connection records, or records of
            session times and duration;

24          • Length of service (including start date) and types of service utilized;

25

26  _____

27  [10] Plaintiff alleges that Defendants provide an electronic communication service or a
    remote computing service as those terms are used in the SCA.  *See, e.g.*, Compl. ¶ 119.  Google
    takes no position on this issue at this time, but treats Plaintiff's allegations as true solely for

28  purposes of this Motion.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

- Telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

- Means and source of payment for such service (including any credit card or bank account number).

18 U.S.C. § 2703(c)(2).

Plaintiff's Contact Information consists of her name, city, state, zip code, Google account name, email addresses and possibly telephone number.  Compl. ¶¶ 2, 71-72.  Plaintiff's Contact Information is "record or other information pertaining to a subscriber or customer" that the SCA permits Defendants to disclose to the Seller here.  Name and telephone number are expressly set forth as record or other subscriber information.  Home city, state, and zip code are "address" as set forth in the statute.  Account name or email address are the "name" or "other subscriber … identity" set forth in the statute.  *Compare* Compl. ¶ 2, *with* 18 U.S.C. § 2703(c)(2); *see Jessup-Morgan v. AmericaOnline, Inc.*, 20 F. Supp. 2d 1105, 1108 (E.D. Mich. 1998) ("information identifying an AOL electronic communication account customer" was a "record or other information pertaining to a subscriber to or customer of" AOL) (quoting 18 U.S.C. § 2703(c)(1)); *Hill v. MCI WorldCom Commc'ns*, 120 F. Supp. 2d 1194, 1196 (S.D. Iowa 2000) (invoice/billing information and "names, addresses, and phone numbers" are records or other information pertaining to the customer or subscriber).

Leaving aside whether disclosure of such information to the Seller was necessary to the transaction that Plaintiff requested, Plaintiff's conclusory, and incorrect, legal conclusion that her Contact Information is the "contents of communications" does not make it so under the SCA.  *See, e.g.*, Compl. ¶¶ 132-33.  In contrast to record and other information pertaining to a subscriber or customer, the SCA provides that "'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication," 18 U.S.C. § 2510(8).  Plaintiff's Contact Information is clearly "record or other information pertaining to a subscriber to or customer," not the "substance, purport or meaning" of an electronic communication, and this Court need not accept as true Plaintiff's legal conclusion to the contrary.

18

The SCA permits the disclosure here, and therefore Plaintiff cannot state a claim under section 2702 for the disclosure of her Contact Information to the Seller.  Where, as here, the alleged conduct does not violate section 2702, the court should dismiss Plaintiff's section 2702 claims.  *See, e.g.*, *Jessup-Morgan*, 20 F. Supp. 2d at 1108 (dismissing, on a Rule 12(b)(6) motion, section 2702 claim for wrongful disclosure because disclosure of "information identifying an AOL electronic communication account customer" to a private individual was not prohibited); *see also Hill*, 120 F. Supp. 2d at 1196 (dismissing, on a Rule 12(b)(6) motion, section 2702 claim for wrongful disclosure of invoice/billing information and "names, addresses, and phone numbers" because the information was records or other information pertaining to the customer or subscriber).  Because Plaintiff cannot cure the defects in her Complaint by amendment, the dismissal should be with prejudice.[11]

### d.   Plaintiff Has Failed to State a Claim Under the UCL Because She Lacks Statutory Standing to Sue Under that Statute

Plaintiff's final claim, which attempts to turn her argument that Google breached the Wallet ToS into a violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, also fails.  After Proposition 64, "loss of money or property" is required for a private party to have standing to sue under the UCL.  "Actions for relief [under the UCL] shall be prosecuted . . . by a person who has suffered injury in fact *and has lost money or property as a result* of the unfair competition."  *Id.* § 17204 (emphasis supplied).  Plaintiff's claim must be dismissed for lack of standing because Plaintiff does not and cannot allege that she lost "money or property as a result" of Defendants' actions.  *Id.*

---

[11] To the extent Plaintiff attempts to assert that her Contact Information qualifies as the content of communication, she fails to explain why she would still state a claim under section 2702, given that she also alleges Defendants are the intended recipients of the Contact Information, Compl. ¶¶ 50, 71, and section 2702 does not prohibit the "intended recipient" of the information from further disclosing it with the intended recipient's own lawful consent.  18 U.S.C. § 2702(b)(3).

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

**(i)    Plaintiff does not allege she lost "money or property" as a "result" of Defendants' actions as required to state a UCL claim**

As described above, Plaintiff alleges that Defendants' disclosure of her Contact Information caused her some vague and unquantified economic harm.  None of her theories qualifies as the allegation of loss of money or property required by the UCL.

First, although her Complaint does not quantify her alleged harm or expressly tie it to the $1.77 she paid to the Seller, Plaintiff may attempt to suggest that the $1.77 she paid for the App is somehow a part of her economic harm allegation.  In a typical UCL claim based on alleged false statements about a product or transaction, the "loss of money" sufficient to create standing is the purchase price of the product, or the alleged decrease in value of the product.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).  In contrast, Plaintiff's expenditure of $1.77 to buy the App from the Seller does not give her UCL standing because the price is not attributable to any actions or statements by Defendants.  The statements by Defendants of concern to Plaintiff, and the disclosure of her Contact Information, have no bearing on the character or quality of the App, and conversely the price of the App has nothing to do with the "value" of her Contact Information or its disclosure.

Here, Plaintiff paid $1.77 for the App *to the Seller*, but she alleges that *Defendants* made the allegedly deceptive statements.  Defendants had nothing to do with the price Plaintiff paid for the App, and the amount Plaintiff paid for the App is not the result of Defendants' allegedly deceptive statements or the sharing of her Contact Information with the Seller.  The Seller chose what price to charge and even whether to charge anything at all for the App, rather than offer it for free (which is allowed and common in Google Play).  Plaintiff does not allege that she paid anything extra as the result of any promise not to disclose her Contact Information.  She does not allege that the price or the value of the App differed depending on whether Defendants disclosed her Contact Information to the Seller.  *Cf.* Compl. ¶ 78 (Plaintiff suggests she might have purchased her App directly from the Seller's website but does not allege the price would have been any different from the price she actually paid).

20

Thus, the price Plaintiff paid for the App is not the "result" of Defendants' statements. For example, courts have rejected UCL standing in suits brought by customers against retailers that collected and then disclosed the customers' zip codes to third parties. *E.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 994 (2011). In such cases, the customers had purchased a product from the retailer and paid for it, but the courts did not consider *that* expenditure a loss of "money" that would create UCL standing for a claim based on the retailer's request for and collection of zip codes during the transactions (and subsequent disclosure of zip codes). *See id.* (noting that the customer had not alleged that "he made a purchase or otherwise parted with money on account of Lamps Plus's allegedly unfair practices"); *see also Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 817 (2011) (same). Thus, the courts analyzed whether the retailers' practices with respect to the customers' zip codes had an economic impact on the customers (and concluded that it did not, as discussed below) as a separate matter from the fact that the customers paid money for the products they purchased from the retailers.

Second, the gravamen of Plaintiff's Complaint has nothing to do with the App or its purchase price, but is instead that Defendants disclosed her Contact Information to a third party without her knowledge or consent. *See, e.g.*, Compl. ¶ 1. But courts have soundly rejected the contention that disclosure of personal information, even if unauthorized, is a loss of "money or property" within the meaning of the UCL. *See, e.g.*, *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 714 ("Plaintiffs allege that Defendant unlawfully shared their 'personally identifiable information' with third-party advertisers. . . . However, personal information does not constitute property for purposes of a UCL claim."); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (plaintiff has not "presented any authority to support the contention that unauthorized release of personal information constitutes a loss of property"); *aff'd* 380 F. App'x 689 (9th Cir. 2010); *Folgelstrom*, 195 Cal. App. 4th at 994; *Archer*, 195 Cal. App. 4th at 816 ("[P]laintiffs essentially claim the unfair business practice is the unlawful collection and recordation of their personal identification information, an invasion of their right of privacy. . . . Yet plaintiffs have failed to demonstrate how such privacy violation translates into a loss of money or property.") (citation omitted).

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

Third, Plaintiff's other attempts to cast the disclosure of her Contact Information in an economic light are also insufficient.  Her allegation of supposed economic impact from the loss of her "choice" in whether to disclose personal information is in substance no different from the cases described immediately above—all alleged that a third party received personal information without the plaintiff's consent, and still in all there was no UCL standing.  And, the alleged increased risk of identity theft is not a "loss of money or property."  As described above, *see supra* § II.D.1 and II.D.2.a, courts have rejected the idea that an increased risk of identity theft is actionable injury or damage in numerous contexts.  The UCL should be no different.  *See, e.g.*, *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010) (requiring that the plaintiff "plead a *credible* or *substantial* threat" of increased harm to bring a UCL claim based on heightened risk of future health injury) (emphases supplied); *see also Simpson v. Cal. Pizza Kitchen, Inc.*, No. 13-cv-164 JLS (JMA), 2013 WL 5718479, at *6 (N.D. Cal. Oct. 1, 2013) (plaintiff's claims of increased health risks from eating pizza containing trans fatty acids insufficient to create standing when she only claimed to have eaten the pizza five times a year).  There must be both a "substantially increased risk of harm" and also a "substantial probability of harm with that increase taken into account."  *Herrington*, 2010 WL 3448531, at *3 (internal quotation marks and citation omitted).  Plaintiff alleges neither here:  Plaintiff has not actually experienced identity theft, and she alleges no steps she has taken or expenses she has incurred to preempt the heightened risk she alleges she perceives, and the mere allegation that identity theft becomes slightly more likely, in some unquantifiable amount, with each person who has access to a person's name and address, is neither "credible" nor "substantial."

### (ii)    Plaintiff has failed to plead reliance

Further, even if Plaintiff alleged a loss of money or property, her UCL claim is also subject to dismissal because she has not pled (a) that she read and relied on the provision in the Wallet Privacy Notice that she now alleges was misleading, or (b) that she would not have bought the App from the Google Play Store using Wallet but for this reliance.

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD

Under the UCL, a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  While the misrepresentation need not be the "sole or even decisive cause," *id.* at 328, there must be some allegation that the plaintiff actually was cognizant of and relied on the statement.  For example, standing arose in *Kwikset* from allegations that the product labeling was false, "(3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Kwikset*, 51 Cal. 4th at 327-28.

Here, Plaintiff makes neither of these needed allegations.  Plaintiff's allegations about what users expect as a result of the Wallet ToS are completely generalized and abstract in nature.  *E.g.*, Compl. ¶¶ 19 ("By using Google Wallet, *users* expect to benefit . . . .  Google has represented to users . . . .") (emphasis supplied), 24, 45-46.  Her allegations about her own experience in fact seem to carefully avoid any mention that she actually read and relied on the provision in the Wallet ToS that she now contends was deceptive, instead merely asserted that she created the relevant accounts.  Compl. ¶¶ 68 ("Plaintiff registered an email account with Google and thereby, according to Google, agreed with Google to the Google Terms of Service and Google Privacy Policy."), 69 (similar allegation), 70 (similar allegation).  And nowhere does Plaintiff allege that she would not have purchased the App but for the alleged misrepresentations.

Without any allegation that she read and relied on the terms that she now contends are deceptive, Plaintiff's UCL claim fails.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (2010) (sustaining demurrer to UCL claim when the plaintiff failed to plead any reliance on alleged misrepresentations about rates); *see also Herrington*, 2010 WL 3448531, at *8 (noting that in addition to lack of standing, the plaintiffs' UCL claim failed because they "have not plead that they viewed any of Defendants' advertising"; rejecting claim both under *In re Tobacco II* and for failure to plead with particularity under Federal Rule of Civil Procedure 9(b) as required when a UCL claim brought in federal court sounds in fraud).

23

1

### III.    CONCLUSION

2      Plaintiff has failed to allege facts sufficient to confer Article III standing, and she has

3  failed to state a claim as to any of the counts alleged in the Complaint.  Accordingly and for the

4  reasons discussed above, the Court should dismiss the Complaint, with prejudice as to Plaintiff's

5  claims for violation of the SCA.

6  DATED:  October 30, 2013                    **PERKINS COIE** LLP

7

8                                             By: _/s/ Susan D. Fahringer_
                                                    Susan D. Fahringer, Bar No. 162978
9                                                   SFahringer@perkinscoie.com

10                                            Attorneys for Defendants
                                              Google Inc. and Google Payment Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT
Case No. CV-13-04080-EJD