Kathryn Diemer
Diemer, Whitman & Cardosi, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
Phone: 408-971-6270
Fax: 408-971-6271
kdiemer@diemeerwhitman.com
CA Bar No.: 133977

Counsel for Plaintiff Alice C. Svenson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Alice Svenson, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Google, Inc. a Delaware Corpoation, and Google Payment corporation, a Delaware Corporation, <br><br> Defendants. | Case No.: 13-cv-04080-EJD <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6)** <br><br> Hearing Date: April 25, 2014 <br> Time: 9:00am <br> Courtroom: Room 4, 5th Floor <br> Judge: Hon. Edward J. Davila |

# Table of Contents

INTRODUCTION..................................................................................................1

STATEMENT OF RELEVANT FACTS.....................................................2

GOVERNING LEGAL STANDARDS........................................................3

DISCUSSION.......................................................................................................4

I.    Plaintiff Has Standing Under Article III................................4

      A.    Defendants' Violations of Plaintiff's Statutory Rights Confer Article III Standing.................................................................5

      B.    Plaintiff Alleges Economic Injury Sufficient For Standing...................6

II.   Plaintiff Has Stated a Valid Claim For Breach of Contract.........8

      A.    Legal Standard for Breach-of-Contract Claims...................8

      B.    Defendants' Contract Interpretation Does Not Merit Dismissal...........9

      C.    Plaintiff Has Sufficiently Alleged Damages................14

III.  Plaintiff Has Stated a Valid Claim for Breach of the Covenant of Good Faith and Fair Dealing.................................................18

IV.   Plaintiff Has Stated a Valid Claim Under Section § 2701 of the Stored Communications Act...............................................21

      A.    Language and Purpose of the Statute................21

      B.    Plaintiff's Complaint Alleges Both Improper Access and Improper Disclosure.........................................21

      C.    Defendants Are Not Exempt From Section 2701................22

V.    Plaintiff Has Stated a Valid Claim Under Section 2702 of the Stored Communications Act...............................................26

      A.    Language and Purpose of the Statute................26

      B.    Defendants Disclosed the Contents of Plaintiff's Communications in Violation of § 2702................27

      C.    The Act Does Not Authorize Defendants' Disclosure of Plaintiff's Information.........................................31

VI.   Plaintiff Has Adequately Pleaded a UCL Claim Under Either the "Unlawful" or "Unfair" Prong of Section 17200................32

i

A.  **California Law Does Not Require Plaintiff to Allege Reliance Under Either the "Unlawful" or "Unfair" Prongs of Section 17200** ........................................................................32

1.  **Pleading Reliance is Unnecessary under the "Unlawful" Prong** ............................................................33

2.  **Pleading Reliance is Also Unnecessary Under the "Unfair" Prong** ........................................................34

B.  **Plaintiff Has Statutory Standing to Plead a Violation of the UCL** ...........................................................................37

**CONCLUSION** ........................................................................38

**Table of Authorities**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir. 2000)................................. 17

*Albillo v. Intermodal Container Servs., Inc.,* 114 Cal. App. 4th 190 (2003) ........................ 43

*Alexander v. Codemasters Group Ltd.*, 104 Cal. App. 4th 129 (2002)................................. 21

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003)........................... 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 10, 11, 27

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) ................................... 41, 42

*Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (2006)........................................ 46

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ..................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................... 10, 11, 27

*Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996) .............................................. 33

*Brown v. Brown*, No. CV 13-03318 SI, 2013 U.S. Dist. LEXIS 159199 (N.D. Cal.
    Nov. 5, 2013) ........................................................................................... 26

*Buza v. Yahoo! Inc.*, No. C 11-4422 RS, 2011 U.S. Dist. LEXIS 122806 (N.D.
    Cal. Oct. 24, 2011)................................................................................... 33

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) ............ 47

*Camacho v. Auto. Club of Southern California*, 142 Cal. App. 4th 1394 (2006)................ 46

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990) ................ 29

*Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal. 2004) ............. 28

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163
    (1999) ...................................................................................................... 44

*Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359 (9th Cir. 2009) ........ 23

*Claridge v. RockYou*, 785 F. Supp. 2d 855, 861 (N.D. Cal. 2011) ............................... 26

*County of Humboldt v. McKee*, 165 Cal. App. 4th 1476 (2008)..................................... 21

*County of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406 (2005) ............. 21

*Crowley v. CyberSource Corp.,* 166 F. Supp. 2d 1263 (N.D. Cal. 2001)................ 33, 35

*Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032, 2010 U.S. Dist. LEXIS
    116048 (N.D. Cal. Nov. 1, 2010)............................................................ 28

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010)............................... 17

*Daugherty v. American Honda Motor Co.,* 144 Cal. App. 4th 824 (2006) ................ 42

*Davis v. SBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir. 2012)............................ 44

*Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................... 43

*Doe I v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) .................................. 15

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995).................................................. 11

*Dorfman v. Nutramax Labs., Inc.* No. 13-cv-0873 WQH (RBB), 2013 U.S. Dist.
    LEXIS 136949 (S.D. Cal. Sept. 23, 2013)............................................. 45

*Durell vs. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ............................... 43

*Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010) ................................... 12

*EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001)............... 33

*Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107 (3d Cir. 2003)........................ 33

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167
    (2000) ................................................................................................. 11, 12, 16

*FTC v. Neovi, Inc.,* 604 F. 3d 1150 (9th Cir. 2010) ......................................... 46

*Gabana Gulf Distrib. Ltd. v. Gap Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008
    U.S. Dist. LEXIS 1658 (N.D. Cal. Jan. 9, 2008) ............................... 29

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) ................................... 27, 28

*Hause v. Salvation Army*, No. CV-07-5249 CAS, 2007 U.S. Dist. LEXIS 87329
    (C.D. Cal. Nov. 27, 2007)................................................................ 29

*Herrington vs. Johnson & Johnson Consumer Cos.,* No. C 09-1597 CW, 2010
    U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) ......................... 43

*Hill v. MCI WorldCom Communs., Inc.*, 120 F. Supp. 2d 1194 (S.D. Iowa 2000) ............ 37, 40

*Holmes v. Elec. Document Processing, Inc.*, No. 12-cv-06193-LHK, 2013 U.S.

Dist. LEXIS 116598 (N.D. Cal. Aug. 15, 2013) ...................................................... 16

*In re American Airlines, Inc. Privacy Litig.*, 370 F. Supp. 2d 552 (N.D. Tex.
    2005) ........................................................................................................................ 41

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................ 15

*In re Google Referrer Header Privacy Litigation*, No. 5:10-cv-04809-EJD, 2012
    U.S. Dist. LEXIS 44062 (N.D. Cal. Mar. 29, 2012) ................................................ 13

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............ 26, 38, 45

*In re Linkedin User Privacy Litigation*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013) ........... 14, 24

*In re Medical Capital Sec. Litig.,* No. SA ML 10-2145 DOC (RNBx), 2013 U.S.
    Dist. LEXIS 48556 (C.D. Cal. Apr. 2, 2013) ........................................................... 27

*In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665 (9th Cir. 2007) .................... 41

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,* 903 F. Supp.
    2d 942 (S.D. Cal. 2012) ........................................................................................... 15

*In re Tobacco Cases II*, 46 Cal. 4th 298 (2009) ..................................................... 43, 47

*In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................. 14

*In re United States ex rel. an Order Authorizing Disclosure of Location Info. of a
    Specified Wireless Tel.*, 849 F. Supp. 2d 526 (D. Md. 2011) .................................. 39

*Infostream Group, Inc. v. Paypal, Inc.*, No. C 12-748 SI, 2012 U.S. Dist. LEXIS
    122255 (N.D. Cal. Aug. 28, 2012) ......................................................................... 17

*Jessup-Morgan v. AmericaOnline, Inc.*, 20 F. Supp. 1105 (E.D. Mich. 1998) ............ 39, 40

*Jewel v. National Sec. Agency*, 673 F.3d 902 (9th Cir. 2011) ..................................... 13

*Johnson v. Regents of the Univ. of Cal.*, No. C-09-04727 JCS, 2010 U.S. Dist.
    LEXIS 63963 (N.D. Cal. June 28, 2010) ................................................................ 29

*Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487 (9th Cir. 2000) ......................... 21

*Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, U.S. Dist. LEXIS 161300 (N.D.
    Cal. Nov. 9, 2012) ................................................................................................... 23

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ............................... 30

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ...................... 44

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ...................................... 15

*Kwikset Corp. vs. Superior Court*, 51 Cal. 4th 310 (2011) ........................................ 43

*Lazette v. Kulmatycki*, 12CV2416  2013 U.S. Dist. LEXIS 81174 (N.D. Ohio June
    05, 2013) .................................................................................................................. 34

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*, 34 Cal.
    4th 960 (2004) ......................................................................................................... 17

*Long Beach Drug Co. v. United Drug Co.*, 13 Cal. 2d 158 (1939) ............................. 23

*Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C 12-03694 DMR, 2012 U.S.
    Dist. LEXIS 156342 (N.D. Cal. Oct. 31, 2012) ...................................................... 22

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................... 23

*Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ...................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 11, 12, 16

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) ................................................ 26

*McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457 (2006) .......................... 45

*Merced Irrigation Dist. v. County of Mariposa*, 941 F. Supp. 2d 1237 (E.D. Cal.
    2013) ........................................................................................................................ 30

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 319 F. Supp. 2d 1059 (C.D. Cal.
    2003) ........................................................................................................................ 47

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95 (9th Cir. 1983) ........... 22, 25

*Olivera v. American Home Mortg. Servicing, Inc.* 689 F. Supp. 2d 1218 (N.D.
    Cal. 2010) ................................................................................................................ 43

*Pac. Shore Props., LLC v. City of Newport Beach*, 730 F.3d 1142 (9th Cir. 2013) ....... 23

*People v. E.W.A.P., Inc.,* 106 Cal. App. 3d 315 (1980) ............................................ 44

*Pirozzi v. Apple, Inc.*, No. 12-cv-01529-JST, 2013 U.S. Dist. LEXIS 110729
    (N.D. Cal. Aug. 3, 2013) ................................................................................ 14, 44, 45

*Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169 (1961) ........................................... 23

iv

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638 (2008) ............................... 47

*Raiser v. Ventura,* 488 Fed. App'x 219 (9th Cir. 2012) ........................................................... 27

*Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908 (N.D. Cal. 2009) .......................................................... 24

*Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817 (E.D. Mich. 2000) ........................................................................................................ 32

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ........................................................................... 14

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001) .................................... 44

*SocialApps LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 14124 (N.D. Cal. Feb. 6, 2012) ................................................................ 28

*Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354 (2001) ............................................. 21, 22

*Sonoma County Ass'n of Retired Employees. v. Sonoma County*, 708 F.3d 1109 (9th Cir. 2013) ...................................................................................... 11

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861 (1999) ...................................................................................................... 45

*Story Parchment Co., v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) .................... 23

*Sweet v. Johnson*, 337 P.2d 499 (Cal. Ct. App. 1959) .............................................................. 27

*Sybersound Records,Inc. v. UAV Corp.,* 517 F.3d 1137 (9th Cir. 2008) ................................. 47

*Thayer Corp. v. Reed*, 2:10-cv-00423-JAW, 2011 U.S. Dist. LEXIS 74229 (D. Me. July 11, 2011) ........................................................................................ 32

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) .......................................... 30, 33, 34, 35

*Unihan Corp. v. Max Group Corp.*, No. CV 09-07921-MMM, 2011 U.S. Dist. LEXIS 148796 (C.D. Cal. Dec. 28, 2011) ........................................................ 17

*United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005) ...................................................... 33

*United States v. Lazu-Rivera*, 363 F. Supp. 2d 30 (D. P.R. 2005) ........................................... 38

*United States v. Morris*, 928 F.2d 504 (2d Cir. 1991) ............................................................. 34

United States v. Reed, 575 F.3d 900 (9th Cir. 2009) ........................................................... 37, 38

*United States v. Saville*, CR 12-02-BU-DLC, 2013 U.S. Dist. LEXIS 88428 (D. Mont. June 21, 2013) ......................................................................................... 38

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) ............................................................ 31

*Vedachalam v. Tata Consultancy Servs.*, No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429 (N.D. Cal. Apr. 2, 2012) ............................................................... 21, 25

*Warth v. Seldin*, 422 U.S. 490 (1975) ..................................................................................... 12

*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F. Supp. 2d 1099 (C.D. Cal. 2001) ................................................................................................ 47

*Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898 (N.D. Cal. 2011) .................................. 16

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012) ................................................................. 11

*Wolf v. Superior Court*, 114 Cal. App. 4th 1343 (2004) .......................................................... 21

*Woods v. Google Inc.,* No. 5:11-CV-01263-EJD, 2013 U.S. Dist. LEXIS 51170 (N.D. Cal. Apr. 9, 2013) ....................................................................................... 46

*Yunker v. Pandora Media, Inc.*, No. 11-cv-3113 JSW, 2013 U.S. Dist. LEXIS 42691 (N.D. Cal. March 26, 2013) ........................................................... 37, 38, 40

**Statutes and Regulations**

18 U.S.C § 2703 ................................................................................................................. 36, 39

18 U.S.C. § 2510 ..................................................................................................................... 37

18 U.S.C. § 2701 ................................................................................................................ passim

18 U.S.C. § 2702 ..................................................................................................... 8, 12, 36, 41

18 U.S.C. § 2707 ................................................................................................................. 13, 30

Cal. Bus. Prof § 22576 ............................................................................................................ 41

Cal. Civ. Code § 3360 ............................................................................................................. 27

Cal. Civil Code § 1638 ............................................................................................................ 21

Cal. Civil Code § 1642 ............................................................................................................ 17

v

**Federal Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 3, 26

**Treatises**

Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping*, §
    2:9, 15–16 (2d ed. 1995 & Supp. 2004) ...................................................................... 38
Orin S. Kerr, *A User's Guide to the Stored Communications Act and a
    Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1232
    (Aug. 2004) ................................................................................................................ 38

# INTRODUCTION

This case arises out of Plaintiff's use of "Google Play," the Defendants' online store. Google Play offers software applications ("Apps") for mobile devices that use Google's operating system, such as smart phones and tablet computers. Apps may be free or paid; most are offered by third-party vendors. The App at issue was purchased by Plaintiff, and, as such, is subject to different privacy terms than free Apps. Plaintiff bought an App from a vendor through Google Play, which required her to agree to certain terms and to have her payment processed through "Google Wallet," Defendants' payment-processing service. Agreeing to the terms, which identified specific, limited circumstances under which Defendants would disclose her personal information, was the only way Plaintiff could purchase the App.

Plaintiff agreed to the terms. Defendants pocketed a portion of the purchase price, turning the rest over to the vendor. Contrary to their terms, Defendants unnecessarily made Plaintiff's sensitive information, including where she lives, available to the vendor without her knowledge or consent. This disclosure quantifiably reduced the value of the services Defendants provided to Plaintiff; by divulging her information or making it accessible to an unaccountable third party.

Defendants' motion either ignores or mischaracterizes most of Plaintiff's well-pleaded claims. It should be denied. First, Plaintiff has standing to bring her claims in federal court based on both injury in fact and Defendants' violation of federal statutes. Second, Plaintiff sufficiently alleges claims for Defendants' breach of the terms of service and, alternatively, their breach of the implied covenant of good faith and fair dealing. Third, Defendants' conduct is expressly described – and prohibited – by the Stored Communications Act. Plaintiff has thus sufficiently alleged claims under both 18 U.S.C. § 2701 and § 2702. Last, Defendants' motion does not challenge Plaintiff's Count V and its foundation in the "unfairness" prong establishing liability under California's Unfair Competition Law. Further, since Plaintiff does not make a claim under the "fraudulent" prong of the UCL, she is not required to plead reliance. For these reasons, and taking Plaintiff's factual statements as true, Defendants' motion to dismiss should be denied.

1

**STATEMENT OF RELEVANT FACTS**

Defendants provide electronic and remote computing services including Google Wallet ("Wallet"), their payment-processing service, and Google Play, their multimedia and software content-distribution platform. Compl., ¶¶ 17-18, 26. Defendants provide these services through Google's data-center facilities. *Id.*, ¶ 11. A user wishing to purchase and obtain an App through Google Play must first register a Google account and agree to Google's Terms of Use and Privacy Policy. *Id.*, ¶¶ 20, 27. Then, the user must agree to Google Play's terms of service, including terms that apply only to purchases. Finally, a user wishing to make a purchase – instead of just obtaining free content – must separately register a Google Wallet account and agree to the Google Wallet Terms of Service ("GWToS") and Google Wallet Privacy Policy ("GWPP"), which incorporate Google's standard terms of use and privacy policy. *Id.*, ¶¶ 20-21, 31, 47. A user must use Wallet to purchase Apps through Google Play. *Id.*, ¶¶ 31. Wallet requires a user to input her credit card number, expiration date, security code, and sensitive identifiable information ("SID") including billing information (first and last name and street address), phone number, and/or email address. *Id.,* ¶ 25, 49. Defendants then store that SID on the data-center facilities used to provide these services. *Id.*, ¶ 11. Defendants acknowledge the sensitivity of this information, agreeing to make it available to third parties only under limited, enumerated circumstances. *Id.*, ¶¶ 36-37.

To buy an App for her mobile device, Plaintiff – who had previously registered a Google account – agreed to Google Play's terms of service and registered a Wallet account. *Id.*, ¶ 69. Registering for the account in order to buy an App required Plaintiff to provide Defendants her SID and to agree to the GWToS and GWPP, which provided that Defendants could share her SID with third parties only as permitted under the privacy policy, as necessary to process her transactions and maintain her account, and to register for a service provided by a third party. *Id.*, ¶¶ 37, 68-77. The terms also required Defendants to process the payment transaction securely, under the GWPP's information-sharing limitations. *Id.*, ¶ 74. Plaintiff paid $1.77 to buy the App. Defendants processed the transaction, remitted a portion of the $1.77 to the vendor, kept the

2

1  remainder as their fee, and electronically transmitted the App to Plaintiff's mobile device. *Id.*, ¶¶
2  76, 78.

3        However, Defendants did not abide by the limitations they wrote into the GWToS and
4  GWPP. They made Plaintiff's SID, stored on their servers, available to, and accessible by, the
5  vendor, in violation of the privacy terms. This was not necessary for Defendants to process
6  Plaintiff's payment for the App and did not involve her registration for any service. *Id.*, ¶¶ 44,
7  50-57, 66. Defendants thus failed to provide the service for which Plaintiff paid, and all or some
8  ascertainable portion of her $1.77 purchase price was lost. *Id.*, ¶¶ 19, 80.

9                              **GOVERNING LEGAL STANDARDS**

10        A complaint need not make "detailed factual allegations" so long as it states "sufficient
11  factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*
12  *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The plausibility requirement "is
13  not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a
14  defendant" is liable. *Id.* While a plaintiff must plead enough facts to raise her right to relief
15  above a speculative level, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 580-81 (2007), a claim is
16  facially plausible if she has pleaded facts that "allow[] the court to draw the reasonable inference
17  that the defendant is liable for the misconduct alleged." *Sonoma County Ass'n of Retired*
18  *Employees v. Sonoma County*, 708 F.3d 1109, 1115 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at
19  678). Further, a court "must take allegations as true no matter how skeptical the court may be."
20  *Iqbal*, 556 U.S. at 696; *see also Twombly*, 550 U.S. at 556 ("a well pleaded complaint may
21  proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"). A
22  Rule 12(b)(6) motion should therefore be denied "unless it appears beyond doubt that the plaintiff
23  can prove no set of facts in support of his claim which would entitle him to relief." *Wilhelm v.*
24  *Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Claims may be pleaded in the alternative. Fed. R.
25  Civ. P. 8. Employing these standards, this Court should deny Defendants' Motion to Dismiss.[1]

26
27  _____
    [1] Should the Court grant any part of the motion to dismiss, any shortcomings can be cured by
28  amendment and Plaintiff respectfully requests leave to amend. Even in cases where dismissal is

1

**DISCUSSION**

2    **I.       Plaintiff Has Standing Under Article III**

3           In order to demonstrate Article III standing, a plaintiff must show: (1) a concrete injury;

4    (2) fairly traceable to the challenged action of the defendant; (3) that is likely to be redressed by a

5    favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

6    180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In class action

7    litigation, "standing is satisfied if at least one named plaintiff meets the [Article III]

8    requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc);

9    *see also* Compl., ¶¶ 31, 48, 68-77, 74-89 (alleging Plaintiff's specific injuries). At the pleading

10   stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."

11   *Lujan*, 504 U.S. at 561. Plaintiff's complaint more than meets these standards.

12          Defendants essentially concede that Plaintiff has standing if any of her statutory claims are

13   sustained. Def. Mot. at 7-8. The injury required by Article III can exist solely by virtue of

14   "statutes creating legal rights, the invasion of which creates standing." *Edwards v. First Am.*

15   *Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), cert. dismissed as improvidently granted, 132 S. Ct.

16   2536 (2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). In such cases, the "standing

17   question . . . is whether the constitutional or statutory provision on which the claim rests properly

18   can be understood as granting persons in the plaintiff's position a right to judicial relief."

19   *Edwards*, 610 F.3d at 517 (quoting *Warth*, 422 U.S. at 500). Plaintiff has established

20   constitutional injury in fact by pleading a violation of rights conferred by statute upon persons

21   like her. *See Warth*, 422 U.S. at 501. Defendants do not dispute this fact; instead, they attempt to

22   repurpose their 12(b)(6) challenges to Plaintiff's statutory claims as Article III arguments. Def.

23   Mot. at 7. This is insufficient. If the Court sustains any part of Plaintiff's statutory claims, then

24   Plaintiff has shown Article III standing in this case.

25

26   _____

27   granted, "a district court should grant leave to amend . . . unless it determines that the pleading
     could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494,
     497 (9th Cir. 1995) (citations omitted).

28
                                                      4

1      In their argument on the issue of injury in fact, Defendants mischaracterize Plaintiff's

2  contract claims.  Def. Mot. at 6-7.  Plaintiff's pleadings meet the criteria for standing under

3  *Lujan*/*Friends of the Earth*: she alleges that she paid money, that she agreed to distinct terms for

4  the service for which she paid, and that Defendants retained money from that payment without

5  providing her the services under the contract.  Compl., ¶¶ 31, 48, 74, 76, 77, 80, 85-89.  Together,

6  these allegations constitute real economic injury sufficient to establish Article III standing.  *See*

7  *Friends of the Earth, Inc.*, 528 U.S. at 180-81; *Lujan*, 504 U.S. at 561-62.

8      **A.      Defendants' Violations of Plaintiff's Statutory Rights Confer Article III**
9              **Standing**

10      Plaintiff has standing to sue in federal court based on Defendants' violations of her rights

11  under the Stored Communications Act, which prohibits an electronic communication or remote

12  computing service from divulging the contents of a communication, *see* 18 U.S.C. §§ 2702(a)(1),

13  2702(a)(2), and prohibits anyone from intentionally exceeding an authorization to access a facility

14  and thereby obtaining, altering, or preventing authorized access to a wire or electronic

15  communication, *see id.*, §§ 2701(a)(1), (2).  Defendants argue that Plaintiff's statutory rights

16  cannot support Article III standing, but they cite no authority to support their argument that injury

17  beyond a violation of the Act itself is required for standing, and they concede that "a statutory

18  right may be sufficient to confer standing, and Plaintiff has alleged an SCA violation here."  Def.

19  Mot. at 7.  This concession compels a finding that Plaintiff has standing to bring her statutory

20  claims in federal court.  *See Jewel v. National Sec. Agency*, 673 F.3d 902, 908-909 (9th Cir. 2011)

21  (finding violation of the Act to be a concrete injury sufficient for standing); *In re Google Referrer*

22  *Header Privacy Litigation*, No. 5:10-cv-04809-EJD, 2012 U.S. Dist. LEXIS 44062, at *12-13

23  (N.D. Cal. Mar. 29, 2012) (same).

24      Moreover, the Act itself grants persons in Plaintiff's position a right to judicial relief.  The

25  Act explicitly creates a private right of action for persons whose communications were disclosed

26  in violation of the statute.  *See* 18 U.S.C. § 2707(a).  Plaintiff alleges that she was harmed,

27  thereby establishing personal, particularized injury.  "The critical question is whether she has

28                                         5

alleged such a personal stake in the outcome of the controversy as to warrant . . . invocation of federal court jurisdiction." *Jewel*, 673 F.3d at 909 (internal quotations omitted). Plaintiff has shown she has such a personal stake: she alleges that her personal information was disclosed without her consent to third parties while in storage on Defendants' servers, and that Defendants altered access to the information on their servers to allow third parties to access her information. Compl., ¶¶ 42, 49, 52-54, 71, 73, 75, 77, 143. Plaintiff alleges that her own rights under the statute were infringed. Similar harm to others does not negate her particularized injury. *See Jewel*, 673 F.3d at 909 ("[T]he fact that a harm is widely shared does not necessarily render it a generalized grievance."). The Court should find that Plaintiff has alleged a concrete and particularized injury in fact as a result of Defendants' violations of her statutory rights and deny their motion to dismiss under Rule 12(b)(1).

## B. Plaintiff Alleges Economic Injury Sufficient For Standing

Plaintiff's allegations of concrete economic injury establish Article III standing for her other claims. The cases Defendants cite do not apply here. In those cases, either no actual money changed hands, or, as in *In re Linkedin User Privacy Litigation,* no additional promises were made in exchange for money. *Id.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013). Here, money changed hands and additional promises were made in exchange for the money. Plaintiff specifically alleges that Defendants, for money, assumed additional privacy obligations embodied in the terms they required her to accept when she paid them for services that began with their secure processing of her transactions. Compl., ¶ 80. She has met the standard for Article III standing by paying money and not receiving the full value of the contract she entered with Defendants for services.

Defendants contend that there is no fee for the payment transaction under the contract, but that is factually incorrect.[2] Where a plaintiff alleges, as Plaintiff does here, that she has suffered

---

[2] Defendants' improper attempt to rely on new contractual language not in effect at the time of Plaintiff's purchase should be rejected. *See* Plaintiff's Objections and Motion to Strike Judicial Notice, and Plaintiff's Request for Judicial Notice ("PRJN"), filed herewith. Terms actually governing Plaintiff's claims make it clear that Plaintiff paid Defendants money in exchange for services. *See id.*, Exh. 2-4; *see also* Defendants' Request for Judicial Notice ("DRJN"), Exh. B

6

concrete economic harm, the injury-in-fact requirement of Article III is satisfied. *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972); *Pirozzi v. Apple, Inc.*, No. 12-cv-01529-JST, 2013 U.S. Dist. LEXIS 110729, at *12-13 (N.D. Cal. Aug. 3, 2013). Standing exists where a plaintiff alleges economic loss from overpaying for a product or service. *See In re Linkedin User Privacy Litig,* 932 F. Supp. 2d at 1093 (economic harm based on the "benefit of the bargain" has been recognized as a viable basis for standing); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163-66 (C.D. Cal. 2011) (plaintiffs had standing where they sought recovery for an economic harm they alleged they had suffered). Courts routinely find standing where a defendant charges a customer money but fails to honor the terms it creates to govern provision of the paid-for good or service. *See, e.g., In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("a plaintiff who is a *consumer* of certain services (i.e., who 'paid fees' for those services) may state [a claim requiring monetary loss] when a company, in violation of its own policies, discloses personal information about its customers"); *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (holding that plaintiffs adequately pleaded injury in fact where defendant's "collection and disclosure of [plaintiffs'] undeniably sensitive information is not something that [plaintiffs] bargained for when they signed up and paid fees for [defendant's] service").

Here, Plaintiff suffered economic harm: she overpaid for her Wallet transaction because she did not receive the full privacy protections of the services for which she contracted. Specifically, Plaintiff alleges that she paid Defendants to buy an App, *see* Compl., ¶¶ 40, 74; that Defendants retained a portion of that payment, *see id.*, ¶ 76; that she agreed to specific terms solely for the purpose of making her purchase using Wallet, *see id.*, ¶¶ 31, 48, 74; and that Defendants then breached those terms by failing to provide the agreed-upon service, *see id.*, ¶¶ 77, 80. This constitutes an injury sufficient to confer Article III standing. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 715; *Doe 1*, 719 F. Supp. 2d at 1111. Although her claim of economic injury does not depend on this theory, Plaintiff also alleges that Defendants' actions

(containing the correct privacy policy for Google Wallet); § II.C, *infra* (discussing the contract terms). So do Plaintiff's allegations. *See, e.g.,* Compl., ¶¶ 76, 78, 81.

subjected her to an increased risk of identity fraud.  *Id.*, ¶¶ 85-89; *see also Krottner v. Starbucks Corp.,* 628 F.3d 1139, 1143 (9th Cir. 2010) (where sensitive personal data are improperly disclosed, increasing the risk of future harm, injury in fact has been recognized for Article III standing); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 958 (S.D. Cal. 2012) (same).  Because Plaintiff alleges that Defendants did not provide her with the secure transaction she paid them for, she has shown a quantifiable economic injury that establishes Article III standing.

Plaintiff's Complaint establishes that she suffered a concrete economic injury – she paid for a service she did not receive – which is traceable to Defendants' conduct and likely to be redressed by a favorable decision.  *See Friends of the Earth*, 528 U.S. at 180-81; *Lujan*, 504 U.S. at 561-62.  The allegations in the complaint thus satisfy the requirements for Article III standing for all of Plaintiff's claims, both statutory and those based on a theory of economic damages.

**II.     Plaintiff Has Stated a Valid Claim For Breach of Contract**

Plaintiff paid Defendants money in exchange for a secure financial transaction governed by particular terms, and Defendants did not give her what she paid for, violating the terms of the exchange.  While Defendants maintain that the only harm Plaintiff can claim is a non-economic privacy-related injury, in fact the Complaint shows that she suffered quantifiable financial harm. Because Plaintiff has pleaded actual damages, this court should deny Defendants' Motion to Dismiss as to her breach-of-contract claim.

**A.     Legal Standard for Breach-of-Contract Claims**

Only damages are at issue here: Defendants have waived any objection to the contract itself by failing to dispute offer, consideration, acceptance, or Plaintiff's performance.  *See Holmes v. Elec. Document Processing, Inc.*, No. 12-cv-06193-LHK, 2013 U.S. Dist. LEXIS 116598, at *22 n.4 (N.D. Cal. Aug. 15, 2013) (declining to consider arguments defendants failed to raise in initial motion); *see also* Def. Mot. at 8-9 (attacking damages without addressing any other element of Plaintiff's contract claim).  Defendants fail to muster any substantive challenge to Plaintiff's contention that they breached the contract, and so their unsupported efforts to

8

1    preserve an argument on breach are futile.  *See Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d

2    898, 911 (N.D. Cal. 2011) (declining to consider defendants' conclusory argument); *see also* Def.

3    Mot. at 2, 9 (noting as aside that Defendants do not concede breach but failing to develop the

4    point).

5          Thus, there is only one issue for this court to decide as to the contract claim: whether

6    Plaintiff's complaint adequately pleads damages.  Under California law, the purpose of contract

7    damages is to put the plaintiff "in as good a position as he or she would have occupied if the

8    defendant had not breached the contract."  *Unihan Corp. v. Max Group Corp.*, No. CV 09-07921-

9    MMM, 2011 U.S. Dist. LEXIS 148796, *69-70 (C.D. Cal. Dec. 28, 2011) (quoting *Lewis Jorge*

10   *Const. Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 967 (2004)).   A

11   plaintiff who claims "appreciable and actual damage" has stated a valid claim for breach of

12   contract.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).  In

13   assessing damages, this court must assume Plaintiff's allegations are true and draw all reasonable

14   inferences in Plaintiff's favor.  *See Infostream Group, Inc. v. Paypal, Inc.*, No. C-12-748-SI, 2012

15   U.S. Dist. LEXIS 122255, at *9 (N.D. Cal. Aug. 28, 2012).

16        **B.     Defendants' Contract Interpretation Does Not Merit Dismissal**

17         The contracts drafted by Defendants include the privacy terms giving rise to Plaintiff's

18   breach-of-contract claim.  Because the Motion to Dismiss relies on contract language that is at

19   best ambiguous, it is worth examining these terms closely.  *See* PRJN, Exhs. 2-4; DRJN, Exh. B;

20   *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (in deciding

21   12(b)(6) motion, court may consider evidence, such as a contract, that falls outside the four

22   corners of the complaint); Cal. Civil Code § 1642 (several contracts relating to the same

23   transaction and parties should be read together).  Such a close look reveals that both the contracts

24   and the transaction at issue were between Defendants and Plaintiff, and that Plaintiff paid

25   Defendants money in exchange for their services, establishing damages sufficient to support her

26   breach-of-contract claim.

27         Google Play's ToS make it clear that a user must purchase Defendants' services in order

28
                                                    9

to acquire an App (categorized as a "Product," *see* Google Play ToS at 1, § 1):

> **Product Purchases are Services.** When you purchase a Product, *you are buying a service*.

Google Play ToS at 4 (emphasis added). As defined in the Google ToS and incorporated in the Google Play ToS by reference, the term "service" refers exclusively to services (e.g., transaction processing, electronic App delivery, dispute resolution, and privacy protection) provided by Defendants, not third parties. *See* Google Play ToS at 1, § 1 (stating that "Google's provision of Google Play and the services described in these Terms is a '**Service**' as defined in the Google ToS") (bolding in original). Any "service" Plaintiff had to "buy" to obtain the App was a service provided by Defendants themselves.

As the Google Play ToS reveal, the service Plaintiff "bought" (Defendants' word) was intertwined with the purchase of the product itself. *See* Google Play ToS at 4 (stating that "Product Purchases are Services"). In addition, Defendants required Plaintiff to use Wallet to buy the App. All of the services were bought "from" Google Play using Wallet. *See* Google Play ToS at 2, § 2. The Google Play ToS explain that: "Performance of this service begins as soon as the purchase is complete, as the Product will then be available to you through your account." Google Play ToS at 3, § 4. The service can *only* begin by Defendants acting through their facilities, where Plaintiff's Google Play Account resided.

Plaintiff's purchase triggered the Google Wallet ToS, which "apply whenever you want to purchase a Product using Google Wallet." Google Play ToS at 2. Wallet's ToS gave Plaintiff additional contract rights, including access to Defendants' tools to help her address disputes she might have with the vendor, *see* Wallet ToS at 7-8, § 3.9, and the protection of the Wallet Privacy Policy, *see* Wallet ToS at 17, § 7 ("[P]ersonal information provided to Google or GPC in connection with the Services is subject to the Google Wallet Privacy Policy."). These terms govern Defendants' provision of the service Plaintiff "bought" and recognize two elements of the consideration due to Plaintiff as a result of the transaction: the App itself, from the App provider, and the service, which (in Defendants' words) the consumer "buys" from the Defendants. This

10

interpretation is logical: it requires the vendor to be responsible for problems with the App, and requires Defendants to be responsible for problems with their service, including the privacy terms.

The terms confirm that Plaintiff paid Defendants, not the vendor. *See, e.g.,* Compl., ¶¶ 74, 76. Defendants were the only entity that potentially needed Plaintiff's information, because they processed the transaction. Although no other party needed her information because no physical product was shipped (Apps are distributed electronically), Defendants nonetheless disclosed it to the vendor, purportedly as "shipping information." Defendants do not dispute that they kept a substantial portion of Plaintiff's payment before passing the remainder on to the vendor, who did not interact with Plaintiff's financial card provider and thus had no need to access her information. *See* Compl., ¶¶ 42, 47, 50, 52, 57-58, 65, 76-78, 81.

Even though the terms Defendants drafted reveal that they directly collected Plaintiff's money, Defendants claim that they cannot be liable because her purchase was from the vendor. In support of this argument, they cite this language from § 3.2 of the Wallet ToS:

> Buyers "acknowledge and agree that your purchases of Products are transactions between you and the Seller, and not with GPC, Google or any of their affiliates."

Def. Mot. at 4. But this provision does not factually correspond to the transaction underlying Plaintiff's claim. Defendants' terms instructed Plaintiff to "buy" Defendants' "service" (Defendants' terms). *See* Wallet ToS at 1 ("By agreeing to these Terms of Service, you authorize Google Wallet to charge your selected card when you make online purchases using Google Wallet.").[3] Defendants thus required Plaintiff to contract with them for the specific transaction; indeed, Google Play's ToS state that such a contract is made "each time you purchase a Product." Google Play, ToS at 5, § 4. The Wallet ToS similarly state that they are an agreement between

---

[3] Additional provisions of Google Wallet's ToS further confirm that Plaintiff's transaction here was with the Defendants, stating, e.g., "You authorize GPC to confirm that your Payment Instrument is in good standing * * * You also authorize GPC to obtain from time to time a credit report . . . ." Google Wallet ToS at 4, § 3.1 ("Getting Started with the Processing Service").

11

Defendants and Plaintiff, rather than with the Seller. *See* Wallet ToS at 1, 3. And the Wallet Privacy Policy describes Wallet as "payment services that are provided by both Google Inc. and its wholly owned subsidiaries." Defendants' interpretation is not persuasive, much less conclusive.

Defendants also point to another provision in sole support of their claim that Wallet is "free": "GPC does not charge a fee to use the Processing Service as a Buyer." Def. Mot. at 4 (quoting Wallet ToS at 7, § 3.8.) This clause is not relevant, however. It refers only to transaction fees that are imposed by "Carriers" (mobile phone service providers who allow associated accounts to be charged) and financial institutions that process payments.[4] This kind of "fee" is not at issue in this case.[5] Buyers pay for Defendants' services as part of the purchase price. The Wallet terms require consumers to pay for this service, and specifically require consumers to pay for "other obligations" as well as "fees," stating "[y]ou must register a valid credit or debit card or Carrier Billing Account as a Payment Instrument to make Payment Transactions **and pay** fees *and **other obligations** arising from your use of the Service*." Wallet ToS at 1-2 (emphasis added).

Contract law precludes reading the terms as Defendants wish. The terms are clear on their face: they plainly constitute an agreement to "buy" a "service" from Defendants. Any reading to the contrary would be absurd and inequitable. *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 491 (9th Cir. 2000) ("[w]e may not read the contract in a manner that leads to an absurd result"); *County of Humboldt v. McKee*, 165 Cal. App. 4th 1476, 1498 (2008) ("[T]he court shall avoid an interpretation which will make a contract extraordinary, harsh, unjust,

---

[4] Defendants neglect to note that the sentences preceding this language discuss this type of fee: "The financial institution that issues, or the Carrier that provides, your Payment Instrument may charge a fee in connection with the debiting or charging of the Payment Instrument resulting from the Payment Transaction. You should consult the terms and conditions governing your Payment Instrument for more information about any such fees." Wallet ToS at 7.

[5] Because Defendants collect and keep a set (and substantial) portion of the amount paid for each App purchase, the Complaint additionally styles the monies as a "fee."

12

1  inequitable or which would result in absurdity.") (internal quotation marks omitted); *see also* Cal.

2  Civil Code § 1638 ("The language of a contract is to govern its interpretation, if the language is

3  clear and explicit, and does not involve an absurdity."). This court may therefore rule as a matter

4  of law that Defendants' interpretation is incorrect.

5      Even if the contract is read to include competing terms, Defendants' motion must be

6  denied. Ambiguity in contract terms presents a question of fact that cannot be resolved at the

7  pleading stage. The interpretation of ambiguous terms in a contract is a question of fact, *see*

8  *Alexander v. Codemasters Group Ltd.*, 104 Cal. App. 4th 129, 147 (2002), while the question

9  whether an ambiguity exists in the first place is a question of law, *see Wolf v. Superior Court*, 114

10 Cal. App. 4th 1343, 1351 (2004). "An ambiguity exists when a party can identify an alternative,

11 semantically reasonable, candidate of meaning of a writing." *Solis v. Kirkwood Resort Co.*, 94

12 Cal. App. 4th 354, 360 (2001). Any ambiguities must be construed against the drafter of a form

13 contract. *Vedachalam v. Tata Consultancy Servs.*, No. C-06-0963 CW, 2012 U.S. Dist. LEXIS

14 46429, at \*26-27 (N.D. Cal. Apr. 2, 2012). Moreover, language in a contract must be interpreted

15 in the context of the instrument as a whole, not in isolation. *County of San Diego v. Ace Prop. &*

16 *Cas. Ins. Co.*, 37 Cal. 4th 406, 415 (2005). Considered in the context of the whole contract,

17 agreement is at best ambiguous: Defendants maintain the agreement was between Plaintiff and

18 the vendor while the terms establish an agreement with Defendants, and they insist Plaintiff did

19 not pay them while the terms required her to "buy" their services. To the extent that this language

20 is ambiguous, Plaintiff has identified "an alternative, semantically reasonable" reading of the

21 contract. *See Solis*, 94 Cal. App. 4th at 360. Deciding between competing interpretations

22 requires further factual development, which precludes dismissal at this point. *See Nat'l Union*

23 *Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir. 1983) (any ambiguity in a contract

24 raises a question of intent, which is a question of fact precluding decision on the pleadings); *Lord*

25 *Abbett Mun. Income Fund, Inc. v. Asami*, No. C 12-03694 DMR, 2012 U.S. Dist. LEXIS 156342,

26 at \*23 (N.D. Cal. Oct. 31, 2012) (declining to dismiss contract claims because trier of fact was

27

28

13

required to decide meaning of ambiguous contract).[6]

### C. Plaintiff Has Sufficiently Alleged Damages

Plaintiff's claim for damages is no different from the claim in any other case where a consumer enters into a contract to purchase a service but the seller fails to deliver. Defendants' contention that Plaintiff's theory of loss depends on downstream injuries flowing from the disclosure of her personal information (such as identity theft) is wrong. Plaintiff's concrete financial injuries are definable because Plaintiff paid money for a service that both parties recognize to be valuable, and she did not get what she paid for. Plaintiff consented to use Wallet's services in exchange for Defendants' agreement to keep her personal information secure, making Wallet's privacy terms a contract term governing the service Plaintiff purchased. Compl., ¶¶ 35-37, 64-67 (describing the contract's privacy provisions); *id.*, ¶¶ 68-77 (describing Plaintiff's purchase). Defendants then received, and kept, a set portion of Plaintiff's payment for the App she purchased. *Id.*, ¶¶ 40, 76, 81. Defendants proceeded to disclose and make accessible Plaintiff's information despite their assurance that she had entered into a secure transaction. *Id.*, ¶¶ 45-63, 77.

Plaintiff's "actual and appreciable" harm can therefore be measured by either the specific financial loss she suffered because she did nor receive the full value of the service she purchased, or by the quantifiable financial gain (money) Defendants accrued for a service she paid for and they failed to provide her. *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 361 (9th Cir. 2009) (where consumer alleged he lost money because he did not receive the full value of a product he purchased, he had sufficiently shown injury in the standing context); *Khasin v. Hershey Co.*, No. 5:12-CV-01862 EJD, U.S. Dist. LEXIS 161300, at *18-19 (N.D. Cal. Nov. 9, 2012) (same). Under one measure of recovery, Plaintiff is entitled to a portion of the money she paid for her App due to Defendants' failure to perform. The portion Defendants kept,

---

[6] Plaintiff expects that discovery will show that Defendants pocket 30 percent from each purchase and that, in the process of making a purchase, a viewable "buy screen" displays the price next to the name of the App for purchase in tandem with the Wallet terms.

14

or a reasonable part thereof to compensate for the deficiency, constitutes a just amount.  *See Pac. Shore Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1170-71 (9th Cir. 2013) (quoting *Story Parchment Co., v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563-565 (1931) and noting that damages may be approximated and justly and reasonably inferred; moreover, in ascertaining damages, defendant should bear the risk of any uncertainty produced by its own misconduct); *Posner v. Grunwald-Marx, Inc*., 56 Cal. 2d 169, 187 (1961) (contracting party "is entitled to a reduction in the amount called for by the contract, to compensate for the defects."); *Long Beach Drug Co. v. United Drug Co*., 13 Cal. 2d 158, 174, 88 P.2d 698 (1939) ("The fact that the amount of damages may not be susceptible of exact proof or may be uncertain, contingent, or difficult of ascertainment does not bar recovery.").

Defendants rely heavily on case law holding that, without something more, the disclosure of personal information alone cannot support a claim for damages.  Def. Mot. at 9-10; *see also Low*, 900 F. Supp. 2d at 1028-29 (without an additional showing of economic loss, disclosure of personal information was not cognizable form of contract damages); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009) (same), *aff'd* 380 Fed. App'x 689 (9th Cir. 2010).  But the cases Defendants cite involve the provision of free services rather than purchased services.  This case is thus distinguishable: the injury Plaintiff suffered does not depend on downstream effects that may result from the disclosure, but from not getting what she paid for when she "bought" Defendants' services.  Defendants required her to buy something from them in order to get the product, and they have not provided it.  This is a concrete injury in itself.  Defendants sidestep the authorities instructing that a plaintiff who is able to show concrete economic injury related to the unauthorized disclosure of personal information has alleged "appreciable and actual" damages. *See, e.g., In re Linkedin User Privacy Litig.*, 932 F. Supp. 2d at 1094 ("something more," such as economic harm from identity theft, was required to show actual damages); *Ruiz*, 622 F. Supp. 2d

at 917 (same).[7]  Because Plaintiff has alleged "something more," none of the holdings Defendants cite are dispositive.  Plaintiff's showing of specific economic harm is more than sufficient to support her claim for breach of contract.

In response to Plaintiff's allegations of harm, Defendants maintain that she did not pay anything in exchange for their guarantee of a secured transaction and that Wallet is "free."  Def. Mot. at 10.  This contention ignores that Defendants required Plaintiff to "buy a service" to get the App she wanted.  But while it may be free to register for a Wallet account, it is impossible to actually use Wallet without making a purchase – indeed, facilitating secure electronic payments is Wallet's key function.  Compl., ¶¶ 17-19; *see also* Google Play ToS at 2, § 2 (requiring use of Wallet to make payments).  Moreover, the contracts themselves make abundantly clear that, through Wallet, Defendants receive payment for services provided.  *See* Google Wallet ToS at 1 ("By agreeing to these Terms of Service, you authorize Google Wallet to charge your selected card when you make online purchases using Google Wallet."); Google Play ToS at 4 ("Product Purchases are Services. When you purchase a Product, you are buying a service."); *id.* at 2, § 2 ("You will need a Google Wallet account to purchase Products."); *id.* at 3, § 4 ("Performance of this service begins as soon as the purchase is complete, as the Product will then be available to you through your account.").  Defendants' interpretation of these terms is at odds with both the contract language they drafted and the actual facts of their transaction with Plaintiff.

Defendants contend that Plaintiff cannot be damaged because the transaction was between Plaintiff and the third-party vendor alone.  *See* Def. Mot. at 4.  This claim contradicts the Wallet ToS establishing that Plaintiff's agreement is with Defendants, not the vendor.  *See* Wallet ToS at 1, 3.  The Defendants dictated the terms.  Any ambiguities must be construed against them, *see*

---

[7] In *Linkedin*, the court declined to find economic harm in the standing context where the defendant made the same promise to secure users' personal information regardless whether the user had purchased a premium account or merely used defendant's free services.  *In re Linkedin User Privacy Litig.*, 932 F. Supp. 2d at 1093.  This case is different: the privacy terms here apply *only* to users making a purchase.

1   *Vedachalam v. Tata Consultancy Servs.*, 2012 U.S. Dist. LEXIS 46429, at \*26-27, and present a

2   question of fact that cannot be resolved on a motion to dismiss, *see Nat'l Union Fire Ins.*, 701

3   F.2d at 97.

4       Defendants next assert that, to the extent Plaintiff alleges damages based on the value of

5   her personal information and the increased risk of identity theft she faces, these injuries are too

6   speculative to support a claim for breach of contract. Def. Mot. at 10-11. The terms Defendants

7   crafted recognize that the personal information Plaintiff provided them has pecuniary value:

8   Defendants agree not to "sell or rent" users' personal information. This assurance is meaningless

9   unless they believe personal information has monetary worth. Wallet Privacy Policy at 3.

10  Moreover, Defendants expressly concede the value of Plaintiff's personal information by

11  identifying its protection as an element of consideration for a transaction that enriched them. *See*

12  Wallet ToS at 17, § 7 ("personal information provided to Google or GPC in connection with the

13  Services is subject to the Google Wallet Privacy Policy"), *id.* at 3, § 2.1 ("Provision and use of

14  such data is subject to the Google Wallet Privacy Notice); *see also* Compl., ¶¶ 35-37 (describing

15  the contract's privacy terms). Even assuming that the diminished value of Plaintiff's personal

16  information and her heightened risk of identity theft may not on their own be sufficient to support

17  a *prima facie* case for breach of contract, this court may consider these injuries as part of the total

18  damages calculation. It would therefore be premature to dismiss Plaintiff's claims on these

19  theories without further fact-finding. *See, e.g., Claridge v. RockYou*, 785 F. Supp. 2d 855, 861,

20  864-65 (N.D. Cal. 2011) (declining to dismiss complaint where plaintiff alleged theory of

21  damages that required further development).

22      Finally, Defendants contend that Plaintiff cannot claim damages on a theory of restitution.

23  Def. Mot. at 11. They appear to assert that any benefit they received as a result of their breach of

24  contract is insufficient to constitute "actual damages." Defendants mistake remedy for injury,

25  however: a request for restitution involves a remedy for redressing a plaintiff's loss, and is not a

26  stand-alone claim requiring separate proof of damages. *See In re iPhone Application Litig.*, 844

27  F. Supp. 2d 1040, 1075 (N.D. Cal. 2012); *see also* Compl., ¶ 108 (seeking, in the alternative,

28

17

restitution for Defendants' unjust enrichment).[8]  To the extent Defendants seek to limit the

remedies available to Plaintiff, the attempt is premature.[9]

None of Defendants' arguments merit dismissal of Plaintiff's contract claim.  Plaintiff's

damages allegations satisfy both the requirements of California contract law and the pleading

standards of *Iqbal* and *Twombly*, and Defendants' motion should therefore be denied.

### III.   Plaintiff Has Stated a Valid Claim for Breach of the Covenant of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing to ensure that

one party does not "unfairly frustrate the other party's right to receive the benefits of their

agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (citing

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000)).  A plaintiff claiming breach of the

covenant must allege that (1) the plaintiff and the defendant entered into a contract; (2) the

plaintiff did all or substantially all of the things that the contract required her to do or that she was

excused from doing; (3) all conditions for the defendant's performance had occurred; (4) the

defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and

(5) the defendant's conduct harmed the plaintiff. *Harris v. Wells Fargo Bank, N.A.*, 12-cv-05629-

JST, 2013 U.S. Dist. LEXIS 61847, at 24-25 (N.D. Cal. Apr. 30, 2013).  The covenant is

particularly applicable where one party is "invested with a discretionary power affecting the

---

[8] The purpose of restitution is to remedy the unjust enrichment of one party at the expense of the other. *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004).  Restitution may be awarded in lieu of breach-of-contract damages (if, for instance, a contract is found unenforceable) or where a defendant has obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. *Id.* at 388.  Although restitution may not be available where an express contract governs, plaintiffs are allowed to plead in the alternative and so may simultaneously claim breach of contract and seek restitution without contradiction. *See Brown v. Brown*, No. CV 13-03318 SI, 2013 U.S. Dist. LEXIS 159199, at *24-25 (N.D. Cal. Nov. 5, 2013).

[9] Having adequately pleaded the existence of actual damages, Plaintiff is entitled to recover nominal damages in the unlikely event that her theory of actual damages proves too difficult to quantify or estimate. *See Raiser v. Ventura*, 488 Fed. App'x 219, 222 (9th Cir. 2012) (reversing dismissal for breach of contract and holding that nominal damages are recoverable irrespective of the ability to show actual damage) (citing Cal. Civ. Code § 3360 and *Sweet v. Johnson*, 337 P.2d 499, 500 (Cal. Ct. App. 1959)); *see also In re Medical Capital Sec. Litig.*, No. SA ML 10-2145 DOC (RNBx), 2013 U.S. Dist. LEXIS 48556, at 56 (C.D. Cal. Apr. 2, 2013) (same).

18

rights of another." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992). Such power must be exercised in good faith. *Id.* Here, the contract left it to Defendants' discretion as to how and when disclosures of consumers' identifying information might be deemed "necessary" – a term Defendants interpreted unreasonably to frustrate Plaintiff's right to the benefits of their agreement. Compl., ¶¶ 111-14.

Defendants principally challenge Plaintiff's implied-covenant claim on the theory that it is duplicative of her breach-of-contract claim. Def. Mot. at 12. In support of this argument, Defendants rely on a California Supreme Court case holding that "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz*, 24 Cal. 4th at 327. But that logic does not apply where a plaintiff contends the defendant acted in bad faith. *See Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004); *see also Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032, 2010 U.S. Dist. LEXIS 116048, at *11-16 (N.D. Cal. Nov. 1, 2010) (collecting cases). In such cases, the court "should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought," but rather should seek to distinguish the two claims even if they are premised on the same basic facts. *Celador*, 347 F. Supp. 2d at 853.

Plaintiff's claims are distinguishable: her contract theory alleges that Defendants' actions breached the express terms of the contract, while her implied covenant claim asserts that Defendants were unreasonable in exercising the discretion granted them by those terms. *See Daly*, 2010 U.S. Dist. LEXIS 116048, at *13 (holding that if a party can breach the covenant without breaching an express provision of the contract, a plaintiff may bring both claims). Because it is logically possible that Defendants breached the covenant even if they technically complied with the contract's express terms – for instance, this Court could conceivably rule that Defendants' disclosure did not violate the contract's privacy provisions but still conclude that they abused the discretion the contract granted them in making such disclosures, or vice versa – the claims are not redundant and Plaintiff is allowed to maintain both causes. *See id.* at *8-9, 19 (denying motion to dismiss as to both breach-of-contract and implied-covenant claims where they

were pleaded in the alternative); *see also* Fed. R. Civ. P. 8(a)(3), 8(d)(2); *SocialApps LLC v. Zynga, Inc.*, No. 4:11-CV-04910-YGR, 2012 U.S. Dist. LEXIS 14124, at *8-9 (N.D. Cal. Feb. 6, 2012) (plaintiff was entitled to plead different theories of recovery in the alternative); Compl., ¶¶ 98-108 (alleging breach of contract); ¶¶ 109-15 (alleging breach of implied covenant in the alternative).  Moreover, the question whether breach-of-contract and implied-covenant theories are premised on the same underlying facts is a question best reserved for summary judgment or the jury.  *See Johnson v. Regents of the Univ. of Cal.*, No. C-09-04727 JCS, 2010 U.S. Dist. LEXIS 63963, at *21 (N.D. Cal. June 28, 2010) (whether implied covenant claim is superfluous is generally resolved at summary judgment); *Gabana Gulf Distrib. Ltd. v. Gap Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 U.S. Dist. LEXIS 1658, at *24 (N.D. Cal. Jan. 9, 2008) (whether defendant exercised reasonable discretion was fact question for the jury); *Hause v. Salvation Army*, No. CV-07-5249 CAS, 2007 U.S. Dist. LEXIS 87329, at *27-28 (C.D. Cal. Nov. 27, 2007) (denying motion to dismiss because factual basis for plaintiff's contract and implied-covenant claims was more properly addressed at summary judgment).

The court in *Carreau* similarly explained that comparison to breach of contract should not overlook the point of the claim for breach of its implied covenant: "*whether or not* it also constitutes a breach of a consensual contract term," the plaintiff must show that defendant's conduct "demonstrates a failure or refusal to discharge contractual responsibilities."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (emphasis added).  At bar, Defendants "fail[ed] or refus[ed] to discharge their responsibilities" by deliberately, "at their own discretion" and  "as they saw fit," disclosing consumers' personal information to vendors despite selling and distributing their Apps digitally.  Compl., ¶ 112

Defendants next contend that an "incorrect" contract interpretation cannot support an implied-covenant claim, *see* Def. Mot. at 12, but where the parties disagree as to the correct interpretation of the contract, whether Defendants' exercise of discretion under the contract was reasonable or not involves questions of fact that cannot be decided on a motion to dismiss.[10]  And

---

[10] Defendants' authority for this proposition actually demonstrates the adequacy of the pleading: it

20

Defendants reiterate that Plaintiff has not established any harm resulting from their conduct, *see*

Def. Mot. at 12-13, an argument that fails for the same reasons their arguments on harm in the

context of standing and breach of contract fail. Because Plaintiff has properly alleged breach of

the implied covenant of good faith and fair dealing, this court should deny Defendants' motion to

dismiss as to this claim.

## IV.   Plaintiff Has Stated a Valid Claim Under Section § 2701 of the Stored Communications Act

### A.   Language and Purpose of the Statute

The Stored Communications Act establishes criminal and civil liability for unauthorized

access to stored communications and records. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d

868, 874 (9th Cir. 2002). The Act creates a private right of action against anyone who "(1)

intentionally accesses without authorization a facility through which an electronic communication

service is provided; or (2) intentionally exceeds an authorization to access that facility; and

thereby obtains, alters, or prevents authorized access to a wire or electronic communication while

it is in electronic storage in such system." 18 U.S.C § 2701(a); *see also id*. § 2707 (creating a

private right of action). Section 2701 thus "reflects Congress's judgment that users have a

legitimate interest in the confidentiality of communications in electronic storage at a

communications facility." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004).

### B.   Plaintiff's Complaint Alleges Both Improper Access and Improper Disclosure

Defendants initially argue that Section 2701 does not apply because it prohibits only

unauthorized access of information, and Plaintiff has merely alleged that they wrongfully

disclosed her information. *See* Def. Mot. at 14. But Plaintiff's complaint is rife with allegations

---

clarifies that whether a contract interpretation is erroneous "is not dispositive of whether [the
defendant] acted in bad faith, but it is an essential component of showing bad faith." *Id.* Thus,
contrary to Defendants' assertions, "establishing that [the defendant's contract] interpretation . . .
is erroneous is a necessary element of [plaintiff's] hypothesized claim for breach of the implied
covenant." *See Merced Irrigation Dist. v. County of Mariposa*, 941 F. Supp. 2d 1237, 1283 (E.D.
Cal. 2013). Plaintiff alleges that Defendants' interpretation of the terms was both erroneous and
unreasonable, as required for pleading bad faith. *Id.*; Compl., ¶¶ 111-15.

that establish Defendants' violations of Section 2701. *See* Compl., ¶¶ 12-13, 40-43, 53, 55, 59, 63, 77, 124-25. Plaintiff asserts that Defendants "exceeded their authorized access to the facilities through which [they] provide the electronic communications at issue" and "thereby altered access to [Plaintiff's] SID . . . by allowing third-party vendors access to the SID." *Id.*, ¶¶ 124-25.

Defendants seem to believe claims for wrongful access and wrongful disclosure are mutually exclusive, but unauthorized access was simply the first step Defendants took in misusing Plaintiff's SID. "Access" means "being in position to acquire the contents of a communication." *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998). Thus, someone might violate Section 2701's "access" prohibition "by simply making unauthorized use of [a] . . . password and roaming about [a communications facility]," even without recording or disclosing data stored on that system. *Id.* The Act's definition of "access" therefore comports with the word's ordinary meaning, "to get at" or to "gain access to." *Id.* Plaintiff's complaint alleges that she initially authorized Defendants to use her personal information subject to the agreed privacy terms, which included limits. Defendants exceeded that authorization by keeping her information on their servers, retrieving that information, and altering access to it so that third-party vendors obtained it. *See* Compl., ¶¶ 118-29. Plaintiff thus alleges that Defendants both accessed and disclosed her information in violation of the Act. Indeed, Defendants' position is illogical; they had to have "access" to Plaintiff's information before they could "disclose" it. The problem posed by their logical inconsistency may explain why Defendants do not contend they never accessed Plaintiff's SID and instead focus their argument on technical quibbles with her complaint. But an accurate reading of Plaintiff's allegations shows that the argument has no merit. Plaintiff has plainly stated the elements of a claim for unauthorized access under Section 2701 in addition to a claim for improper disclosure under Section 2702. *See* Compl., ¶¶ 12-13, 40-43, 53, 55, 59, 63, 77, 124-25; *see also* § V, *infra*.

## C. Defendants Are Not Exempt From Section 2701

Defendants next contend that, as service providers, they are not subject to Section 2701's

access restrictions.[11]   They cite an exception to the Act's general prohibitions, which provides that Section 2701(a) "does not apply with respect to conduct *authorized* by the person or entity providing a wire or electronic communications service."  18 U.S.C. § 2701(c)(1) (emphasis added).  Defendants seemingly believe that, as service providers, they are entitled to *any* access of Plaintiff's information, even if the access was unauthorized or exceeded authorization.  None of the authority Defendants cite involve a service provider who agreed to access information only for a limited purpose, and then exceeded the limits of that authorization to alter access for a third party.  Because the facts of this case are distinguishable, Defendants cannot escape liability under the exception contained in Section 2701(c)(1).

Defendants point to a line of cases summarily concluding that service providers cannot improperly access their own systems, without considering those rulings in the context of this case. *See* Def. Mot. at 15-16.  These decisions are unpersuasive for two reasons.  First, the cases are factually inapposite.  None involve a defendant who, as a condition of obtaining the information in the first place, agreed to limitations on its ability to access that information.  These cases are thus distinguishable: here, Defendants expressly agreed that they lacked authorization to access Plaintiff's information under some circumstances.  While, in keeping with the case law, it may make sense to exempt providers from liability where neither law nor contract restrict their ability to access their own systems, that is not the situation here.  The decisions relied upon by Defendants do not address the facts of this case.

Second, none of the cases consider the issue at length; rather, they apply the exception with cursory analysis at best and fail to consider whether the access was authorized or not. *See,*

---

[11] To the extent Defendants suggest the Act was intended to address only the problem of hackers, *see* Def. Mot. at 13, courts have rejected this interpretation. *See Lazette v. Kulmatycki*, No. 3:12-CV-2416, 2013 U.S. Dist. LEXIS 81174, at *9 (N.D. Ohio June 5, 2013) (the Act's reach is not limited to hackers); *Thayer Corp. v. Reed*, 2:10-cv-00423-JAW, 2011 U.S. Dist. LEXIS 74229, *19 (D. Me. July 11, 2011) (same); *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000) ("The provisions of [the Act] apply to *persons or entities in general* and prohibit intentional accessing of electronic data without authorization or in excess of authorization.") (emphasis added).

e.g., *United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005) (stating in dicta that § 2701(c)(1) "arguably" establishes immunity for service providers); *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 115 (3d Cir. 2003) (acknowledging lack of case law interpreting the exception and holding only that provider could not be liable for searching its own servers); *Buza v. Yahoo! Inc.*, No. C-11-4422 RS, 2011 U.S. Dist. LEXIS 122806, at *1 (N.D. Cal. Oct. 24, 2011) (applying § 2701(c)(1) exception without analysis); *Crowley v. CyberSource Corp.,* 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (same); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1233 (D. Nev. 1996) (holding only that service provider was allowed to access systems it had issued to its own employees).[12]

A closer look at how courts have defined the word "authorize" shows that the concept places limits on a service provider's blanket authority to access information on its servers. In *Theofel*, the Ninth Circuit recognized that under some circumstances, permission to access information might not constitute a valid authorization. *Id.*, 359 F.3d at 1073. The court observed that "Section 2701(c)(1) . . . provides no refuge for a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access." *Id.*; *see also EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577, 582 n.10 (1st Cir. 2001) (holding access may be "unauthorized" under the Computer Fraud and Abuse Act if it is "not in line with the reasonable expectations" of the party granting permission (internal quotation marks omitted)); *United States v. Morris*, 928 F.2d 504, 510 (2d Cir. 1991) (holding access unauthorized where it is not "in any way related to [the system's] intended function"); *Lazette*, 2013 U.S. Dist. LEXIS 81174, at *10-14 (the mere fact employer used company-owned Blackberry to access employee's personal emails did not mean that access was authorized). In other words, the kind of consent that authorizes access under Section 2701(c)(1) must be consistent with the parties' reasonable expectations, not based on a mistake in fact or law, and related to the intended use of the service.

---

[12] Defendants' reference to a U.S. Dept. of Justice manual, *Prosecuting Computer Crimes*, http://www.justice.gov/criminal/cybercrime/docs/ccmanual.pdf, is misplaced for the same two reasons. *Id.* at 94. The manual was also intended to provide internal suggestions to Department of Justice attorneys, not precedential authority. *Id.* at 1, 5.

24

No such consent was given here.  Defendants expressly agreed to limit their access to Plaintiff's information and then violated that agreement against her reasonable expectations and unrelated to her use of their services.  Compl., ¶¶ 12-13, 40-43, 53, 55, 59, 63, 77, 124-25.  They cannot justify this conduct after the fact by claiming they "consented" to their own improper access.

Defendants themselves defined the limits they exceeded.  Their own policy withheld the required "authorization" needed to disclose personal information.  *Id*., ¶¶ 35-37.  Nonetheless, Defendants gave vendors access to personal information because it was wrongly identified as "shipping information" – information digital vendors did not require, since their products were transmitted electronically.  *Id.,* ¶¶ 52, 57.  Indeed, vendors themselves were surprised to receive the information from the Defendants.  *Id.,* ¶ 62.  By enabling access for *digital* vendors – and *not* just vendors whose items actually needed shipping – Defendants appear to be exploiting precisely the sort of "known mistake" that precludes applicability of the Section 2701(c)(1) exception.  *Theofel*, 359 F.3d at 1073.  Moreover, access of information for a completely superfluous purpose (vendors do not need shipping information for a product that is never shipped) cannot be authorized because it does not relate to Wallet's intended function.  *See Morris*, 928 F.2d at 510 (authorized access must be related to the system's intended function).  Defendants' argument, taken to its logical conclusion, would mean that they are allowed to access any information stored on their servers at any time and for any reason without running afoul of the Act, regardless of law or contract restricting that access.  That cannot be the case.  *See, e.g., Theofel*, 359 F.3d at 1074-75 (consent to access must have legally sound basis).

Defendants also argue that Plaintiff cannot assert wrongful access because she voluntarily gave them her information.  Def. Mot. at 15-16.  In support of this position, they cite a case rejecting a Section 2701 claim because the defendant's access to the plaintiff's personal computer was not unauthorized.  *See Crowley,* 166 F. Supp. 2d at 1271-72 (N.D. Cal. 2001) (where plaintiff sent his information to defendant electronically and defendant did not access his computer to obtain that information, defendant had not violated § 2701).  But this argument is beside the point.  Plaintiff doesn't contend Defendants obtained her information unlawfully in the first place;

25

rather, her argument is that after she gave her information to Defendants, they made unauthorized use of it. Similarly, Defendants' contention that Plaintiff's claim fails because personal computers and mobile devices are not "facilities" that can be wrongfully accessed under Section 2701 is a red herring. *See* Def. Mot. at 16 n.9. Plaintiff's complaint does not claim her mobile device or personal computer is a "facility"; it instead alleges that Defendants' remote servers through which they provide electronic services are "facilities" under the Act, an allegation Defendants do not dispute. *See* Compl., ¶¶ 119, 124-25. These efforts to cloud the issue cannot obscure the basic facts supporting Plaintiff's claim: that she provided her personal information to Defendants on the condition that they would access it only for a specific purpose, that they then exceeded that limited authorization by accessing the information for a disallowed purpose, and that they altered access to her information by allowing a third party to obtain it. *See* Compl., ¶¶ 37, 40-42, 44, 50-57, 66, 71.

Defendants' arguments that Plaintiff has failed to state a claim for improper access and that, as service providers, they could access Plaintiff's information whenever they chose, both fail. Because Plaintiff has alleged a claim under Section 2701 and Defendants are not exempt from the statute's requirements, this Court should deny Defendants' motion as to this claim.

## V. Plaintiff Has Stated a Valid Claim Under Section 2702 of the Stored Communications Act

### A. Language and Purpose of the Statute

The Act also bars providers of electronic communication or remote computing services from disclosing communications entrusted to them by their users. 18 U.S.C. §§ 2702(a)(1), (a)(2); *see also* S. Rep. No. 99-541, at 37 (1986) (purpose of § 2702 is to prohibit providers from divulging contents of electronic communications to anyone other than the intended recipient). Specifically, the statute states that:

> a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.

26

18 U.S.C. § 2702(a)(1).  And:

> a person or entity providing a remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service . . . on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service.

*Id.*, § 2702(a)(2).  Defendants concede for the moment that they count as "providers" of electronic communication and remote computing services, *see* Def. Mot. at 17 n.10, and instead argue that they were allowed to disclose Plaintiff's SID because that information falls under the category of "records" rather than the type of "content" protected in Section 2702(a), *id.* at 16-19. In support of this theory, Defendants point to several other statutory provisions which, they say, together exempt them from liability for disclosing Plaintiff's SID.  *See* 18 U.S.C. §§ 2702(c)(6) ("[a] provider . . . may divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any person other than a governmental entity"); 2703(c) ("records" include a user's name and address, telephone connections or duration of calls, length of service and type of service used, telephone or subscriber numbers, network addresses, and means of payment); 2510(8) (defining "content" as "any information concerning the substance, purport, or meaning of that communication").  However, Defendants' analysis of these statutory provisions is inconsistent with the relevant case law.  This Court should reject their interpretation and deny their motion to dismiss Plaintiff's claim.

### B.    Defendants Disclosed the Contents of Plaintiff's Communications in Violation of § 2702

Defendants' principal argument is that Plaintiff's SID is precisely the kind of information they are allowed to disclose under the Act.  Def. Mot. at 16-19.  Defendants are correct that the Act distinguishes between "content," which cannot be disclosed, and "records," which may be shared in some circumstances.  *Compare* 18 U.S.C. § 2702(a) (prohibiting disclosure of content) with § 2703(c) (identifying exceptions for disclosure of records).  But case law interpreting these

27

terms reveals that Plaintiff's SID falls under the category of "content."

Courts have generally drawn a line between "content" and "records," depending on whether the information at issue was intentionally provided by the plaintiff or merely transactional data incidental to the plaintiff's use of an electronic communications system. In *United States v. Reed*, for instance, the Ninth Circuit ruled that data showing the length and time of a phone call did not meet the statutory definition of "contents of a communication" and thus was exempt from the Wiretap Act's sealing requirements.[13] *Id.*, 575 F.3d 900, 914-917 (9th Cir. 2009) (interpreting § 2510(8)'s definition of "content"). The court reasoned that "data that is incidental to the use of a communication device and contains no 'content' or information that the parties intended to communicate" falls under the category of records rather than content. *Id.*, 575 F.3d at 916. In another case, the court dismissed plaintiffs' claim on the basis that the geolocation data collected by defendant was "generated automatically, rather than through the intent of the user, and therefore [did] not constitute 'content.'" *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012); *see also United States v. Saville,* CR 12-02-BU-DLC, 2013 U.S. Dist. LEXIS 88428, at *3 (D. Mont. June 21, 2013) (defining content as information the user intended to communicate); *United States v. Lazu-Rivera*, 363 F. Supp. 2d 30, 38 (D. P.R. 2005) (quoting Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping*, § 2:9, 15–16 (2d ed. 1995 & Supp. 2004) and observing that "[t]he definition [of "contents"] therefore includes anything relating to what was said or transmitted, but does not include 'transactional information'—information that only reveals that a communication occurred (and between or among whom), without revealing what was said or communicated"); Orin S. Kerr, *A User's Guide to the Stored Communications Act and a Legislator's Guide to Amending It,*

---

[13] Cases assessing claims under the Wiretap Act interpret the same statutory provision, 18 U.S.C. § 2510(8), from which Defendants draw their definition of "content" and which courts apply in the SCA context as well. *See* Def. Mot. at 18; *see also* 18 U.S.C. § 2711 (the definitions contained in 18 U.S.C. § 2510 apply to the SCA); *Yunker v. Pandora Media, Inc.*, No. 11-cv-3113-JSW, 2013 U.S. Dist. LEXIS 42691, at *18 (N.D. Cal. March 26, 2013) (interpreting § 2510(8) in the wiretap context); *Hill v. MCI WorldCom Communs., Inc.*, 120 F. Supp. 2d 1194, 1195-96 (S.D. Iowa 2000) (applying § 2510(8) in the SCA context).

72 Geo. Wash. L. Rev. 1208, 1232 (Aug. 2004) ("Content information is the communication that a person wishes to share or communicate with another person.").

Drawing from these holdings, in *Yunker v. Pandora Media, Inc.*, the court denied a motion to dismiss where the defendant – like the Defendants here – maintained that "a person's zip code, gender, or birthday" could not comprise the "substance, purport, or meaning" of a communication and was instead a mere record not subject to the Act's bar against disclosure. *Id.*, No. 11-cv-3113-JSW, 2013 U.S. Dist. LEXIS 42691, at *18-20 (N.D. Cal. March 26, 2013). Relying upon *Reed* and *In re iPhone Application Litigation*, the court rejected this argument:

> Yunker alleges that he intended to provide his PII to Pandora when he registered for its service. Thus, the facts in this case are distinguishable from the facts in *iPhone II*, because Yunker's Wiretap Act Claim is not based on a communication that includes data that has been generated automatically. Rather, on the facts of this case, Yunker alleges that the PII *is* the substance of the electronic communication.

*Yunker*, 2013 U.S. Dist. LEXIS 42691, at *20 (emphasis in the original). The court thus ruled that the plaintiff's personal information was "content" under the Act. *Id.*; *see also In re United States ex rel. an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 574 (D. Md. 2011) (finding effort to characterize GPS data as mere "record" information under 18 U.S.C. § 2703(c) unpersuasive because the data was neither ancillary information collected by the service provider in the course of its business, nor was it information automatically generated or stored incidental to calls). Plaintiff has similarly alleged that she deliberately provided her personal information to Defendants as a key part of using the Wallet payment platform. Compl., ¶¶ 48-49, 70-73, 139. This purposeful transaction was neither ancillary nor incidental; rather, it was the primary substance of Plaintiff's electronic communications with Defendants. *Id.*

Defendants attempt to distinguish this line of cases by pointing to two decade-old decisions evaluating the "records" exception to the Act. Neither is persuasive. The first, *Jessup-Morgan v. AmericaOnline, Inc.*, involved a service provider's disclosure of a user's name in response to a valid subpoena where the user had violated the terms of service by using AOL's

29

1    platform to harass her husband's ex-wife. *Id.*, 20 F. Supp. 1105, 1106-08 (E.D. Mich. 1998). The
2    court merely ruled, without analyzing the statutory language, that the identity of a user of an
3    electronic communications service did not count as "content." *Id.* at 1108. In other words, the
4    mere fact that the plaintiff had subscribed to the defendant's service was held distinct from the
5    content of the communications she authored using that service. *Id.* To begin with, it is worth
6    noting that the *Jessup-Morgan* court did not consider the issue at length or address the
7    content/records distinction more recent cases have applied. *Compare id.* (summarily concluding
8    that a user's identity was not "content") with *Yunker*, 2013 U.S. Dist. LEXIS 42691, at *18-20
9    (distinguishing between automatically generated "records" and intentionally provided "content").
10   But more importantly, the *Jessup-Morgan* ruling can be reconciled with the current approach: a
11   list of its subscribers is precisely the type of ancillary information a provider might produce.
12   Moreover, the plaintiff in *Jessup-Morgan* did not allege that she had intentionally provided the
13   defendant with the information it disclosed. In contrast, the information Defendants disclosed in
14   this case included far more than the mere fact that Plaintiff had used their services – rather, their
15   disclosure contained personal information Plaintiff had intentionally provided them. Similarly, in
16   *Hill v. MCI WorldCom Communications, Inc*. – the second case Defendants rely upon – the court
17   ruled only that information "obtained from the general records [the defendant] maintains on all of
18   its customers in the normal course of its business" did not count as "contents" for purposes of the
19   Act. *Id.*, 120 F. Supp. 2d 1194, 1195 (S.D. Iowa 2000). But general business records are, again,
20   precisely the type of incidental data a service provider might generate, in contrast to the
21   information at issue here, which Plaintiff intentionally provided Defendants and which
22   constituted the substance of her electronic communication with Defendants. *See* Compl., ¶¶ 48-
23   49, 70-73, 139. Plaintiff's SID was not bulk information Defendants collected for all of their
24   customers, nor was it automatically generated or ancillary to their course of business.

25       Because Plaintiff's allegations are in line with those in *Yunker* – where the court declined
26   to dismiss the plaintiff's claims because he "allege[d] that the [personal information] was the
27   substance of the electronic communication" – this Court should reject Defendants'
28
                                              30

characterization of Plaintiff's SID as "records" and instead rule that she has adequately alleged a claim for wrongful disclosure of the contents of her electronic communications. *Id.*, 2013 U.S. Dist. LEXIS 42691, at *5.

## C. The Act Does Not Authorize Defendants' Disclosure

Defendants also argue in a footnote that, as the intended recipients of Plaintiff's information, they were authorized to disclose it to others even if it qualifies as "contents." Def. Mot. at 19, n.11. The exception Defendants rely on establishes that "[a] provider . . . may divulge the contents of a communication . . . with the *lawful* consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." 18 § U.S.C. 2702(b)(3) (emphasis added). But Defendants' disclosure was *not* lawful: it violated not only the contract terms but, more crucially, California's Online Privacy Protection Act,[14] as well as the Unfair Competition Law and the Act itself. Cal. Bus. Prof §§ 22576, 17200; *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266-67 (1992) (the UCL's broad scope encompasses "anything that can properly be called a business practice and that at the same time is forbidden by law"); *see also In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (an "unlawful" act is one "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made"). Any purported "consent" Defendants may have granted themselves to divulge Plaintiff's SID does not fall within the scope of Section 2702(b)(3) because the law bars them from giving that consent. Section 2702(b)(3) does not sanction Defendants' unlawful disclosure of Plaintiff's information.

Defendants' arguments that Plaintiff's information was not protected by the Act or that, in

---

[14] The OPPA provides that "[a]n operator of a commercial Web site or online service that collects personally identifiable information through the Web site or online service from individual consumers who use or visit the commercial Web site or online service and who reside in California shall be in violation of this section if the operator fails to comply with the provisions of Section 22575 or with the provisions of its posted privacy policy in either of the following ways: (a) Knowingly and willfully; (b) Negligently and materially." Cal. Bus. Prof § 22576.

the alternative, they were authorized to disclose it, are unavailing. And those are the *only* challenges Defendants muster to Plaintiff's Section 2702 claim: they do not contest that they are providers of electronic communications and remote computing services, that they stored Plaintiff's SID on their servers, that they disclosed Plaintiff's SID to a third-party vendor, or that they failed to obtain Plaintiff's consent to that disclosure. Because the only objections Defendants lodge are contrary to applicable law and Plaintiff's well-pleaded complaint, their motion to dismiss should be denied as to this claim.

**VI. Plaintiff Has Adequately Pleaded a UCL Claim Under Either the "Unlawful" or "Unfair" Prongs of Section 17200**

California's UCL is one of the broadest pro-consumer remedial business statutes in the nation. *Bank of the West,* 2 Cal. 4th at 1266-67 (noting that the California legislature "intended the [UCL's] sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law," and "in drafting the act, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity") (internal quotation marks omitted). The UCL is specifically designed to remedy acts, such as those alleged by Plaintiff in this action, where defendants engage in unlawful and unfair business practices. Ignoring the UCL's fundamental purpose, Defendants urge this Court to narrow the scope of the UCL by: (1) imposing a "reliance" requirement where none exists, *see* Def. Mot. at 22-23; and (2) claiming that Plaintiff lacks statutory standing to sue because she does not, and cannot, allege that she "lost money or property as a result of Defendants' actions," *see* Def. Mot. at 19-22. They are wrong on both counts.

**A. California Law Does Not Require Plaintiff to Allege Reliance Under Either the "Unlawful" or "Unfair" Prongs of Section 17200**

Under Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *See Daugherty v. American Honda Motor Co.,* 144 Cal. App. 4th 824, 837 (2006); *see also Albillo v. Intermodal Container Servs., Inc.,* 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is

32

1  forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely
2  to deceive members of the public)").  Thus, a violation of the UCL is pleaded sufficiently solely
3  for unlawful or unfair conduct.

4        The UCL is a remedial act which courts construe broadly to "deter future violations ... and
5  to foreclose retention by the violator of its ill-gotten gains." *Bank of the West*, 2 Cal. 4th at 1267.
6  Despite this clear directive, Defendants contend that California's Proposition 64 narrowed the
7  UCL by imposing a "reliance" requirement, barring recovery for plaintiffs unless they prove they
8  relied upon a defendant's misrepresentations.  Def. Mot. at 22-23.  Defendants are simply wrong.
9  Post-Proposition 64 decisions have affirmed that the UCL does not impose a reliance requirement
10 *unless* the UCL claim is predicated on the "fraudulent" prong of Section 17200:

12        It is logical to require reliance on misrepresentations when a UCL claim is
        premised on allegations that the defendants engaged in fraudulent business
13        practices.  However, where, as here, plaintiffs allege that they were harmed by
        other types of misconduct actionable under the UCL [i.e., unfair business
14        practices] the Court finds no basis for requiring reliance on misrepresentations.

15 *Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007); *see also Olivera v.*
16 *American Home Mortg. Servicing, Inc.* 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) (plaintiffs
17 need not allege reliance on misrepresentation for "unfair" or "unlawful" UCL claims and may
18 plead causation more generally).  The decisions Defendants rely upon[15] to argue that "reliance" is
19 a required element of a UCL claim post-Proposition 64 are inapposite, because unlike Plaintiff's
20 "unlawful" and "unfair" claims, all four decisions involve a UCL claim based on the "fraudulent"
21 prong of Section 17200.  *See* Def. Mot. at 22-23.

22        **1.    Pleading Reliance is Unnecessary under the "Unlawful" Prong**

23        Section 17200 "borrows" violations of other laws and treats them as unlawful business
24 practices *independently* actionable under the statute.  *See Cel–Tech Commc'ns, Inc. v. Los*

26 [15] The cases Defendants erroneously rely upon are: *Herrington vs. Johnson & Johnson Consumer*
    *Cos.,* No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010); *Kwikset Corp.*
27 *vs. Superior Court*, 51 Cal. 4th 310 (2011); *Durell vs. Sharp Healthcare*, 183 Cal. App. 4th 1350
    (2010); and *In re Tobacco Cases II*, 46 Cal. 4th 298 (2009).  *See* Def. Mot. at 23:1-27.
28
                                              33

1 | *Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999) ("*Cel-Tech*"); *Farmers Ins. Exch. v.*

2 | *Superior Ct.*, 2 Cal. 4th 377, 383 (1992). Virtually any law – federal, state or municipal, statutory

3 | or common law, civil or criminal, regulatory or court-made – can serve as predicate for a Section

4 | 17200 "unlawful" violation. *Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700, 718

5 | (2001). Thus, if a "business practice" violates any law – literally – it also violates Section 17200

6 | and may be redressed under that section. *People v. E.W.A.P., Inc.,* 106 Cal. App. 3d 315, 319

7 | (1980). As adequately pleaded in Plaintiff's Complaint, Defendants' business practices violate

8 | the Stored Communications Act and constitute both a breach of contract and a breach of the

9 | implied covenant. *See* §§ II, IV, and V, *infra*. They also violate California's Online Privacy

10 | Protection Act. *See* § V.C, *infra*. Because the "unlawful" prong of Section 17200 makes a

11 | violation of the underlying law a *per se* violation of the statute, Plaintiff's unlawful UCL claim is

12 | also pleaded sufficiently. *Pirozzi,* 2013 U.S. Dist. LEXIS 110729, at *27 ("to the extent

13 | Plaintiff's FAL and CLRA claims survive, Plaintiff's "unlawful" UCL claim does, too").

14 | **2.    Pleading Reliance is Also Unnecessary Under the "Unfair" Prong**

15 | The UCL also creates a cause of action for a business practice that is "unfair" even if not

16 | specifically prohibited by some other law. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.

17 | 4th 1134, 1143 (2003). Plaintiff asserts a claim under the "unfair" prong based on Defendants'

18 | unauthorized and unnecessary disclosure of her SID without her consent or knowledge. In their

19 | motion to dismiss, Defendants do not challenge the allegations in support of Plaintiff's unfair

20 | UCL claim. As demonstrated below, they cannot.

21 | "The proper definition of 'unfair' conduct against consumers 'is currently in flux' among

22 | California courts." *Davis v. SBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012) (citing

23 | *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 735 (9th Cir. 2007)).[16] The pleaded facts

24 | easily meet any of the tests for unfairness employed by the courts.

25 |

---

26 | [16] *See also Dorfman v. Nutramax Labs., Inc.* No. 13-cv-0873 WQH (RBB), 2013 U.S. Dist. LEXIS 136949, at *36-38 (S.D. Cal. Sept. 23, 2013); *Pirozzi,* 2013 U.S. Dist. LEXIS 110729, at

27 | *25-26 (both recent decisions that acknowledge the current split of authority on the issue).

28 |

Applying the "balancing test" under *South Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886–87 (1999), the court must "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *See McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1473 (2006). Plaintiff alleges that Defendants' conduct in disclosing SID to third parties is an "oppressive, immoral, unethical, and unscrupulous" business practice that "caused substantial injury to Plaintiff and the Class." Compl., ¶¶ 153-64. Although Defendants contracted to protect user information, they instead allowed third parties to access it without users' consent. *Id*., ¶¶ 35-37, 153-59. Moreover, Defendants' unauthorized disclosure of SID has no reasonable or legitimate justification, and caused injury to Plaintiff. *Id*., ¶¶ 78-89, 163. Defendants could easily have avoided this conduct but decided to share this information to enhance their business with vendors to Plaintiff's detriment. *Id*., ¶¶ 78-89, 163. In response, Defendants offer nothing in their motion "in the way of reasons, justifications, or motives or utility of [their] conduct to weigh against the alleged harm." *Pirozzi*, 2013 U.S. Dist. LEXIS 110729, at *27 (internal quotations omitted). Whether the benefits of Defendants' conduct outweigh the harm to consumers is a factual determination that cannot be made at the pleading stage. Nor can the Court conclude as a matter of law that Defendants' practices are not injurious to consumers given Plaintiff's detailed allegations of harm. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073 (reaching the same conclusion in denying a motion to dismiss UCL claim under the "unfair" prong).

Other courts have required a plaintiff to show that a practice violates public policy as declared by "specific constitutional, statutory or regulatory provisions" or that the practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," i.e., the "tethering test" as set forth in *Cel-Tech. See Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1260–61 (2006); *see also Lozano*, 504 F.3d at 736 (discussing tension among courts in defining "unfair" under the UCL). Under this test, Plaintiff alternatively alleges that Defendants' disclosure of her sensitive information is unfair because it violates several applicable public policies protecting the privacy of consumers. Compl., ¶¶ 160-64. Thus, the Complaint

35

1    adequately alleges that the "unfair" business practice claim is tethered to a legislatively declared

2    policy of protecting consumer privacy.

3        This Court has held, "[a]n act or practice is unfair if the consumer injury is substantial, is

4    not outweighed by any countervailing benefit to consumers or to competition, and is not an injury

5    the consumers themselves could reasonably have avoided." *Woods v. Google Inc.,* No. 5:11-CV-

6    01263-EJD, 2013 U.S. Dist. LEXIS 51170, *21-22 (N.D. Cal. Apr. 9, 2013) (internal quotations

7    and citations omitted).  An injury is sufficiently substantial if it does small harm to a large

8    number of people, *see, e.g., FTC v. Neovi, Inc.,* 604 F. 3d 1150, 1157 (9th Cir. 2010) (citations

9    omitted) (interpreting substantial injury under the FTC Act), and "consumers cannot have

10   reasonably avoided the injury if they could not have reasonably anticipated it," *Camacho v. Auto.

11   Club of Southern California*, 142 Cal. App. 4th 1394, 1405 (2006).  The pleaded facts

12   alternatively meet these guidelines, too.  Plaintiff alleges that Defendants divulged the sensitive

13   information of a wealth of App consumers who paid (at least in part) for its protection on

14   Defendants' online store.  Unlike in *Camacho,* where, the court noted, "[t]he public is well served

15   when an uninsured driver who was at fault responds to his or her obligations," *id.* at 1405, here,

16   no benefit is served by permitting Defendants to violate their agreements or share sensitive

17   consumer information.  Nor could consumers have anticipated the practice, which Defendants

18   undertook contrary to their terms and despite the fact that consumers got and paid for their Apps

19   from the Defendants online. [17]

20       Because Plaintiff has stated a claim under the "unfair" prong of the UCL, the Court should

21   deny Defendants' motion to dismiss as to this claim.

22

23

---

24   [17] A breach of contract may form the predicate for a Section 17200 claim under the "unfair" prong
     "provided it also constitutes conduct that is unlawful or fraudulent." *Sybersound Records,Inc. v.
25   UAV Corp.,* 517 F.3d 1137, 1152 (9th Cir. 2008) (quoting *Nat'l Rural Telecomm. Coop. v.
     DIRECTV, Inc.,* 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)); *see also Puentes v. Wells Fargo
26   Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (same) (quoting *Watson Laboratories, Inc.
     v. Rhone-Poulenc Rorer, Inc.,* 178 F. Supp. 2d 1099, 1117, n.12 (C.D. Cal. 2001).  Because
27   Plaintiff pleaded that Defendants' breach of contract is independently unlawful, the contract claim
     provides an independent basis for the "unfair" UCL claim.

28

1          **B.    Plaintiff Has Statutory Standing to Plead a Violation of the UCL**

2          While narrowing the category of persons who could sue, Proposition 64 expressly sought

3   to protect the "broad remedial purpose" of the law by ensuring that the right of injured individuals

4   and businesses to bring suit would not be infringed.  *Tobacco II,* 46 Cal. 4th at 316-17; *accord*,

5   *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) ("*Mervyn's*");

6   *see also* Proposition 64, § 1, subd. (a) (PRJN, Ex. 1).  "Proposition 64 accomplishes its goals in

7   relatively few words."  *Tobacco II,* 46 Cal. 4th at 314.  The measure amended the UCL by

8   deleting the provision that had previously authorized suits by unaffected plaintiffs and replacing it

9   with a provision that authorizes suits by those who have "suffered injury in fact and ha[ve] lost

10  money or property as a result of the unfair competition."  *Id.*  The "relatively few words" by

11  which Proposition 64 is intended to preclude frivolous actions by uninjured plaintiffs while

12  preserving the UCL as a vital tool of consumer protection are simple words with plain and

13  ordinary meanings.  The term "injury in fact" has a well-accepted meaning under Article III, and

14  the voters were expressly told the term would have that meaning.  *See* PRJN, Ex. 1, § 1, subd. (e).

15  The phrase "lost money or property" also has a plain meaning: to lose money or property is to be

16  deprived of it.  The phrase "as a result of" plainly connotes a connection or cause.

17          Consistent with Proposition 64's limited purpose of eliminating the unaffected "private

18  attorney general" feature, the initiative made only "procedural changes with respect to standing"

19  that "'left entirely unchanged the substantive rules governing business and competitive conduct.'"

20  *Tobacco II*, 46 Cal. 4th at 313-14 (quoting *Mervyn's*, 39 Cal. 4th at 232).  The initiative did not

21  change the fact that UCL actions do not require proof of most common law tort elements, *see*

22  *Tobacco II*, 46 Cal. 4th at 312, nor did it change the UCL's focus on the defendant's conduct

23  rather than on the plaintiffs' damages or the remedies available*, see id.* at 312, 319.  The sole

24  standing change is that now only those who have suffered a particular type of injury – loss of

25  money or property – as a result of the alleged misconduct can sue.

26          In their motion to dismiss, Defendants argue that Plaintiff lacks standing under the UCL

27  because she does not allege she "lost money or property" as a "result" of Defendants' actions.

28
                                                    37

Def. Mot. at 20-22. They contend that the price Plaintiff paid for the App "is not attributable to any actions or statement made by the defendants." *Id*. at 20:11-16. Defendants are wrong again. Plaintiff plainly alleges that, under the contract terms and applicable law, Defendants were barred from disclosing SID to third parties. Compl., ¶ 103. Plaintiff further alleges that before a user can purchase an App, she is required to agree to contract terms which purportedly protect SID from disclosures to third parties. *Id*., at ¶¶ 98-102, 154-55. Plaintiff also alleges that Defendants' disclosure of the SID to third parties not only is in breach of contract, but also violates the Stored Communications Act and California public policy aiming to protect the privacy of its consumers. *Id*., at ¶¶ 116-46. And Plaintiff alleges that, as a result of Defendants' unlawful and unfair business practices, she lost money she paid for Defendants' services. *Id*., ¶¶ 147, 155-57. Contrary to Defendants' assertion, *see* Def. Mot. at 20, Plaintiff paid Defendants for the App she purchased; Defendants collected her payment via Wallet and then sent a portion of it to the vendor. *Id*., ¶¶ 45, 47, 49, 74, 76.

Under these facts, the relevant inquiry here is not, as Defendants suggest, whether Plaintiff lost money as a result of their misrepresentations, but whether by paying for the App using Wallet, Plaintiff received the service she bargained for – receipt of the App without unnecessary disclosure of SID. *See* Def. Mot. at 20-21; Compl., ¶¶ 80-81, 85-86. Plaintiff alleges she did not, and lost money or property as a result of Defendants' unlawful and unfair business practices. The court should find that Plaintiff has standing under the UCL.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be wholly denied.

Respectfully submitted,

Alice Svenson, individually and on behalf of all others similarly situated

By: /s/Kathryn Diemer
Kathryn Diemer
Diemer, Whitman & Cardosi, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113

38

Phone: 408-971-6270
Fax: 408-971-6271
kdiemer@diemerwhitman.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV-13-04080-EJD