Kathryn Diemer
Diemer, Whitman & Cardosi, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
Phone: 408-971-6270
Fax: 408-971-6271
kdiemer@diemerwhitman.com
CA Bar No.: 133977

Frank Jablonski (*Pro Hac Vice*)
Progressive Law Group LLC
354 West Main Street
Madison, WI 53703
Phone 608-258-8511
Fax: 608-442-9494
frankj@progressivelaw.com

Elizabeth Roberson-Young (*Pro Hac Vice*)
Mark Bulgarelli (*Pro Hac Vice*)
Progressive Law Group LLC
1 N. LaSalle Street, Suite 2255
Chicago, IL 60602
Tel: 312-787-2717
Fax: 888-574-9038
liza@progressivelaw.com
markb@progressivelaw.com

Counsel for Plaintiff Alice C. Svenson

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| Alive Svenson, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br><br> Google, Inc., a Delaware Corporation, and Google Payment Corporation, a Delaware Corporation, <br><br> Defendants. | Case No. 13-cv-04080-BLF <br><br> CLASS ACTION <br><br> FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE STORED COMMUNICATIONS ACT, BREACH OF CONTRACT, AND CAL. BUS. PROF. CODE § 17200 <br><br><br> DEMAND FOR JURY TRIAL |

1

**First Amended Class Action Complaint**

Plaintiff Alice Svenson, on behalf of herself and all others similarly situated, by and through her counsel, based upon personal knowledge as to facts known to Plaintiff, and upon information and belief following investigation of counsel as to other facts, alleges for her First Amended Complaint as follows against Defendants Google, Inc. ("Google") and Google Payment Corporation ("GPC"):

**Introduction**

1.      This class action seeks relief arising from electronic communications and contracts made by Buyers using Defendants' Google Play store and Wallet service.

2.      Plaintiff and other consumers are "Buyers" who, each time they purchased a mobile device software application ("App") sold from Defendants' online Google Play store, entered into a new and separate agreement ("Buyer Contract") with Defendants that required Buyers to use Defendants' Google Wallet online payment service, to accept Google Wallet's then-existing terms, and to pay money to Defendants to purchase the App.

3.      All contractual provisions governing each App purchase were created solely by, or on behalf of, Defendants.

4.      A portion of the amount Buyers paid pursuant to each Buyer Contract to purchase an App was retained by Defendants rather than being transmitted in full to the party who developed the App ("App Vendor").

5.      Electronic information is commonly sent in "packets" that contain both the data that constitutes the substantive information of the communication and other information, such as addressing information, that is necessary for the packets to be sent to the intended recipient.

6.      To complete each Buyer's Contract, Buyers had to electronically communicate packets to Defendants to authorize and enable payment processing by Defendants.

7.      Information in the packets referenced directly above authorized and enabled Defendants to process the App purchase by providing content required to complete the purchase ("Packets Contents").

**8.** In particular, Buyers sent packets, which included in the Packets Contents a specific authorization to charge a Payment Instrument (e.g., a credit card) and an agreement to, and thereby execution of, the Buyer Contract.

**9.** The term "Packets Contents," as used in this Complaint, refers to the data, transmitted in packets sent by Plaintiff and the Class to Defendants, that provides Defendants information necessary to execute the App purchase and does not include packets record information such as control elements (e.g., electronic-addressing information that enables the packets to arrive at their intended destination).

**10.** Packets Contents sent by Buyers included personal information about the Buyers, including credit card information, purchase authorization, addresses, zip codes, names, phone numbers, email addresses, and/or other information.

**11.** Defendants did not need to share Packets Contents with App Vendors and ceased the practice shortly after Plaintiff's original Complaint was filed.

**12.** Each Buyer Contract included terms which: (i) became effective only in connection with the provision of consideration in the form of money paid and/or personal information provided by the Buyer to Defendants; and (ii) precluded Defendants from sharing Packets Contents with the related App Vendor except as necessary, or as set forth in specific exceptions in the terms of the related Buyer Contract.

**13.** The Buyer Contracts made by the Plaintiff and Class Members did not permit such sharing.

**14.** Defendants, in the course of processing Buyer Contract payments pursuant to a process structured and programmed by Defendants, unnecessarily and improperly disclosed to the App Vendor Packets Contents that the App Vendor did not need.

**15.** By unnecessarily disclosing contents of communications made to them by Buyers, Defendants violated applicable law and the terms of the Buyer Contract Defendants required Buyers to enter each time a Buyer sought to purchase an App through Google Play.

**Parties**

**16.** Plaintiff is an individual and a citizen of the State of Illinois.

17. Google is a Delaware corporation with its principal place of business in Mountain View, California.

18. GPC is a Delaware corporation and wholly-owned subsidiary of Google that shares its principal place of business with Google, 1600 Amphitheatre Parkway Mountain View, CA 94043, as well as Google's registered agent, and company officers (e.g., at relevant times, Kent Walker, Google's Senior Vice President & General Counsel, has assumed the position of a GPC Director; Lloyd Martin, Financing and Accounting Director at Google, has taken positions as GPC Director and Treasurer; and Google Engineering Director Marcus Mitchell has assumed the titles of GPC CEO and Director).

19. Each Defendant acted as an aider, abettor and co-conspirator of the other Defendant, or is obligated by law to be financially responsible for such conduct. In engaging in the conduct alleged herein, each Defendant acted individually and as the agent, employee, representative, partner or joint venture of the other Defendant in the commission of the acts alleged herein, and acted within the course and scope of its duty as such agent, employee, representative, partner or joint venture. The acts of each Defendant were authorized or ratified by each other Defendant, and together constitute a single and continuing course of conduct.

**Jurisdiction**

20. This Court has subject-matter jurisdiction over the federal claims in this complaint pursuant to 28 U.S.C § 1331, as those claims arise under the laws of the United States.

21. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) Plaintiff Svenson is a citizen of the State of Illinois; (ii) Defendants Google and GPC have their principal places of business in the State of California; and (iii) based on the total value of the claims and relief sought by Plaintiff individually and on behalf of the Class, the total amount in controversy exceeds $5,000,000.00. The proposed Class numbers in excess of 100 persons.

22. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims in this complaint that arise under state law, because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**Venue**

**23.**     Venue is proper before the Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, this is a judicial district in which Google and Google Payment Corp reside and in which a substantial part of the events or omissions giving rise to the claims occurred.

**Factual Allegations**

**24.**     Google provides: internet search services; email services; virtual filing cabinet "cloud" storage services; multimedia electronic distribution services; social media services; advertising services; and Google Wallet sales transaction services, which include payment processing and privacy protection.

***Google Wallet Framework***

**25.**     Google Wallet is an electronic payment processing service operated by Defendants who describe and promote it as a "way to pay."

**26.**     All of the services provided by Defendants through Google Wallet exist to either facilitate or effectuate financial transactions where money changes hands, namely Google Play.

**27.**     Defendants established the applicable Google Wallet Terms of Service ("GWToS").  *See* Ex. A.

**28.**     The GWToS indicate they are a "legal agreement" governing "access to and use of Google Wallet."

**29.**     Both Defendants are parties to the GWToS.

**30.**     The GWToS indicate "GPC's or Google's policies" control with respect to Services identified in the GWToS.

**31.**     This case involves Buyers' Contracts using Google Wallet to purchase Apps offered for sale on the Google Play Store.

**32.**     Apps offered for sale on Google Play can only be purchased using Google Wallet.

**33.**     The GWToS incorporates by reference terms, conditions, and privacy protocols that, together with the GWToS, establish an encompassing framework that governs how a person wishing to buy an App must interact with Defendants and their facilities to obtain the desired App.

**34.**     The framework established by Defendants requires Buyers to enter into and "complete" a new and separate Buyer Contract each time a Buyer purchases an App offered on Google Play.

**35.**     Buyers enter into new and separate agreements, i.e. Buyer Contracts, each time they use Google Wallet to purchase an App.

**36.**     "Customers" and "Buyers" under the GWToS have different contracts.   Under the GWToS, a "Customer" is a person who "registers" for Google Wallet, and who may or may not complete a Buyer Contract.

**37.**     A Buyer Contract involves provisions not applicable in a Customer's contract.   A Customer's contract requires no purchase or payment, and provides only for the storage of personal information in anticipation of a potential purchase.

**38.**     A Buyer Contract exists only in conjunction with purchase and payment, and provides for the use of data that was previously received in Packets Contents and stored by Defendants, or, as in the case of Plaintiff, is provided to Defendants contemporaneously with purchase and payment.

**39.**     A Buyer Contract provides for the use of personal information pursuant to electronically communicated instructions that can only be given or authorized by a Buyer making a purchase, not a Customer.

**40.**     The different contracts pose different potentials for the disclosure of personal information provided to Defendants.

**41.**     Under the GWToS, a Buyer is defined as someone who uses Google Wallet "Services" to acquire Products or services.

**42.**     The terms which Defendants wrote to govern relevant purchases provide that a Buyer Contract is not "complete" until a person wanting to make a purchase clicks a button that: (i) indicates consent to the GWToS existing at the time of the purchase; and (ii) authorizes Defendants to execute the transaction.

**43.**     The Buyer Contract established when a Buyer clicks the button that completes the contract makes available to the Buyer GWToS "Services" that are not available to a Customer who has only "registered" for Google Wallet.

**44.**     When a Buyer clicks the software button that establishes a Buyer Contract for "Services" and enables the purchase transaction, a Packet is sent to Defendants authorizing them to post a charge to the Buyer's "Payment Instrument" (e.g., a credit card) and acknowledging the Buyer's agreement to execute the Buyer Contract contained in the GWToS.

**45.**     Defendants then post a charge to the Buyer's "Payment Instrument" (e.g., a credit card).

**46.**     In an App transaction, App Vendors do not receive direct payment from the Buyer's Payment Instrument; rather, Defendants, not App Vendors, directly receive payment from the Buyer's Payment Instrument.

**47.**     The GWToS require Buyers to pay "obligations" as well as "fees."  Ex. A, § 3.1.

**48.**     To the degree fees may be putatively "charged" to the App Vendor, such fees are not mentioned in the GWToS and are paid directly by the Buyer to Defendants as an obligation the Buyer must fulfill in order to accomplish the purchase.

**49.**     Among the GWToS terms, Defendants maintain that there is no fee to the Buyer in connection with an App purchase while simultaneously imposing, collecting, retaining, and never turning over to the App Vendor a portion of the payment obtained from a Buyer's Payment Instrument.

**50.**     To obtain information about "purchase transactions," the GWToS direct a Buyer to "review" the "periodic statement" associated with the Buyer's Payment Instrument. *See, e.g.,* Ex. D.

**51.**     The conditions Defendants impose on App Vendors in order to have their Apps sold on Google Play confirm that Defendants receive, from or through the Buyer's Payment Instrument, the full price of the App and retain a portion of it instead of transmitting it in full to the App Vendor.

**52.**     The GWToS recognize that Defendants may become liable for damages.

**53.**     The GWToS seek to limit damages for which Defendants may be liable to "net fees GPC has actually received and retained."  Ex. A, § 21.

*Defendants' Privacy Obligations*

**54.**     The Google Wallet Privacy Policy ("GWPP"), incorporated by reference into Buyer Contracts by the GWToS, states that "the following notice describes our privacy practices that are specific to Google Wallet" and specifically provides that Google and GPC will only share a Buyer's personal information with other companies or individuals outside of Google: (i) as permitted under the Google Privacy Policy ("GPP");  (ii) as necessary to process the Buyer's transaction and maintain the Buyer's account; and (iii) to complete the Buyer's registration for a service provided by a third party.  Ex. B.

**55.**     The GWPP states that Defendants "will not share your personal information with anyone outside of GPC or its affiliates except as described in this Privacy Notice."

**56.**     The GPP, incorporated by reference into Buyer Contracts by the GWPP, only provides authorization to share personal information with third parties under certain limited circumstances, such as with the Buyer's consent, with domain administrators, for external processing, and for legal reasons.  Ex. C.

**57.**     Defendants state in the GWPP that they "are not responsible for which merchants or other third parties you choose to share information with from Google Wallet."  Ex. B.

*Purchasing Apps on Google Play Using Google Wallet*

**58.**     Google Play is Defendants' digital multimedia and App content distribution platform that is accessible via internet-capable computing equipment and mobile devices.

**59.**     To initiate an App purchase via Google Play, a potential Buyer first selects the desired App from Google Play's directory.

**60.**     Each time a Buyer purchases an App, the Buyer must separately and in connection with that specific purchase enter a Buyer's Contract that requires agreeing to abide by the current GWToS.

**61.**     A Buyer enters a Buyer's Contract for an App when the Buyer clicks the button that states that the Buyer agrees to pay the price of the App by having Defendants charge the Buyer's Payment Instrument, in effect executing the Buyer Contract (i.e., the GWToS as they pertain to that specific purchase).

**62.**     Then a packet that (i) includes digital Packets Content and (ii) that enables Defendants to process the purchase transaction, including the authorization to debit the Payment Instrument and confirmation that Buyer agreed to the Buyer Contract for said purchase, is sent to Defendants.

**63.**     Packets Contents, and the assembled information in them that enables Defendants' services in connection with Buyers' Contracts, are not exempt from the protection of Defendants' privacy policies, general privacy promises, or the more detailed provisions that articulate what those promises mean.  Ex. B at 2; Ex. C at 3-4.

**64.**     Packets Contents exist in digitized form and include, without limitation: (i) Buyers' purchase authorizations; (ii) data necessary for Defendants to identify the purchased App so it can be digitally delivered to Buyer's device from Defendants' servers; (iii) confirmation of a Buyer's execution of the Buyer Contract; and (iv) data allowing Defendants to debit Buyer's credit card or other account including, without limitation, Buyer's name, street address, city, zip, email address, and telephone number.

**65.**     Plaintiff and other Buyers provide Defendants with Packets Contents – specifically, name, city, state, and zip code – in order to process and verify the credit card and in response to Defendants' requests for the information and Packets Contents indispensable to the service.

**66.**     Thus, Plaintiff and other Buyers enter Packets Contents information for the purpose of effecting the very service that Wallet offers – payment processing subject to Defendants' privacy protections.

**67.**     Defendants use Packets Contents to process a Buyer's purchase, obtain payment for the App sales price from the Buyer's account, digitally deliver the purchased App to the Buyer's device, direct to themselves a portion of the payment for the App, and remit the remainder of the payment for the App to the App Vendor.

**68.**     Through the mechanism described immediately above, Defendants earn money by selling Apps pursuant to specific terms and conditions in Buyer Contracts that become effective as an integral, inseparable, element of the App purchase.

*Defendants' Disregard of Privacy Obligations*

**69.**     App Vendors who sell Apps through Google Play must also register with and create a Google Wallet (formerly "Google Checkout") account.

**70.**     Through Google Wallet, App Vendors are able to access an online portal through which their account data and other information is made available.

**71.**     After a Buyer has paid Defendants the sales price for an App, after Defendants have digitally delivered the App to the Buyer, and after Defendants collect the money paid, retain a portion of the sales price, remit the remaining funds to the App Vendor, and provide the Buyer a receipt of the transaction, Defendants automatically take the extra step of disclosing, without App Vendor request, Packets Contents to the App Vendor by altering the App Vendor's access to Packets Contents and making that data available to the App Vendor on the App Vendor's Google Wallet portal.

**72.**     The Wallet privacy protections and exceptions listed above do not allow this disclosure.

**73.**     Defendants' disclosure of Packets Contents to App Vendors is unnecessary to process said transaction.

**74.**     The App Vendor, entirely a third party, may access its App Buyer's Packets Contents via the Google Wallet portal and obtain the respective Buyer's identity, address, city, zip code, email address, or telephone number despite not needing such information (e.g., to ship a physical product to the Buyer) and being completely unaccountable to the Buyer.

**75.**     Defendants' disclosure of Packets Contents is not authorized by the related Buyer Contracts: Buyers did not consent to the disclosures, domain administrators do not need access to Packets Contents received by Defendants for payment-processing purposes, and Packets Contents are not needed for external processing or for legal reasons.

**76.**     An App purchased through Google Play and processed with Google Wallet does not give Defendants the need to disclose Packets Contents to App Vendors: (i) for purposes of investigating potential violations of GWToS; (ii) to detect, prevent, or otherwise address fraud, security or technical issues; or (iii) to protect against harm to the rights, property or safety of Google, Google users, or the public.

**77.** Defendants' disclosure of Packets Contents is also not permissible under the terms of the GWPP. Packets Contents are not necessary to process Buyers' transactions or maintain Buyers' accounts. App Vendors do not need access to Packets Contents to use Google Wallet's payment-processing services or for account maintenance.

**78.** Processing App purchases through Google Wallet does not require Defendants to register Buyers for third-party services.

**79.** Buyers do not choose for Defendants to disclose Buyers' Packets Contents to App Vendors unnecessarily. Defendants do not disclose Packets Contents where a user elects to obtain a free App through Google Play.

**80.** Google's competitor Microsoft provides a service nearly identical to Google Play and Google Wallet, the Windows Phone Store, which features many of the same App Vendors who provide their Apps for sale on Google Play. Like Defendants, Microsoft retains a portion of the sale price for each App purchase transacted through its Windows Phone Store but, in contrast to Defendants' practice, Microsoft does not disclose Packets Contents to App Vendors as part of that transaction.

**81.** App Vendors have expressed uncertainty about why they are receiving Packets Contents information in connection with App purchases, and some have specifically disclaimed the need for it.[1]

**82.** On February 21, 2013, Hank C. Johnson, U.S. Representative and member of the House Judiciary Committee and Intellectual Property, Competition, and the Internet Subcommittee, wrote a letter to Google raising a number of concerns over Google's herein alleged practices and specifically requested that Google, in discussing the types of information disclosed to App

---

[1] *See, e.g.*, Jessica Guynn, *Google Under Fire for Sending Users' Information to Developers*, L.A. Times, Jan. 14, 2013, *available at* http://articles.latimes.com/2013/feb/14/business/la-fi-tn-google-under-fire-for-sending-users-information-to-developers-20130213;  Charles  Arthur, *Google Raises Privacy Fears as Personal Details Are Released to App Vendors*, The Guardian, Feb. 25, 2013, *available at* www.guardian.co.uk/technology/2013/feb/25/google-privacy-fears-app-developers; Chris Tomassucci, *Google Play(ing) With Your Personal Info*, The Daily News, Feb. 17, 2013, *available at* http://www.ironmountaindailynews.com/page/blogs.detail/display/1309/Google-Play-ing-with-your-personal-info-.html.

1    Vendors through Google Wallet, explain how sharing Buyer identity and related information with

2    App Vendors was necessary to process the Buyer's transaction.[2]

3    **83.**    Congressman Johnson followed with additional comment on March 14, 2013, reiterating

4    the need for terms that actually disclose the sharing of personal information: "A short notice

5    stating the types of personal information that Google shares with third parties and reasons for

6    sharing would provide users with greater transparency.  Unlike a broad statement buried in the

7    Wallet privacy policy, a contextual approach might also prevent the consumer surprise and public

8    alarm."

9    **84.**    Defendants are responsible for the design, implementation, and control of the App

10   purchasing process, including disclosing Packets Contents to App Vendors, and for the design,

11   implementation, and control of the Google Wallet App Vendor portal that divulges, and then

12   keeps available to App Vendors, Packets Contents provided pursuant to a Buyer Contract.

13   **85.**    Defendants do not tell Buyers that their Packets Contents are being needlessly disclosed to

14   App Vendors.

15   **86.**    The value of services Buyers ultimately receive in the bargain (whereby App purchases

16   are not completed in accordance with the GWToS and GWPP because Packets Contents are

17   disclosed to App Vendors) is less than the value of services Buyers pay for and agree to receive:

18   namely, completion of App purchase transactions in accord with the GWToS and GWPP and

19   without the unnecessary disclosure of Packets Contents.

20                                  *Plaintiff's Experience*

21   **87.**    On May 6, 2013, Plaintiff selected from the Google Play library the "SMS MMS to

22   Email" App published by third-party App Vendor YCDroid.

23   **88.**    Plaintiff thereafter purchased the App for $1.77 by inputting and sending in via various

24   packets her personal and credit card information (e.g., credit card numbers, purchase

25   authorization, name, address, zip code, email address, and/or telephone number) via Google

26   _____

27   [2] Letter from Hank C. Johnson, Representative of the 4th District of Georgia, to Larry Page, CEO, Google, Inc., Feb. 21, 2013, *available at* http://hankjohnson.house.gov/sites/hankjohnson.house.gov/files/documents/Letter_to_Google.pdf.

28

Wallet's "Payment Method" form, and agreeing to the then-current Wallet Terms, for the first time, in tandem with clicking the software button authorizing the purchase. *See* Exs. A, B, and C (effective May 6, 2013).

**89.**   Plaintiff's entry of form data and authorization of the App purchase resulted in Plaintiff sending via her mobile device Packets to Defendants containing, among other data, Packets Contents for Defendants' use in processing the App payment, authorization to charge her credit card, and a record of her agreement to a Buyer Contract for the purchase of said App.

**90.**   Upon receipt of Plaintiff's Packets Contents authorizing payment for her purchase, Defendants debited Plaintiff's Payment Instrument, collected the $1.77 App sales price, and made Plaintiff's Packets Contents available to App Vendor YCDroid.

**91.**   Defendants gave Plaintiff a receipt for the App purchase she made using the Google Play Store and Google Wallet.

**92.**   Records from Plaintiff's financial institution confirm that one or both Defendants were recipients of Plaintiff's App payment.  Ex. D.

**93.**   Plaintiff did not agree that her identifying information (i.e. Packets Contents) could or would be disclosed to App Vendor YCDroid, and Defendants did not ask for her consent to make that disclosure.

**94.**   Plaintiff paid money for a service – namely, the purchase of an App pursuant to the Buyer Contract she entered as contained in the Wallet Terms – but did not receive the service to which she was entitled.

**95.**   The YCDroid App is available from numerous other App stores besides Google Play, including AppBrain and App Annie.

**96.**   Had Plaintiff known Defendants would disclose her Packets Contents, she would not have purchased the "SMS MMS to Email" App from Defendants.

### *The Value of Packets Contents*

**97.**   The personally identifying information contained in Packets Contents is priced, bought, and sold for marketing and other purposes.

**98.**   There is a robust market for the type of information contained within Packets Contents.

**99.**     Defendants' business of providing online services to consumers and then profiting from selling access to those consumers' personal information to third parties is part of a multi-billion dollar per year industry.[3]

**100.**     It has been observed that "[w]ebsites and stores can ... easily buy and sell information ... with the intention of merging behavioral data with demographic and geographic data in ways that will create social categories that advertisers covet and target with ads tailored to them or people like them."[4]

**101.**     The FTC has observed that companies will pay premiums for the ability to precisely target certain consumers.[5]

**102.**     On February 28, 2011, the Wall Street Journal highlighted Allow, Ltd., one of many companies that offer to sell people's personal information, on their behalf, for mutual profit.[6]

**103.**     In fact, one such company is offering consumers $8.00 per month in exchange for their personal information.[7]

**104.**     In *Property, Privacy, and Personal Data*, Professor Paul M. Schwartz wrote:

> [P]ersonal information is an important currency in the new millennium.  The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from this trend.  Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[8]

---

[3] Steve Lohr, *Unboxed—Rewarding Consumers for Providing Personal Data*, New York Times, July 17, 2010, *available at* http://www.nytimes.com/2010/07/18/business/18unboxed.html?_r=1.

[4] Joseph Turow et al., *Americans Reject Tailored Advertising and Three Activities That Enable It*, Sept. 29, 2009, *available at* http://ssrn.com/abstract=1478214.

[5] Federal Trade Commission, *Protecting Consumer Privacy in an Era of Rapid Change*, Preliminary Staff Report at 24 (Dec. 2010).

[6] Julia Angwin and Emily Steel, *Web's Hot New Commodity: Privacy*, Wall Street Journal, Feb. 28, 2011, *available at* http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[7] T. Simonite, *Sell Your Personal Data for $8 a Month*, MIT Technology Review, Feb. 12, 2014, *available at* http://www.technologyreview.com/news/524621/sell-your-personal-data-for-8-a-month/.

[8] Paul M. Schwartz, *Property, Privacy, and Personal Data*, 117 Harv. L. Rev. 2055, 2056-57 (2004).

**105.** Making Packets Contents available to App Vendors gives them a marketable and valuable asset while denying to Plaintiff and the Class the value of choosing whether to reveal or sell such information to those same App Vendors.[9]

**106.** Defendants' practices – including providing services to consumers and profiting from the manipulation of personal information provided to them thereby – have helped Defendants achieve a market valuation exceeding $400 billion.[10]

**107.** As consumers themselves are beginning to recognize the value of their own identities, Defendants have contemplated simply paying consumers for their personal data.[11]

**108.** Defendants contemplate that they "can build a data exchange/trading platform allowing individual data owners to transact with others directly, or openly sell their data to any bidders."[12]

**109.** Google Wallet consumers pay for Defendants' services with their personal information: they provide their personal information in exchange for use of Google Wallet with Google Play and for Defendants' promises not to disclose their information to third parties without consent.

**110.** The inherent monetary value of personal information allows Defendants to make money from this business model.

**111.** Defendants use the personal information they collect from Google Wallet consumers to generate personal recommendations in the Google Play App Store, which makes Google Play more attractive to App Vendors and users alike.

**112.** Defendants similarly use consumers' personal information to improve the Google Play search tool, ensuring that Google Play's search results are targeted toward those consumers who

---

[9] *See* http://zipcodedownload.com/compare/casestudy (last visited Sept. 2, 2014).

[10] Roben Farzad, *Google at $400 Billion: A New No. 2 in Market Cap*, Bloomberg Business Week, Feb. 12, 2014, *available at* http://www.businessweek.com/articles/2014-02-12/google-at-400-billion-a-new-no-dot-2-in-market-cap.

[11] *Google: Into the Future*, Wall Street Journal, *available at* http://online.wsj.com/public/resources/documents/info-flash10.html?project=GOOGLEDOCS1008.

[12] Jessica E. Vascellaro, *Google Agonizes on Privacy as Ad World Vaults Ahead*, Wall Street Journal, Aug. 20, 2010, *available at* http://online.wsj.com/article/SB100014240527487033097045754135538518540 26.html

are most likely to purchase Apps.  Driving users toward Apps they are more likely to buy also makes Google Play more attractive to App Vendors.

**113.**   Defendants charge each App Vendor $25 in exchange for the ability to market their products via the Google Play store.[13]

**114.**   Defendants also profit from increased App sales: the more Apps sold, the more Defendants earn from the 30 percent cut they take from each App purchase.

**115.**   Customer data at issue in this case used for financial card processing also has money value for App Vendors, enabling them to use such data for marketing and other purposes.  Third parties have established processes to help App and other vendors organize and integrate such data for their own profit.  App Vendors use such personal information to build customer profiles and develop personalized marketing efforts.  Google promotes to App Vendors the prospect of in-App sales using Wallet and thus the benefit of advertising to consumers after they buy the App.

**116.**   If not for the inherent and identifiable value of its users' personal information, Defendants' business model would collapse.  Defendants' privacy promises concerning personal information they receive in exchange for their services are vital to their business.

### *Harm Resulting from Defendants' Conduct*

**117.**   Defendants collect and retain the money that Buyers pay them to buy Apps on Google Play using Google Wallet.

**118.**   Paying money to Defendants entitles Buyers to the benefit of Defendants' privacy covenants, which became effective upon Buyers' purchase of Apps.

**119.**   Packets Contents which authorize Defendants to debit a Buyer Payment Instrument and which indicate said Buyer agrees to a Buyer Contract are created only in connection with Buyer Contracts.

**120.**   Defendants' disclosures of Packets Contents, including personal information, occur only as a result of a Buyer sending a Packet agreeing to a Buyer Contract and authorizing Defendants

---

[13]   *See*   https://support.google.com/googleplay/android-developer/answer/113468?hl=en   (last visited Sept. 2, 2014).

to debit the Buyer's Payment Instrument.  No free services, including the download of free Apps or registration for any free Google service, include mere registration for Google Wallet without use of the payment processing function of Google Wallet, effect a Buyer Contract, or result in the disclosure of Packets Contents to third parties.

121.    The Wallet Terms' privacy covenants, including those wherein Defendants agree to not disclose Packets Contents unless necessary, exist only in Buyer Contracts.

122.    Nondisclosure promises about Packets Contents are not made to persons or users who merely obtain free Apps through Google Play as Customers.

123.    Defendants, by disclosing Packets Contents to App Vendors without need and contrary to the terms and conditions which Defendants required Buyers to accept, deprived Buyers of the benefit of the applicable terms, conditions, and covenants and diminished the value of the resulting transaction.

124.    Defendants, by virtue of their above-described conduct, have received a benefit in the form of money and the collection of personal information, and caused Plaintiff and the Class loss of economic and proprietary value.

125.    The value of Plaintiff's and the Class' Packets Contents information, as a result of Defendants' improper disclosures, has been quantifiably reduced along with the value of their App purchase transactions.

**Class Allegations**

126.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action as a class action on behalf of herself and the following presently defined Class and Subclass:

        **a.**   CLASS:  All persons in the United States who utilized the Google Wallet service to purchase Apps via Google Play between September 19, 2011 and the date of class certification ("Class Period").

        **b.**   SUBCLASS:  All persons in the United States who used and agreed to Google Wallet terms and conditions for the first time as part of an App purchase via Google Play during the Class Period.

**127.**   Excluded from the proposed Class and Subclass are Plaintiff's counsel, Defendants' counsel, Defendants' current and former officers and directors, and any member of the judiciary presiding over this action.[14]

**128.**   Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that individual joinder of their claims is impracticable.

**129.**   Pursuant to Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to Plaintiff and the other Class members, which common questions predominate over any questions affecting only individual members.   Pursuant to Defendants' above-described conduct, the common questions of law and fact include, but are not limited to:

    **a.**   Do Defendants qualify as electronic communications services as that term is defined in the Stored Communications Act, 18 U.S.C. § 2510(15);

    **b.**   Did Defendants disclose Plaintiff's and Class members' Packets Contents to third-party App Vendors;

    **c.**   Was Defendants' disclosure of Packets Contents to third-party App Vendors necessary to process App purchases;

    **d.**   Do Defendants qualify as remote computing services as that term is defined in the Stored Communications Act, 18 U.S.C. § 2711(2);

    **e.**   Did Defendants' conduct as alleged herein violate the Stored Communications Act, 18 U.S.C. § 2702;

    **f.**   Did Defendants' herein-described conduct violate the Unfair Competition Law, Cal. Bus. Prof. Code § 17200 et seq.; and

    **g.**   Did Plaintiff and the Class lose money and/or property due to Defendants' herein-described conduct.

---

[14] References to the "Class" are also to the "Subclass," unless stated otherwise.   The class definitions and class period are subject to modification pursuant to discovery.

**130.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of other members of the Class, who used the Google Wallet payment-processing service during the Class Period and whose Packets Contents were disclosed to third parties without authorization.

**131.** Plaintiff has no adverse or antagonistic interests to those of the Class and has retained counsel experienced in complex consumer class action litigation.

**132.** A class action is superior to other available means for the fair and efficient adjudication of this controversy and concerns standardized conduct and terms. The damage suffered by individual Class members is relatively small compared to the burden and expense entailed by individual litigation of the claims against Defendants. Even if select Class members could afford individualized litigation, the court system could not. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class-action device provides the benefit of a single adjudication of the issues at bar, and presents no unusual management difficulties under the circumstances here.

**133.** Alternatively, per Fed. R. Civ. P. 23(b)(2), here Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**134.** The claims asserted herein are based on California law, which, Defendants purport, is applicable to the Class as a whole by virtue of the GWToS choice of law provisions.

**135.** Defendants' applicable terms are substantially similar for the entire Class and Subclass, and Defendants' herein-described conduct occurred on a systematic, rather than individualized basis. Defendants' records contain information sufficient to identify members of the Class and Subclass.

**Claims**

**136.** The following causes of action are pleaded in the alternative to the extent permitted or required so as to read the Claims consistently within the fullest extent permitted by applicable law.

**Count I - Breach of Contract**

**137.**   Plaintiff re-alleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class.

**138.**   The GWToS, which incorporates the GWPP (collectively, the "Wallet Terms"), describe the rights and obligations involved in Defendants' payment-processing services for Plaintiff's App purchases and constitute a valid and enforceable contract between Plaintiff and Defendants.

**139.**   At relevant times, Plaintiff and Class Members performed their obligations under the Wallet Terms and accepted these terms as part and parcel of their Buyer Contracts for the App purchases.

**140.**   Plaintiff and Class members only enter into Buyer Contracts in connection with buying an App.  These Buyer Contracts do not apply to free App downloads.

**141.**   The Buyer Contract states, "By agreeing to these Terms of Service, you authorize Google Wallet to charge your selected card when you make online purchases," and the Buyer Contract provides privacy protections specific to the purchase transaction.

**142.**   Defendants' payment-processing services provided under Buyer Contracts are not free: Defendants keep a percentage of the purchase price for each App purchase they process.

**143.**   Alternatively, Defendants impose on Buyers the obligation to pay fees that are owed by Sellers, relieving the Defendants of the associated risk of non-payment and ensuring that Defendants immediately receive their portion of the Buyer's payment for the App.

**144.**   Upon Plaintiff's purchase through a Buyer Contract, and Defendants' processing of the sale of the "SMS MMS to Email" App, and upon Class Members' purchases through Buyer Contracts for Class Members' App purchases, Plaintiff, Class Members, and Defendants agreed to abide by the Wallet Terms associated with the Buyer Contract made for each purchase.

**145.**   When Plaintiff made and completed her Buyer Contract for the App purchase, and when Class Members made their Buyer Contracts for each App purchase, certain terms or conditions became effective as part of the Buyer Contract Defendants offered in connection with the App purchase(s): namely, that Defendants would only share Plaintiff's and the Class' personal information with App Vendors (i) as permitted under the GPP;  (ii) as necessary to process the

transaction and maintain Plaintiff's and the Class's accounts; and (iii) to complete Plaintiff's and the Class's registration for a service provided by a third party.

**146.** Upon purchase through Buyer Contracts, Plaintiff and Class Members sent their purchase Packets to Defendants, who used the Packets Contents to process their payments for, in the case of Plaintiff, the "SMS MMS to Email" App, to transfer the App to her mobile device and, for Class Members, to perform comparable operations.

**147.** In processing the payment, Defendants received Plaintiff's payment for the "SMS MMS to Email" App, and corresponding payments for each App purchase by a Class Member, and Defendants retained a portion of the payment(s) rather than transmitting the payment in full to the respective App Vendors.

**148.** The percentage of the App sales price Defendants retained is the money Defendants earned from Plaintiff's and Class Members' purchases of Apps under the Buyer Contracts.

**149.** In connection with Defendants' processing of Plaintiff's and Class Members' App purchases, Defendants took the extra and unnecessary step of divulging personal information contained in Plaintiff's Packets Contents to YCDroid and, for Class Members, to other App Vendors.

**150.** As more fully set forth above, Defendants' actions violated specific provisions of and materially breached the unique purchase agreement – the Buyer Contract – that Plaintiff and Class Members had entered into with Defendants only milliseconds prior.

**151.** The services Plaintiff and Class Members ultimately received in exchange for Defendants' cut of the App purchase price – payment processing, in which their information was unnecessarily divulged to an unaccountable third party – were worth quantifiably less than the services they agreed to accept, payment processing in which the data they communicated to Defendants would only be divulged under circumstances which never occurred.

**152.** Plaintiff and Class Members also provided consideration for Defendants' services, inter alia, by giving Defendants personal information – something demonstrably valuable – in exchange for Defendants' services and the promise to safeguard that information.

**153.**     The personal information submitted by Customers and the additional information made available by Buyers, and by Defendants to App Vendors, enables Defendants to increase the value of the Google Play store. Defendants use this information to generate personal App recommendations for users, which makes the Google Play store much more attractive to App Vendors, as well as potential and actual Buyers, and more economically valuable to App Vendors and Defendants. Defendants' collection of user information positions Defendants to profit from charging App Vendors for marketing their products on Google Play and to earn more money from increased App purchases.

**154.**     Defendants also use Customers' personal information and additional information from Buyers to improve the Google Play search tool, increasing Google Play's ability to generate App search results that are very precisely targeted to the consumers who are most likely to purchase Apps. Driving users toward Apps for which Customers are more likely to make Buyer Contracts makes Google Play more attractive to App Vendors, who pay entry fees to Defendants to access the ability to present their Apps through Google Play.

**155.**     If not for the inherent and ascertainable value of access to personal consumer information, Defendants would be much less profitable. Defendants' promises not to disclose information Customers provide, and the enhanced information Buyers provide, in exchange for the associated services and promises are vital to Defendants' business.

**156.**     If Defendants disclosed to Buyers like Plaintiff – namely, persons who might complete Buyer Contracts – that they do not protect the personal information comprising Packets Contents, consumers would be less likely to download paid Apps from Google Play using Wallet, and instead would be more likely to restrict themselves to free Apps, whose download does not result in decreased privacy. Defendants benefit from collecting Customers' and Buyers' information and enhanced information in the aggregate; a reduction in the number of Buyers purchasing from Google Play would decrease both Google Play's appeal to App Vendors and the value of the Google Play Store.

**157.**     As a result of Defendants' actions, Plaintiff and the Class have been deprived of their ability to sell their own personal data on the market.

**158.** Defendants materially breached the Buyer Contract-specific Wallet Terms by disclosing to third-party App Vendors Plaintiff's and the Class Members' personal information that was placed into Packets Contents in connection with Buyers' Contracts and related purchases.

**159.** As a result of Defendants' breach of the Buyer Contract-specific Wallet Terms, Plaintiff and the Class suffered damages in that the value of their contracts and personal information was diminished. They did not receive the benefit of the bargain for which they contracted and for which they paid and provided valuable consideration, both by providing Defendants their personal information and by paying Defendants money for App purchases from which Defendants kept and never turned over to App Vendors a percentage of the purchase price. Plaintiff and each Class member gave up something of value, both money and their personal information, in Buyers' Contracts that entitled them to the benefit associated with Defendants' privacy terms, and Plaintiff and Class members did not receive what they bargained for.

**160.** Plaintiff's and the Class's actual and appreciable damages are measured both by the cut Defendants retained from their App purchases and by the ascertainable value of their personal information that Defendants shared with App Vendors.

### Count II - Breach of Covenant of Good Faith and Fair Dealing

**161.** Plaintiff re-alleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class, and insofar as required by applicable facts or law, in the alternative to Count I.

**162.** As part of the Wallet Terms and Buyer Contracts effective upon and integral to Buyer App purchases, Defendants owed Plaintiff and the Class an implied duty of good faith and fair dealing.

**163.** The Wallet Terms give Plaintiff and the Class the reasonable expectation that Packets Contents would not be disclosed to third-party App Vendors when purchasing Apps through Google Play with Google Wallet.

**164.** However, the Wallet Terms are standardized and non-negotiable terms that Defendants, at their own discretion, interpreted to carry out the above-described privacy promises in a way that resulted in the unnecessary disclosure of Plaintiff and other Class members' Packets Contents to

third-party App Vendors.

**165.**    For example, while Defendants may share personal information with third parties if "necessary to process the user's transaction and maintain the user's account," that provision is not reasonably interpreted to allow blanket, universal disclosure of any or all of the Packets Contents to third-party App Vendors.

**166.**    At all times, Defendants were aware of how their Google Wallet payment processing system functioned despite the privacy provisions of the Wallet Terms describing the system otherwise.

**167.**    Despite Defendants' knowledge of the disparity between how the Google Wallet payment-processing system worked and how Buyers understood it to work pursuant to the Wallet Terms, Defendants did not inform Buyers of the disparity.

**168.**    The agreed common purpose of the Wallet Terms was for Buyers to be able to privately purchase Apps from App Vendors.

**169.**    Defendants withheld in bad faith facts related to how the Google Wallet payment processing system actually worked, despite the provisions of the Wallet Terms.

**170.**    Defendants' disclosures of Packets Contents: (i) run contrary to the parties' reasonable expectations; (ii) run contrary to a reasonable interpretation of the Wallet Terms; and (iii) interfere with Plaintiff's and the Class's right to receive the full benefits of the agreement, namely, the purchase and download of Apps without unnecessary and unauthorized disclosure of Packets Contents to third parties.

**171.**    As a result, Plaintiff and the Class were damaged and Defendants were and continue to be unjustly enriched.

### Count III – Violation of the Stored Communications Act, 18 U.S.C. § 2701

**172.**    This Count has been dismissed with prejudice and is included only to preserve a potential appeal.

**173.**    Plaintiff re-alleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class.

**174.** The Stored Communications Act provides that "[w]hoever … intentionally accesses without authorization a facility through which an electronic communication service is provided … or … intentionally exceeds an authorization to access that facility … and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section." 18 U.S.C. §§ 2701(a)(1), (2).

**175.** Defendants, individually and/or jointly, solicited Plaintiff and the Class to electronically provide personal contact and billing information, including Defendants' request for names, Google account information, and billing and credit card information, all communicated to Defendants via Packets Contents for the purpose of processing payments and/or purchases using Google Play and Google Wallet subject to the Relevant Terms as more fully set forth above.

**176.** Defendants both utilize server facilities in order to provide their electronic communication and/or remote-computing services at issue as that term is defined in 18 U.S.C. § 2510(15) and store personal information in said server facilities.

**177.** Pursuant to the Relevant Terms, Defendants are only authorized to disclose to third parties a user's personal information with third-party companies or individuals: (i) as permitted under the GPP; (ii) as necessary to process the user's transaction and maintain the user's account; and (iii) to complete the user's registration for a service provided by a third party.

**178.** Defendants had no authorization to disclose to third-party App Vendors Plaintiff's and other Class members' personal information received at any point as Packets Contents; disclosure of this information was not necessary to process their purchase transactions, to maintain their Wallet (or Google) accounts, to complete registration by Google for users with third-party Apps, or for the limited purposes or exceptions set forth in the GPP as described above.

**179.** Plaintiff and the Class did not expressly or specifically authorize Defendants to provide third-party App Vendors with their Packets Contents in a blanket fashion or with access to all of it in a blanket manner.

**180.** The transactions at issue – the remote download of and payment for software – do not require all the Packets Contents at issue to be transferred to the third-party App Vendor who

1  receives payment from Google Payment Corp and/or Google. No specific exceptions to
2  Defendants' privacy promises apply to the transactions at issue or the blanket disclosures of
3  Packets Contents alleged herein, as described more fully above.

4  **181.**  In the course of processing Plaintiff's and the Class's Google Wallet App online
5  purchases, Defendants exceeded their authorized access to the facilities through which
6  Defendants provide the electronic communications services at issue and within which their
7  Packets Contents were stored on Defendants' servers, by unnecessarily transmitting or making
8  available their Packets Contents to third-party App Vendors.

9  **182.**  Defendants thereby altered access to the Packets Contents while they were at least
10  temporarily maintained on Defendants' servers by transmitting and/or allowing third-party App
11  Vendors access to the Packets Contents via the Google Checkout vendor portal.

12  **183.**  Defendants intentionally disclosed Plaintiff's and the Class' Packets Contents to third
13  parties as described more fully above.

14  **184.**  Defendants neither had authorization nor received authorization from Plaintiff and the
15  Class to effect a blanketed disclosure to third parties of the Packets Contents at issue.

16  **185.**  As a result of Google's unauthorized and unlawful disclosure of Plaintiff's and the Class
17  members' Packets Contents, Plaintiff and members of the Class have suffered damages from
18  Google's violations of 18 U.S.C. § 2701.

19  **186.**  Plaintiff and Class members are aggrieved persons who have suffered damage as a result
20  of knowing violation of the Stored Communications Act within the meaning of 18 U.S.C.
21  § 2707(a).

22  **187.**  Plaintiff and members of the Class seek all available remedies as provided by 18 U.S.C.
23  § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be
24  appropriate, damages consistent with § 2707(c), and any applicable punitive damages to be
25  proven at trial, and attorneys' fees and costs.

26  **Count IV - Violation of the Stored Communications Act, 18 U.S.C. § 2702**

27  **188.**  Plaintiff re-alleges each of the preceding paragraphs as if fully set forth herein, and brings
28  this cause of action individually and on behalf of the Class.

**189.** The Stored Communications Act provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

**190.** The Stored Communications Act provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service…on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

**191.** Defendants, at relevant times, have provided a variety of electronic communication services to account holders, including Plaintiff and the Class, such as the electronic transmission of Apps and Payment Instrument information by way of Google Play and Google Wallet, and qualify as an electronic communication service under 18 U.S.C. § 2510(15).

**192.** Defendants publicly provide a variety of computer processing services, including without limitation digital content distribution services via Google Play, and qualify as a remote computing service under 18 U.S.C. § 2711(2).

**193.** GPC provides electronic communications service to Google and account holders, including without limitation the transmission of Payment Instrument information by and among financial institutions to process electronic payment transactions via Google Wallet, and qualifies as an electronic communications service under 18 U.S.C. § 2510(15).

**194.** GPC, which publicly provides electronic payment processing services, qualifies as a remote computing service under 18 U.S.C. § 2711(2).

**195.** At relevant times, Plaintiff and the Class members were subscribers to and customers of Defendants' services.

**196.** Plaintiff and other Buyers, in the process of initiating an App purchase transaction through Google Play using Google Wallet and entering into Buyer Contracts, caused Packets Contents to be sent from Buyers to Defendants.

**197.** The Packets Contents comprised sets of digital information containing, among other data,

the identity of the App being purchased, Plaintiff's authorization for Defendants to proceed with the App purchase and debiting of Plaintiff's Payment Instrument, Plaintiff's agreement to the Buyer Contract for purchase of the App, Plaintiff's name, and data allowing Defendants to debit her credit card or other account including her name, address, city, zip, email address, and telephone number.  Without this information, Defendants would not be able to process the payment.

**198.**    The Packets Contents were electronically communicated to Defendants and were at least temporarily maintained on Defendants' servers.

**199.**    The Packets Contents were the information Plaintiff intended to communicate to Defendants.

**200.**    The Packets Contents enabled Defendants to process Plaintiff's payment and provide the purchased App.

**201.**    The Packets Contents were not information communicated to Defendants for a free service.

**202.**    The Packets Contents were not subscriber information.

**203.**    The Packets Contents were not information regarding the characteristics of the Packet that was generated in the course of the Packet's electronic communication from Plaintiff to Defendants.

**204.**    The Packets Contents were not information regarding the path the Packet navigated from the senders, Buyers, to the recipients, Defendants.

**205.**    The Packets Contents were the functional substance, purport, and meaning of the electronically communicated Packets in that they were necessary to, enabled, and had no function other than to facilitate the discrete App purchase for which the Packets Contents were created.

**206.**    Plaintiff was required by Defendants to manually enter much of the information in the Packets Contents including her name, credit card number, address, and zip code.

**207.**    When Plaintiff clicked the software button completing her purchase contract for the App, she triggered the creation of a Packet that included, among other things, data evidencing Plaintiff's agreement to the Buyer Contract for purchase of said App and inextricably linked to

1   that the authorization for Defendants to charge her Payment Instrument for the purchase price of

2   the App.

3   **208.**   Absent the click described above, the Packets Contents identifying Plaintiff and

4   authorizing payment to the credit card of her choice would not have been created and delivered

5   with the Packet to Defendants.

6   **209.**   After Plaintiff triggered the creation of Packets Contents for the purchase, Defendants

7   were able to use those Packets Contents to process Plaintiff's App purchase transaction.

8   **210.**   The Packets Contents were not automatically generated (e.g., by a browser or otherwise)

9   data.

10   **211.**   While processing Plaintiff's App purchase transaction, Defendants knowingly and without

11   authorization disclosed to the third-party App Vendor, via the App Vendor's Google Wallet

12   portal, Packets Contents including Plaintiff's name, address, city, zip code, email address, and/or

13   telephone number.

14   **212.**   Defendants' disclosure of Packets Contents to the third-party App Vendor was not

15   necessary to process the Google Wallet payment transaction and did not serve to protect any of

16   Defendants' rights or property.

17   **213.**   No specific exception to Defendants' privacy covenants, described more fully above,

18   applies to Defendants' disclosures of Packets Contents.

19   **214.**   Plaintiff did not consent to Defendants' disclosure of Packets Contents to third-party App

20   Vendors.

21   **215.**   Defendants, by disclosing Plaintiff and other Buyers' Packets Contents without

22   authorization, knowingly divulged the contents of electronic communications made by Plaintiff

23   and members of the Class while those communications were in electronic storage on Defendants'

24   servers, in violation of 18 U.S.C. §§ 2702(a)(1), 2702(a)(2).

25   **216.**   As a result of Defendants' unauthorized and unlawful disclosure of Plaintiff's and Class

26   members' Packets Contents, Defendants are in violation of 18 U.S.C. § 2702 and Plaintiff and the

27   Class have suffered damages.

28   **217.**   Plaintiff and the Class are "person[s] aggrieved by [a] violation of [the SCA] in which the

conduct constituting the violation is engaged in with a knowing or intentional state of mind" within the meaning of 18 U.S.C. § 2707(a), and seek all available remedies as provided for by 18 U.S.C. § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be appropriate, as well as damages consistent with 18 U.S.C. § 2707(c) and punitive damages in amounts to be proven at trial, and attorneys' fees and costs.

**Count V: Violation of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200**

**218.** Plaintiff re-alleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Class.

**219.** Defendants' conduct and decisions giving rise to Plaintiff's and the Class's claims, on information and belief, in substantial part took place at Defendants' shared primary place of business in California.

**220.** Defendants, via the Wallet Terms' choice-of-law provisions, have asserted that the laws of the State of California shall apply to litigation concerning their services.

**221.** Defendants' acts and practices as alleged herein constitute unlawful and unfair business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et. seq.

***Unlawful Conduct***

**222.** Defendants' above-described conduct violates the Stored Communications Act, §§ 2701, 2702(a)(1), and 2702(a)(2), and Defendants' own proffered contractual terms, as set forth more fully above.

**223.** Additionally, California Business & Professions Code § 22576 prohibits Defendants from violating their own privacy policies as set forth above. For example, according to Wallet Terms, Defendants would only share Plaintiff's and the Class's personal information with other companies outside of Google: (i) as permitted under the GPP; (ii) as necessary to process the transaction and maintain the account; and (iii) to complete the registration for a service provided by a third party.

**224.** Defendants' business acts and practices of unnecessary and unauthorized disclosures to

third-party App Vendors of identity, location, phone number, and/or other information provided to Defendants in Packets by Plaintiff and the Class, and Defendants' retention of monies and fees from the App payment transactions, are unlawful because they violate the Buyer Contracts and Wallet Terms and the Defendants' duties of good faith and fair dealing with regard to said terms.

### *Unfair Conduct*

**225.**   In the alternative, Defendants' conduct, as alleged herein, is oppressive, immoral, unethical, and unscrupulous and caused Plaintiff and the Class substantial injury in violation of the UCL's prohibition against "unfair" conduct.  Cal. Bus. and Prof. Code § 17200, et seq.

**226.**   As set forth above, Plaintiff and the Class paid Defendants, and Defendants permanently retained a portion of all monies paid by Plaintiff and the Class for Apps in connection with the benefit of using the Google Play store and Google Wallet to purchase and pay for Apps in a fashion that protects, according to the Wallet Terms, their privacy.

**227.**   However, Defendants breached the Wallet Terms by making unauthorized and unnecessary disclosures of the contents of Packets sent to Defendants, including, e.g., name, address, and/or zip codes, to third-party App Vendors as a direct result of Plaintiff and the Class purchasing Apps.

**228.**   Defendants have no reasonable or legitimate justification under the Wallet Terms to disclose the Packets Contents received from Plaintiff and the Class, including, e.g., names, addresses, and/or zip codes, to third-party App Vendors in the blanket fashion described above, and Defendants' practice violates the reasonable expectations created by the Wallet Terms.

**229.**   As set forth above, Defendants' unlawful and unfair conduct is substantial, not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided absent Defendants' failure to disclose the nature of their conduct in the Wallet Terms discussed above.

**230.**   Specifically, no benefit to the Plaintiff and the Class is served by permitting Defendants to represent to Plaintiff and the Class in the Wallet Terms that Defendants will not share Packets Contents with third-party App Vendors, when contrary to these agreements and representations they in fact do.  Nor could consumers have anticipated such practice given Defendants' request

1  for agreement to the Relevant Terms, which promise to protect their privacy and do not authorize

2  unnecessary transfer of Packets Contents, including, e.g., names, addresses, and/or zip codes, to

3  third-party App Vendors as Defendants have done.

4  **231.**   Defendants are unjustly enriched and unfairly profit – in the form of a portion of the

5  monies paid for each App sold via Google Play and paid for via Google Wallet – from Plaintiff's

6  and other Class members' purchases of Apps via Google Wallet and the Google Play store

7  because Plaintiff and the Class did not authorize Defendants to disclose any portion of Packets

8  Contents to third-party App Vendors beyond the information necessary to effect App purchases

9  and downloads.

10  **232.**   Plaintiff and the Class paid money and Defendants retain a portion of every payment

11  made for Apps, for the benefit of using the Google Play store and Google Wallet to purchase and

12  pay for Apps in a fashion that protects, according to the terms and conditions outlined above,

13  their privacy.

14  **233.**   Defendants, by providing and continuing to provide contents of Packets received from

15  Plaintiff and the Class to third-party App Vendors in what would otherwise be an anonymous and

16  secure online transaction, have caused substantial harm to Plaintiff and the Class, by, among other

17  things permanently retaining monies paid by Plaintiff and the Class while failing to deliver as

18  promised the private services, processing payment, and delivering purchased Apps without

19  unnecessary disclosure to third parties of personal information contained within Packets sent by

20  Plaintiff and the Class to Defendants.

21  **234.**   Defendants could have easily avoided causing the injuries suffered by Plaintiff and the

22  Class by simply refraining from making Packets Contents, including, e.g., names, addresses,

23  email addresses, telephone numbers, and/or zip codes, unnecessarily accessible to third-party App

24  Vendors via the Google Checkout and/or Wallet portal.  Plaintiff and the Class were powerless to

25  stop Defendants from disclosing said Packets Contents to App Vendors because Defendants

26  exercised their own discretion to share this information without the knowledge, consent and/or

27  authorization of Plaintiff and the Class, which enhances their business with their vendor-seller

28  customers to the detriment of Plaintiff and the Class and without providing countervailing benefit

to Plaintiff and the Class.

**235.**   Additionally, and/or in the alternative, Defendants' practice as described above offends public policy tethered to the State constitutional right of privacy, Const. art. I, § 1, and public policy as per Cal. Bus. & Prof. Code § 22576.

**236.**   Defendants' practice directly contradicts the policy underlying the California Attorney General's Joint Statement of Principles to which Google and other major App marketers (including, e.g., Apple and Microsoft) agreed on or about February 22, 2012.  For example, Google has agreed that any App developer, presumptively including Google itself where it directly markets Google Apps, "must conspicuously post a privacy policy or other statement describing the app's privacy practices that provides clear and complete information regarding how personal data is collected, used and shared."  However, as such Defendants' posted privacy policies do not provide such a statement and are incomplete, as described more fully above.  For example, the Wallet Terms promise to disclose users' information only where necessary or with explicit permission (neither of which is the case with regard to the disclosures of Packets Contents at issue).

**237.**   Defendants' practice directly contradicts the policy outlined in the Consumer Privacy Bill of Rights, introduced by the White House in February of 2012.  Specifically, Defendants' conduct violates the following provisions of that policy:

      **a.**   Individual Control: Consumers have a right to exercise control over what personal data companies collect from them and how they use it.

      **b.**   Transparency: Consumers have a right to easily understandable and accessible information about privacy and security practices.

      **c.**   Respect for Context: Consumers have a right to expect that companies will collect, use, and disclose personal data in ways that are consistent with the context in which consumers provide the data.

      **d.**   Security: Consumers have a right to secure and responsible handling of personal data.

**238.**   By contrast, as set forth above, Defendants' conduct has failed to provide users

meaningful individual control over what personal data App Vendors collect and/or how Defendants use the personal data they collect. Defendants' Wallet Terms during the relevant time period provide faux transparency, as they are inaccurate and/or incomplete with regard to how Packets Contents are used and/or what data Defendants transmit to third-party App Vendors.

239.    Defendants have also shown no respect for context (e.g., by providing a Buyer's real name to a third-party App Vendor with every purchase despite having no need or authorization to do so) and Defendants have failed to securely and responsibly handle the Packets Contents disclosed to them by Buyers.

240.    Defendants' practice significantly and imminently increases the risk of identity theft faced by Plaintiff and the Class.

241.    As a direct and proximate result of Defendant's above-described unlawful and/or unfair conduct, Plaintiff and the Class lost the portion of the money they paid and which Defendants retained, for the services Defendants provided as part of the purchase of Apps, namely for facilitating an anonymous and secured transaction. By purchasing an App using Google Play and Wallet that was not as anonymous and secure as Defendants' Wallet Terms stated it would be, Plaintiff did not receive the services she bargained for: receipt of a paid App without unnecessary disclosure of Packets Contents, including, e.g., name, address and/or zip code.

242.    Additionally, Defendants are unjustly enriched and unfairly profit – in the form of the portion of monies paid by Plaintiff and the Class that Defendants withheld and kept before transmitting the remainder to App Vendors – from Plaintiff's and other Class members' purchases of Apps via Google Wallet and Google Play. When Plaintiff paid money to purchase her App, she did not expect or authorize Defendants to unnecessarily provide Packets Contents, including, e.g., name, address, and/or zip code, to third-party App Vendors.

243.    In addition, Plaintiff and the Class are each subject to an increased, unexpected, and unreasonable risk to their personal information, including risks of further invasions of privacy, and of harassment, identity theft, and other security events, due to Defendants' practice of disclosing to third-party App Vendors consumers' personal information in every App purchase made via Google Play and paid for using Google Wallet.

244. Consequently, Plaintiff and the Class have lost money or property, and are entitled to injunctive relief, restitution, restitutionary disgorgement of monies paid by Plaintiff and the Class and received and retained by Defendants as a result of their App purchases, and all other applicable relief allowed under §17200 et seq.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

    a.    An order certifying the Class, and appointing Plaintiff as Class representative and Plaintiff's counsel as class counsel;

    b.    A finding and declaration that Defendants, by their above-described conduct, have violated the Stored Communications Act, the California Unfair Competition Law, Cal. Bus. & Prof. Code Sec. 17200 et seq., and California law as set forth above;

    c.    An award of injunctive and other equitable relief including, inter alia: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (ii) an order requiring Defendants to refrain from disclosing Buyer information in the absence of those Buyers' specific authorization; and (iii) an order requiring Defendants to conspicuously, precisely, and truthfully display in the GWPP the manner in which they collect data from users and thereafter distribute such data;

    d.    An award of all damages to Plaintiff and the Class available under applicable law, including statutory damages in the amount of $1,000 per violation under the Stored Communications Act, 18 U.S.C. § 2707(c) and punitive damages as applicable in an amount to be determined at trial;

    e.    An award of restitution and/or restitutionary disgorgement, including interest thereon, to Plaintiff and the Class;

    f.    Establishment of a constructive trust, until further order of the Court, consisting of monies Defendants improperly collected or received from their above-described illicit conduct, including a reasonable portion of the monies collected, from Plaintiff

and the Class, in connection with the sale of Apps via the Google Play store and/or the processing of associated payments via Google Wallet;

g.   Reasonable attorneys' fees and costs; and

h.   Such other and further relief as the Court deems appropriate.

**Jury Demand**

Plaintiff demands a jury trial as to all matters so triable.

Respectfully submitted,

/s/ Elizabeth Roberson-Young

Kathryn Diemer
Diemer, Whitman & Cardosi, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
Phone: 408-971-6270
Fax: 408-971-6271
kdiemer@diemerwhitman.com
CA Bar No.: 133977

Frank Jablonski
Progressive Law Group, LLC
354 W. Main Street
Madison, Wisconsin 53703
Phone: 608-258-8511
Fax: 608-442-9494
frankj@progressivelaw.com

Mark Anthony Bulgarelli
Elizabeth Roberson-Young
Progressive Law Group, LLC
One N. LaSalle Street, Ste. 2255
Chicago, Illinois 60602
Phone: 312-787-2717
Fax: 888-574-9038
markb@progressivelaw.com
liza@progressivelaw.com

Counsel for Plaintiff Alice C. Svenson

**CERTIFICATE OF SERVICE**

I, Elizabeth Roberson-Young, am a resident of the State of Illinois and over the age of eighteen years.  My business address is 1 N. LaSalle Street, Chicago, IL 60602.  On September 2, 2014, I served **Plaintiff's First Amended Class Action Complaint** electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record for all parties that have appeared in this proceeding.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 2, 2014, at Chicago, Illinois.

/s/ Elizabeth Roberson-Young
Elizabeth Roberson-Young