1  Susan D. Fahringer (CA Bar No. 162978)
   SFahringer@perkinscoie.com
2  Charles C. Sipos (*Pro Hac Vice*)
   CSipos@perkinscoie.com
3  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
4  Seattle, WA  98101-3099
   Telephone: (206) 359-8000
5  Facsimile:  (206) 359-9000

6  Attorneys for Defendants
   Google Inc. and Google Payment Corporation
7

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13  ALICE SVENSON, individually and on          Case No. CV-13-04080-BLF
    behalf of all others similarly situated,
14                                              **DEFENDANTS GOOGLE INC. AND
                          Plaintiff,            GOOGLE PAYMENT CORPORATION'S
15                                              NOTICE OF MOTION AND MOTION TO
                                                DISMISS FIRST AMENDED
16            v.                                COMPLAINT; MEMORANDUM OF
                                                POINTS AND AUTHORITIES IN
17  GOOGLE INC., a Delaware Corporation,        SUPPORT**
    and GOOGLE PAYMENT
18  CORPORATION, a Delaware Corporation,        Date:      January 15, 2015
                                                Time:      9:00 a.m.
19                        Defendants.           Place:     Courtroom 3, 5th Floor
                                                Judge:     Hon. Beth Labson Freeman
20

21

22

23

24

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

# TABLE OF CONTENTS

**Page**

I.     NOTICE OF MOTION .................................................................................................. 1

II.    INTRODUCTION ......................................................................................................... 2

III.   FACTUAL BACKGROUND ......................................................................................... 3

    A.   The Contract at Issue Is the Wallet TOS ................................................................ 3

    B.   Svenson's Imaginary "Buyer Contract" Is Nothing More than the Wallet
       TOS .......................................................................................................................... 3

    C.   The Information At Issue Is Still Plaintiff's "Contact Information" ..................... 5

    D.   Svenson Alleges No New Facts To Support Her Damages Theories ................... 6

    E.   Svenson Alleges No New Facts In Support of Her UCL Claim ........................... 7

IV.   ARGUMENT ................................................................................................................ 7

    A.   Svenson Lacks Article III Standing to Assert Her State Law Claims .................... 7

    B.   The Court Should Dismiss the FAC Because Svenson Has Failed to State a
       Claim ..................................................................................................................... 11

        1.   Legal Standards for Failure to State a Claim ............................................ 11

        2.   Svenson Fails to State a Claim for Breach of Contract ............................ 12

            a.   To the extent the FAC is based on anything other than the
               Wallet TOS, it does not plead facts establishing the contract
               at issue ............................................................................................ 12

            b.   The FAC does not allege contract damages sufficient to
               state a claim. ................................................................................... 13

        3.   Svenson Fails to State a Claim for Relief Under the UCL ...................... 16

            a.   Svenson's UCL claim fails because she has not alleged facts
               sufficient to establish economic injury ......................................... 16

            b.   Plaintiff's UCL claim also fails because she has not alleged
               she relied upon or otherwise was harmed "as a result of"
               Defendants' actions ........................................................................ 17

        4.   Svenson's Implied Covenant of Good Faith and Fair Dealing Claim
            Fails Because She Has Not Alleged Bad Faith ......................................... 19

         5.   Svenson Has Failed to State a Claim for Violation of § 2702 of the
            SCA .......................................................................................................... 21

            a.   The information at issue still is "record" information, not
               the "contents of a communication" ............................................... 21

    C.   The Court Should Strike, Under Rule 12(f), Svenson's SCA § 2701 Claim ........ 25

V.    CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. Cnty. of Los Angeles*,
    No. CV 07-102-R (SH), 2009 WL 666449 (C.D. Cal. Mar. 12, 2009) ...................................... 25

*Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (1988) ...................................... 18

*Anthony v. Yahoo!, Inc.*,
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...................................................................................... 12

*Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471 (2010).......................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................... 11

*Auerback v. Great W. Bank*,
    74 Cal. App. 4th 1172 (1999)........................................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................... 11, 15, 20

*Beluga Shipping GMBH & Co. KS "Beluga Fantastic" v. Suzlon Energy LTD.*,
    No. 10-80034 JW (PVT), 2010 WL 3749279 (N.D. Cal. Sept. 23, 2010) ........................... 22, 24

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31,
    2001) .............................................................................................................................................. 20

*Chevron Corp. v. Donziger*,
    No. 12-C-80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)....................... 22, 24

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ..................................................................... 10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)......................................................................................................................... 7

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011) ......................................................................................................... 11

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010).......................................................................................... 17, 18, 19

*Edwards v. First Am.*,
    610 F.3d 514 (9th Cir. 2010) ........................................................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994)............................ 25

*Gieseke v. Bank of Am., N.A.*,
   No. 13-CV-04772-JST, 2014 WL 3737970 (N.D. Cal. July 28, 2014) ...................................... 11

*Grant v. Aerodraulics Co.*,
   91 Cal. App. 2d 68 (1949) ........................................................................................................ 13

*Guz v. Bechtel Nat'l., Inc.*, 24 Cal. 4th 317 (2000) ............................................................................ 20

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................................... 17

*Hill v. MCI WorldCom Commc'ns*,
   120 F. Supp. 2d 1194 (S.D. Iowa 2000) .............................................................................. 22, 24

*In re Adobe Sys., Inc. Privacy Litig.*,
   -- F. Supp. 2d --, 2014 WL 4379916 (N.D. Cal. Sept. 9, 2014)............................................ 8, 11

*In re DoubleClick, Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001)...................................................................................... 23

*In re Facebook Privacy Litig.*,
   No. 12-15619, 2014 WL 1815489 (9th Cir. May 8, 2014) .................................................. 10, 15

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)........................................ 10, 15

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)...................................... 10, 14, 15

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013)................................. 18

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013). ................................................................................ 9, 14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................................................. 19

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ........................................................................................... 8, 9, 21

*Jessup-Morgan v. Am. Online, Inc.*,
   20 F. Supp. 2d 1105 (E.D. Mich. 1998) ............................................................................... 21, 24

-ii-

# TABLE OF AUTHORITIES
### (continued)

Page

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008) ................................................................... 11

*Joude v. WordPress Found.*,
    No. 14-cv-1656, 2014 WL 3107441 (N.D. Cal. Jul. 3, 2014) ................................. 12, 13

*Korea Supply Co. v. Lockheed Martin*,
    29 Cal. 4th 1134 (2003) ...................................................................... 16

*Kwickset Corp. v. Sup. Ct.*,
    51 Cal. 4th 310 (2011) ........................................................................ 16

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) ................................................................. 25

*Lamumba Corp. v. City of Oakland*,
    No. C05-2712 MHP, 2006 WL 3086726 (N.D. Cal. Oct. 30, 2006) ......................... 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................. 11

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ............................................................... 23

*Obodai v. Indeed, Inc.*,
    No. 13-80027-MISC EMC, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013) ......... 22, 24

*Opperman v. Path*,
    No. 13-cv-00453, 2014 WL 1973378 (N.D. Cal. May 14, 2014) ........................ 9, 14

*Oregon v. Legal Servs. Corp.*,
    552 F.3d 965 (9th Cir. 2009) ................................................................... 8

*Perkins v. LinkedIn Corp.*,
    -- F. Supp. 2d --, 2014 WL 2751053 (N.D. Cal. Jun. 12, 2014) ...................... 9, 18, 19

*Peterson v. Cellco P'ship.*,
    164 Cal. App. 4th 1583 (2008) ............................................................... 17

*Puentes v. Wells Fargo Home Mortg., Inc.*,
    160 Cal. App. 4th 638 (2008) ................................................................. 17

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*,
 752 F.3d 807 (9th Cir. 2014) ........................................................ 12, 13

*Ragland v. U.S. Bank Nat'l. Ass'n*,
 209 Cal. App. 4th 182 (2012) ............................................................. 21

*Ruiz v. Gap, Inc.*,
 622 F. Supp. 2d 908 (N.D. Cal. 2009) ................................................. 15

*Sams v. Yahoo!, Inc.*,
 No. CV-10-5897-JF (HRL), 2011 WL 1884633 (N.D. Cal. May 18, 2011) ........................ 22, 24

*Sapiro v. Eoncompass Ins.*,
 221 F.R.D. 513 (N.D. Cal. 2004) ......................................................... 25

*Softcard Sys. v. Target Corp.*,
 No. 1:03-CV-3585-ODE, 2005 WL 6225163 (N.D. Ga. Jan. 11, 2005) ................... 23

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
 101 Cal. App. 4th 1038 (2002) ............................................................. 13

*Sullins v. Exxon/Mobil Corp.*,
 No. C 08-04927 CW, 2010 WL 338091 (N.D. Cal. Jan. 20, 2010) ..................... 16

*Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*,
 No. SACV071356 AHSMLGX, 2009 WL 303330 (C.D. Cal. Feb. 6, 2009) ............ 20

*Turner v. City and Cnty. of San Francisco*,
 892 F. Supp. 2d 1188 (N.D. Cal. 2012) ............................................... 8, 11

*Von Koening v. Snapple Bev. Corp.*,
 713 F. Supp. 2d 1066 (E.D. Cal. 2010) ................................................. 14

*Wong v. Citi Home Loans Servicing LP*,
 No. 2:11-CV-001428-ECR, 2012 WL 1900947 (D. Nev. May 23, 2012) ................ 20

*Yunker v. Pandora Media, Inc.*,
 No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................. 10

STATUTES

18 U.S.C. § 2701 ................................................................................... 25

18 U.S.C. § 2702 ............................................................................. passim

18 U.S.C. § 2703 .............................................................................. 21, 24

-iv-

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Cal. Bus. & Prof. Code § 17204 ........................................................................ 16

4

Cal. Bus. & Prof. Code § 22576 ..................................................................... 7, 18

5

Cal. Civ. Code § 1549 ....................................................................................... 13

6

Cal. Civ. Code § 1605 ....................................................................................... 13

7

**RULES**

8

Fed. R. Civ. P. 12 ........................................................................................ 11, 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

# I.    NOTICE OF MOTION

Please take notice that on January 15, 2015, at 9:00 a.m., or on such other date as the Court directs, in Courtroom 3, 5th Floor of the United States District Court, Northern District of California, San Jose Division, before the Hon. Beth Labson Freeman, Defendants Google Inc. ("Google") and Google Payment Corporation ("GPC") will respectfully move this Court for an Order dismissing the First Amended Complaint for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants will further move this Court for an order striking Plaintiff's Stored Communications Act § 2701 claim pursuant to Federal Rule of Civil Procedure 12(f).

Defendants' Motion is based on this Notice of Motion and Motion, all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court.


DATED:  September 16, 2014                    **PERKINS COIE** LLP


                                             By:  */s/ Susan D. Fahringer*
                                                  Susan D. Fahringer, Bar No. 162978
                                                  SFahringer@perkinscoie.com

                                             Attorneys for Defendants
                                             Google Inc. and Google Payment Corporation

## II.    INTRODUCTION

Svenson's First Amended Complaint ("FAC") makes exactly the same substantive allegations as the original Complaint, but dresses them up using terms like "Buyer Contract" and "Packet Contents" to obscure their real nature and forestall another dismissal.  The FAC still alleges that Svenson provided basic registration information when she signed up for Google services:  her name, city, state, zip code, and gmail address (her "Contact Information").  She still alleges that after she purchased an App, Defendants made her Contact Information available to the seller of her App.  And she still asserts that this violated the Wallet Terms of Service, Exhibit A to the Complaint, and the privacy policy and privacy notice it incorporates, Exhibits B and C to the Complaint (the "Wallet TOS").

The only differences between the FAC and the original Complaint are that, first, the FAC renames some unidentified portion of the Wallet TOS a "Buyer Contract" in a desperate attempt to turn the Wallet TOS into two contracts.  Second, the FAC refers to Svenson's Contact Information as "Packets Contents," because the way it traveled from her mobile phone to Google's servers was (like all data sent over the Internet), in "packets."

The FAC makes exactly the same claims as in the original Complaint, and they fail for exactly the same reasons.  Svenson has not alleged facts showing she suffered any cognizable damage as a result of Defendants' actions, which is fatal to her contract, implied covenant, and Unfair Competition Law ("UCL") claims.  Her UCL claim fails for the additional reason that, to the extent it is based on Defendants' alleged misrepresentations in the Wallet TOS, Svenson has not pled reliance.  And Svenson has not pled, and cannot plead, any facts showing that the information at issue was the "contents of communications" necessary to state a claim for violation of the Stored Communications Act, 18 U.S.C. § 2702 (the "SCA").  This Court should dismiss the FAC for the same reasons as it dismissed the original Complaint.  The dismissal should be with prejudice, because Svenson has been given the opportunity to cure the defects in her Complaint and has failed to do so, and a further amendment would be futile.

### III.   FACTUAL BACKGROUND

**A.     The Contract at Issue Is the Wallet TOS**

In its Order dismissing the original Complaint, this Court "strongly urge[d] Plaintiff to attach the relevant contracts to any amended complaint she may file in this case."  Order, Dkt. No. 83 ("Order of Dismissal") at 5.  The relevant contract is the Wallet TOS, and Plaintiff attached it, along with the privacy policy and privacy notice it incorporates, as Exhibits A-C to the FAC.  *See, e.g.*, First Amended Complaint, Dkt. No. 84 ("FAC") ¶¶ 138-39 (contract claim based on Wallet TOS); FAC Exs. A-C.  There are not two different Wallet TOS.  A person agrees to the same Wallet TOS regardless of whether she is simply registering for Google Wallet but is not yet using it to purchase, or whether she registers for Google Wallet and makes a purchase.  This is clear from the Wallet TOS themselves, which apply both to those who register and to those who purchase.  *See* FAC Ex. A at 1 ("These Terms of Service are a legal agreement, between you, Google Inc. and Google Payment Corp. . . . that *governs your access to* and *use of* Google Wallet . . . Please review these Terms of Service before you decide whether to accept them and *continue with the registration process*") (emphasis supplied); *id*. at 3, ¶ 2.1 ("*When you sign up for Google Wallet, you are creating a Google Wallet Account* that is associated with your Google Account.") (emphasis supplied).

The Wallet TOS also make clear that Google Wallet is free to Buyers, and that GPC processes payments on behalf of Sellers, not Buyers.  *Id.* at 7, ¶ 3.8 ("GPC does not charge a fee to use the Processing Service as a Buyer"); *id.* at 4, ¶ 3.2 ("GPC processes Payment Transactions *on behalf of Sellers, as the agent of the Seller* . . .") (emphasis supplied).

**B.     Svenson's Imaginary "Buyer Contract" Is Nothing More than the Wallet TOS**

To avoid another dismissal, Svenson obfuscates the terms of the Wallet TOS to try to establish that a different contract applies to someone who registers for Google Wallet but has not yet purchased something (a "Customer") versus someone who has registered and purchased something (a "Buyer"). [1]  But Svenson's conclusion that "'Customers' and 'Buyers' under the

---

[1] For example, Svenson does backflips to try to turn a straightforward written contract into something complex and inchoate, even referring to the Wallet TOS as a "framework" rather than

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

1   [Wallet TOS] have different contracts," FAC ¶ 36, is a fantasy, unsupported by any factual

2   allegations and utterly inconsistent with the Wallet TOS.  No new terms are added to the Wallet

3   TOS when someone buys an App instead of simply registering for Google Wallet.  *See* FAC Ex. A

4   at 1, 3 (Wallet TOS terms apply to both "Customers" and "Buyers").

5          Svenson tries to distinguish the "Buyer Contract" from the "Customer Contract" by

6   concluding that the "Buyer Contract" is formed anew every time she purchases an App.  *See, e.g.*,

7   FAC ¶ 34.  But Svenson makes no factual allegations from which to draw this conclusion.  If

8   Svenson contends that this "Buyer Contract" is between a Buyer and Defendants, then it must be

9   the Wallet TOS,[2] and so is exactly the same as the Wallet TOS to which any Customer or Buyer

10  already has agreed.  And if Svenson contends that a "Buyer Contract" between a Buyer and

11  Defendants incorporates the Buyer's agreement to purchase an App from the Seller, it would

12  contradict both the Wallet TOS and the facts that Svenson does allege.  Under the Wallet TOS,

13  Defendants are *not* parties to any buyer contract for the purchase of an App.  FAC Ex. A at 5, ¶ 3.2

14  ("You acknowledge and agree that your purchases of Products are transactions between *you* and the

15  *Seller*, and *not with GPC, Google*, or any of their affiliates.  *Neither GPC nor Google are a party to*

16  *your Payment Transaction* for the purchase of Products, and *GPC, Google, or other GPC affiliates*

17  *are not a Buyer or a Seller* in connection with any Payment Transaction . . . ."); *see also id.* at 4,

18  ¶ 3.2 (the processing service supplied by Google Wallet "facilitates a credit or debit card purchase

19  *by a Buyer from a Seller* . . .") (emphases supplied).  Svenson's allegation that she "purchased *the*

20  *App* for $1.77" only reinforces that her purchase was from the seller of her App, not Defendants.

21  FAC ¶ 88 (emphasis supplied).  The facts alleged in the FAC, and the Wallet TOS on which the

22  FAC is based, make clear that there is no such thing as a "Buyer Contract" that is any different from

23  the Wallet TOS.

24  _____

25  a contract:  "The [Wallet TOS] incorporates by reference terms, conditions, and privacy protocols
    that, together with the [Wallet TOS], establish an encompassing framework that governs how a
26  person wishing to buy an App must interact with Defendants and their facilities to obtain the
    desired App."  FAC ¶ 33.

27  [2] The Wallet TOS "constitutes the entire agreement" between a Buyer and GPC, and Svenson
    alleges that Google agrees to it as well.  FAC Ex. A at 22, ¶ 21; *see also* FAC ¶ 29 ("Both
28  Defendants are parties to" the Google Wallet TOS).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

**C.      The Information At Issue Is Still Plaintiff's "Contact Information"**

The original Complaint alleged that Defendants disclosed Svenson's Contact Information to the App Seller after purchase.  *See* Complaint, Dkt. No. 1 ("Compl.") ¶¶ 2, 72; Order of Dismissal at 2.  In the FAC, the information at issue remains the same:  Svenson asserts that Defendants disclosed her Contact Information after her purchase.  The alleged disclosure remains the same as well:  the FAC alleges that Svenson's Contact Information was disclosed to Sellers after purchase on a vendor portal.  *See* Compl. ¶ 73 (information disclosed on vendor portal after purchase complete); FAC ¶ 71 (after purchase, Defendants disclose information to Seller by "making that data available to the App Vendor on the App Vendor's Google Wallet portal"); *id.* ¶ 74 (Seller allegedly may access information at issue via the Google Wallet portal); *id.* ¶ 211 (same).[3]

In the face of case law making clear that basic subscriber information is not the "contents of communications" under the SCA, Svenson re-labels her Contact Information "Packets Contents," because she sent the information via the Internet, and all information is transmitted over the Internet in "packets."  *See* FAC ¶ 5 (information transmitted over Internet in "packets"); *see also id.* ¶¶ 7-9, 14, 62 (references to transmission via "packets").[4]  This re-packaging changes nothing.  Svenson still provided the basic subscriber information at issue when she registered for Google products or services, just as all subscribers provide their basic subscriber information.  *See* Compl. ¶ 71 (Plaintiff supplied Contact Information when she registered for Google products and services); FAC ¶ 206 ("Plaintiff was required by Defendants to manually enter much of the information in the Packets Contents including her name, credit card number, address and zip code.").  And the alleged disclosure is still by Defendants, via the Google Wallet vendor portal.  Svenson does <u>not</u> allege that the "packets" themselves are transmitted directly to App sellers.

---

[3] Like the original Complaint, the FAC does not allege that credit card information is disclosed. *See* Compl. ¶¶ 49-50 (identifying information allegedly disclosed, not including credit card information); FAC ¶ 74 (same).

[4] To further confuse the issue, Svenson also calls her transmission of her authorization to purchase an App "Packet Contents," because she sent that, too, over the Internet.  *See* FAC ¶¶ 62, 65 (clicking to purchase also results in generation of "Packet Contents"—but no allegation that by clicking to purchase a Buyer "manually entered" her name, gmail address, city, state, zip code or phone number).

**D.      Svenson Alleges No New Facts To Support Her Damages Theories**

In her original Complaint, Svenson asserted "three theories of contract damages:  benefit of the bargain, diminution in the economic and proprietary value of her Contact Information, and increased risk of identity theft."  *See* Order of Dismissal at 7.  The FAC raises the same theories, but alleges no new facts in support.  First, Svenson reiterates her "benefit of the bargain" theory by asserting conclusorily that, "[t]he value of services Buyers ultimately receive in the bargain (whereby App purchases are not completed in accordance with the [Wallet TOS] because Packets Contents are disclosed to App Vendors) is less than the value of services Buyers pay for and agree to receive:  namely, completion of App purchase transactions in accord with the [Wallet TOS and Google Privacy Policy] and without the unnecessary disclosure of Packets Contents."  FAC ¶ 86.  Svenson alleges no facts to support this.  And the Wallet TOS make clear that Buyers pay nothing to use Google Wallet.  FAC Ex. A at 7, ¶ 3.8 ("GPC does not charge a fee to use the Processing Service as a Buyer"); *id.* at 4, ¶ 3.2 ("GPC processes Payment Transactions *on behalf of Sellers, as the agent of the Seller . . .*") (emphasis supplied).

Moreover, Svenson's own allegations show she paid Defendants nothing.  Svenson does not allege that she paid Defendants directly for the privacy promises; she still alleges that the $1.77 she paid was for the App itself.  FAC ¶ 88.  Svenson will only assert that "Defendants keep" a portion of transaction fee, *id.* ¶ 142, and she admits the fees are owed by Sellers, not Buyers, *id.* ¶ 143 (Defendants "impose on Buyers the obligation to pay fees that are *owed by Sellers . . .*") (emphasis added).  And none of Svenson's other allegations leads to a reasonable inference that Svenson paid Defendants anything in return for a service, or for the alleged privacy promises.  Svenson cites Paragraph 3.1 of the Wallet TOS for the proposition that Buyers must pay "obligations and fees," *id.* ¶ 47, but that provision does not regard fees due Defendants, it regards fees due a Payment Instrument such as a credit card.  (Section 3.1 provides:  "You must register a Payment Instrument [e.g., a credit card] to make Payment Transactions and pay fees and other obligations arising from your use of the Processing Service.")  Svenson does not allege how much she allegedly paid for the privacy promises or any other facts that would permit this Court to conclude that the amount she paid was anything other than zero.  Svenson alleges the App was available elsewhere, FAC ¶ 95,

-6-

1    but she still does not allege the price for the App on other sites, or the associated privacy promises,

2    were any different.

3         Second, Svenson contends that Defendants' actions decreased the economic value of her

4    Contact Information.  To try to support this, Svenson alludes to a market for Contact Information,

5    *id.* ¶¶ 97-116, and concludes she was "deprived" of the opportunity to profit from her Contact

6    Information, *id.* ¶ 157, but she alleges not a single fact in support.  She does not allege, for example,

7    that she tried to enter that market but received a reduced price for her Contact Information, that she

8    might attempt to sell her Contact Information in the future, or that Defendants' conduct foreclosed

9    the possibility that she could do so.

10        Finally, Svenson still asserts that she faces a "significant[]" and "imminent[]" risk of

11   identity theft due to Defendants' disclosure of her Contact Information to the App Seller, *id.* ¶ 240,

12   but, as in the original Complaint, Svenson alleges no facts in support.

13   **E.     Svenson Alleges No New Facts In Support of Her UCL Claim**

14        Like her original Complaint, the FAC asserts claims under the "unlawful" prong of the UCL

15   (based on Svenson's claims under the SCA and California Business & Professions Code § 22576)

16   and under the "unfair" prong of the UCL (based on Defendants' alleged disclosure of Contact

17   Information to App developers).  *See* FAC ¶¶ 218-244.  Central to her UCL claims is the conclusion

18   that Defendants broke privacy promises in the Wallet TOS by "represent[ing] to Plaintiff and the

19   Class in the Wallet Terms that Defendants will not share Packets Contents with third-party App

20   Vendors, when contrary to these agreements and representations they in fact do."  FAC ¶ 230.  As

21   in her original Complaint, Plaintiff does not allege that she relied on—or even read—the Wallet

22   TOS before she purchased her App.

                              **IV.     ARGUMENT**

23

24   **A.     Svenson Lacks Article III Standing to Assert Her State Law Claims**

25        Svenson must plead facts to establish standing for each and every claim she asserts.  The

26   Supreme Court has made clear that Article III standing is a claim-by-claim inquiry and that standing

27   must be established for each claim presented:  "[T]he Court's standing cases confirm that a plaintiff

28   must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547

-7-

U.S. 332, 352 (2006); *accord Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 970 (9th Cir. 2009) ("A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief sought.") (internal quotations omitted); *see also Turner v. City and Cnty. of San Francisco*, 892 F. Supp. 2d 1188, 1198 (N.D. Cal. 2012) (plaintiff lacked standing to bring one claim despite having standing to pursue others); *In re Adobe Sys., Inc. Privacy Litig.*, -- F. Supp. 2d --, 2014 WL 4379916, at *4-10 (N.D. Cal. Sept. 9, 2014) (conducting a claim-by-claim standing analysis and dismissing one state law claim for lack of standing while finding standing for another state law claim). Thus, this Court must examine Svenson's standing to bring each of her state law claims, even if she has Article III standing to assert a claim under the SCA.

Relying on the Ninth Circuit's *In re Zynga Privacy Litigation* decision, this Court denied Google's prior Motion to Dismiss for lack of Article III standing. Order of Dismissal at 4 (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105 n. 5 (9th Cir. 2014)). *Zynga*, as this Court correctly acknowledged, grants Article III standing for a claim premised on violation of a federal statute. For such claims, an alleged violation of the statute provides the required injury-in-fact so long as the statute "grants persons in the plaintiff's position a right to judicial relief." *Id*. Defendants conceded, and the Court ruled, that the SCA granted a person in Svenson's position a right to relief sufficient to confer Article III standing.

*Zynga* does not, however, relieve Plaintiff from her burden to establish standing for her state law claims, and *Zynga* does not contradict or question *Cuno* or its progeny. In *Zynga,* the court limited its holding to the federal statutory claims at issue. It did not hold that Article III standing for those claims vests a plaintiff with standing for all other claims in suit: "Because the plaintiffs allege that Facebook and Zynga *are violating statutes that grant persons in the plaintiffs' position the right to judicial relief*, we conclude they have standing to bring *this claim*." *Id*. at 1105 n. 5 (emphasis added). Where a federal statutory cause of action supports Article III standing, the violation of the statute itself provides the requisite "injury." *See Edwards v. First Am.*, 610 F.3d 514, 516 (9th Cir. 2010) ("Thus, we must look to the text of [the statute] to determine whether it prohibited Defendants' conduct; if it did, then Plaintiff has demonstrated an injury sufficient to

1    satisfy Article III.").  But that federal statutory injury applies to the associated federal statutory

2    claim, not state law claims such as those Svenson asserts here.

3         So, for example, in a case decided after *Zynga* that contained both SCA and non-SCA

4    claims, Judge Koh explained that, while plaintiff had established Article III standing to assert

5    Wiretap Act and SCA claims, the court still had to undertake a separate standing analysis as to the

6    Plaintiff's state law claims.  *See Perkins v. LinkedIn Corp.*, -- F. Supp. 2d --, 2014 WL 2751053, at

7    *10-12 (N.D. Cal. Jun. 12, 2014).  The same inquiry is required here.

8         For each of her state law claims, Plaintiff still bears the burden to plead facts establishing

9    "an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and

10   particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of*

11   *Wildlife*, 504 U.S. 555, 560-61 (1992).  There must also be a causal connection between the injury

12   and the conduct complained of, and it must be likely, not merely speculative, to be redressed by a

13   favorable decision. *Id.*  Svenson's allegations of injury are insufficient to confer Article III standing

14   to assert any of her state law claims.

15        First, Svenson contends that she lost the "benefit of her bargain" because she paid for a

16   service she did not receive, or for privacy promises that she alleges were broken.  FAC ¶¶ 86, 88.

17   But the only facts alleged, including the Wallet TOS, establish otherwise.  Wallet is free to Buyers,

18   and any payment for services is made by the Seller, not the Buyer.  *See id.*; FAC Ex. A. at 7, ¶ 3.8;

19   *id.* at 4, ¶ 3.2.  Svenson has not alleged that she suffered an economic injury by paying Defendants

20   for anything or that she paid for a specific privacy promise, and it is her burden to do so to establish

21   the requisite injury-in-fact.  *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D.

22   Cal. 2013).

23        Second, Svenson asserts that she was injured because she was deprived of the "ability to sell

24   [her] own personal data" in a theoretical market for Contact Information.  FAC ¶¶ 97-116.  Svenson

25   cites newspaper articles, academic papers, and a government report to show the theoretical market

26   exists, but she does not allege, as she must, that she herself entered the market (or even intended to)

27   and was deprived of the value of her Contact Information.  Svenson's allegations therefore are

28   insufficient to establish standing. *See Opperman v. Path*, No. 13-cv-00453, 2014 WL 1973378, at

-9-

1   *23 (N.D. Cal. May 14, 2014) (dismissing for lack of Article III standing and holding that

2   "Plaintiffs here have *failed to allege any details* concerning their argument that their address books'

3   value was diminished by the App Defendants' conduct … Plaintiffs must 'tie' their allegations that

4   their personal information has value *to the alleged injury they suffered*.") (emphasis supplied); *In re*

5   *Google Android Consumer Privacy Litig.*, No. 11-MD-02264, 2013 WL 1283236, at *4 (N.D. Cal.

6   Mar. 26, 2013) (plaintiff failed to allege Article III injury-in-fact because, even where "Plaintiffs

7   allege that a market exists that could provide them the opportunity to sell their PII, none of the

8   Plaintiffs specifically tie those allegations to them."); *see also Google, Inc. Privacy Policy Litig.*,

9   No. C-12-01382, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("Plaintiffs similarly have not

10  alleged how Google's use of PII in any way deprives them of the ability to profit from the same

11  information."); *accord In re Facebook Privacy Litig.*, No. 12-15619, 2014 WL 1815489, at *1 (9th

12  Cir. May 8, 2014) (damages for breach contract sufficiently pled where the allegations were that

13  plaintiff was "*losing the sales value* of that personal information") (emphasis supplied).

14      Svenson's theoretical assertions regarding the purported diminution in the value of her

15  personal information are exactly the type that courts routinely hold cannot confer Article III

16  standing.  *See Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at *3

17  (N.D. Cal. Mar. 26, 2013) (collecting cases from district courts in the Ninth Circuit, which are

18  "reluctant to find standing based solely on a theory that the value of a plaintiff's [personal

19  information] has been diminished" and holding that a "purported diminution in the value of

20  [plaintiff's] [personal information]" as a result of it being made available to third parties was not

21  injury-in-fact).

22      Finally, although Svenson asserts that she faces a "significant[]" and "imminent[]" risk of

23  identity theft, FAC ¶ 240, she alleges no facts to support this conclusion.  An unsupported assertion

24  of future harm is not sufficiently actual and imminent to qualify as an injury-in-fact.  *Clapper v.*

25  *Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[T]hreatened injury must be certainly impending

26  to constitute injury in fact, and … allegations of possible future injury are not sufficient.")

27  (emphasis, internal quotation marks and citation omitted).

28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

1  Following controlling Supreme Court precedent, this Court should dismiss Svenson's state

2  law claims for lack of Article III standing.  *See Turner*, 892 F. Supp. 2d at 1198 (plaintiff lacked

3  standing to bring one claim despite having standing to pursue others); *Adobe Sys., Inc. Privacy*

4  *Litig.*, 2014 WL 4379916, at *4-10 (conducting a claim-by-claim Article III standing analysis and

5  dismissing one state law claim for lack of standing while finding standing for another state law

6  claim).

7  **B.    The Court Should Dismiss the FAC Because Svenson Has Failed to State a Claim**

8  **1.    Legal Standards for Failure to State a Claim**

9  To state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief

10  above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  A complaint

11  must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible

12  on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation

13  omitted).  "[T]hreadbare recitals of the elements of a cause of action supported by mere conclusory

14  statements do not suffice."  *Id.*

15  When a complaint fails to state a claim upon which relief may be granted, this deficiency

16  should be "exposed at the point of minimum expenditure of time and money by the parties and the

17  court."  *Id.* at 558 (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6)

18  therefore is appropriate when the plaintiff either lacks a "cognizable legal theory" or has failed to

19  present "sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare*

20  *Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted).  Determining whether a

21  complaint states a plausible claim for relief is a context-specific task that requires the court to draw

22  on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 679.

23  Dismissal of a claim with prejudice is appropriate when a party fails to allege facts

24  demonstrating the cause of action, and amendment would be futile.  *Dougherty v. City of Covina*,

25  654 F.3d 892, 901 (9th Cir. 2011) (internal citation omitted).  A district court's discretion to deny

26  leave to amend is particularly broad where the plaintiff has previously amended the complaint.

27  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (internal citation

28  omitted); *see also Gieseke v. Bank of Am., N.A.*, No. 13-CV-04772-JST, 2014 WL 3737970, at *4

-11-

(N.D. Cal. July 28, 2014) ("The fact that the [plaintiffs] did not correct the deficiencies contained in their original complaint is a strong indication that the plaintiffs have no additional facts to plead.") (internal quotation omitted).

### 2.    Svenson Fails to State a Claim for Breach of Contract

To state a claim for breach of contract, Plaintiff must plead facts sufficient to "establish a contract, [Plaintiff's] performance or excuse for non-performance, [Defendants'] breach, and resulting damages to Plaintiff." *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014).  This Court previously dismissed Svenson's breach of contract claim because she did not satisfy two of these elements: (1) she did not plead facts establishing the contract on which her claim was based, and (2) she offered only "conclusory allegations" of resulting damage.  Order of Dismissal at 6.  The FAC glosses over these problems by inventing "Buyer Contracts," FAC ¶ 34, and adorning Plaintiff's damages theories with allegations that are just as speculative and conclusory as those in the initial Complaint.  *See* FAC ¶¶ 34, 123-125.  These semantic gymnastics do not cure the defects that led to the Court's prior dismissal.

### a.    To the extent the FAC is based on anything other than the Wallet TOS, it does not plead facts establishing the contract at issue

To satisfy the "establish a contract" requirement, the complaint must identify the specific contract at issue and the particular contractual provision(s) on which the claim for breach relies. *See Joude v. WordPress Found.*, No. 14-cv-1656, 2014 WL 3107441, at *5 (N.D. Cal. Jul. 3, 2014) ("Here, Plaintiffs allege that they entered into a contract with [defendant] . . . performed by abiding by the Terms of Service, and suffered harm to their reputations as a result.  This does not establish a contract.") (dismissing claim for breach of contract based on plaintiff's failure to plead facts sufficient to establish a contract); *Anthony v. Yahoo!, Inc.*, 421 F. Supp. 2d 1257, 1260-61 (N.D. Cal. 2006) (dismissing breach of contract claim based on failure to identify provisions in standard terms of service that created any relevant contractual obligation).  Svenson's claim for breach of contract is expressly based on the Wallet TOS.  FAC ¶¶ 138-39.  If Svenson bases her claim on her fictional "Buyer Contract," she has failed to plead the terms of that contract sufficiently to satisfy the "establish a contract" requirement of her claim.

-12-

1    Because her theory of damage requires that those who buy an App agree to a different

2    contract than those who have only registered for Google Wallet, Svenson tries to confuse the terms

3    and operation of the Wallet TOS to invent a "Buyer Contract" that somehow differs from the

4    contract into which any Customer enters.  But she has not pled facts sufficient to establish that

5    contract.  *Pyramid Tech.*, 752 F.3d at 818.  Mere reference to the "Buyer Contract" as a "new" and

6    "separate" agreement, without pleading facts sufficient to identify the terms of that contract or the

7    parties to it, does not "establish a contract."[5]  *Joude*, 2014 WL 3107441, at *5.  To the extent

8    Svenson's contract claim is based on a contract that is any different from the Wallet TOS, she has

9    not pled facts sufficient to survive this motion.

10    Finally, Svenson, like everyone who registers for Google Wallet, already has agreed to the

11    Wallet TOS by the time she purchases an App.  FAC ¶ 32-33 (alleging that Wallet TOS govern all

12    App purchases).  Her conclusory allegation that a buyer enters into the Wallet TOS anew every

13    time she purchases a product fails as a matter of contract law.  Where there are no new terms, there

14    is no new contract (and no new consideration is required).  Cal. Civ. Code § 1549 ("CONTRACT,

15    WHAT.  A contract is an agreement to do or not to do *a certain thing*.") (emphasis added).[6]

16    Svenson's "Buyer Contract" simply does not exist, either legally or factually.

17          **b.**     **The FAC does not allege contract damages sufficient to state a claim.**

18    The FAC recycles the same conclusory damages allegations that the Court already rejected,

19    and alleges no facts sufficient to establish the requisite damages element.  *St. Paul Fire & Marine*

20    *Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002) ("An essential

---

[5] Moreover, Svenson's allegation that a Buyer enters into some unidentified portion of the Wallet TOS that reflects the Buyer Contract contradicts Svenson's original Complaint, where she alleged that she entered into the Wallet TOS when she registered for Google Wallet.  Compl. ¶ 70 ("On May 6, 2013, Plaintiff registered with Google Wallet and thereby, according to [Defendants], agreed to the Google Wallet Terms of Service and the Google Wallet Privacy Policy with [Defendants].") (emphasis added).

[6] Even if Svenson had agreed to a new contract, she provided Defendants  nothing in connection with her purchase, and a new contract would fail for lack of consideration.  "Generally speaking, a commitment to perform a preexisting obligation has no value. . . [D]oing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract."  *Auerback v. Great W. Bank*, 74 Cal. App. 4th 1172, 1185 (1999); *Grant v. Aerodraulics Co.*, 91 Cal. App. 2d 68, 75 (1949) (mere promise to do what the promisor is already bound to do is not sufficient consideration for new promise); *see also* Cal. Civ. Code § 1605 (consideration is a benefit to which the promisor is not lawfully entitled).

-13-

1    element of a claim for breach of contract are damages resulting from the breach.").

2          First, Svenson's "benefit of the bargain" theory fails because Svenson paid nothing for the

3    alleged promises.  *See supra*, Section II.D., FAC ¶ 86; FAC, Ex. A at 7, ¶ 3.8 ("GPC does not

4    charge a fee to use the Processing Service as a Buyer.").  Svenson still alleges that she did not pay

5    Defendants for any privacy promises, but, rather, paid $1.77 for the App itself.  FAC ¶ 88.  And

6    Svenson acknowledges that she did not buy the App from Defendants and that any transaction fees

7    associated with the App purchase "are owed by Sellers."  *Id.* ¶ 143.  Svenson alleges the App she

8    purchases was available elsewhere, *id.* ¶ 95, but does not allege that it cost less there.  And she still

9    does not explain how the App, as a result of alleged disclosures of her Contact Information to the

10   Seller of that App, is worth less than the $1.77 she paid or by what amount.  *See cf. Von Koening v.*

11   *Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1078 (E.D. Cal. 2010) ("benefit of the bargain"

12   damages, alleged in context of UCL claim, require plaintiff to allege she "paid more" for product

13   than she would have otherwise).  As a result, this Court's prior analysis was correct and still

14   applies: Svenson has not shown she paid anything for the services she contends she was deprived

15   of.  *See LinkedIn User Privacy Litig.*, 932 F. Supp. 2d at 1093 (dismissing contract claim for lack of

16   Article III standing where plaintiff's "FAC fails to sufficiently allege that Plaintiffs actually

17   provided consideration for the security services which they claim were not provided").

18         Second, Svenson asserts that there is a market for her Contact Information and that she has

19   been deprived of the "ability to sell [her] own personal data on that market."  FAC ¶ 157.  But

20   courts have repeatedly held that alleged diminished sales value of personal information is

21   insufficient to establish damages, unless the plaintiff alleges facts that show the plaintiff herself was

22   deprived of that value.  *See Opperman*, 2014 WL 1973378, at *23 ("Plaintiffs here have *failed to*

23   *allege any details* concerning their argument that their address books' value was diminished by the

24   App Defendants' conduct . . . Plaintiffs must 'tie' their allegations that their personal information

25   has value *to the alleged injury they suffered*.") (dismissing for lack of Article III standing)

26   (emphasis supplied); *Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 ("Plaintiffs

27   similarly have not alleged how Google's use of PII in any way deprives them of the ability to profit

28   from the same information.").  Even if Svenson plausibly alleged that a market exists to sell

-14-

1    personal information, she still must tie those allegations to herself, for example by alleging that she

2    intends to enter that market and has been excluded from doing so.  *Google Android Consumer*

3    *Privacy Litig.*, 2013 WL 1283226, at *4 (holding plaintiff failed to allege Article III injury).[7]

4        While Svenson purports to plead facts referring to a market for certain personal information,

5    FAC ¶¶ 103-105, she does not allege she was barred from entering that market by Defendants'

6    conduct.  Plaintiff does not allege that the type of Contact Information at issue here—an

7    individual's name, city, state, zip, email address and/or phone number—is sold on this purported

8    market.  Svenson does not even allege she has any intention to enter such a market, and an

9    allegation that Svenson wants to sell her Contact Information would be fundamentally at odds with

10   her prior allegations that she intended to keep this information "private."  Compl. ¶ 1.  Without

11   these facts, Svenson has not stated a cognizable claim for damage.  *Google, Inc. Privacy Policy*

12   *Litig.*, 2013 WL 6248499, at *5; *Google Android Consumer Privacy Litig.*, 2013 WL 1283226, at

13   *4.  Her bare reference to being "deprived of an ability" to sell her Contact Information, is merely a

14   "formulaic recitation of the elements" without the accompanying facts needed to survive Rule 12.

15   *Twombly*, 550 U.S. at 555.

16       Finally, Plaintiff concludes she faces "imminent" risk of identity theft, again without any

17   supporting facts.  FAC ¶ 240.  The Court previously dispensed with this allegation by ruling that it

18   was " too speculative to satisfy the pleading requirement for contract damages."  Order of Dismissal

19   at 8 (citing *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917-18 (N.D. Cal. 2009)).  Without any new

20   facts in the FAC to support this hypothetical risk, this rationale still applies.

21       Svenson had the opportunity to plead facts that established damage.  She failed to do so

22   because she has no new facts to plead.  The Court should dismiss Svenson's breach of contract

23   ─────────────────────────

[7] The Ninth Circuit's *In re Facebook Privacy Litigation* memorandum disposition does not,
24   explicitly or implicitly, overrule this authority or relieve Svenson of this burden.  2014 WL
     1815489, at *1.  The court in *Facebook* agreed that damages for breach of contract were
25   sufficiently pled because the plaintiff alleged that disclosure resulted in "losing the sales value of
     [plaintiffs'] personal information."  *Id.* (emphasis added).  Plaintiffs in *Facebook* characterized
26   their harm as "Plaintiffs [having] lost the right to sell that data to the entities that now no longer
     need to pay Plaintiffs for it because they obtained it from Facebook."  *See In re Facebook Privacy*
27   *Litig.*, Pls.' Opp. to Mot. to Dismiss at 12, Dkt. No. 101 (Aug. 8, 2011).  Svenson does not
     plausibly allege, nor could she, that any App seller would have purchased her Contact
28   Information and is now unwilling to do so.

-15-

claim with prejudice.

### 3.      Svenson Fails to State a Claim for Relief Under the UCL

To state a claim under the UCL and to establish statutory standing, a plaintiff must allege

that she has suffered (1) economic injury (2) as a result of the alleged unfair business practice.

*Kwickset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 323 (2011); *see also* Cal. Bus. & Prof. Code § 17204

("Actions for relief [under the UCL] shall be prosecuted . . . by a person who has suffered injury in

fact and has lost money or property as a result of the unfair competition."); Order of Dismissal at

16.  Svenson's UCL claim fails to satisfy either of these elements.

#### a.      Svenson's UCL claim fails because she has not alleged facts sufficient to establish economic injury

This Court previously dismissed Plaintiff's UCL claim because she failed to allege

economic injury resulting from Defendants' alleged practices of disclosing Contact Information to

App developers.  Order of Dismissal at 16.  In her FAC, Plaintiff has not cured this "fundamental

defect," *id.*, but instead merely rehashes the same faulty theories of injury that resulted in the Order

of Dismissal.

First, Svenson again bases her UCL damages on her purchase of the App, alleging that she

did not receive the benefit of her bargain.  FAC ¶ 241.  But the $1.77 that Svenson paid was for the

App itself, and Google Wallet is a free service for which Plaintiff paid nothing.  *See supra*, Section

III.B.2.b.  Svenson attempts to obfuscate this by alleging that Defendants were unjustly enriched

and unfairly profit because they "withheld" or "retained" some amount of money.  FAC ¶¶ 241,

242.  But the UCL does not permit disgorgement of profits that Defendants did not obtain from

Svenson, so whether Defendants received a fee from App developers is irrelevant.  *See Sullins v.*

*Exxon/Mobil Corp.*, No. C 08-04927 CW, 2010 WL 338091, at *3 (N.D. Cal. Jan. 20, 2010)

("Disgorgement would compel a defendant to surrender money obtained through an unfair business

practice regardless of whether the profits were obtained directly from the persons who were victims

of the unfair practice.  Disgorgement is available in a UCL action only to the extent that it

constitutes restitution.") (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1144-45

(2003)).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

1    Second, to the extent that Svenson bases her UCL claim on the alleged diminished sales

2  value of her personal information, FAC ¶ 157, this theory fails for the same reasons as discussed

3  above.  *See supra*, Section III.B.2.b.  Finally, Svenson's summary allegations of alleged risk to her

4  personal information and identity theft, FAC ¶¶ 240, 243, are insufficient to allege a "credible or

5  substantial threat" of harm sufficient for a UCL claim.  *See, e.g.*, *Herrington v. Johnson & Johnson*

6  *Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010)

7  (requiring that the plaintiff "plead a credible or substantial threat" of increased harm to bring a UCL

8  claim based on heightened risk of future health injury) (emphases supplied).

9    Svenson has not added any allegations that Defendants' business practices "changed her

10  economic position."  Order of Dismissal at 16; *see also Peterson v. Cellco P'ship.*, 164 Cal. App.

11  4th 1583, 1591 (2008) (affirming demurrer on Plaintiff's UCL claim due to failure to allege

12  economic injury).  Accordingly, she lacks standing under the UCL and this Court should dismiss

13  her UCL claim with prejudice.

14          **b.     Plaintiff's UCL claim also fails because she has not alleged she relied
                     upon or otherwise was harmed "as a result of" Defendants' actions**

15    In a UCL action, the burden of pleading causation "should hinge on the nature of the alleged

16  wrongdoing rather than the specific prong of the UCL the consumer invokes."  *Durell v. Sharp*

17  *Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).  Here, the "alleged wrongdoing" that forms the

18  basis for Svenson's UCL claim is Defendants' alleged *misrepresentations* regarding the way they

19  disclose user information.  Svenson's claim under the "unfair" prong alleges that Defendants

20  "*represent* to Plaintiff and the Class in the Wallet Terms that Defendants will not share Packets

21  Contents with third-party App Vendors, when *contrary to these agreements and representations*

22  they in fact do."  FAC ¶ 230 (emphasis added).  This is fundamentally a claim for

23  misrepresentation.  Indeed, without her allegation that Defendants misrepresent their disclosure

24  practices, Svenson's "unfair" claim is merely a claim that Defendants broke their promise—which

25  is insufficient to establish a UCL claim.  A breach of contract may only form the basis of a UCL

26  claim if alleges something more than the broken promise, such as an allegation of misrepresentation

27  or other unfair conduct.  *See Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645

28

-17-

(2008) ("[A] breach of contract may . . . form the predicate for Section 17200 claims, *provided it also constitutes conduct that is unlawful, or unfair, or fraudulent.*") (internal quotations omitted and emphasis added).[8]  Svenson's "unlawful" claim based on California Business & Professions Code § 22576[9] is premised on her claim that Defendants' disclosure practices are contrary to their representations in the Wallet TOS.  FAC ¶¶ 223-224.[10]  It, too, therefore sounds in misrepresentation.

Where, as here, a plaintiff's UCL claim is based on the defendant's misrepresentations, the plaintiff must allege that she actually relied on the misrepresentations in order to have statutory standing to assert a UCL claim.  *Perkins*, 2014 WL 2751053, at *18 ("When the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to state a claim for relief."); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL 6212591, at *7 (N.D. Cal. Nov. 25, 2013) (finding, on summary judgment, that "the gravamen of Plaintiffs' claims under the UCL's unlawful, unfair, and fraud prongs is that Apple misrepresented its data collection and privacy practices, thereby luring Plaintiffs into spending more money for their iPhones than they would have had they known the true nature of the

---

[8] A small number of courts have found that "a systematic breach of certain types of contracts (*e.g.*, breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL."  *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 489-90 (2010) (citing cases).  Only one such case held that the plaintiff did not need to show reliance or inducement to enter the contract, but that case was decided before Proposition 64 amended the UCL to add requirements for statutory standing and before *Durell* held that reliance is required where the plaintiff alleges mirepresentations.  *See Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 452 (1988).

[9] Under Cal. Bus. & Prof. Code § 22576, it is a violation of California law for an operator of a commercial website to (a) knowingly or willfully or (b) negligently and materially violate the provisions of its posted privacy policy.

[10] The only portion of Svenson's UCL claim that is not dependent on an allegation that Defendants misrepresent their disclosure practices is her "unlawful" UCL claim based on violations of the SCA.  *See* FAC ¶ 222.  This claim nonetheless fails because (a) as discussed above, Svenson has not alleged a sufficient economic injury, *see supra*, Section III.B.3.a., and (b) as discussed below, her SCA claim fails as a matter of law, *see infra*, Section III.B.5.

-18-

data being collected by Apple and the third party apps" and therefore plaintiffs were subject to the reliance requirement).[11]

To establish statutory standing, Svenson must allege that she would not have purchased the App but for the alleged misrepresentations, and she fails to do this. *See* FAC ¶¶ 87-96. Her allegations about what she and other users expect as a result of the Wallet TOS are too generalized and abstract to suffice. *E.g.*, *id.* ¶¶ 163, 170, 228, 230. Without any allegation that she read and relied on the terms that she now contends are deceptive, Svenson's UCL claim fails.

### 4.    Svenson's Implied Covenant of Good Faith and Fair Dealing Claim Fails Because She Has Not Alleged Bad Faith

Svenson's good faith and fair dealing claim rehashes the same superfluous allegations the Court has already rejected, and alleges no new facts sufficient to establish that Google acted with the bad faith that is required for Plaintiff to state a claim. In its Order of Dismissal, the Court rejected Plaintiff's argument that Defendants breached the implied covenant when they allegedly interpreted the Wallet TOS in bad faith. Order of Dismissal at 9. The Court recognized that, "[w]hile a claim for breach of the implied covenant may be made out by allegations that a defendant acted in bad faith to frustrate the agreed common purpose of the Contract, the bad faith alleged on the part of Defendants [was] simply breaching the contract by disclosing Plaintiff's Contact Information." *Id.*[12] To overcome the Court's Order, Svenson conclusorily alleges that, "[d]espite

---

[11] While this requirement was originally applied to claims under the UCL's fraud prong, *see In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009), California courts have subsequently applied this requirement to claims brought under the unfair and unlawful prongs when the underlying conduct at issue is a defendant's misrepresentation. *See Durell*, 183 Cal. App. 4th at 1363 ("Construing the phrase "as a result of". . . in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of *Tobacco II* applies equally to the "unlawful" prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception."); *Perkins*, 2014 WL 2751053, at *18 ("[T]his Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations.").

[12] The claim for breach of the implied covenant of good faith and fair dealing that Svenson asserts in the FAC suffers from exactly the same flaws that were fatal to Svenson's original claim for breach of the implied covenant. In both Complaints, Svenson alleges that Google's alleged disclosures of her Contact Information were contrary to the parties' reasonable expectations and interfered with Plaintiff's right to receive the full benefits of the agreement. *Compare* Compl. ¶ 114, *with* FAC ¶ 170. And in both Complaints, these allegations duplicate Svenson's breach of contract claim and do not allege anything more than "simply breaching the contract." *See* Order of Dismissal at 9. The Court already has held that this is insufficient to establish bad faith. *Id.*

-19-

1    its knowledge of the disparity between how the Google Wallet payment-processing system worked

2    . . . Defendants did not inform Buyers of the disparity," but instead "withheld in bad faith facts

3    related to how . . . the Google Wallet payment processing system actually worked." *See* FAC

4    ¶¶ 167, 169.  This allegation does not cure the fatal flaws in Svenson's implied covenant claim.

5    First, "Plaintiff[] must plead *facts* showing bad faith" in order to state a claim, and she does

6    not.  *Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*, No. SACV071356 AHSMLGX,

7    2009 WL 303330, at*3 (C.D. Cal. Feb. 6, 2009) (emphasis added).  Without supporting factual

8    allegations, Svenson's theory that Google "withheld in bad faith facts" related to how Google

9    Wallet operates is nothing other than a bare, conclusory, allegation that cannot "raise a right to

10   relief above the speculative level."  *See Twombly*, 550 U.S. at 555.  Yet even if Svenson's theory

11   were pled, it still would not rise to "conscious or deliberate misconduct," an essential element of the

12   claim.  *Trinity*, 2009 WL 303330, at *8; s*ee also Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222

13   Cal. App. 3d 1371 (Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31, 2001) ("bad faith

14   implies unfair dealing rather than mistaken judgment").

15   Second, Svenson reads into the Wallet TOS a contractual obligation by Defendants to

16   disclose the mechanics of how payment processing works, but the Wallet TOS have no such

17   provision.  The covenant of good faith "exists merely to prevent one contracting party from unfairly

18   frustrating the other party's right to receive the *benefits of the agreement actually made*."  *Guz v.*

19   *Bechtel Nat'l., Inc.*, 24 Cal. 4th 317, 349-50 (2000).  It cannot "impose substantive duties or limits

20   on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Id*.

21   Svenson's attempt to impose this additional duty upon Defendants would go beyond the Wallet

22   TOS, and should be rejected for this reason alone.  *See id.* at 349-50; *see also Wong v. Citi Home*

23   *Loans Servicing LP*, No. 2:11-CV-001428-ECR, 2012 WL 1900947 (D. Nev. May 23, 2012)

24   (finding no breach where Defendants were under no contractual duty to disclose certain facts).

25   Because Svenson did not cure the defects in her implied covenant claim by amendment, this

26   claim should be dismissed with prejudice.[13]

27

28   [13] Even if Svenson had alleged that Google acted in bad faith, Plaintiff would fail to state a claim
     for breach of the implied covenant because, as is described above, she cannot establish contract

-20-

### 5.       Svenson Has Failed to State a Claim for Violation of § 2702 of the SCA

When it dismissed the Complaint, this Court ruled that Svenson had not alleged that the "contents of a communication" had been disclosed, as required to state a claim under § 2702 of the SCA.  The FAC alleges no new facts that should cause the Court to reach a different conclusion now.  The information at issue still is a "record or other information pertaining to a subscriber to or customer of such service" not the "contents of a communication," and it still cannot form the basis for a violation of § 2702.  The Court should dismiss Svenson's § 2702 claim for the same reason as before, this time with prejudice.

#### a.       The information at issue still is "record" information, not the "contents of a communication"

In the Complaint, Svenson alleged that Google disclosed her Contact Information—her name, city, state, zip code, Google account name, email address, and possibly telephone number—to the Seller of her App.  *See* Compl. ¶¶ 2, 71, 72.  Svenson alleged that she provided this Contact Information to Google when she "registered an email account with Google," "registered a Google Play account," and "registered with Google Wallet," that is, "[i]n the process of registering for the[se] services" and creating her Google accounts.  *Id.*  ¶¶ 68-72.

The Court dismissed Svenson's original § 2702 claim because Svenson had not alleged a disclosure of the "contents of a communication": "After a review of the Complaint and the relevant authorities … the facts alleged established that 'a record or other information' about Plaintiff was disclosed … rather than 'contents of a communication'."  Order of Dismissal at 15.  While allowing leave to amend, the Court urged Svenson to "consider whether she can allege additional facts that would demonstrate that the alleged disclosure was more than record information." *Id.*

The Court's Order followed the plain language of § 2703(c)(2), as interpreted by the Ninth Circuit Court of Appeals in *Zynga,* and an overwhelming weight of authority that holds that basic subscriber information such as Contact Information is not "contents of a communication."  *See Jessup-Morgan v. Am. Online, Inc.*, 20 F. Supp. 2d 1105, 1109 (E.D. Mich. 1998) (basic identity

---

damage resulting from Defendants' alleged breach.  *See supra*, Section III.B.2.b.; *Ragland v. U.S. Bank Nat'l. Ass'n*, 209 Cal. App. 4th 182, 206 (2012) (holding that implied covenant of good faith does not give rise to damages outside those available under the contract).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

information not "contents" under SCA); *Hill v. MCI WorldCom Commc'ns*, 120 F. Supp. 2d 1194, 1196 (S.D. Iowa 2000) (invoice/billing information and "names, addresses, and phone number" are records or other information); *Chevron Corp. v. Donziger,* No. 12-C-80237 CRB (NC), 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013) (information "given to [Google] by a subscriber, such as … name, email address, and phone number" was "identifying information associated with the subscriber" that section 2702(c)(6) allowed Google to disclose in response to a subpoena); *Obodai v. Indeed, Inc.*, No. 13-80027-MISC EMC, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013) ("[A] user furnishes certain identifying information when he creates a Gmail account.  This information includes phone numbers and alternate email addresses … [T]his information is not protected by the SCA as it is not considered content."); *Sams v. Yahoo!, Inc.*, No. CV-10-5897-JF (HRL), 2011 WL 1884633, at *6-7 (N.D. Cal. May 18, 2011) (subpoena requiring name and address of email account owner did not request communications "contents"); *Beluga Shipping GMBH & Co. KS "Beluga Fantastic" v. Suzlon Energy LTD.*, No. 10-80034 JW (PVT), 2010 WL 3749279, at *5 (N.D. Cal. Sept. 23, 2010) ("the actual names of the email account holders provided to Google during the account creation process" were not "contents").

The allegations in the FAC make clear that the information now at issue still is Contact Information.  Just as in the Complaint, the information is Svenson's "identity, address, city, zip code, email address, or telephone number."  FAC ¶ 74; *see also id.* ¶¶ 65, 211.  And further, just as in the Complaint, Svenson alleges that she "input[] and sen[t]" this Contact Information into Google Wallet's payment method form.  *Id.* ¶ 88.  Finally, just as in the Complaint, Svenson alleges that Defendants made this Contact Information available to the App Seller.  *Id.* ¶ 90.

Svenson tries to obscure the fact that nothing in her § 2702 allegations has changed by artificially combining the account registration process with her App purchase,[14] and by calling the information at issue "Packet Contents," as if calling it "contents" can make her Contact Information the "contents of a communication" under the SCA.  But "Packet Contents" is simply a new label for what Svenson previously named "SID" (and the Court called "Contact Information").  *See* FAC

---

[14] *See* FAC ¶ 88 (conceding that Svenson filled out the Google Wallet form, but couching it as being "in tandem with" clicking a button authorizing a purchase of an App).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

¶¶ 65, 74, 211 (information at issue is only "identity, address, city, zip code, email address, or telephone number."); *compare id.*, ¶¶ 71, 73, 75-77, 79, 198-205, 212-217 (summarily asserting or concluding that the alleged disclosures were of undefined "Packets Contents") *with* ¶¶ 65, 74, 211 (specifying that the information at issue is only Contact Information not some broader set of "Packets Contents").  And Svenson still alleges that she submitted her Contact Information as "form data."  *Id.* ¶ 89.  She does not allege, for example, that she sent her Contact Information to Google in the body of an email.  FAC ¶¶ 88-89 (alleging that Contact Information was sent via an online form, not, for example, in the body of an email).

The Court previously ruled that if basic subscriber information such as Svenson's Contact Information were the "contents of a communication unless it was automatically generated[, it] would read § 2702(c)(2) out of the statute."  Order of Dismissal at 14.  Ruling that Svenson's Contact Information is the "contents of a communication" because it is transmitted in "packets" would have the same result.  Svenson herself alleges that "[e]lectronic information is commonly sent in 'packets' . . ."  FAC ¶ 5.  And courts routinely recognize that information sent over the Internet, regardless of whether it is the "contents of a communication" under the SCA, is sent in packets.  *Cf. Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, n. 2 (Fed. Cir. 2004) ("[A] 'packet-switched network,' such as the Internet, is one in which data packets are relayed through various stations on a network. The packets comprising a message may travel along different paths and arrive at different times, but are reassembled in proper sequences at their destination.") (citing *Microsoft Press Computer Dictionary* 253) (1991)); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 501 (S.D.N.Y. 2001) ("The Internet utilizes a technology called 'packet switching' to carry data.");  *Softcard Sys. v. Target Corp.*, No. 1:03-CV-3585-ODE, 2005 WL 6225163, at *4 (N.D. Ga. Jan. 11, 2005) ("Whenever data is sent across the Internet, it is divided into discrete 'data packets' of standard size defined by the Protocol. The packets travel across the internet separately and then are reunited at the destination. This makes the Internet more efficient, and is why the Internet is sometimes called a 'packet switching network.'").  Transmission over the Internet in a "packet," like everything sent over the Internet, does not transform Svenson's Contact Information into the "contents of a communication" under the SCA.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

1    Accepting Svenson's contention that her Contact Information is the "contents of a
2    communication" would upend the SCA.  Over the last fifteen years, courts across the country,
3    including in this district, have held that basic subscriber information is not the "contents of a
4    communication" and is therefore subject to civil discovery.  *See Jessup-Morgan*, 20 F. Supp. 2d at
5    1109; *Obodai*, 2013 WL 1191267, at *3; *Hill*, 120 F. Supp. 2d at 1196; *Chevron,* 2013 WL
6    4536808, at *6; *Sams*, 2011 WL 1884633, at *6-7; *Beluga Shipping,* 2010 WL 3749279, at *5.
7    These courts recognize that this information is provided just as Svenson alleges it was provided in
8    the Complaint and the FAC:  by being entered by the user when she signs up for a service.  Compl.
9    ¶¶ 68-72 (Contact Information provided by Svenson when she "registered an email account with
10   Google," "registered a Google Play account," "registered with Google Wallet," and "[i]n the
11   process of registering for the[se] services."); FAC ¶ 206 (Plaintiff was required to "manually enter
12   much of the information … including her name, credit card number, address, and zip code"); *see*
13   *Chevron*, 2013 WL 4536808, at *6 (information "given to [Google] by a subscriber, such as …
14   name, email address, and phone number" was "identifying information associated with the
15   subscriber"); *Obodai*,  2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013) ("certain identifying
16   information" provided by a user "when he creates a Gmail account," such as "phone numbers and
17   alternate email addresses" it was not the contents of a communication); *Beluga Shipping,* 2010 WL
18   3749279, at *5 (N.D. Cal. Sept. 23, 2010) ("the actual names of the email account holders provided
19   to Google during the account creation process" were not the contents of a communication).  In
20   addition to upending civil discovery, accepting Svenson's assertion that basic subscriber
21   information is the "contents of a communication" would drastically affect law enforcement
22   investigations—law enforcement would be required to obtain a search warrant, *see* 18 U.S.C.
23   § 2703(a), for basic subscriber information such as Svenson's Contact Information, which they can
24   currently compel with a subpoena, *see* 18 U.S.C. § 2703(c)(2).
25   The Court expressed skepticism that Svenson would be able to cure the defects in her
26   § 2702 claim, and Svenson has not done so.  The Court should dismiss Svenson's claim under
27   § 2702 of the SCA with prejudice.
28

-24-
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

**C.     The Court Should Strike, Under Rule 12(f), Svenson's SCA § 2701 Claim**

Under Rule 12(f), this Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  Claims that exceed the scope of a court's leave to amend may be stricken if they are "wholly specious" or cause prejudice to the defendants. *Sapiro v. Eoncompass Ins.*, 221 F.R.D. 513, 517 (N.D. Cal. 2004); *see also Allen v. Cnty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449, at *2 (C.D. Cal. Mar. 12, 2009) (striking claim that was re-asserted in amended complaint after court had dismissed that claim).

In the FAC, Plaintiff realleges her claim under section 2701 of the SCA, purportedly "to preserve a potential appeal."  FAC ¶ 172.  But in the Ninth Circuit, a plaintiff is no longer required to replead claims dismissed with prejudice in order to preserve them for appeal.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (overruling prior rule that a plaintiff must reallege claims dismissed with prejudice and holding that "[f]or claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal").

The Court dismissed Plaintiff's § 2701 claim *without leave to amend.*  Order of Dismissal at 11.  Svenson's re-asserted § 2701 claim therefore should be stricken. *See Lamumba Corp. v. City of Oakland*, No. C05-2712 MHP, 2006 WL 3086726 (N.D. Cal. Oct. 30, 2006) ("Accordingly, if plaintiffs have re-asserted claims that were dismissed with prejudice . . . these defective claims are specious and will be stricken.").

### V.     CONCLUSION

Plaintiff goes to great lengths in the FAC to muddy the waters, but what the FAC makes clear is that Svenson cannot allege any cognizable damage as a result of Google's actions, and that she cannot plead the facts necessary to alleviate the Court's concerns.  For these reasons, Google requests that the Court dismiss the FAC pursuant to Rules 12(b)(6) and 12(f), and dismiss Plaintiff's claims against it with prejudice.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
No. CV-13-04080-BLF
41063-0065/LEGAL123505085.1

DATED:  September 16, 2014

**PERKINS COIE** LLP


By: */s/ Susan D. Fahringer*
    Susan D. Fahringer, Bar No. 162978
    SFahringer@perkinscoie.com

Attorneys for Defendants
Google Inc. and Google Payment Corporation

-26-