Susan D. Fahringer (CA Bar No. 162978)
SFahringer@perkinscoie.com
Charles C. Sipos (*Pro Hac Vice*)
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Attorneys for Defendants
Google Inc. and Google Payment Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALICE SVENSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GOOGLE INC., a Delaware Corporation, and GOOGLE PAYMENT CORPORATION, a Delaware Corporation,

Defendants.

Case No. CV-13-04080-BLF

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 15, 2015
Time: 9:00 a.m.
Place: Courtroom 3, 5th Floor
Judge: Hon. Beth Labson Freeman

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Svenson Has Not Established She Has Standing To Assert Her State Law Claims .......... 1

B. Svenson Has Failed to State A Claim Upon Which Relief May Be Granted .......... 3

1. Applicable Legal Standards .......... 3

2. Svenson Has Failed to State a Claim for Breach of Contract .......... 5

a. Svenson has not alleged facts showing she lost the benefit of her bargain .......... 5

b. Svenson has not alleged facts showing she lost the “potential sales value” of her personal information .......... 7

3. Svenson’s Implied Covenant Claim Lacks the Allegations of Bad Faith That Are Necessary to Show It Is Not Superfluous .......... 9

4. Svenson Lacks Standing Under the UCL .......... 10

a. Svenson has not established that she lost money or property as a result of Defendants’ actions .......... 10

b. Svenson’s UCL claim is based on a misrepresentation and therefore fails because Svenson has not alleged reliance .......... 10

5. Svenson Has Failed to State a Claim for Violation of Section 2702 of the Stored Communications Act .......... 12

C. Svenson’s Section 2701 Claim Is Specious and Should Be Stricken .......... 15

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010 (9th Cir. 2010)....................8

*Allen v. Cnty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449 (C.D. Cal. Mar. 12, 2009) ....................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................3, 4, 9

*Beavers-Gabriel v. Medtronic, Inc.*, No. CIV. 13-00686 JMS, 2014 WL 4723802 (D. Haw. Sept. 22, 2014)....................15

*Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)....................6

*California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 1766775 (N.D. Cal. Apr. 15, 2008)....................4

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990)....................9

*Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147 (N.D. Cal. 2011) ....................9, 10

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987)....................4, 5

*Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873 (2011)....................10

*Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) ....................3

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)....................10

*Fasugbe v. Williams*, No. 10-cv-2310 (WBS), 2011 WL 2119128 (E.D. Cal. May 26, 2011)....................4, 5, 13

*Fulinara v. Bank of New YorkMellon*, No. C13-03963 HRL, 2014 WL 4802260 (N.D. Cal. Sept. 25, 2014)....................11

*Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158 (C.D. Cal. 2010)....................9

*Guz v. Bechtel Nat'l., Inc.*,
24 Cal. 4th 317 (2000) ....................9

*Harris v. Wells Fargo Bank, N.A.*,
No. 12-CV-05629-JST, 2013 WL 1820003 (N.D. Cal. Apr. 30, 2013)....................10

*Hodges v. Apple, Inc.*,
No. 13-cv-01128, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ....................7

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ..........3, 7, 8, 10

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) ....................3, 7

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013) ....................11

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................8

*In re LinkedIn User Privacy Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) ....................2

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003)....................14

*In re § 2703(d) Order*,
787 F. Supp. 2d 430 (E.D. Va. 2011)....................14, 15

*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011)....................3

*In re Zynga Privacy Litig.*,
Nos. 11-18044, 12-51619, 2014 WL 1814029 (9th Cir. May 8, 2014) ....................12, 13, 14, 15

*Jessup-Morgan v. AOL*,
20 F. Supp. 2d 1105 (E.D. Mich 1998)....................14

*Kasey v. Molybdenum Corp. of Am.*,
467 F.2d 1284 (9th Cir. 1972)....................4

*Kennedy v. Wells Fargo Bank, N.A.*,
No. C 11-0675 MMC, 2011 WL 3359785 (N.D. Cal. Aug. 2, 2011)....................4, 5, 8, 13

*LaCourt v. Specific Media, Inc.*,
No. SACV 10-1256-GW, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)....................8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 1, 2

*Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378 (N.D. Cal. May 14, 2014) .......... 3

*Patrick Collins, Inc. v. Does 1-11*, No. 11-cv-01776-AW, 2011 WL 5439045 (D. Md. 2011) .......... 14

*Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930 (N.D. Cal. 2011) .......... 11

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638 (2008) .......... 11

*Sam's v. Yahoo!, Inc.*, No. CV-10-5897-JF HRL, 2011 WL 1884633 (N.D. Cal. May 18, 2011) *aff'd*, 713 F.3d 1175 (9th Cir. 2013) .......... 14

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 2

*Sanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059 (E.D. Cal. 2011) .......... 4, 5, 13

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012) .......... 3, 4

*Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) .......... 6, 7

*Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013). .......... 14

**STATUTES**

Cal. Bus. & Prof. Code § 22576 .......... 11

Stored Communications Act, 18 U.S.C. §§ 2701-2712 .......... passim

Wiretap Act, 18 U.S.C. §§ 2510-2522 .......... 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 .......... 3, 6, 15

## I. INTRODUCTION

Svenson's Response to Defendants' Motion to Dismiss the First Amended Complaint, Dkt. # 94 ("Response"), makes clear that the only difference between the First Amended Complaint, Dkt. # 84 ("FAC"), and the original Complaint, Dkt. # 1 ("Complaint"), is terminology, and that Svenson has no new authority to support her arguments. To survive Defendants' Motion to Dismiss, Dkt. # 89 ("Motion"), Svenson knew she would have to allege facts establishing that she suffered injury or damage as the result of Defendants' alleged disclosure of the information at issue in this case. She has not done so. This is fatal to Svenson's state law claims, because it shows she lacks Article III standing to assert those claims, and because damage is an essential element of each of those claims. Svenson also knew she would have to allege facts showing that the information at issue here was more than the basic subscriber information that was at issue in the Complaint. Again, Svenson has not done so, and she also fails to distinguish the multitude of cases that make clear that her name, email address, city, state, zip or phone number (her "Contact Information") is considered "record" information, not the contents of communications, under the Stored Communications Act ("SCA").

Svenson had the opportunity to cure the defects in her Complaint, but failed to do so. Instead, she merely reiterated the same facts that the Court previously considered, changing only the labels she used. A second amendment would be futile. The Court should now dismiss all claims in the FAC, with prejudice.

## II. ARGUMENT

### A. Svenson Has Not Established She Has Standing To Assert Her State Law Claims

Svenson concedes that Article III standing is not dispensed with in gross, and that she must plead facts that establish standing for each and every claim she asserts. *See* Response at 6 ("Plaintiff Has Article III Standing For All Her Claims."). To satisfy this burden, Svenson argues that she need only "plead general factual allegations" which the Court must "presume . . . embrace those specific facts that are necessary to support the claim." *Id*. at 4. But her allegations still must show "an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). This standard is not satisfied where "speculative inferences are necessary to establish either injury or the connection between the alleged injury and the act challenged." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 984 (N.D. Cal. 2009) (internal quotation marks and citation omitted). Under this standard, Svenson has not met her burden to establish Article III standing for her state law claims under any of her theories of injury.

With respect to her benefit of the bargain theory, Svenson argues that she establishes injury-in-fact by alleging that "she paid Defendants in exchange for their privacy protections, and they retained a percentage of that payment before remitting the remainder to the App vendor." Response at 6. But this is merely argument; Svenson's factual allegations show that the only money she alleges she paid—$1.77—was for her App. FAC ¶ 88 ("Plaintiff thereafter purchased the App for $1.77."); *see also id.* ¶ 71 ("sales price for the App"). Even if Svenson transmitted this $1.77 to Defendants, and even if they retained a portion, Svenson still has not alleged facts showing that she paid this money in exchange for the privacy promises at issue. Nor can she: By their terms, the privacy promises (the Wallet ToS and incorporated privacy policies) apply to all Wallet users, regardless of whether an App purchase is made. *See* FAC, Exs. A-C; *see also infra*, Section II.B.2.a & n.2 (addressing Svenson's attempt to construe Wallet Terms as two contracts).

This District has confirmed that where a defendant makes the same promises in connection with paid and free services, the plaintiff's payment cannot be the basis for standing. *See In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013). There, the plaintiffs brought claims based on the defendant's failure to provide services as promised in its user agreement and privacy policy. *Id.* The court rejected plaintiffs' theory of injury based on their payment for premium memberships, because free and premium memberships were subject to the same agreement. *Id.* ("The FAC does not sufficiently demonstrate that included in Plaintiffs' bargain for premium membership was the promise of a particular (or greater) level of security that was not part of the free membership."). Likewise, because the Wallet ToS apply to paying and

nonpaying users, Svenson has not—and cannot—allege that she paid anything for Defendants' privacy promises.[1]

Regarding her allegations of the market worth of her Contact Information, Svenson does not refute that she must show that she herself entered or intended to enter that market. *See generally* Response at 7. Yet Svenson has not alleged facts showing as much. Without such allegations, this theory of injury fails. *See, e.g.*, *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378, at *23 (N.D. Cal. May 14, 2014); Motion at 9-10 (collecting authority); *see also infra*, Section II.B.2.b (discussing theory of contract damages). Finally, Svenson fails even to discuss her theory of standing based on a risk of identity theft, *see generally* Response at 6-7, thereby conceding that her vague and conclusory allegations regarding a purported increased risk of identity theft are insufficient to confer Article III standing. *See* Motion at 10.

The Court should dismiss Svenson's state law claims because she has not pled facts establishing she suffered an injury sufficient to confer Article III standing for those claims.

**B. Svenson Has Failed to State A Claim Upon Which Relief May Be Granted**

**1. Applicable Legal Standards**

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Svenson contends that "[a] Rule 12(b)(6) motion to dismiss should . . . be denied unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *see* Response at 4-5 (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)), her cited authority stands in relation to *pro se* plaintiffs. The Ninth Circuit emphasized this in the very case from which Svenson quotes: "We

[1] Because she cannot establish that she paid Defendants anything for their privacy promises, the cases Svenson cites in support of her "benefit of her bargain" theory are inapplicable. *See* Response at 6; *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1164-65 (C.D. Cal. 2011) (finding sufficient economic injury based on theory of overpayment for vehicles with a safety defect); *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding CLRA standing where plaintiffs paid fees for service that included security protections); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (restating holding in *AOL*, 719 F. Supp. 2d at 1111, that a plaintiff who paid fees for services may state a claim under California consumer protection statutes, but ultimately finding no standing under UCL where a plaintiff received services for free).

construe *pro se complaints* liberally and may only dismiss a *pro se complaint* for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Iqbal* did not alter the rule that, *where the petitioner is pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Wilhelm*, 680 F.3d at 1121 (emphasis supplied) (internal quotation marks and citations omitted).

In addition, where facts alleged in prior complaints contradict those alleged in the operative complaint, they are considered part of the "context-specific" inquiry *Iqbal* requires. *See Kennedy v. Wells Fargo Bank*, *N.A*., No. C 11-0675 MMC, 2011 WL 3359785, at *5 (N.D. Cal. Aug. 2, 2011) (plausibility analysis includes assessment of "contradictory allegations" from prior complaints). It weighs against the plausibility of a complaint if the allegations in a successive pleading appear contradictory or geared toward avoiding dismissal in light of the court's prior orders. *Id.*; *see also Sanislaus Food Prods. Co. v. USS-POSCO Indus*., 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (while plaintiff may allege different conduct in successive complaints, inconsistent allegations go to "the plausibility of the current pleadings"); *Fasugbe v. Williams*, No. 10-cv-2310 (WBS), 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) ("[T]he court need not ignore the prior allegations in determining the plausibility of the current pleadings.").

Finally, where an amended pleading sets forth essentially the same factual allegations as the original complaint, only couched in different language, "the difference in language changes nothing." *California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 1766775, at *7 (N.D. Cal. Apr. 15, 2008) (granting in part motion to dismiss where amendment "[was] a semantic change only" and where third amended complaint "containe[ed] slightly different wording, essentially re-stat[ing] the very same claim"). Svenson's allegations fail regardless of the terminology she uses. *See id*. Under these circumstances, further amendment should not be permitted. *See Kasey v. Molybdenum Corp. of Am*., 467 F.2d 1284, 1285 (9th Cir. 1972) ("[I]nherent in [Rule 15] is the qualification that amendments should not be allowed merely to permit a restatement of the same facts in different language or the reassertion of a claim previously determined.); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir.

1987) ("It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined.") (internal quotation marks and citations omitted).

**2. Svenson Has Failed to State a Claim for Breach of Contract**

Svenson argues that her factual allegations support two theories of contract damages: her loss of (1) "benefit of the bargain"; and (2) the "potential sales value" of her personal information. Response at 8. The allegations in the FAC do not support either theory.

**a. Svenson has not alleged facts showing she lost the benefit of her bargain**

Svenson argues that she lost the benefit of her bargain in two ways. First, she argues that she paid something in return for Defendants' privacy promises, and that she lost that amount when those promises were breached. Response at 9. Second, she argues that the "service" Defendants supplied was worth less than she bargained for because Defendants allegedly breached their privacy promises. *Id.* at 10. The Court cannot reasonably infer either conclusion from the facts Svenson alleged.

As to Svenson's first argument, the privacy promises at issue are set forth in the Wallet ToS, which the Response concedes is the only contract at issue.[2] *See* Response at 8 (identifying Wallet ToS and incorporated privacy policies as contract at issue); *id*. at n.2 (admitting that the Wallet ToS is the "relevant contract" and that "Buyer Contract" is a "shorthand" Svenson invented to refer to the Wallet ToS). By their terms, the Wallet ToS apply equally to all who register for Google Wallet, regardless of whether they purchase a product. *See* Motion at 3-4. The Wallet ToS were at issue in the Complaint, and the Court previously, and correctly, concluded that the Wallet ToS did not obligate Svenson to pay anything for the privacy promises

[2] Svenson's Response cites several paragraphs in the FAC to try to establish the existence of a Buyer Contract that differs from the Wallet ToS. *See* Response at 8. But Svenson's references are no more than descriptions of terms in the Wallet ToS. Moreover, in the Complaint, Svenson admitted that she agreed to the Wallet ToS when she registered for Google Wallet. Compl. ¶ 70 ("On May 6, 2013, Plaintiff registered with Google Wallet and thereby, according to Google and Google Payment Corp, agreed to the Google Wallet Terms of Service and the Google Wallet Privacy Policy with Google and Google Payment Corp"). The Court should take this into account when it assesses the plausibility of the FAC's conclusory allegation that Svenson agreed to something less than the Wallet ToS when she registered for Google Wallet. *See Fasugbe*, 2011 WL 2119128, at *5; *Sanislaus*, 782 F. Supp. 2d at 1075; *Kennedy*, 2011 WL 3359785, at *5.

Defendants allegedly breached. Order of Dismissal, Dkt. # 83, at 8 ("Order of Dismissal") (explaining that Google Wallet is "free," the agreement was "entered into in connection with creation of those free accounts" and "Plaintiff did not agree to any additional terms or pay any additional consideration when she purchased the $1.77 App").

In addition, neither the Response nor the FAC alleges facts that identify what payment Svenson made in return for the privacy promises, or that allow the Court to conclude that that amount was anything other than zero. Like the original Complaint, the FAC still alleges only that Defendants received money; Svenson does not plead facts that establish that she paid money to Defendants in return for privacy promises. *See, e.g.*, FAC ¶¶ 51, 67, 68, 117; *see also* Response at 9 ("Defendants retained a 30% cut from Plaintiff's App payment."). Svenson pleads no facts that contradict the Wallet ToS, which unambiguously provides that Google Wallet is free to Buyers like Svenson, and the "fee" allegedly retained by Defendants is owed, and paid, by the App seller, not by Svenson. FAC, Ex. A at 7, ¶ 3.8; *id.* ¶ 143.

Svenson tries to create ambiguity in the Wallet ToS by arguing that section 3.1 of the Wallet ToS requires Buyers to pay "obligations and fees," *id.* ¶ 47, and so renders the Wallet ToS sufficiently ambiguous to defeat a Rule 12 motion. Response at 9. But the provision Svenson cites deals only with the assessment of credit card fees, not fees for Google Wallet. Section 3.1 provides: "You must register a Payment Instrument [e.g., a credit card] to make Payment Transactions and pay fees and other obligations arising from your use of the Processing Service." This does not render ambiguous Section ¶ 3.8 of the Wallet ToS: "GPC does not charge a fee to use the Processing Service as a Buyer." *See* FAC, Ex. A at 7. There is nothing ambiguous about the words: "GPC does not charge a fee," *id.*, and therefore no basis for Plaintiff's argument that her contract claim cannot be disposed of at the Rule 12 stage. *See Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220, 221 (9th Cir. 2000) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous.").

Svenson also argues that the "accuracy of her account" of the operation of the Wallet ToS cannot be decided on a Rule 12 motion. But the Court need not accept Svenson's erroneous construction of the Wallet ToS in deciding whether her allegations state a claim. *See*

*Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *7 (N.D. Cal. Apr. 25, 2012) ("A court is not required to accept an erroneous construction of a provision of the contract in passing upon the sufficiency of the complaint.").

Svenson's second "benefit of the bargain" argument is that the service she received from Defendants was "worth quantifiably less" than she paid for it, by some unidentified amount. Response at 10. But Svenson only repeats the "quantifiably less" mantra; she does not alleges facts to support that conclusion. *See, e.g.*, FAC ¶ 151. This is insufficient to state a claim for contract damages. *See Hodges v. Apple, Inc.*, No. 13-cv-01128, 2013 WL 4393545, at *7 (N.D. Cal. Aug. 12, 2013) ("[A] defendant has not breached any contractual obligations to consumers when consumers bargain for some product and plaintiffs have presented no evidence that this is not what they received.") (internal quotation marks and citation omitted) (dismissing contract claim based on failure to allege facts supporting conclusion that product was worth less than plaintiff actually paid).

**b. Svenson has not alleged facts showing she lost the "potential sales value" of her personal information**

Svenson also argues that she was damaged because she lost the "potential sales value" of her personal information. Response at 12. She insists that the allegations in the FAC and those in *In re Facebook Privacy Litigation*, 572 F. App'x 494 (9th Cir. 2014), are sufficiently "alike" for the *Facebook* decision to control the damages analysis on this issue. Response at 12. But in *In re Facebook*, the complaint alleged that Facebook disclosed, in addition to name, the users' "gender, friends, interests and more" to advertisers, and further alleged that the advertisers used this information to create "targeted advertisements" based on those interests. *See In re Facebook*, No. 10-02389 JW (N.D. Cal.), First Am. Compl., Dkt. #92, ¶¶ 37, 26-27. There are no similar allegations in this case. *See* FAC ¶ 74 (address, zip codes, names, phone numbers, email addresses is information disclosed); *id.* ¶¶ 70, 73, 90 (disclosure only to App seller). The FAC vaguely alleges that "App Vendors use such personal information to build customer profiles and develop personalized marketing efforts," *id.* ¶ 115, but fails to allege any facts to allow the Court to plausibly conclude that the App seller to whom Plaintiff's Contact Information was allegedly

disclosed did so. Moreover, this allegation cannot be squared with the prior Complaint's allegation that as to Contact Information, "third-party App vendors [] themselves wonder why they are needlessly receiving such data and have disclaimed the need for it." Compl. ¶ 62. *In re Facebook* does not require the Court to accept as plausible that the seller from whom Svenson purchased her App would have paid Svenson for her Contact Information, or would have paid her less due to Defendants' alleged disclosure of her Contact Information, particularly when viewed in the context of Svenson's contradictory allegations. *See Kennedy*, 2011 WL 3359785, at *5.

In addition, the Response does not contradict the authority that requires Svenson to plausibly allege facts showing she lost the opportunity to sell or market her information as the result of Defendants' conduct. *See* Motion at 14-15 (collecting authority); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012) ("Plaintiffs have not alleged that they . . . have been foreclosed from opportunities to capitalize on the value of their personal data."); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) ("[T]he Complaint does not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' . . . Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information . . ."); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327-28 (E.D.N.Y. 2005) ("[Plaintiffs] had no reason to expect that they would be compensated for the 'value' of their personal information . . . It strains credulity to believe that, had JetBlue not provided the PNR data en masse to Torch, Torch would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information."). *In re Facebook* does not overrule this long line of cases, explicitly or implicitly, and Svenson cites no authority to the contrary.

Even assuming that Svenson's Contact Information was marketable in the first place, the FAC does not allege facts to support the conclusion that Svenson is now barred from selling that information or will get a reduced price for it. Without such allegations, Svenson's "lost sales value" theory is just as speculative and conclusory as her other theories of damages. *See Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010, 1015 (9th Cir. 2010) ("Under California law, a breach of contract claim requires a showing of actual and appreciable damage.").

### 3. Svenson's Implied Covenant Claim Lacks the Allegations of Bad Faith That Are Necessary to Show It Is Not Superfluous

To overcome the Court's ruling that Svenson's implied covenant claim is superfluous, Svenson alleges that Defendants frustrated the purpose of the Wallet ToS by their "bad-faith failure to inform" consumers that Wallet made their personal information available to third parties. *See* Response at 13; FAC ¶¶ 84-85, 166-169. This is insufficient to overcome Defendants' Motion for at least four reasons.

First, this is no more than an allegation that Defendants failed to inform Svenson of the alleged breach of contract, and so does not go beyond the statement of a mere contract breach. It should be dismissed for this reason alone. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (When allegations of a claim for breach of the implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Second, Defendants' "knowledge of how Wallet worked" and their "failure to inform consumers of the fact that personal information would be provided to third parties" do not amount to the "conscious or deliberate" bad faith act that Svenson must allege to plead a claim that is not superfluous. *See* Response at 14; *Careau*, 222 Cal. App. 3d at 1395. At most, this alleges "bad judgment or negligence." *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1163 (C.D. Cal. 2010). As a matter of law, that is "insufficient to establish bad faith." *Id*. Plaintiff's bare conclusion to the contrary is unfounded and does not satisfy *Twombly* and *Iqbal*.

Third, Svenson's implied covenant claim continues to read into the Wallet ToS an affirmative contractual obligation by Defendants to disclose the mechanics of how payment processing works. But this disclosure obligation cannot be implied, because it would "impose substantive duties . . . on [Defendants] beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000). Svenson cannot base an implied covenant claim on obligations that go beyond the terms of the parties' written contract. *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1165 (N.D. Cal. 2011) ("Plaintiffs have

not stated that any of these alleged contractual duties [including the failure to disclose material information] were incorporated into the specific terms of the [contract]. Accordingly, Plaintiffs have failed to state a claim under the implied covenant . . ."). The Court should dismiss this claim on that basis, this time with prejudice.

Finally, damages are an essential element of Svenson's implied covenant claim. *Harris v. Wells Fargo Bank, N.A.*, No. 12-CV-05629-JST, 2013 WL 1820003, at *9 (N.D. Cal. Apr. 30, 2013); *Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 885 (2011). Svenson's implied covenant claim therefore fails for the same reasons as her contract claim. *See infra*, Section II.B.2.

**4. Svenson Lacks Standing Under the UCL**

**a. Svenson has not established that she lost money or property as a result of Defendants' actions**

Svenson acknowledges that to establish standing under the UCL she must allege a loss of money or property as a result of Defendants' challenged practices. Response at 19. Her sole theory of UCL standing is her allegation that Defendants retained 30% of the price of the App she purchased. *See* Response at 19-20 (failing to address theories in FAC based on diminished value of personal information and increased risk of identity theft). Svenson's vague allegation that Defendants "retained" some portion of money contradicts the unambiguous statement in the Wallet ToS that the Google Wallet is free to Buyers and any fee is paid by the App seller. *See supra*, Section II.B.2.a; *see also* FAC, Ex. A at 7, ¶ 3.8; *id.* ¶ 143. Svenson's UCL claim therefore fails for the same reason as her contract claim: because Svenson did not pay anything to Defendants, she lacks standing under the UCL. *See In re Facebook*, 791 F. Supp. 2d at 715 (UCL claim not established where claim is based on free services).

**b. Svenson's UCL claim is based on a misrepresentation and therefore fails because Svenson has not alleged reliance**

Svenson concedes that to the extent her UCL claim is based on misrepresentations, she must plead reliance. Response at 20-21; *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). Svenson has not pled reliance, and presumably cannot do so. Instead, she argues that she is not required to because her "unfair" UCL claim is not based on any

representation by Defendants. But the FAC "alleges that Defendants' disclosure of personal information in of itself [sic] caused consumers substantial injury that they could not have anticipated." Response at 21-22 (citing FAC ¶¶ 225-229). Such conduct could only be "unfair" and not "anticipated" if Defendants made representations regarding their disclosure practices. Indeed, the FAC alleges that Defendants' conduct is "unfair" because Defendants represent to the class that they will not share their Contact Information, when in fact they do. FAC ¶¶ 229-230. And Svenson alleges that Defendants' practice of disclosure "in blanket fashion" "violates the *reasonable expectations* created by the Wallet Terms."[3] *Id.* ¶ 228 (emphasis supplied).

If Defendants' conduct is "unfair" because of representations they made, Svenson must plead that she read and relied on those representations to state a claim. *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013) (requiring reliance where plaintiff alleged that defendant misrepresented its data collection and privacy practices). Absent such allegations, Svenson is left with a mere breach of contract claim, which cannot alone form the predicate for a UCL claim. *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008).

Svenson also argues that her UCL claim based on California Business & Professions Code § 22576 is not subject to the reliance requirement because it is based on a violation that is negligent and material, rather than knowing and willful. But this is inconsistent with Svenson's allegations.[4] While the statute does have a negligence element, Svenson's claims are plainly based on Defendants' alleged intentional practice of disclosure contrary to the representations made in the Wallet Terms. *See* FAC ¶ 14 ("Defendants . . . unnecessarily and improperly disclosed to the App Vendor . . ."); *id.* ¶ 71 ("Defendants automatically take the extra step of disclosing . . .").

---

[3] To the extent this allegation purports to plead reliance on behalf of the class, it is still insufficient. In the class action context, UCL standing must be established as to the class representative. *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 942 (N.D. Cal. 2011)

[4] Moreover, Svenson cannot rely on the negligence portion of that statute where she has no allegations to support it. *See Fulinara v. Bank of New YorkMellon*, No. C13-03963 HRL, 2014 WL 4802260, at* 3 (N.D. Cal. Sept. 25, 2014) ("A UCL claim must be dismissed if the plaintiff fails to state a claim for the predicate acts upon which he bases the claim.").

The UCL claim Svenson alleged is based on representations Defendants allegedly made, and on the allegation that those were false. To state such a claim, Svenson must allege she read and relied on those representations. She has not done so, and her UCL claim fails as a result.

**5. Svenson Has Failed to State a Claim for Violation of Section 2702 of the Stored Communications Act**

When it dismissed the original Complaint, the Court ruled that "the facts alleged in the complaint establish the disclosure of record information rather than the contents of a communication," and that Svenson's Contact Information "is the type of information that the Ninth Circuit recognized as record information in *Zynga*." *See In re Zynga Privacy Litig*., Nos. 11-18044, 12-51619, 2014 WL 1814029 (9th Cir. May 8, 2014) ("*Zynga*"). Order of Dismissal at 12, 14. The Court dismissed Svenson's § 2702 claim for this reason, noting that, "[g]iven the analysis set forth herein, Plaintiff must consider whether she can allege additional facts that would demonstrate that the alleged disclosure was more than record information." *Id.* at 15.

The FAC does not "allege additional facts that would demonstrate that the alleged disclosure was more than record information." The information at issue is still the same as originally alleged: name (identity), city, zip code, email address, "or" telephone number, and address.[5] FAC ¶¶ 74, 211. It still fits squarely within the list of record information set forth at 18 U.S.C. § 2703(c)(2) (name, address, telephone number, other subscriber identifier). And the alleged disclosure that forms the basis for Svenson's § 2702 claim still is the disclosure of Svenson's Contact Information to the seller of the App she purchased. *See* FAC ¶¶ 74, 211.

Svenson argues that the information at issue should be deemed the contents of communications for two reasons: (1) because it is "Packets Contents," and (2) because she supplied the information in a form for payment, not account registration. Response at 14-19. As to the first argument, the FAC acknowledges that "Electronic information is commonly sent in 'packets'. . ." FAC ¶ 5. This necessarily includes "record" information, so the mere fact that Svenson's Contact Information was sent in packets cannot transform it into the "contents of

---

[5] The FAC alleges that Defendants shared "address" with the App developer. If this means street address rather than city and state, then it was not alleged in the original Complaint, *see* Compl. ¶¶ 50, 71. The addition of address is not, however, legally significant, as "address" is among the list of "record" information set forth at 18 U.S.C. § 2703(c)(2).

communications." Svenson cannot seriously argue otherwise, and she does not. Rather, she uses "Packets Contents" to refer to two different sets of information: (1) information she sent to Defendants (Response at 14, 18; FAC ¶¶ 7, 9, 197); and (2) the Contact Information that Defendants allegedly disclose to Svenson's App seller, and which forms the basis for Svenson's claims (*id.* ¶¶ 74, 211). Using the same term for these different categories allows Svenson to imply that the "Packets Contents" disclosed to the App seller is materially different from the Contact Information that was at issue in the Complaint. But Svenson's factual allegations show otherwise. *Id.* ¶¶ 74, 211. Svenson's "Packets Contents" argument is nothing more than sleight of hand intended to obscure the fact that nothing about her § 2702 claim has changed.

Svenson's second argument is that her Contact Information should qualify as the contents of communications because she provided it to Defendants not in a registration form, but in a payment form.[6] *See, e.g.*, Response at 16 ("Google or Wallet account registration information is *not* billing information") (emphasis in original); *see also* FAC ¶ 88 (Svenson purchased App by inputting Contact Information into "Payment Method" form). But whether Svenson supplied her information in a registration form or in a payment information form is a distinction without a difference. The SCA does not require record information to be supplied in any particular type of form. Regardless of the form Svenson used, her Contact Information is precisely the sort of information that courts consistently consider "record" information, and not the "contents of communications," under the SCA. *See, e.g.*, Mot. at 21-22; *see also In re § 2703(d) Order*, 787 F. Supp. 2d 430, 435 (E.D. Va. 2011) (subscriber names, user names, screen names or other identities, mailing addresses, residential addresses, business addresses, email addresses, and other

[6] Svenson originally argued that because she supplied her information in a form at registration, it was the contents of communications under the SCA. Now, she argues that the information is the contents of communications *unless* it was supplied in a form during registration. *Compare* Compl. ¶ 71 (Svenson supplied Contact Information when she registered for Google); *and* Supplemental Brief on the Effect of the Ninth Circuit Court of Appeals Decision in *In Re Zynga Privacy Litig.*, Dkt. # 75 at 1, 4 (information Svenson entered into an account registration form is the contents of a communication) *with* Response at 14-19 (information the contents of communications because it was not supplied in account registration form). This shift is geared toward avoiding dismissal, and should weigh against the plausibility of the allegations in the FAC. *Fasugbe*, 2011 WL 2119128, at *5; *Sanislaus*, 782 F. Supp. 2d at 1075; *Kennedy*, 2011 WL 3359785, at *5.

contact information, and telephone or instrument number all are "record" information, not the contents of communications, under SCA); *Patrick Collins, Inc. v. Does 1-11*, No. 11-cv-01776-AW, 2011 WL 5439045, at *1, 4 (D. Md. Nov. 8 2011) (denying motion to quash, finding subscriber identifying information "records" and not "contents of communications" under SCA).

Svenson tries to distinguish this overwhelming authority by arguing that none of it discusses precisely how the record information was provided by the subscriber. Response at 18-19. But there is no need for such a discussion, because the form used is irrelevant. Moreover, the holdings in these cases are not limited to information supplied in connection with account registration. *See, e.g.*, *Sam's v. Yahoo!*, No. CV-10-5897-JF HRL, 2011 WL 1884633, at *6-7 (N.D. Cal. May 18, 2011) *aff'd*, 713 F.3d 1175 (9th Cir. 2013) (record information includes login IP addresses associated with session times and dates); *Jessup-Morgan v. AOL*, 20 F. Supp. 2d 1105, 1108 (E.D. Mich. 1998) (two page summary that included basic identity information on an AOL account was not the "contents of communications" under the SCA). In not one of these cases did the court rule that such information must be supplied in an "account creation" form rather than a "payment" form in order to be deemed "record" information.

Svenson cites only three cases to support her position: *Pharmatrak*, *Zynga*, and *Yunker*. Response at 15-16 (citing *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9 (1st Cir. 2003); *In re Zynga*, 2014 WL 1814029; and *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)). None of these holds that Contact Information would be considered the contents of communications under the SCA if it were supplied in a "payment" form. Moreover, *Zynga* and *Yunker* included Wiretap Act claims, and *Pharmatrak* is exclusively a Wiretap Act case; Wiretap Act cases are of limited utility in interpreting the SCA for reasons the Court has previously considered. *See* Reply in Supp. of Mot. to Dismiss Complaint, Dkt. # 53 at 20 (discussing limitations of Wiretap Act authority in interpreting SCA); Supp. Brief re: Mot. to Dismiss Complaint, Dkt. # 74 at 5 (same). And the Court previously considered and specifically discussed each of these cases when it concluded that the Contact Information at issue in this case did not qualify as the contents of communications. Order of Dismissal at 13-15.

Svenson argues that her Contact Information could be deemed the contents of communications depending on context. Response at 15. But she neither alleges nor argues any facts that would allow the Court to conclude that is the case here. The information at issue in the FAC still is "the type of information that the Ninth Circuit recognized as record information in *Zynga*." Order of Dismissal at 14. Svenson has failed to cure the defects in her SCA claim because they cannot be cured. The Court should dismiss Svenson's § 2702 claim with prejudice.

**C. Svenson's Section 2701 Claim Is Specious and Should Be Stricken**

Although she acknowledges that she did not need to replead her § 2701 claim to preserve it for appeal, Svenson argues that the claim should not be stricken because there is no authority that "*requires* that such claims be stricken." Response at 22 (emphasis in original). But where, as here, a plaintiff repleads allegations that were dismissed without leave to amend purportedly to preserve them for appeal, striking the allegations under Rule 12(f) is appropriate. *Beavers-Gabriel v. Medtronic, Inc.*, No. CIV. 13-00686 JMS, 2014 WL 4723802, at *1-2 (D. Haw. Sept. 22, 2014) (striking, sua sponte, allegations in amended complaint that were dismissed with prejudice in earlier order); *Allen v. Cnty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449, at *3 (C.D. Cal. Mar. 12, 2009) (finding claim that was realleged after dismissal with prejudice is "specious and should be stricken"). Moreover, Svenson's new § 2701 claim goes beyond merely realleging her previously dismissed claim, and therefore her new pleading is prejudicial to Defendants. *Compare* FAC ¶¶ 173-187 *with* Compl. ¶¶ 116-130. Accordingly, striking Svenson's § 2701 claim is warranted.

## III. CONCLUSION

For the reasons discussed above, the Court should dismiss the claims asserted in the FAC, this time with prejudice.

DATED: October 7, 2014

**PERKINS COIE LLP**

By: */s/ Susan D. Fahringer*
Susan D. Fahringer, Bar No. 162978
SFahringer@perkinscoie.com

Attorneys for Defendants
Google Inc. and Google Payment Corporation