1  IN THE UNITED STATES DISTRICT COURT

2  FOR THE NORTHERN DISTRICT OF CALIFORNIA

3  SAN JOSE DIVISION

4

5

   SVENSON,                        )  CV-13-4080-BLF
6                                  )
                    PLAINTIFF,     )  SAN JOSE, CALIFORNIA
7                                  )
           VS.                     )  JANUARY 15, 2015
8                                  )
   GOOGLE, INC., ET AL,            )  PAGES 1-33
9                                  )
                    DEFENDANT.     )
10                                 )

11

12  TRANSCRIPT OF PROCEEDINGS
    BEFORE THE HONORABLE BETH LABSON FREEMAN
13  UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFF:      FRANK JABLONSKI
                            PROGRESSIVE LAW GROUP, LLC
17                          354 W. MAIN STREET
                            MADISON, WI 53703
18

19  FOR THE DEFENDANT:      SUSAN D. FAHRINGER
                            CHARLES SIPOS
20                          PERKINS COIE LLP
                            1201 THIRD AVENUE, SUITE 4800
21                          SEATTLE, WA 98101-3099

22  APPEARANCES CONTINUED ON THE NEXT PAGE

23  OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185

24

25  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
    TRANSCRIPT PRODUCED WITH COMPUTER

```
 1    FOR THE PLAINTIFF:        ALEX STEPICK , IV
                                STEPICK LAW, LLC
 2                              2ND FLOOR SOUTH
                                2260 NORTH ELSTON AVENUE
 3                              CHICAGO, IL 60614

 4

 5    FOR THE PLAINTIFF:        KATHRYN S. DIEMER
                                DIEMER WHITMAN & CARDOSI, LLP
 6                              75 EAST SANTA CLARA STREET, SUITE 290
                                SAN JOSE, CA 95113
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   SAN JOSE, CALIFORNIA                    JANUARY 15, 2015

 2                   P R O C E E D I N G S

 3      (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4   WERE HELD:)

 5            THE COURT:  ALL RIGHT.  OUR NEXT CASE.

 6            THE CLERK:  CALLING CASE 13-4080.  SVENSON VERSUS

 7   GOOGLE INC., ET AL.

 8         COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 9            MS. FAHRINGER:  GOOD MORNING, YOUR HONOR.

10         SUSAN FAHRINGER ON BEHALF OF THE DEFENDANTS GOOGLE, INC.

11   AND GOOGLE PAYMENT CORPORATION.

12            THE COURT:  GOOD MORNING.

13            MR. JABLONSKI:  GOOD MORNING, YOUR HONOR.

14   FRANK JABLONSKI ON BEHALF OF CHRISTINE SPENCER.

15            THE COURT:  GOOD MORNING.

16         WOULD THE OTHER COUNSEL WHO ARE WITH YOU LIKE TO MAKE

17   APPEARANCES?

18            MR. SIPOS:  GOOD MORNING, YOUR HONOR.

19         CHARLES SIPOS WITH PERKINS COIE ALL ON BEHALF OF GOOGLE.

20            MS. DIEMER:  KATHRYN DIEMER,

21   DIEMER WHITMAN & CARDOSI, ON BEHALF OF SVENSON.

22            MR. STEPICK:  ALEX STEPICK, STEPICK LAW, ON BEHALF OF

23   SVENSON.

24            THE COURT:  GOOD MORNING.  ALL RIGHT.

25         WELL, IT'S A LITTLE BIT OF DÉJÀ VU ALL OVER AGAIN.  I
```

1    KNOW THESE ARE KNOTTY ISSUES.  LET ME JUST TELL YOU THAT I --

2    I'M STRUGGLING WITH THE ARTICLE III STANDING.  I THINK THAT THE

3    ALLEGATIONS HAVE BEEN RECAST.  WHETHER IT MAKES ANY DIFFERENCE,

4    OF COURSE GOOGLE SAYS IT DOESN'T MAKE ANY DIFFERENCE IS

5    SOMETHING THAT I'M TRYING TO DETERMINE.  BUT I GUESS I HAVE TWO

6    AREAS OF CONCERN.

7         MR. JABLONSKI, FOR YOU I'M NOT PERSUADED THAT THE -- THAT

8    THERE ARE TWO SEPARATE CONTRACTS THAT MAKE ANY DIFFERENCE HERE,

9    THE DIFFERENCE BETWEEN WHEN THERE'S AN ACTUAL BUYER.

10        I RECOGNIZE THAT THE TERMS AND CONDITIONS ARE ACCEPTED

11   AGAIN, BUT WHEN I READ THE LINKEDIN CASE AND JUDGE DAVILA'S

12   OPINION, WHICH HAD TO DO WITH SECURITY PROMISES, THAT IF YOUR

13   CLIENT ALREADY HAD THE PRIVACY PROTECTION IN CONTRACT ONE, AS

14   YOU WOULD CAST IT IN YOUR PLEADINGS, THEN SHE DIDN'T GET

15   ANYTHING NEW IN CONTRACT TWO, AS YOU PLEAD THE CASE.

16        AND SO I'M NOT SURE THAT YOU'VE ACTUALLY CROSSED THE

17   THRESHOLD TO SAY THAT SHE PAID MONEY FOR THE PRIVACY PROTECTION

18   THAT WAS -- YOU ALLEGE WAS BREACHED WHEN SHE PURCHASED THE APP.

19        SO THAT'S THE CONCERN THAT I HAVE.

20        CERTAINLY ON THE ARTICLE III STANDING, WE JUST NEED

21   FURTHER DISCUSSION ON THIS ISSUE OF DAMAGE WHICH IS A LITTLE

22   BIT SLIPPERY, IN MY VIEW, IN THESE KINDS OF CASES.

23        BUT MS. FAHRINGER FOR YOU, WHEN I STEP BACK FROM THIS

24   CASE, IT APPEARS THE PARTIES ACKNOWLEDGE THAT THERE IS A

25   CONTRACT AND I HAVE IT IN WRITING, THE CONTRACT DOES HAVE

1    PRIVACY PROMISES THAT ARE ALLEGED TO HAVE BEEN BREACHED.

2         AND SO YOU WOULD REALLY BE SAYING THAT GOOGLE CAN MAKE

3    PROMISES THAT IT DOESN'T HAVE TO KEEP BECAUSE THERE ARE NO

4    DAMAGES.  AND THAT CAUSES GREAT CONCERN TO ME BECAUSE A

5    CUSTOMER COMING TO GOOGLE AS OPPOSED TO MAKING OTHER CHOICES,

6    IS DENIED THE OPPORTUNITY TO SAY OH, I DON'T WANT THAT.

7         YOU KNOW, WE ALL GO ON TO WEBSITES WHERE THEY HAVE THE

8    NOTICE THAT THERE ARE COOKIES.  WELL, NOW I KNOW, I CAN JUST

9    CLICK THAT OFF IF I WANT.  BUT UNDER THIS CONTRACT THERE IS THE

10   PROMISE OF PRIVACY AND THERE'S THE ALLEGATION THAT IT IS SIMPLY

11   IGNORED.

12        AND SO IT SEEMS TO ME THERE HAS TO BE A REMEDY FOR THAT.

13   AND YOU ARE SAYING UNLESS THERE'S MONETARY DAMAGE, TOO BAD.

14             MS. FAHRINGER:  SHALL I PROCEED?

15             THE COURT:  PLEASE.

16             MS. FAHRINGER:  ON THAT ISSUE AS TO A BREACH OF

17   CONTRACT CASE, I DON'T KNOW HOW TO LITIGATE A BREACH OF

18   CONTRACT CASE EXCEPT BY FOLLOWING THE LAW.  AND THE LAW

19   REQUIRES ACTUAL AND APPRECIABLE DAMAGE.  I CAN'T CHANGE THAT

20   LAW, NOBODY CAN CHANGE THAT LAW.

21        THERE'S A LONG LINE OF CASES THAT A BREACH OF CONTRACT

22   CASE, IT'S UNDISPUTABLE THAT THE PLAINTIFF MUST ALLEGE THE FACT

23   OF DAMAGE.  THE AMOUNT CAN BE UNCERTAIN, BUT THE FACT OF DAMAGE

24   FOR A CONTRACT CASE HAS TO BE ALLEGED.

25             THE COURT:  SO LET ME ASK YOU SOMETHING ELSE.  THERE

1    IS THIS SECONDARY CLAIM FOR THE BREACH OF THE COVENANT OF GOOD

2    FAITH AND FAIR DEALING.

3        AND THERE AREN'T MANY OF THOSE CLAIMS THAT ARE ACTUALLY

4    WELL PLED, BECAUSE NORMALLY THEY ARE DUPLICATIVE OF THE BREACH

5    OF CONTRACT CLAIM AND THEREFORE THEY DON'T SURVIVE.

6        BUT HERE, IF I WERE TO AGREE WITH YOU THAT THERE'S NO

7    BREACH OF CONTRACT CLAIM BUT THERE IS A CONTRACT, WHY WOULDN'T

8    THIS BE MORE AKIN TO THIS QUASI TORT OF THE BREACH OF THE

9    COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE THERE IS A

10   PROMISE TO PROVIDE PRIVACY THAT IS HONORED IN THE BREACH, AS IT

11   WERE.

12        MS. FAHRINGER:  AND THAT ESSENTIALLY WOULD REQUIRE,

13   IT DOESN'T APPEAR IN THE FIRST AMENDED COMPLAINT, BUT IT WOULD

14   REQUIRE AN ALLEGATION OF BAD FAITH, SOMETHING A MEANINGFUL

15   ALLEGATION OF BAD FAITH.  THAT'S MORE THAN JUST A FAILURE TO

16   SORT OF, MORE THAN MERE NEGLIGENCE.

17        THE COURT:  OH, I DON'T THINK MERE NEGLIGENCE -- I

18   WOULD LOOK AT IT AGAIN, MR. JABLONSKI CAN POINT ME TO THE

19   SPECIFICS, BUT HE ALLEGES THAT IN ALL CASES GOOGLE PASSES THE

20   INFORMATION ON TO THE APP VENDOR WITHOUT THE APP VENDOR EVEN

21   REQUESTING IT.

22        SO THAT SHOWS INTENTIONAL CONDUCT IN CONTRADICTION TO THE

23   EXPRESS TERMS OF THE CONTRACT.  I DON'T KNOW WHAT MORE WE NEED

24   TO HAVE FOR BAD FAITH.  HE DOESN'T CALL IT BAD FAITH, BUT DO I

25   REALLY NEED ANOTHER ITERATION OF THE PLEADING FOR THAT?

1    MS. FAHRINGER:  WELL, THE WAY THAT THE FIRST AMENDED

2    COMPLAINT CURRENTLY READS, IT ALLEGES THAT THERE'S A BAD FAITH

3    FAILURE TO INFORM CONSUMERS THAT THE ACTUAL PRACTICE IS

4    DIFFERENT FROM THE ALLEGED PRACTICE.  THAT IN OUR VIEW THAT

5    READS A NEW PROVISION INTO THE CONTRACT.  AND THAT CAN'T BE

6    DONE UNDER THE IMPLIED COVENANT.

7            THE COURT:  THAT I WOULD AGREE.  ABSOLUTELY.

8        I HAD READ THE COMPLAINT A LITTLE DIFFERENTLY.  BUT

9    PERHAPS I'M FORECASTING WHAT COULD BE PLED AND THAT'S NOT MY

10   JOB.  MY JOB TO DO IS TO MAKE SURE THAT IT COULD BE AMENDED BUT

11   NOT TO -- AND SO, MR. JABLONSKI, ON THAT ONE POINT ON THE

12   COVENANT OF GOOD FAITH AND FAIR DEALING, BECAUSE IT MAY

13   ACTUALLY BE THAT THAT'S WHERE THIS CASE LIVES AND I DON'T THINK

14   THAT'S ACTUALLY A DETRIMENT TO YOUR CLIENT, YOU'VE PLED THEM

15   BOTH.

16           MR. JABLONSKI:  YES, YOUR HONOR.

17       THE -- AND WHAT GOOGLE DID IS THEY ESSENTIALLY ACTED TO

18   FRUSTRATE THE PURPOSES OF THE AGREEMENT.  THE PURPOSE OF THE

19   AGREEMENT IS TO PROVIDE A PURCHASE SERVICE.  THAT'S WHAT THIS

20   IS ABOUT.

21       IF YOU GO AND YOU CREATE A WALLET ACCOUNT, AND IT JUST

22   SITS THERE DORMANT, YOU'VE JUST WASTED YOUR LIFE, WHATEVER YOU

23   SPENT ON THAT, BECAUSE IT IS OF NO USE TO YOU.  IT DOES NOTHING

24   FOR YOU.  IT DOESN'T ENABLE YOU TO GET APPS FROM GOOGLE PLAY

25   THAT YOU COULDN'T GET OTHERWISE, NOT IN THIS TIME FRAME.  IT

1    SITS THERE AS AN ITEM WHICH IS IN PREPARATION FOR A PURCHASE OF

2    AN APPLICATION.

3         WITH RESPECT TO GOOD FAITH, WHAT GOOGLE DID IS GOOGLE

4    PASSED OVER THE INFORMATION AS YOU INDICATED.  THEY INDICATED

5    THAT THEY WEREN'T GOING TO PASS THAT INFORMATION OVER.

6         THE COURT:  THEY PROMISED THAT THEY WOULDN'T.

7         MR. JABLONSKI:  THEY PROMISED THAT THEY WOULDN'T.

8    THAT'S THE ALLEGATION, I DON'T THINK THAT THEY DISPUTE THAT

9    ALLEGATION.

10        AND WHAT WE SAID IS THAT THE AGREED COMMON PURPOSE OF THE

11   WALLET TERMS IS A PRIVATE TRANSACTION IN WHICH YOU GET THE APP

12   PURCHASE AND NOT PROVIDING THAT ASSOCIATED PRIVACY AND NOT

13   DISCLOSING THAT YOU ARE NOT REALLY GETTING THE PRIVACY THAT WE

14   SAY WE ARE GIVING YOU IS A BREACH OF THE COVENANT OF GOOD

15   FAITH.

16        THE COURT:  SO I GUESS REALLY THE QUESTION IS WHERE

17   IN THE PLEADING DID YOU PLEAD BAD FAITH OR SHOULD I HAVE YOU

18   AMEND TO DO THAT?  I REALLY HATE TO INVITE ANOTHER ROUND OF

19   MOTIONS TO DISMISS, SO I'M ALWAYS LOOKING TO FIND IT ALREADY

20   PLED.

21        MR. JABLONSKI:  I BELIEVE IT'S 166 AND 167,

22   YOUR HONOR.

23        THE COURT:  YEAH.

24        MR. JABLONSKI:  THEY HAD SOLE CONTROL OVER THE

25   CONTRACT TERMS, THAT'S PARAGRAPH 85.

1      THE COURT:  SO THIS IS THE DUTY TO INFORM THAN OF THE

2   DISPARITY.  AND THERE'S NO OBLIGATION TO INFORM.  I THINK

3   MS. FAHRINGER'S COMMENT ABOUT PARAGRAPH 167 IS WELL TAKEN THAT

4   THE COVENANT CAN BE USED TO EXPAND THE RIGHTS BETWEEN THE

5   PARTIES IN THEIR EXPRESS CONTRACT.

6      I'M REALLY LOOKING FOR BAD, IN 169 YOU USE THE WORD THAT

7   THEY WITH HELD IN BAD FAITH, FACTS RELATED TO HOW THE PAYMENT

8   PROCESSING SYSTEM WORKED.

9      I DON'T THINK THAT'S ACTUALLY THE BAD FAITH THAT I WOULD

10  ALLOW THIS TO GO FORWARD ON BECAUSE AGAIN, I DON'T THINK

11  THERE'S A NOTICED REQUIREMENT IN THE CONTRACT.

12      THE BAD FAITH I'M LOOKING AT HERE BASED ON THE TOTALITY

13  OF YOUR PLEADINGS IS WHEN YOU ALLEGE THAT THE PRIVATE OR

14  PERSONAL INFORMATION AS YOU CALL IT, IS GIVEN OVER TO THE APP

15  VENDOR IN ALL CASES.

16      AND THE CONTRACT SAYS, WHERE NECESSARY.  SO WHERE

17  NECESSARY, WOULD BE PRESUMED TO BE A SUBSET OF IN ALL CASES.  I

18  THINK THAT'S A REASONABLE, PLAIN MEANING.

19      AND SO, THAT WOULD BE, THAT COULD BE THE CRUX OF A BAD

20  FAITH ALLEGATION.  I DON'T THINK THAT'S -- IT'S NOT EXPRESSLY

21  HERE IN THE SECOND CAUSE OF ACTION, BUT IT SEEMS TO ME THAT IT

22  IS GENERALLY THAT THE FACTS SUPPORTING THAT CONCLUSION HAVE

23  BEEN PLED.

24      MR. JABLONSKI:  YOUR HONOR, YOU ARE CORRECT ABOUT

25  THAT.  YOU ARE CORRECT ABOUT THAT.

1    I WOULD POINT OUT THAT A CAUSE OF ACTION IS CONSTITUTED

2    OF A SET OF FACTS THAT GIVE RISE TO A RIGHT TO RECOVERY, NOT A

3    STATED CLAIM.

4        THE COURT:  SURE.  AND OF COURSE WE ARE MORE

5    CONCERNED THESE DAYS ABOUT THE FACTS ALLEGED THAN THE LEGAL

6    CONCLUSION.  SO I CERTAINLY UNDERSTAND THAT.  ALL RIGHT.

7        AND THEN, LET ME JUST TURN BACK TO YOU THEN, ON THE

8    ARTICLE III STANDING ON THE BREACH OF CONTRACT CLAIM, AND WE DO

9    NEED -- I DO NEED TO MAKE A FINDING ON EACH CAUSE OF ACTION,

10   THAT'S CLEAR.  ZYNGA GOT US THROUGH THE STORED COMMUNICATION

11   ACT, BUT I KNOW THERE MAY BE OTHER PROBLEMS WITH THAT, THAT I'M

12   NOT SURE THAT WE RESOLVED AT THIS POINT.

13       BUT THE ARTICLE III STANDING ON THE BREACH OF CONTRACT,

14   I'M JUST -- WE HAD A LONG DISCUSSION LAST TIME ABOUT THE FACT

15   THAT THE PRIVACY TERMS COME INTO PLAY INITIALLY IN THIS FREE

16   SERVICE OF HAVING A GOOGLE WALLET ACCOUNT.

17       AND YOU ARE RIGHT, AN ACCOUNT HAS NO VALUE IF IT'S NOT

18   USED, IT'S JUST, I DON'T KNOW, IT'S JUST THERE, IT GETS YOU

19   READY, BUT IT DOESN'T DO ANYTHING ELSE.  BUT THAT'S WHAT THE

20   PRIVACY PROMISES ARE MADE IN THAT FREE ACCOUNT.

21       AND YOU'VE ALLEGED THREE THEORIES OF CONTRACT DAMAGE.

22   ONE IS THE INCREASED RISK OF IDENTITY THEFT.  I DON'T THINK WE

23   NEED TO GO BACK OVER THAT, I'VE PRETTY MUCH ELIMINATED THAT.  I

24   THINK THE CASE LAW IS PRETTY CLEAR THAT IT'S WAY TOO

25   SPECULATIVE.

1    WE'VE GOT THE VALUE TO THE INFORMATION TO THE CONSUMER,

2    BUT YOU DON'T ALLEGE THAT YOUR CLIENTS EVER TRIED TO SELL IT,

3    EVER WOULD SELL IT, EVER FOUND OUT THAT IT HAS A DIMINISHED

4    VALUE.

5    IT MAY BE THAT IF WE GIVE IT A VALUE OF $1, TO SELL THAT

6    PRIVATE INFORMATION, THAT THERE'S INFINITE NUMBER OF CUSTOMERS

7    OUT THERE WHO WOULD PURCHASE IT FOR A DOLLAR, AND IT DOESN'T

8    DIMINISH.

9    I DON'T KNOW IF THERE'S ANY EVIDENCE AT ALL THAT IT

10   DIMINISHES, YOU HAVEN'T EVEN ALLEGED THAT OR ANY FACTS TO

11   SUPPORT IT.

12   SO THAT THEORY, ALTHOUGH I THINK THE NINTH CIRCUIT MAY BE

13   WARMING TO IT, I DON'T THINK THEY'VE ACTUALLY DEFINITIVELY SAID

14   THAT IT IS A GOOD THEORY.

15   MR. JABLONSKI:  YOUR HONOR, I BELIEVE IN FACEBOOK

16   THEY DID SAY THAT THEORY.

17   THE COURT:  WELL, AND FACEBOOK IS THAT LITTLE -- IT'S

18   THE VERY BRIEF FED APPENDIX ORDER.

19   MR. JABLONSKI:  YES, YOUR HONOR.

20   THE COURT:  I DID NOT HAVE THE CHANCE TO READ THE

21   DISTRICT COURT ORDER THAT THAT WAS BASED ON.

22   WELL, THAT MAY BE ENOUGH AT THE PLEADING STAGE.

23   MS. FAHRINGER, I KNOW YOU HAVE IT IN FRONT OF YOU, YOU

24   KNOW THESE CASES BETTER THAN I DO, BUT IT IS A PRETTY BROAD

25   STATEMENT.  MY NOTE WAS TO LOOK AT THE DISTRICT COURT DECISION,

1    AND YOU I'M SURE HAVE.

2           MS. FAHRINGER:  IF I MAY, I WOULD LIKE TO SPEAK JUST

3    A MINUTE ABOUT THIS MARKET VALUE THEORY AS A WHOLE AND ALSO

4    WITH REGARD TO THE FACEBOOK CASE.

5           SVENSON ALLEGES THERE'S A MARKET FOR THIS TYPE OF

6    INFORMATION BECAUSE THE INFORMATION HAS SOME SIMILAR

7    INFORMATION HAS VALUE TO SOME PEOPLE TO ADVERTISERS AND TO

8    GOOGLE.

9           THAT'S THE ALLEGATION HERE THAT'S THE GENERAL ALLEGATION

10   SHE MAKES AT AROUND PARAGRAPHS 97 TO 101 OF THE COMPLAINT.  SHE

11   CONCLUDES SHE LOST THAT ALLEGATION WITHOUT TYING ALLEGATIONS TO

12   HERSELF.

13          SHE DOESN'T SAY THAT SHE COULD HAVE SOLD THE INFORMATION

14   TO YC DROID.  AND SHE IN FACT ESSENTIALLY ALLEGES SOMETHING

15   VERY CLOSE TO THE OPPOSITE.  AT PARAGRAPHS 62 AND 81 OF THE

16   FIRST AMENDED COMPLAINT, SHE ALLEGES THAT APP SELLERS DON'T

17   EVEN KNOW WHY THEY ARE GETTING THIS INFORMATION.

18          SHE DOESN'T ALLEGE YC DROID WAS AN ADVERTISER.  SHE

19   DOESN'T ALLEGE THAT HE USED IN INFORMATION IN ANY WAY THAT HE

20   ADVERTISED TO HER THAT SHE TRIED TO SELL THE INFORMATION TO

21   HIM, SHE WAS OFFERED A LOWER PRICE, NONE OF THAT.  SHE DOESN'T

22   TIE THE MARKET ALLEGATIONS TO HERSELF, AND YOU CAN'T SHOW THAT

23   YOU LOST MARKET VALUE BY SHOWING IT HAD VALUE TO OTHERS.

24          AND FACEBOOK DOESN'T REQUIRE, IN FACEBOOK THE UNDERLYING

25   COMPLAINT WAS VERY DIFFERENT FROM THIS COMPLAINT.  THE

1 UNDERLYING INFORMATION WAS COMPLETELY DIFFERENT, IT WAS MUCH

2 BROADER, IT WAS FRIENDS INTERESTS AND MORE, NOT JUST THE BASIC

3 SUBSCRIBER INFORMATION WHICH AMOUNTS TO PHONE BOOK INFORMATION,

4 THAT'S AT ISSUE IN THIS CASE.

5 AND IT ALSO ALLEGED THAT ADVERTISERS USED THIS

6 INFORMATION TO TARGET ADVERTISEMENTS. NONE OF THOSE

7 ALLEGATIONS ARE PRESENT HERE AND FACEBOOK DOESN'T REQUIRE THIS

8 COURT TO ACCEPT AS PLAUSIBLE THAT YC DROID, THE ONE GUY WHO

9 THIS INFORMATION WAS SHOWN TO THAT YC DROID WOULD HAVE PAID

10 SVENSON FOR THIS INFORMATION, PARTICULARLY IN LIGHT OF A LONG

11 LINE OF CASES THAT SAY THE OPPOSITE.

12 AND IT IS A VERY, VERY LONG LINE OF CASES: OPPERMAN V.

13 PATH, LOW V. LINKEDIN, IN RE GOOGLE ANDROID CONSUMER PRIVACY

14 LITIGATION, LACOURT V. SPECIFIC MEDIA, IN RE JETBLUE AIRWAYS,

15 IN RE GOOGLE PRIVACY POLICY LITIGATION, YUNKER V. PANDORA, AND

16 THEY GO ON, AND ON, AND ON.

17 AND THE MEMORANDUM DECISION IN THE FACEBOOK CASE JUST

18 DOESN'T REQUIRE THIS COURT TO IGNORE ALL OF THOSE CASES WHICH

19 UNIFORMLY FIND THAT YOU HAVE TO TIE A MARKET VALUE ALLEGATION

20 TO YOURSELF.

21 SO THAT'S WHAT I HAVE TO SAY ABOUT THE FACEBOOK CASE,

22 YOUR HONOR.

23 THE COURT: OKAY. WELL, I'M GOING TO HAVE TO LOOK AT

24 THAT. I CAN'T IGNORE THIS. I CAN'T -- AND THERE WAS A THIRD

25 THEORY OF DAMAGES AND IT'S ALLUDING ME AT THIS MOMENT.

1          MS. FAHRINGER:  FROM OUR PERSPECTIVE THERE WERE THREE

2     THEORIES.

3          THE FIRST WAS LOST BENEFIT OF THE BARGAIN.  IT WAS

4     ESSENTIALLY A REHASH OF THE THEORY THAT THE COURT ORIGINALLY --

5          THE COURT:  WELL, OF COURSE BENEFIT OF THE BARGAIN IS

6     A RECOGNIZED THEORY OF CONTRACT DAMAGES.  AND SO HERE WE GET

7     INTO THE VERY FACTUALLY ORIENTED DISCUSSION OF HOW THE MONEY IS

8     PAID.

9          AND IT'S ALLEGED THAT THE -- WHEN THE APP IS PURCHASED

10    FROM THE VENDOR, IT'S GUILTY OR NOT GUILTY THAT GETS THE MONEY

11    AND THE CREDIT CARD BILL SHOWS THAT, THAT GOOGLE RECEIVED THE

12    $1.77.

13         MS. FAHRINGER:  WHEN THE COURT DISMISSED THIS CLAIM

14    AND REJECTED THE LOST BENEFIT OF THE BARGAIN THEORY THE FIRST

15    TIME AROUND, IT WAS BECAUSE THERE WEREN'T FACT THAT IS SHOWED

16    THAT THE MONEY THAT WAS PAID WAS FOR THE PRIVACY PROMISES OR

17    FOR THE SERVICE.  AND THERE'S NO DIFFERENT FACTS ALLEGED IN

18    THIS CASE.

19         THE BUYER'S CONTRACT ARGUMENT IS RAISED TO TRY AND MAKE

20    IT LOOK LIKE OKAY, WELL, IT WASN'T THE WALLET TERMS OF SERVICE

21    THAT WERE PAID FOR IT WAS SOME SUBSET OF THAT.

22         BUT JUST AS A BRIEF ASIDE, FOR THE FIRST TIME IN THE

23    BRIEFING THE PLAINTIFF IDENTIFIES THE NEW CONTRACT TERMS THAT

24    WERE UNIQUE TO BUYERS.  THAT'S AT NOTE 10, PAGE 10 OF HER

25    BRIEF, THERE ARE SIX OF THEM.  THEY DON'T INCLUDE THE PRIVACY

1    PROMISES.

2          SO EVEN IF THE COURT WERE --

3          THE COURT:  WELL, BECAUSE THEY WEREN'T UNIQUE TO

4    BUYERS.

5          MS. FAHRINGER:  EXACTLY.

6          THE COURT:  THEY ARE NOT HIDING ANYTHING THERE,

7    THAT'S ACKNOWLEDGED I THINK BY THE PLAINTIFFS THROUGHOUT.  BUT

8    THEY ARE SAYING IT WAS A RENEWAL OF THE PRIVACY PROMISES.

9          I DON'T THINK I BUY THAT ARGUMENT, BUT I THINK THAT'S

10   WHAT'S ALLEGED.  I DON'T THINK MR. JABLONSKI IS TRYING TO ARGUE

11   IT WAS A NEW PROMISE.  HE JUST SAID HAD THE TERMS CHANGED IT

12   WAS AN UPDATE.

13         HAD THE PRIVACY TERMS DISAPPEARED FOR EXAMPLE THEN

14   CLICKING ON ACCEPT WOULD HAVE CHANGED THE TERMS OF THE

15   AGREEMENT FOR THAT APP PURCHASE.

16         MS. FAHRINGER:  OKAY.

17         THE COURT:  BUT THERE'S NO ALLEGATION THAT THEY DID

18   CHANGE.

19         MS. FAHRINGER:  NO.

20         THE COURT:  YOU ARE REALLY SAYING JUST DON'T EVEN GO

21   THERE WITH THIS 30 PERCENT THAT'S ALLEGED TO BE WITHHELD FROM

22   THE REMITTENT TO THE VENDOR.

23         MS. FAHRINGER:  RIGHT.

24         AND THE REASON FOR THAT IS THERE'S NO FACT THAT SAID --

25   THE COMPLAINT ITSELF THE FIRST AMENDED COMPLAINT ALLEGES AGAIN

1    THAT WHAT THIS PLAINTIFF BOUGHT WAS THE APP.  THAT'S AT

2    PARAGRAPH 88 OF THE COMPLAINT.  THAT 1.77 IS FOR THE APP.

3            THE COURT:  ISN'T THIS THE PURCHASE OF THE APP

4    THROUGH GOOGLE WALLET AS OPPOSED TO THE PURCHASE OF THE APP

5    THROUGH ANOTHER MEANS, AND IT IS ALLEGED THERE ARE OTHER

6    MARKETS FOR THIS APP, THAT IT IS AVAILABLE ELSEWHERE.

7            MS. FAHRINGER:  THAT'S RIGHT.

8            THE COURT:  AND SO ISN'T IT REASONABLE THAT A

9    CONSUMER WOULD CHOOSE TO PURCHASE THE APP THROUGH GOOGLE WALLET

10   BECAUSE OF THE WHOLE PANOPLY OF PROTECTIONS THAT GOOGLE WALLET

11   PROVIDES.

12           MS. FAHRINGER:  THE LOST BENEFIT OF THE BARGAIN

13   THEORY IS PREMISED ON THE ARGUMENT THAT THERE IS PAYMENT BY THE

14   BUYER FOR THE PRIVACY PROMISES AND THE SERVICES.  AND THAT JUST

15   IS COMPLETELY INCONSISTENT WITH THE FACTS AND THE TERMS OF

16   SERVICE THEMSELVES, IT'S JUST INCONSISTENT WITH THEM.  IT'S NOT

17   DEFENSIBLE AND IT CAN'T DEFEAT A MOTION TO DISMISS.

18           THE COURT:  ALL RIGHT.

19       SO THAT WOULD BE THE BREACH OF CONTRACT CLAIM.  I THINK

20   THE UCL, FRANKLY, PROVING THE UCL LOSS OF MONEY AND PROPERTY IS

21   ACTUALLY HARDER, IT'S A HIGHER BAR THAN ARTICLE III, SO IF WE

22   DON'T GET PAST THE ARTICLE III, THE UCL IS CERTAINLY NOT GOING

23   TO LIVE.

24       THERE'S ALSO AN ARGUMENT ON RELIANCE.  DO YOU ALLEGE THAT

25   RELIANCE IS REQUIRED FOR ALL THREE ASPECTS OF UCL OR JUST THE

1    MISREPRESENTATION CLAIMS?

2         MS. FAHRINGER:  IT'S REQUIRED FOR ALL THREE ASPECTS

3    IF THEY SOUND IN MISREPRESENTATION AND ONLY IF THEY SOUND IN.

4         AND HERE I CAN EXPLAIN WHY WE BELIEVE THE ALLEGATIONS ARE

5    FOUNDED IN MISREPRESENTATION.

6         SVENSON ISN'T IS ASSERTING THAT THE DEFENDANTS MADE AN

7    AFTER-THE-FACT SLIP WHERE THEY SAID ONE THING AND THEN LATER

8    SAID ANOTHER.  SHE'S ASSERTING THAT THE DEFENDANT SAID ONE

9    THING KNOWING THEY WERE DOING ANOTHER.

10        AT PARAGRAPH 230, FOR EXAMPLE, SHE ALLEGES THAT CONTRARY

11   TO, THIS IS IN THE UCL ALLEGATIONS, CONTRARY TO THEIR

12   REPRESENTATIONS DEFENDANTS ACTUALLY DO DISCLOSE INFORMATION.

13        AT 238 SHE ALLEGES THAT DEFENDANT'S PRIVACY

14   REPRESENTATIONS ARE INACCURATE OR INCOMPLETE.  AT 229 SHE

15   ALLEGES THAT THEY SHOULD HAVE DISCLOSED TO THE PLAINTIFFS BUT

16   THEY DIDN'T.

17        THESE ARE ALLEGATIONS THAT SOUND IN MISREPRESENTATION.  A

18   BREACH OF CONTRACT CASE CAN FORM THE BASIS FOR AN UCL CLAIM BUT

19   ONLY IF THE UNDERLYING ALLEGATIONS ALSO SHOW UNFAIR UNLAWFUL OR

20   DECEPTIVE.

21        AND HERE THE ONLY ADDITIONAL ALLEGATIONS THAT ARE MADE

22   ARE ALLEGATIONS THAT GO TO MISREPRESENTATION.  SO SHE HAS TO

23   PLEAD RELIANCE, AND SHE CAN'T, SHE DIDN'T.

24        THE COURT:  SHE DIDN'T.  I DON'T KNOW WHETHER SHE CAN

25   OR NOT.

1    MS. FAHRINGER:  SHE'S HAD TWO CHANCES.

2    THE COURT:  I DON'T BELIEVE THAT I DISMISSED LAST

3    TIME ON THE FAILURE TO -- DID I WRITE IT ON TERMS OF RELIANCE?

4    MS. FAHRINGER:  YOU DID NOT.  YOU DID NOT.

5    THE COURT:  I DIDN'T THINK SO.

6    MS. FAHRINGER:  IT WAS MERELY ON THE ABSENCE OF

7    DAMAGE.

8    THE COURT:  YEAH.

9    WELL, MR. JABLONSKI, LET ME TURN BACK TO YOU THEN.  AND

10   ON UCL, IF I WERE TO FIND THAT MS. SVENSON HAS TO PLEAD

11   RELIANCE WITH THE FACTS MEANING SHE SAW THE PRIVACY PROMISE,

12   WOULD YOU BE ABLE TO AMEND?

13   MR. JABLONSKI:  CERTAINLY, WE WOULD CERTAINLY

14   CONSIDER AMENDING.  WE WOULD CERTAINLY LOOK INTO AMENDING

15   YOUR HONOR.

16   IF I COULD JUST POINT OUT A COUPLE OF THINGS ABOUT THE

17   UCL --

18   THE COURT:  SURE.

19   MR. JABLONSKI:  THERE WERE TWO PRONGS IN THE UCL THAT

20   DO NOT REQUIRE RELIANCE.

21   IN OUR UCL CLAIM WE REFERENCE THE CALIFORNIA BUSINESS AND

22   PROFESSIONS CODE SECTION 22576 WHICH PROHIBITS DEFENDANTS FROM

23   VIOLATING THEIR OWN PRIVACY POLICIES.

24   I DON'T SEE WHY WE HAVE TO SHOW RELIANCE IN ORDER TO

25   CONTEND THAT THAT IS AN UNLAWFUL, THAT THE ACT WAS UNLAWFUL IF

1    THEY VIOLATED THEIR OWN PRIVACY POLICIES.

2        ON THE UNFAIR CLAIM WE CITED CALIFORNIA BUSINESS AND

3    PROFESSION CODE 17201 OF THE ELEMENTS OF THAT IS UNSCRUPULOUSLY

4    ASSERTED BECAUSE IT KIND OF GOES IN THAT BAD FAITH OF NOT

5    TELLING US, NOT TELLING US THAT WE'RE ACTUALLY GIVING YOUR

6    STUFF AWAY.  GIVING US THESE GENERAL REMONSTRATIONS ABOUT

7    PRIVACY AND SAYING IN THE CONTRACT WE'RE ONLY GOING TO GIVE IT

8    AWAY AS NECESSARY AND THEN GIVING IT TO EVERYBODY WHEN IT'S NOT

9    NECESSARY.

10        THE COURT:  I GUESS I'M NOT WITH YOU ON THAT ONE

11   BECAUSE THE CONTRACT LIMITS THE RESPONSIBILITIES OF THE

12   PARTIES, AND THERE'S NO DISCLOSURE OBLIGATION TO -- THERE'S

13   NOWHERE IN IT, IN THE CONTRACT, DOES GOOGLE SAY WHEN WE DEEM IT

14   NECESSARY TO DISCLOSE YOUR INFORMATION, WE WILL INFORM YOU.

15   NOWHERE DOES IT PROMISE THAT.

16        MR. JABLONSKI:  NO.  BUT IT PROMISES NOT TO GIVE IT

17   OUT UNLESS IT IS NECESSARY.

18        THE COURT:  YEAH.  I THINK THERE YOU ARE TURNING IT

19   INTO SOMETHING THAT IT ISN'T.

20        THE NINTH CIRCUIT HAS ACTUALLY I THINK SAID THAT ALL UCL

21   CLAIMS SOUND IN MISREPRESENTATION AND THAT ALL PRONGS REQUIRE

22   RELIANCE.  I THINK THAT'S DIFFERENT THAN UNDER CALIFORNIA LAW.

23        AND I THINK THE COURTS OF APPEAL ARE STRUGGLING STILL

24   WITH THE TOBACCO II CASES AND WHAT THE PLEADING REQUIREMENTS

25   ARE ON THAT RELIANCE.

1          SO I THINK WE HAVE TO LOOK AT THAT, BUT I'M NOT SURE HOW

2     I'M GOING TO COME OUT ON WHETHER EACH PRONG REQUIRES RELIANCE

3     OR NOT.

4          AND I -- A VIOLATION OF THE UNLAWFUL, THE UNLAWFUL PRONG

5     IS THE ONE WHERE I THINK THERE WOULD BE LEAST LIKELY TO BE A

6     RELIANCE REQUIREMENT AND THAT'S WHERE I WOULD LOOK.

7          I CERTAINLY -- OBVIOUSLY, THE UNFAIR IS A

8     MISREPRESENTATION GENERALLY WHEN IT'S NOT IN THE ANTI-TRUST

9     SETTING, AND THE FRAUDULENT OBVIOUSLY IS.

10         ALL RIGHT.  LET'S MOVE ON TO THE STORED COMMUNICATION

11    ACT.  THAT'S BECOME THE LEAST SIGNIFICANT AND I THINK WE

12    STARTED OUT WITH THAT BEING THE MOST SIGNIFICANT.

13         WE DON'T NEED TO TALK ABOUT 2701.  I APPRECIATE THE

14    ARGUMENTS ARE THERE, BUT THOSE WERE ALL PLACEHOLDERS, AS YOU

15    ALL SAID, SO WE ARE LOOKING AT 2702.

16         THE ISSUE STILL IS THIS RECORD INFORMATION OR CONTENTS OF

17    A COMMUNICATION.

18         I THINK AT THIS POINT, MS. FAHRINGER, I THINK WE ALL

19    UNDERSTAND WHAT THIS IS, AND I THINK THAT IT IS DIFFERENT THAN

20    THE PHARMATRAK CASE, CERTAINLY THE TYPE OF INFORMATION IS

21    DIFFERENT BECAUSE THAT WAS PRIVATE MEDICAL INFORMATION.  AND

22    THIS IS PERHAPS PRIVATE INFORMATION, BUT NOT IN THE REALM OF

23    MEDICAL WHICH I CALL HYPER-PRIVATE UNDER THE LAWS.

24         BUT I'M WONDERING IF REALLY WE NEED TO GO THE NEXT STEP

25    TO SUMMARY JUDGEMENT ON THIS ISSUE AND THAT WE'VE GOTTEN OVER

1    THE HURDLE ON THE PLEADING.

2        I'M JUST NOT -- I MEAN, I UNDERSTAND THE NATURE OF THE

3    INFORMATION AND I UNDERSTAND THAT IT'S NOT AUTOMATICALLY

4    GENERATED.

5        SO WE ARE RIGHT, WE ARE JUST IN THIS AREA WHERE IT'S THE

6    TYPE OF INFORMATION THAT COULD BE AUTOMATICALLY GENERATED AND

7    THE CASES THAT TALK ABOUT THE AUTOMATIC GENERATION OF THE CASE

8    OF THE INFORMATION, IT'S THIS KIND OF IDENTIFYING INFORMATION.

9        BUT IT DOESN'T LOOK LIKE THAT'S WHERE GOOGLE IS GETTING

10   THIS, IT'S INFORMATION FROM AN APP FROM THE CONSUMER.

11       MS. FAHRINGER:  LET ME SPEAK TO THAT, YOUR HONOR.

12       THE AUTOMATICALLY GENERATED TEST AND THE PHARMATRAK CASE

13   AND ALL OF THE CASES THAT THE PLAINTIFF CITE IN THEIR BRIEFING

14   ARE OR INCLUDE WIRE TAP ACT CLAIMS.  VERY, VERY DIFFERENT, VERY

15   DIFFERENT BASIS.

16       ALSO, INCIDENTALLY, THERE ARE MANY OTHER REASONS TO

17   CRITICIZE PHARMATRAK.  IT RELIED, FOR EXAMPLE, ON A

18   UNITED STATES SUPREME COURT CASE THAT WAS DECIDED BEFORE THE

19   ECPA WAS AMENDED TO ELIMINATE IDENTITY FROM THE DEFINITION OF

20   THE CONTENTS OF COMMUNICATIONS.  THAT'S A BIT OF AN ASIDE.

21       BUT THE ISSUE OF AUTOMATICALLY GENERATED IS A RULE OF

22   THUMB THAT'S APPLIED IN WIRE TAP ACT CASES AND NOT IN SCA

23   CASES.  THERE IS NOT A SINGLE CASE THAT IS A SOLELY SCA CASE

24   THAT APPLIES THE AUTOMATICALLY GENERATED TEST.  IT'S A RED

25   HERRING.  IT DOESN'T APPLY HERE.

1    WHAT IS AT ISSUE HERE IS THE LIST OF RECORD INFORMATION

2    THAT IS AT 2703(C)(2), NAME, ADDRESS, SUBSCRIBER

3    IDENTIFICATION, PHONE NUMBER, THE VERY INFORMATION AT ISSUE IN

4    THIS CASE.  AND THE NINTH CIRCUIT HAS BEEN VERY CLEAR SAYING

5    THAT THE LIST OF INFORMATION IN 2703(C)(2), THAT LIST IS RECORD

6    INFORMATION AND NOT THE CONTENTS OF COMMUNICATIONS, "CONTENTS

7    DOES NOT INCLUDE SUCH RECORD INFORMATION."

8    THAT'S AT ZYNGA 750 F.3D 1106.  IT'S JUST INDISPUTABLE

9    THAT THE INFORMATION AT ISSUE IN THIS CASE IS RECORD

10   INFORMATION AND NOT THE CONTENTS OF COMMUNICATIONS.  AND THE

11   CASES THAT DISCUSS THIS DIDN'T DISCUSS IT ON SUMMARY JUDGEMENT

12   THEY DISCUSSED IT ON SUBPOENAS.  THIS IS A DECISION.

13            THE COURT:  YES, THAT'S RIGHT.

14            MS. FAHRINGER:  THIS IS A DECISION THAT NEEDN'T BE.

15   THE QUESTION IS, IS THIS INFORMATION LISTED IN 2703(C)(2)?

16            AND THEN SECONDARILY, HAVE FACTS BEEN ALLEGED THAT SHOULD

17   CAUSE THIS COURT TO FIND THAT THERE'S AN EXCEPTION TO THE LIST

18   OF INFORMATION 2703(C)(2) OR, AND TO THE 20 PLUS YEARS OF CASES

19   THAT INTERPRET IT?

20            AND SVENSON HASN'T GIVEN THE COURT EITHER THE LEGAL

21   AUTHORITY OR THE FACTUAL ALLEGATIONS THAT JUSTIFY THAT SORT OF

22   EXCEPTION.

23            SVENSON IS ASKING THIS COURT TO GO WHERE NO COURT HAS

24   GONE BEFORE, WITHOUT ANYTHING TO BACK IT UP.  SHE USES NEW

25   LABELS, SHE CALLS IT PACKET CONTENTS, BUT THE LABELS DON'T

1    CHANGE ANYTHING.  CALLING IT CONTENTS DOESN'T MAKE IT CONTENTS

2    UNDER THE SCA, IT'S STILL JUST HER BASIC SUBSCRIBER

3    INFORMATION.

4        AND SUPPLYING THE INFORMATION IN A PAYMENT FORM RATHER

5    THAN A REGISTRATION FORM, THESE ARE HER TWO ARGUMENTS, NEW

6    LABELS AND PAYMENT FORM VERSUS REGISTRATION FORM.  BUT

7    SUPPLYING THE INFORMATION IN A PAYMENT FORM CAN'T RENDER IT THE

8    CONTENTS OF COMMUNICATIONS FOR SEVERAL REASONS:

9        ONE, THIS IS BASICALLY JUST A REHASH OF SVENSON'S

10   ORIGINAL ARGUMENT THAT BECAUSE IT'S REGISTRATION FORM, IT'S

11   CONTENTS.

12       BUT SECOND, THE FORM OF THE FORM DOESN'T MATTER, THE SCA

13   DOESN'T PROHIBIT ANY FORM FROM BEING USED.  AND THE SCA IN

14   2703(C)(2), ONE OF THE ITEMS OF RECORD INFORMATION IS THE MEANS

15   AND SOURCE OF PAYMENT FOR SUCH SERVICE.  AND THAT'S PROBABLY

16   SUPPLIED IN A PAYMENT FORM.

17       AND THE CASES INTERPRETING THAT CHEVRON, BILL, SAY THAT

18   BILLING INFORMATION IS RECORD INFORMATION AND NOT CONTENTS.

19       SO THERE'S JUST NO BASIS TO HAVE THIS SET OF FACTS TURNED

20   INTO AN SCA CLAIM, IT'S NOT AN SCA CASE.

21           THE COURT:  MR. JABLONSKI, I'M SEEING THIS CASE MAY

22   BE NARROWING QUICKLY TO THE BREACH OF THE COVENANT OF GOOD

23   FAITH AND FAIR DEALING, AND PERHAPS AN UCL CASE.  I'M NOT SURE

24   YOU'VE MADE ANY DIFFERENT ALLEGATIONS THAT ARE GOING TO

25   PERSUADE ME OTHERWISE UNDER THE SCA.

1      MR. JABLONSKI:  YOUR HONOR, IF I COULD DIRECT YOUR

2  ATTENTION TO THE YAHOO CASE.  WHICH IS IN RE YAHOO MAIL

3  LITIGATION 5 F.SUPP.3D, 1016.  I'M LOOKING AT PAGE 1034.  AND

4  THEY ARE QUOTING THERE FROM THIS CASE KANAAP, WHICH I BELIEVE

5  WAS OUT OF HAWAII.  AND IT STATED THAT, THE LEGISLATIVE HISTORY

6  OF THE ECPA SUGGESTED CONGRESS WANTED TO PROTECT ELECTRONIC

7  COMMUNICATIONS THAT ARE CONFIGURED TO BE PRIVATE, SUCH AS

8  E-MAIL AND ELECTRONIC BULLETIN BOARDS.

9      THE THING ABOUT THIS INFORMATION IS THAT CONTEXT IS

10  IMPORTANT.  THIS INFORMATION IS CONFIGURED TO BE PRIVATE.  THE

11  WALLET SERVICE IS PROPOSED WITH LIMITATIONS.

12      THE COURT:  I THINK YOU ARE TAKING A LABEL -- YOU

13  JUST READ ME SOMETHING THAT SAID CONFIGURED TO BE PRIVATE SUCH

14  AS AN E-MAIL, AND THAT SOUNDS LIKE IT'S DALE DEALING WITH WIRE

15  TAP AND INTERCEPTION CONCEPTS OF INTERCEPTING THE CONTENTS OF

16  AN E-MAIL AS OPPOSED TO THE CHARACTERIZATION OF THE INFORMATION

17  CONTAINED IN THE COMMUNICATION.

18      SO I MEAN, I WILL TAKE A LOOK AT YAHOO, CLEARLY THIS IS A

19  BRAND NEW CASE.

20      MR. JABLONSKI:  I DON'T THINK SO, YOUR HONOR, BUT I

21  COULD BE WRONG.

22      THE COURT:  PARDON?

23      MR. JABLONSKI:  I COULD BE WRONG ABOUT THAT -- OH,

24  JANUARY 12, 20 -- YES, THIS IS JUDGE KOH'S CASE DECIDED

25  AUGUST 12, 2014.

1    THE COURT:  I WILL ABSOLUTELY TAKE A LOOK AT THAT.

2    MR. JABLONSKI:  YOUR HONOR, IT'S A QUESTION OF

3 WHETHER -- IT'S A QUESTION OF WHETHER IF 2703(C)(2), AND

4 CATEGORY OF, IF THE CATEGORY OF INFORMATION THAT IS REFERENCED

5 THERE CAN NEVER EVER BE CONTENTS.  WHAT THAT ALSO MEANS, I

6 BELIEVE, IS THAT YOUR CREDIT CARD AND YOUR PAYMENT INFORMATION

7 CAN NEVER EVER BE CONTENTS, IT'S ALWAYS JUST RECORD INFORMATION

8 BECAUSE IT'S IN THE LIST.

9    I THINK THE CONTEXT IS CRITICALLY IMPORTANT.  THE

10 INFORMATION THAT IS COMMUNICATED IS COMMUNICATED FOR THE

11 PURCHASE, FOR THE PURPOSE OF MAKING A PURCHASE WITHIN A CONTEXT

12 THAT GOOGLE HAS ESTABLISHED, AND THAT'S SURROUNDED BY PROMISES

13 THAT GOOGLE HAS MADE THAT ARE GOING TO GOVERN HOW THAT

14 PROCESSING WORKS.

15    AND THAT CONTEXT, WITHOUT THIS DON TENT WITHOUT THE

16 CONTENT THAT IS COMMUNICATED WHEN THE BUYER MAKES THE NEW

17 CONTRACT THAT GOOGLE REQUIRES WITHOUT COMMUNICATING THAT, THE

18 PURCHASE CAN'T BE MADE.

19    THE PURPOSE, THE FUNDAMENTAL PURPOSE OF THAT CONTRACT

20 THAT IS MADE THAT GOOGLE REQUIRES TO BE MADE, WHEN YOU MAKE A

21 PURCHASE, CANNOT BE SERVED WITHOUT YOU PROVIDING THAT

22 INFORMATION OR DIRECTING THAT INFORMATION IN THERE.

23    THE COURT:  WELL, AND YOU MAY BE RIGHT ON THIS, BUT

24 IT SOUNDS LIKE YOU ARE SUGGESTING THAT THE SCA IS GUIDED BY THE

25 PROMISES BETWEEN THE PARTIES AND THAT THAT GIVES MEANING TO

1   HOW, WHETHER THE SCA APPLIES OR NOT.  AND I'M NOT FAMILIAR WITH

2   THAT ARGUMENT.  THAT'S WHAT IT SOUNDS LIKE YOU ARE SAYING.

3       WHAT YOU READ TO ME, AND I WANT TO LOOK AT JUDGE KOH'S

4   RULING IS THAT E-MAILS ARE PRIVATE.  I DON'T THINK ANYONE

5   DISPUTES THAT AND CONSUMERS OR USERS WOULD CONSIDER IT SO.

6       IN THE WIRE TAP OR INTERCEPTION WHEN WE HAVE CONCERNS

7   ABOUT INTERCEPTING, IT'S INTERCEPTING THE E-MAIL ITSELF AND

8   GLEANING THE INFORMATION FROM IT.

9       THAT'S NOT WHAT YOU ARE ALLEGING HERE.  YOU ARE ALLEGING

10  INFORMATION PROVIDED TO GOOGLE AS A REQUIREMENT OF SETTING UP

11  AN ACCOUNT WHICH IS COUNTERED AS BEING IDENTIFYING INFORMATION

12  UNDER 2703, DOESN'T QUALIFY FOR PROTECTION.

13      YOU ARE SUGGESTING I HAVE TO READ INTO THE STORED

14  COMMUNICATIONS ACT, THE PROMISES BETWEEN THE PARTIES IN A

15  PARTICULAR CASE, AND THAT'S WHERE I'M UNFAMILIAR.

16      THAT'S YOUR ARGUMENT, BUT I'M NOT FAMILIAR WITH THAT AND

17  I'M NOT SAYING YOU ARE WRONG, I JUST HAVE TO LOOK AT THE YAHOO

18  CASE AND SEE IF I AGREE WITH YOU.

19          MR. JABLONSKI:  YOUR HONOR, WHAT I WOULD SUBMIT IS

20  THAT'S A COMMUNICATION RIGHT THERE.

21      WHEN YOU ARE MAKING THAT PURCHASE WHEN YOU ARE DOING THAT

22  CONTRACT AS A BUYER, THAT'S A COMMUNICATION RIGHT THERE.

23      IF YOU LOOK AT 2703 CONE WHERE IT SAYS THAT A GOVERNMENT

24  ENTITY MAY REQUIRE A PROVIDER OF ELECTRONIC COMMUNICATION

25  SERVICES OR A REMOTE COMPUTING SERVICE TO DISCLOSE A RECORD OR

1   INFORMATION PERTAINING TO THE SUBSCRIBER OR A CUSTOMER OF SUCH

2   SERVICE, NOT INCLUDING THE CONTENTS OF COMMUNICATIONS.

3          WHY IS THAT PHRASE THERE?

4          THE COURT:  BUT YOU WOULD ABROGATE THIS DIVISION WITH

5   AUTOMATICALLY GENERATED INFORMATION BECAUSE IT ALL ORIGINALLY

6   COMES FROM A COMMUNICATION BY THE USER.  IT DOESN'T JUST EXIT,

7   THERE'S NO SPONTANEOUS GENERATION OF IT.

8          SO IT'S THE INFORMATION THAT IS PROVIDED BY THE USER TO

9   THE COMPANY, THE SERVICE, THAT THEN GETS LATER AUTOMATICALLY

10  GENERATED.  AND YOU WOULD BE READING THAT DIVISION RIGHT OUT OF

11  THE CASES, I THINK.

12          MR. JABLONSKI:  YOUR HONOR, I THINK THAT IF YOU DON'T

13  TAKE INTO CONSIDERATION CONTEXT -- IF YOU DON'T TAKE CONTEXT

14  INTO CONSIDERATION, WHAT YOU ARE DOING IS YOU ARE ESSENTIALLY

15  READING AWAY 2702.

16          BECAUSE YOU CAN ALWAYS -- THE INFORMATION IS ALWAYS GOING

17  TO BE ENTERED IN SOME FASHION, IT CAN ALWAYS, IT CAN ALWAYS BE

18  CHARACTERIZED AS RECORD.  I THINK IT'S VERY DIFFICULT TO FIGURE

19  ANY INFORMATION THAT YOU WOULDN'T CHARACTERIZE AS A RECORD.

20          THE COURT:  WELL, THE INFORMATION THAT WAS BEING SENT

21  TO VENDORS WAS THE LIST OF CONTACTS, THE LINKEDIN CASE WHERE

22  THEY JUST WENT RIGHT IN AND TOOK THE CONTACTS AND CREATED

23  ENDORSEMENTS.  THAT WAS REALLY AN INTERCEPTION OF INFORMATION.

24  SO I KNOW WE ARE IN A DIFFERENT SECTION OF THE ACT.

25          BUT AS I'VE SAID BEFORE, THE INFORMATION THAT IS

1    PROTECTED IS AUTOMATICALLY GENERATED, HAS ITS INITIAL SOURCE IN

2    A COMMUNICATION FROM THE CUSTOMER.  AND THAT DIVISION, AND ITS

3    PRETTY NARROW.  BUT THAT'S PRETTY WELL ACCEPTED.  CASE AFTER

4    CASE HAS SUPPORTED THAT AUTOMATICALLY GENERATED INFORMATION.

5          AND YOU ARE SUGGESTING WE HAVE TO GO BACK TO THE CONTEXT

6    AND THE SOURCE AND I THINK YOU ARE READING THE LAW TOO BROADLY

7    THAT IT HAS TO BE TAKEN IN THE FORM OF THE CONTENTS OF A

8    COMMUNICATION AS IN LISTING AN E-MAIL, GOING INTO THE CONTACTS

9    OF A CONSUMER AND CREATING THIS ENDORSEMENT CONCEPT, WHICH I

10   HADN'T HEARD ABOUT THAT ONE.  I MAKES ME WONDER WHAT'S

11   HAPPENING ON MY LINKEDIN ACCOUNT.

12         AS I SAID, I WILL TAKE A LOOK AT WHAT JUDGE KOH HAS TO

13   SAY ON THAT.

14            MR. JABLONSKI:  YOUR HONOR, I WOULD ASK YOU TO LOOK

15   AT THE WORD PURPORT.  IT'S THE PURPOSE OF THE COMMUNICATION.

16   IT'S THE MEANING AND THE PURPOSE AND THE SUBSTANCE OF THE

17   COMMUNICATION WHEN THAT BUYER IS CREATING THAT CONTRACT, THAT'S

18   THE PURPOSE OF IT.  IT'S THERE TO MAKE THE PURCHASE.

19            THE COURT:  OKAY.

20         ANYTHING ELSE?

21            MR. JABLONSKI:  IF I COULD JUST TAKE ONE MINUTE OF

22   YOUR TIME.

23            THE COURT:  OF COURSE.

24            MR. JABLONSKI:  AND I WOULD LIKE TO, I WOULD LIKE TO

25   JUST PLACE BEFORE YOU KIND OF HOW WE HAVE BEEN THINKING ABOUT

1    THIS.

2    THE WHOLE NOTION THAT GUILTY OR NOT GUILTY THINKS THAT IT

3    DOESN'T GET PAID OR WE DON'T GET PAID BECAUSE WE GET PAID FROM

4    THE VENDOR.  OR WE GET PAID BUT THE VENDOR ACTUALLY OWES IT TO

5    US.

6    IT SAYS SPECIFICALLY IN THE GOOGLE TERMS OF SERVICE IN

7    SECTION 3.1, THAT THE BUYER IS RESPONSIBLE FOR OTHER

8    OBLIGATIONS.  WE POINT THAT OUT.  IT'S IN SECTION 3.1.  AND

9    THOSE OTHER OBLIGATIONS ARE NOT RELATED TO THE CREDIT CARD.

10   IN THAT PHRASE WHERE THEY USE THE WORD "OTHER

11   OBLIGATIONS," "FEES AND OTHER OBLIGATIONS," THAT IS THEY SAY

12   IT'S RELATED TO THE PURCHASE SERVICE.

13   SO THERE IS AN OPENING THERE, IT'S NOT VERY CLEAR, FOR

14   THEM TO BE CHARGING THIS.  I THINK THAT IF THEY WERE IN

15   DISCUSSIONS WITH AN UNHAPPY PURCHASER, WHAT THEY WOULD DO IS

16   THEY WOULD SAY, WELL YOU ARE RESPONSIBLE FOR THESE OTHER

17   OBLIGATIONS.

18   THE COURT:  WHAT OTHER OBLIGATIONS?  I'M A LITTLE BIT

19   LOST, I APOLOGIZE.

20   MR. JABLONSKI:  I'M SORRY, I'M LOOKING AT THE FIRST

21   PARAGRAPH UNDER SECTION -- IT'S THE GOOGLE WALLET TERMS OF

22   SERVICE SECTION 3.1.  YOU HAVE TO PAY FEES AND OTHER

23   OBLIGATIONS ARISING FROM YOUR USE OF THE PROCESSING SERVICE.

24   WHAT THAT INDICATES IS THAT IT IS CONTEMPLATED THAT YOU

25   ARE GOING TO HAVE, THAT GOOGLE MAY AS WELL SOME SORT OF

1    OBLIGATION THAT YOU HAVE TO PAY.

2         THE COURT:  OKAY.

3         MR. JABLONSKI:  LET'S JUST PRESUME THAT WE CAN TAKE

4    THE CONTRACT AT ITS FACE VALUE, AND THERE'S NO FEE TO THE

5    BUYER.

6         THERE'S A TRANSACTION WHERE THE MONEY IS PAID TO GOOGLE,

7    THEY GET THE MONEY, THEY DON'T GIVE ALL THAT MONEY TO THE APP

8    DEVELOPER.

9         SO THERE'S -- THAT HAS TO BE SOMETHING.  AND IF WE

10   CHARACTERIZE THAT, IF WE CHARACTERIZE THAT AS SOMETHING OTHER

11   THAN A FEE TO A BUYER, WHAT GOOGLE HAS JUST DONE IS THEY SAID

12   TO THE BUYER, YOU ARE OBLIGATED TO PAY US THE FEE THAT'S OWED

13   TO US FROM THE SELLER.

14        BUT THERE'S NO BILATERAL AGREEMENT BETWEEN THE CONSUMER

15   AND THE SELLER.  THE CONSUMER IS NOT AGREEING WITH THE SELLER

16   THAT I'M GOING TO PAY THIS THING TO GOOGLE SO THAT I CAN GET

17   YOUR APPLICATION, THERE IS NO AGREEMENT.  GOOGLE PUTS ITSELF AT

18   THE APEX AND CONTROLS THE ENTIRE TRANSACTION.

19        AND IF THE CONSUMER IS PAYING MONEY TO GOOGLE THAT GOOGLE

20   KEEPS, EVEN IF IT'S MONEY THAT'S OWED BY SOMEONE ELSE UNDER,

21   WITH WHOM THE CONSUMER HAS NO DIRECT CONTRACT, THAT IS

22   CONSIDERATION.  AND THAT CONSIDERATION PAYS FOR EVERYTHING THAT

23   THEY'RE ENTITLED TO UNDER THE CONTRACT.  AND WE THINK THAT

24   ESTABLISHES STANDING.

25        GOOGLE ALSO GETS TO KEEP THE TIME VALUE OF THE MONEY,

1    GOOGLE ALSO GETS THE PRIVATE INFORMATION AND I THINK THAT --

2    WELL, I'M NOT GOING TO REPEAT ON FACEBOOK

3         THE COURT:  WELL, YOU KNOW, I LIKEN THIS -- I HAVE

4    BEEN TRYING TO LIKEN THIS TO WHETHER IT'S LIKE A CONSIGNMENT

5    SITUATION WHERE THE GOODS ARE PLACED IN A STORE, WE WILL TALK

6    BRICKS AND MORTAR HERE, AND WHEN THE CUSTOMER BUYS THE ITEM FOR

7    A HUNDRED DOLLARS, THEY PAY THE STORE THEN THE STORE AND THE

8    OWNER OF THE CONSIGNED GOODS HAVE A DEAL WITH HOW MUCH THE

9    SERVICE FEE WILL BE.

10        BUT THAT DOESN'T REDUCE THE VALUE OF THE GOOD FOR -- THE

11   CUSTOMER ULTIMATELY ALWAYS PAYS FOR THE COST OF THE SALE AND

12   TRANSACTION IN ADDITION TO THE PRODUCT, WHETHER GOOGLE OWNS IT

13   BEFORE IT SELLS IT AND HAS ALREADY CUT THAT DEAL WITH THE

14   VENDOR OR WHETHER THAT IS A FLEXIBLE EVOLVING DEAL BETWEEN THE

15   VENDOR AND GOOGLE IS THE MIDDLE PERSON.

16        MR. JABLONSKI:  THAT'S CORRECT, YOUR HONOR.

17        THIS PAYMENT OCCURS WITHIN A CONTEXT AND THE CONTEXT YOU

18   ARE NOT JUST GETTING THE MERCHANDISE IN THIS CONTEXT, WHEN YOU

19   BUY, YOU ARE SIGNING A CONTRACT THAT ENTITLES YOU TO THE

20   BENEFIT OF THOSE PROMISES AND IN ORDER TO BUY THAT ITEM IN THE

21   CONSIGNMENT STORE, THE CONSIGNMENT STORE OWNER IS REQUIRING YOU

22   TO ENTER INTO THAT CONTRACT RIGHT THERE RIGHT THEN.

23        AND WHAT GOOGLE IS SAYING IS THAT THESE PROMISES BECOME

24   MEANING LESS AT THE EXACT TIME THAT THEY ARE USEFUL.

25        THE COURT:  WELL, AND THAT'S WHY I DO THINK THERE'S

1    GOT TO BE A REMEDY FOR OFFERING A CONTRACT WITH A PROMISE OF

2    PRIVACY AND THEN VIOLATING IT ALLEGEDLY IN EVERY CIRCUMSTANCE.

3          AND THAT'S WHERE, AND I MAY HAVE -- I'M INCLINED TO LET

4    YOU AMEND ON THE BREACH OF THE COVENANT OF GOOD FAITH AND FAIR

5    DEALING.  I THINK IT NEEDS A LITTLE TWEAKING.

6          I'M SATISFIED YOU CAN DO THAT TO ALLEGE BAD FAITH IN THE

7    BLANKET PROVISION OF THE INFORMATION TO THE APP VENDORS AND TO

8    ALLEGE RELIANCE IF YOU CAN, AND I KNOW YOU HAVE TO TALK TO YOUR

9    CLIENT ABOUT THAT AS TO WHETHER YOU CAN ALLEGE FACTS OF YOUR

10    CLIENTS UNDER UCL.  I COULD THINK ABOUT WHETHER THERE'S LOSS OF

11    MONEY OR PROPERTY THERE, BECAUSE THAT MAY BE A BIGGER PROBLEM

12    FOR YOU THAN RELIANCE.

13          AND THE STORED COMMUNICATIONS ACT, I AM GOING TO LOOK AT

14    IT AGAIN, IT DIDN'T PASS MUSTER THE FIRST TIME.  I WANT TO MAKE

15    SURE I UNDERSTAND THE STORED COMMUNICATIONS ACT BEFORE I RULE

16    ON THIS ONE.  IF JUDGE KOH HAS A RULING ON IT, I LOOK FORWARD

17    TO READING THAT.

18          ALL RIGHT.  THANK YOU VERY MUCH.

19          MS. FAHRINGER:  THANK YOU, YOUR HONOR.

20          MR. JABLONSKI:  THANK YOU, YOUR HONOR.

21    (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

22

23

24

25

**CERTIFICATE OF REPORTER**


I, THE UNDERSIGNED OFFICIAL COURT
REPORTER OF THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
CERTIFY:

THAT THE FOREGOING TRANSCRIPT,
CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND
CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS
SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____

SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185          DATED: 1/22/15