1    Susan D. Fahringer, State Bar No. 162978
     SFahringer@perkinscoie.com
2    Charles C. Sipos (*Pro Hac Vice*)
     CSipos@perkinscoie.com
3    PERKINS COIE LLP
     1201 Third Avenue, Suite 4900
4    Seattle, WA  98101-3099
     Telephone: (206) 359-8000
5    Facsimile:  (206) 359-9000

6    Sunita B. Bali, State Bar No. 274108
     SBali@perkinscoie.com
7    PERKINS COIE LLP
     4 Embarcadero Center, Suite 2400
8    San Francisco, CA 94111
     Telephone: (415) 344-7000
9    Facsimile:  (415) 344-7050

10   Attorneys for Defendants
     Google Inc. and Google Payment Corporation
11
     [additional counsel on signature page]
12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16

17   ALICE SVENSON, individually and on        Case No. CV-13-04080-BLF
     behalf of all others similarly situated,
18                                              Hon. Beth Labson Freeman
                        Plaintiff,
19                                              **[STIPULATED] ORDER RE: DISCOVERY**
              v.                                **OF ELECTRONICALLY STORED**
20                                              **INFORMATION**
     GOOGLE INC., a Delaware Corporation,
21   and GOOGLE PAYMENT
     CORPORATION, a Delaware Corporation,
22
                        Defendants.
23

24

25

26

27

28

**1.      PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.      COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.      LIAISON**

a)       The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

b)       Google appoints Ryan Mrazik, Perkins Coie LLP, as its e-discovery liaison.

c)       Plaintiff appoints Mark Bulgarelli, Progressive Law Group, LLC, as its e-discovery liaison.

**4.      PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)       Only ESI created or received between September 19, 2009 and the date on which this case is closed pursuant to settlement or non-appealable final court order will be preserved;

b)       The parties shall discuss the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary;

c)   The parties shall discuss the number of custodians per party for whom ESI will be preserved.

d)   These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

1.   backup systems and/or tapes that are not reasonably accessible; and

2.   systems no longer in use that cannot be accessed.

e)   Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

1.   voicemail messages left on telephone handsets that are not retained or backed up in the usual course of business;

2.   information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

3.   instant messaging data and communications that are not retained in the usual course of business or otherwise backed up to a reasonably accessible data source;

4.   automatically saved versions of documents and automatically saved versions of email that have not been sent by the author to another person;

5.   video and audio recordings that are not retained or backed up in the usual course of business;

6.   data deleted prior to the filing of the complaint in this proceeding;

7.   slack, fragmented, or other data accessible only by forensics;

8.   random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

9.   on-line access data, such as temporary internet files, history, cache, cookies, and the like, that have not been retained or backed up in the usual course of business;

-2-

10.     dynamic fields of databases or log files that have not been retained or

backed up in the usual course of business; and

11.     data in metadata fields that are frequently updated automatically, such as

last opened dates, that are not retained or backed up in the usual course of

business.

f)      Nothing in Section 4 of this Order shall be construed as an agreement that a

particular source will be searched for documents responsive to a party's requests for production.

## 5.     SEARCH

a)      The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or

earlier if appropriate, they will meet and confer about methods to search ESI in order to identify

ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

b)      Each party will use its best efforts to filter out common system files and

application executable files by using a commercially reasonable hash identification process.

Hash values that may be filtered out during this process are located in the National Software

Reference Library ("NSRL") NIST hash set list.  Additional culling of system file types based

on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, C++

Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object

Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css),

JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile

Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary

File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz),

Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw),

Program Installers.

c)      Each party is required to produce only a single copy of a responsive document

and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the

document level) across custodians.  For emails with attachments, the hash value is generated

based on the parent/child document grouping.  A party may also de-duplicate "near-duplicate"

email threads as follows: In an email thread, only the final-in-time document need be produced,

-3-

1    assuming that all previous emails in the thread are contained within the final message.  Where a

2    prior email contains an attachment, that email and attachment shall not be removed as a "near-

3    duplicate."  To the extent that de-duplication through MD5 or SHA-1 hash values is not

4    possible, the parties shall meet and confer to discuss any other proposed method of de-

5    deduplication.

6          d)     No provision of this Order affects any inspection of source code that is

7    responsive to a discovery request and will be made available consistent with the protective

8    order governing this case.

9    **6.     PRODUCTION FORMATS**

10         The parties agree to produce documents in the formats described in Appendix 1 to this

11   Order.  If particular documents warrant a different format, the parties will cooperate to arrange

12   for the mutually acceptable production of such documents.  The parties agree not to degrade the

13   searchability of documents as part of the document production process.

14   **7.     PHASING**

15         a)     When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the

16   parties agree to phase the production of ESI.

17         b)     Upon the propounding of discovery requests pursuant to Fed. R. Civ. P. 34, the

18   parties shall meet and confer to discuss the sources/custodians of ESI which should be

19   processed and produced first as part of the phasing of discovery so that discovery occurs first

20   from sources most likely to contain relevant and discoverable information.

21         c)     Following the initial production, the parties will continue to prioritize the order

22   of subsequent productions.

23   **8.     DOCUMENTS PROTECTED FROM DISCOVERY**

24         a)     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-

25   protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection

26   from discovery in this case or in any other federal or state proceeding.  For example, the mere

27   production of privileged or work-product-protected documents in this case as part of a mass

28   production is not itself a waiver in this case or in any other federal or state proceeding.  A

-4-

[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. CV-13-04080-BLF
LEGAL125657300.1

1  producing party may assert privilege or protection over produced documents at any time by

2  notifying the receiving party in writing of the assertion of privilege or protection.  Information

3  that contains privileged matter or attorney work product shall be immediately returned if such

4  information appears on its face to have been inadvertently produced.

5        b)      Communications involving trial counsel that post-date the filing of the complaint

6  need not be placed on a privilege log.  Communications may be identified on a privilege log by

7  category, rather than individually, if appropriate.

8  **9.  MODIFICATION**

9        This Stipulated Order may be modified by a Stipulated Order of the parties or by the

10  Court for good cause shown.  Any such modified Stipulated Order will be titled sequentially as

11  follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information

12  for Standard Litigation," and each modified Stipulated Order will supercede the previous

13  Stipulated Order.

14        **IT IS SO STIPULATED**, through Counsel of Record.

15  DATED:  April 17, 2015           **PROGRESSIVE LAW GROUP**

16

17                            By: */s/ Mark Bulgarelli*

18                               Mark Bulgarelli (pro hac vice)
                             MarkB@progressivelaw.com

19                            Attorneys for Plaintiff

20                            Alice Svenson

21  DATED:  April 17, 2015           **PERKINS COIE LLP**

22

23                            By: */s/ Charles C. Sipos*

24                               Charles C. Sipos, WSBA No. 32825
                             CSipos@perkinscoie.com

25                            Attorneys for Defendants
                          Google Inc. and Google Payment Corporation

26

27

28

[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. CV-13-04080-BLF
LEGAL125657300.1

1        Pursuant to Local Rule 5-1(i)(3), I attest that Mark Bulgarelli, counsel for Plaintiff Alice

2 Svenson, has concurred in the filing of this document.

3 DATED:  April 17, 2015                        **PERKINS COIE LLP**

4

5                             By:  */s/ Charles C. Sipos*

                                 Charles C. Sipos, WSBA No. 32825

6                                  CSipos@perkinscoie.com

7                             Attorneys for Defendants

                            Google Inc. and Google Payment Corporation

8

9

10        **IT IS ORDERED** that the foregoing Agreement is approved.

11

12 DATED: _____        _____

                                 Honorable Howard R. Lloyd

13                                 United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. CV-13-04080-BLF
LEGAL125657300.1

**APPENDIX 1**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata data file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.  The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |

| BCC | All recipients that were included on the "BCC" line of the email |
|---|---|
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents.  When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.  The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped

with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9.  **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Spreadsheets.** TIFF images of spreadsheets (MS Excel, Google Sheets) need not be produced unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files.  Native copies of spreadsheets shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a spreadsheet has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.  The parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF images are formatted so as to be readable.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information.  The parties shall meet and confer to finalize the appropriate production format.

12. **Request(s) for Additional Native Files.** If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied.  Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3.  A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

13. **Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media").  Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. CV-13-04080-BLF
LEGAL125657300.1