1  Susan D. Fahringer (CA Bar No. 162978)
   SFahringer@perkinscoie.com
2  Charles C. Sipos (*Pro Hac Vice*)
   CSipos@perkinscoie.com
3  Breena M. Roos (*Pro Hac Vice*)
   BRoos@perkinscoie.com
4  Ryan T. Mrazik (*Pro Hac Vice*)
   RMrazik@perkinscoie.com
5  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
6  Seattle, WA 98101-3099
   Telephone: (206) 359-8000
7  Facsimile: (206) 359-9000

8  Attorneys for Defendants
   Google Inc. and Google Payment Corporation

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ALICE SVENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC., a Delaware Corporation, and GOOGLE PAYMENT CORPORATION, a Delaware Corporation,<br><br>Defendants. | Case No. CV-13-04080-BLF<br><br>**DEFENDANTS GOOGLE INC. AND GOOGLE PAYMENT CORPORATION'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF HENRY FISHKIND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 24, 2016<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman<br><br>REDACTED VERSION - PUBLICLY FILED |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF HENRY FISHKIND ........................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I. INTRODUCTION ............................................................................................................ 1

II. BACKGROUND .............................................................................................................. 2

    A. Dr. Fishkind's "Benefit of the Bargain" Theory ................................................. 2

    B. Dr. Fishkind's "Diminished Value of PII" Theory ............................................. 4

III. ARGUMENT .................................................................................................................... 4

    A. Legal Standard .................................................................................................... 4

    B. Dr. Fishkind's "Benefit of the Bargain" Theory is Inadmissible Under Daubert .................................................................................................................. 5

        1. The "benefit of the bargain" model is not the product of reliable principles or methods ............................................................................ 5

        2. Dr. Fishkind's survey is not based on a reliable application of principles and methods to the facts of this case ........................................ 7

    C. Dr. Fishkind's "Diminished Value of PII" Theory is Inadmissible Under Daubert .................................................................................................................. 9

IV. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Claar v. Burlington Northern Railroad Co.*,
 29 F.3d 499 (9th Cir. 1994) ..................................................................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ..................................................................................................... *passim*

*Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*),
 43 F.3d 1311 (9th Cir. 1995) ................................................................................................4

*Dukes v. Wal-Mart, Inc.*,
 222 F.R.D. 189 (N.D. Cal. 2004) .........................................................................................8

*Jones v. United States*,
 933 F. Supp. 894 (N.D. Cal. 1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997) ...........................6

*Lust v. Merrell Dow Pharm., Inc.*,
 89 F.3d 594 (9th Cir. 1996) ..................................................................................................4

*McGlinchy v. Shell Chem. Co.*,
 845 F.2d 802 (9th Cir. 1988) ..............................................................................................10

*Rai v. Santa Clara Valley Transp. Auth.*,
 308 F.R.D. 245 (N.D. Cal. 2015) .........................................................................................5

*Sentius Int'l, LLC v. Microsoft Corp.*,
 No. 5:13-CV-00825-PSG, 2015 WL 331939 (N.D. Cal. Jan. 23, 2015) ...........................4, 5

*Tietsworth v. Sears, Roebuck & Co.*,
 No. 5:09-CV-00288-JF HRL, 2012 WL 1595112 (N.D. Cal. May 4, 2012) ....................5, 6

*United States v. Hankey*,
 203 F.3d 1160 (9th Cir. 2000) ..............................................................................................9

*Wallace v. Countrywide Home Loans Inc.*,
 No. SACV 08-1463-JST, 2012 WL 11896333 (C.D. Cal. Aug. 31, 2012) ......................8, 9

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 ............................................................................................ *passim*

# NOTICE OF MOTION AND

# MOTION TO EXCLUDE THE TESTIMONY OF HENRY FISHKIND

To Plaintiff Alice Svenson and her counsel of record: Please take notice that on August 24, 2016, at 9:00 a.m., or on such other date as the Court directs, in Courtroom 3, 5th Floor of the United States District Court, Northern District of California, San Jose Division, before the Hon. Beth Labson Freeman, Defendants Google Inc. ("Google") and Google Payment Corporation ("GPC") (collectively, "Defendants") will move this Court for an Order excluding the expert declaration and testimony of Henry Fishkind pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Defendants' Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Expert Report of Douglas Kidder and the Expert Report of Dominique M. Hanssens (both filed concurrently with Defendants' Opposition to Plaintiff's Motion for Class Certification, as Exhibits 4 and 5 the Omnibus Declaration of Charles Sipos ("Sipos Decl.")), and upon such other matters as may be presented.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The damages theories in the Report of Dr. Henry Fishkind ("Fishkind Report") filed in support of Plaintiff Alice Svenson's ("Svenson") Motion for Class Certification ("Motion") are just that: theories. The Fishkind Report does not calculate damage suffered by putative class members based on any reliable principles or methods. It does not measure damage; it *assumes* that all class members were damaged. It presents two theories of damage then ignores them both, generating numbers that bear no relation to any evidence of actual damage.

The first theory Dr. Fishkind presents is "benefit of the bargain" damages. Dr. Fishkind's model to measure such damage ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬. In reality, the model is nothing more than a flawed and incomplete estimate of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. And even if the model itself were reliable (which it is not), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬—a "garbage in, garbage out" flaw that renders Dr. Fishkind's benefit of the bargain measurement wholly unreliable.

Dr. Fishkind's second theory, "diminished value of PII," is just as flawed. The premise of this theory is that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

The Fishkind Report is not based on reliable principles or methods. The Court should exclude his Report under Federal Rule of Evidence 702 and *Daubert*.

## II. BACKGROUND

Svenson offered the Fishkind Report to support her assertion that damages owed to the putative class can be calculated on a classwide basis. *See* Plaintiff's Motion for Class Certification (Dkt. No. 159) ("Pl's. Mot"); Declaration of Rafey S. Balabanian in Support of Plaintiff's Motion for Class Certification, Ex. 1-47 ("Fishkind Report"). The Report presents two models to calculate such damage: (1) "benefit of the bargain"; and (2) "diminished value of personal identifying information (PII)." Fishkind Rep. at 3-31.

As to both models, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Omnibus Declaration of Charles Sipos, Ex. 25[1] (Deposition of Henry Fishkind ("Fishkind Tr.") at 38:14-39:22; 160:21-161:21; 169:18-170:2). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ they offer no mechanism to distinguish between class members who were damaged and those who were not. *Id.* (Fishkind Tr. at 38:14-39:1; 47:9-47:21).

### A. Dr. Fishkind's "Benefit of the Bargain" Theory

To calculate "benefit of the bargain" damage, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Fishkind Rep. at 17-22. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Pl.'s Mot. at 1, 5-7, 17-18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5 (Expert Report of Dominique M. Hanssens ("Hanssens Rep.") at 5, 9-11, 12-14).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Unless otherwise noted, all citations to "Exhibit" or "Ex." herein refer to exhibits to the Sipos Declaration.

1  ███████████████████████████████████████████████████ Fishkind Rep. at 23-
2  26. ██████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████
4  ██████████████████. *Id.*; *see also id.* Ex. 25 (Fishkind Tr. at 95:10-96:16) (███████
5  █████████████.

As explained in the Expert Report of Douglas Kidder ("Kidder Rep."), ███████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ Ex. 4
(Kidder Rep. at 25-29). ███████████████████████████████████████████████
████████████████████████████████ *Id.* That is, Dr. Fishkind's "benefit of the bargain"
calculation is, at best, █████████████████████████████████████████████
████████████████████████████████████████████.

Dr. Fishkind admitted in deposition that his "benefit of the bargain" model would, in fact, generate a "damages" figure regardless of whether the relevant privacy policies were breached or the buyer suffered any resulting damage. *Id.* at 10-11; *see also* Ex. 25 (Fishkind Tr. at 22:7-23:12; 169:18-170:2) (testifying that it is "immaterial" under model whether sellers even saw any PII). Dr. Fishkind's "benefit of the bargain" model offers no means to identify buyers whose name, email address, or zip code information was actually accessed by their seller, for a purpose that was inconsistent with Google's policies, in a manner that actually caused the buyer damage. Kidder Rep. at 10-12. Dr. Fishkind's model cannot differentiate between class members who were damaged as the result of Defendants' actions, from those who were not. *Id.*

Fishkind assumed that App buyers on Google Play using Wallet "paid" some amount to Defendants in return for their "privacy promises." Fishkind Rep. at 4; Ex. 25 at 191:24-192:25. Fishkind had no evidence to support this assumption; he relied only on allegations in the Complaint and his own "logic" that this *must* be true because (he further assumed) the processing fee for App purchases is paid by the buyer. Ex. 25 at 203:8-205:3 ("Q: Other than your logical abilities as to how the transaction would have to be structured, what evidence are you relying on to conclude that the 30 percent is paid by the buyer versus the developer? A: I have no further

-3-
DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF HENRY FISHKIND (Case No. 5:13-cv-04080-BLF)

evidence to provide, sir."). Both assumptions are incorrect. Buyers pay nothing to Google for privacy promises, and it is sellers, not buyers, who pay the processing fee associated with App purchases. *Compare* Kourakina Decl. ¶ 3-4 and Ex. 7 (use of Google Wallet is free to buyers and sellers pay processing fees), *with* Fishkind Rep. at 4; Ex. 25 at 191:24-192:25; 203:8-205:3.

**B.    Dr. Fishkind's "Diminished Value of PII" Theory**

Dr. Fishkind's "Diminished Value of PII" theory asserts that ████████████
████████████████████████████ Fishkind Rep. at 5. ████████
████████████████████████████████████████
████████████████████ Kidder Rep. at 47-48.
████████████████████████████████
████████████████ *Id*. at 43-45. ████████
████████████████████████ *Id*. ████
████████████████████████████████ *Id.*

### III.    ARGUMENT

**A.    Legal Standard**

Expert testimony is admissible only if (i) it is based on sufficient facts or data; (ii) it is the product of reliable principles and methods; and (iii) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). To ensure its reliability, district courts are "both authorized and obligated to scrutinize carefully the reasoning and methodology underlying" expert testimony. *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 501 (9th Cir. 1994). The task "is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1316 (9th Cir. 1995). "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).[2]

---

[2] "Treatment of surveys is a two-step process." *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 331939, at *2 (N.D. Cal. Jan. 23, 2015). Of relevance here, the district court must determine as the first step: "is the survey admissible?" *Id.* "That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted

-4-

When considering whether a Plaintiff has met her burden at the class certification stage to show that damages can be calculated on a classwide basis, "the relevant inquiry is a 'tailored *Daubert* analysis which scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'" *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015); *see also Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288-JF HRL, 2012 WL 1595112, at *7 (N.D. Cal. May 4, 2012) ("[I]n order to grant class certification, this Court must first determine whether it may rely on the methodology used by [the parties' experts] to decide whether the claims in this case are amenable to common proof."). The Fishkind Report does not clear these hurdles.

**B.     Dr. Fishkind's "Benefit of the Bargain" Theory is Inadmissible Under *Daubert***

Svenson cannot carry her burden to establish the admissibility of Dr. Fishkind's benefit of the bargain theory. This theory is based on unreliable principles and methods, and is grounded in ▮▮▮▮▮▮▮▮▮▮

**1.     The "benefit of the bargain" model is not the product of reliable principles or methods**

Dr. Fishkind's "benefit of the bargain" model does not satisfy *Daubert* or Rule 702 because it is not the product of reliable principles or methods.

*First*, ▮▮▮▮▮▮▮▮▮▮ *See* Kidder Rep. at 25-29. Dr. Fishkind did not develop ▮▮▮ based on established principles of econometrics or statistical modeling. *Id.* at 30-31 ("Dr. Fishkind…can cite no papers in which ▮▮▮ ▮▮▮"). And finally, ▮▮▮ ▮▮▮ *Id.* at 10. ▮▮▮ ▮▮▮

---

principles?" *Id.* Only once admissibility is determined does the district court consider questions of weight. *Id.*

-5-

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████. Ex. 4 at 3-4; 10-11; Ex. 25 (Fishkind Tr. at 22:7-23:12; 169:18-170:2).

████████████████████████████████████████████████

████████ are therefore unreliable, and are not an acceptable method for calculating damages classwide. *Tietsworth*, 2012 WL 1595112, at *7; *Daubert*, 509 U.S. at 592-93; *see also Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal. 1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997) ("Scientific evidence must also meet the 'fit' requirement by having a valid scientific connection to the inquiry at issue in the case.").

**Second**, Fishkind's model is unreliable because it is based on false assumptions. While Fishkind assumed that App buyers on Google Play using Wallet "paid" some amount to Defendants in return for their "privacy promises," Fishkind Rep. at 4; Ex. 25 (Fishkind Tr. at 191:24-192:25; 203:8-205:3), this was incorrect. Buyers do not pay Google for privacy promises, and App sellers, not buyers, pay the processing fee associated with App purchases. *See* Kourakina Decl. ¶ 3-4 and Ex. 7.

**Third**, Dr. Fishkind applies his "benefit of the bargain" method unreliably. ████████ ███████████████████████████████████████. Kidder Rep. at 32-35. ████████████████████████████████████████

████████████████████████████████████████

██████████████████████
██████████████████████
██████████████████████
██████████████████████
██████████████████████

*Id.* at 5. Dr. Fishkind's "benefit of the bargain" methodology does not measure what it purports to, is premised on erroneous assumptions contradicted by the undisputed evidence, and finds no support in reliable economic principles or literature. *Id.* at 16-32.

## 2. Dr. Fishkind's survey is not based on a reliable application of principles and methods to the facts of this case

Dr. Fishkind's "benefit of the bargain" model is separately inadmissible because ▮

▮ This methodology therefore does not "reliably apply the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592-93.

▮ Ex. 25 (Fishkind Tr. at 137:1–21, 74:9-74:17). ▮

▮ *Id.* (Fishkind Tr. at 72:16–24; 72:25–74:18; 136:5–137:15; 153:9–17; 168:18-168:25); *see also* Hanssens Rep. at 24-27.

▮ Ex. 25 (Fishkind Tr. at 185:21-187:4); *see also* Hanssens Rep. at 24-27. ▮

*Second*, Dr. Fishkind's survey is infected with known survey biases. ▮ suffers from focalism bias, demand

effects, and other biases ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
*See generally* Hanssens Rep. at 20-24. Focalism bias refers to the phenomenon whereby people focus too much on the occurrence in question and fail to consider other circumstances. *Id*. at 21.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 22-23.

Demand effects refer to survey respondents' inclination to provide answers they think are "correct." *Id*. at 23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 23-24. For example, because of the way the survey was constructed, survey respondents would not consider the value of sharing their information with sellers, for example to enable customer service or other reasons permitted by Google privacy policies. But under ordinary circumstances, buyers might prefer an App where the seller could provide such customer service. *Id.* at 2-3, 12-13; *see also* Ex. 8 (GPP at GOOG-00000114) and Ex. 10 (Wallet PN at GOOG-00000998). Fishkind's survey fails to take this into account and is biased and unreliable as a result.

In addition, Dr. Fishkind's design does not address biases inherent in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. at 17-19. These biases make testimony drawn from the survey unreliable. *See Wallace v. Countrywide Home Loans Inc*., No. SACV 08-1463-JST, 2012 WL 11896333, at *3 (C.D. Cal. Aug. 31, 2012) (survey inadmissible where affected by presence of bias); *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 197 (N.D. Cal. 2004) (granting motion to exclude where "[t]he survey instrument . . . [was] biased on its face.").

*Third*, the survey does not accurately or reliably capture the facts of this case. Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▮▮▮

2 ▮▮▮ *Id*. at 20. ▮▮▮

3 ▮▮▮

4 ▮▮▮ *Id*. at 20-21. ▮

5 ▮▮▮

6 ▮▮▮

7 ▮▮▮ *Id*. at 12-14. Thus, Dr. Fishkind's "benefit of the bargain" theory is not based on a reliable methodology or data.

**C.  Dr. Fishkind's "Diminished Value of PII" Theory is Inadmissible Under *Daubert***

Dr. Fishkind's conclusion that ▮▮▮ *see* Fishkind Rep. at 5, suffers from fatal deficiencies as well and is inadmissible under *Daubert* and Rule 702 because it is not based on sufficient facts or data.

*First*, the model is indifferent to whether sellers ever actually obtained buyer information. Dr. Fishkind assumes (or simply does not care whether) sellers obtain the buyer's information, Ex. 4 at 10-12, when in reality sellers need to affirmatively ask for the information. *See* Exs. 1, 31-33. Yet, Dr. Fishkind's report acknowledges that the "value" of PII cannot be diminished unless it was accessed in the first place. Fishkind Rep. at 30.

*Second*, the model overstates damage for the same reasons as the "benefit of the bargain" model, in that it includes and applies equally to buyers who suffered damage as the result of a breach of Google privacy policies, and those who did not. *Id.*

*Third*, the model does not rest on sound data but, rather, ▮▮▮ Fishkind Rep. at 30-31. Dr. Fishkind then plucked the price he favored for the particular bundle of personal information and ignored any contrary pricing information obtained from other sources. Ex. 4 at 47-48. There is no scientific basis to conclude that this "analysis" bears any relation to the data at issue in this case, or amounts to any reliable methodology based on scientific, technical, or other specialized knowledge held by Dr. Fishkind. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

*Fourth*, Dr. Fishkind's "diminished value" model rests on erroneous assumptions. ▮

▮

▮

▮

▮ Ex. 25 (Fishkind Tr. at 220:1-220:17). ▮

▮

▮

▮

▮ the transaction costs associated with an individual App seller buying information from an individual App buyer would exceed the purchase price that Dr. Fishkind has calculated. *See* Ex. 4 (Kidder Rep. at 44-45). Moreover, the examples that Fishkind cites as evidencing this "market" are startup firms involved in the sale of either personal information not at issue in this case (such as data from social media activity) or that do not sell personal data at all. *Id*. at 45-47; *see also* Fishkind Rep. at 28-29. They are not businesses willing to pay App buyers on an individual basis for their name, email address, and zip code, which is the information at issue here. *Id.*

Dr. Fishkind's "diminished value" methodology therefore does not meet Rule 702 and *Daubert* standards. *See McGlinchy v. Shell Chem. Co*., 845 F.2d 802, 806-07 (9th Cir. 1988) (affirming exclusion of "flawed" expert report on damages where analysis "rests on unsupported assumptions and ignores distinctions crucial to arriving at a valid conclusion").

## IV. CONCLUSION

For the reasons stated above, this Court should exclude the Report and testimony of Dr. Henry Fishkind under Rule 702 and *Daubert* and prohibit Dr. Fishkind from testifying in connection with Plaintiff's Motion.

-10-
DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF HENRY FISHKIND (Case No. 5:13-cv-04080-BLF)

DATED: July 8, 2016           **PERKINS COIE LLP**

                              By: *s/ Charles C. Sipos*
                                  Charles C. Sipos (pro hac vice)

                              Attorneys for Defendants
                              Google Inc. and Google Payment Corporation