1  Susan D. Fahringer (CA Bar No. 162978)
   SFahringer@perkinscoie.com
2  Charles C. Sipos (*Pro Hac Vice*)
   CSipos@perkinscoie.com
3  Breena M. Roos (*Pro Hac Vice*)
   BRoos@perkinscoie.com
4  Ryan T. Mrazik (*Pro Hac Vice*)
   RMrazik@perkinscoie.com
5  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
6  Seattle, WA 98101-3099
   Telephone: (206) 359-8000
7  Facsimile: (206) 359-9000

8  Attorneys for Defendants
   Google Inc. and Google Payment Corporation

9

UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

| | |
|---|---|
| ALICE SVENSON, individually and on behalf of all others similarly situated, | Case No. CV-13-04080-BLF |
| Plaintiff, | **DEFENDANTS GOOGLE INC. AND GOOGLE PAYMENT CORPORATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S INDIVIDUAL CLAIMS** |
| v. | |
| GOOGLE INC., a Delaware Corporation, and GOOGLE PAYMENT CORPORATION, a Delaware Corporation, | Date:    August 24, 2016 |
| Defendants. | Time:    9:00 a.m. |
| | Place:   Courtroom 3, 5th Floor |
| | Judge:   Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

    A.    Svenson Has Failed to Show She Has Article III Standing ................................. 2

        1.    Svenson's "benefit of the bargain" theory fails ......................... 3

            a.    The privacy promises were free ..................................... 3

            b.    Defendants honored their privacy promises.................... 5

        2.    Svenson's "diminished value" theory fails ................................. 8

        3.    Svenson's (new) "nominal damages" theory fails .................... 10

        4.    Svenson's (new) "UCL injuries" theory fails .......................... 11

    B.    Svenson's Breach of Contract Claim Fails on the Merits ..................................... 11

    C.    Svenson's UCL Claim Fails For the Same Reasons as Her Contract Claim ........ 13

    D.    The Court Should Dismiss Svenson's Implied Covenant Claim as Superfluous ......................................................................................................... 15

III.  CONCLUSION .................................................................................................. 15

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(Case No. CV-13-04080-BLF)
LEGAL132240759

# TABLE OF AUTHORITIES

Page

Cases

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ..................................................................12

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) .......................................................14

*Avina v. Spurlock*,
28 Cal. App. 3d 1086 (1972).....................................................................12

*Bekins v. Zheleznyak*,
No. CV15-4478-CAS(ASx), 2016 WL 1091057 (C.D. Cal. Mar. 21, 2016) ....................14, 15

*Cacciaguidi v. Elliott*,
39 Cal. App. 3d 261 (1974)..........................................................................6

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) ...................................................................15

*Carlsen v. GameStop, Inc.*,
112 F. Supp. 3d 855 (D. Minn. 2015) ..........................................................5

*Chandler v. Wells Fargo Bank, N.A.*,
637 F. Appx. 413 (9th Cir. 2016)..........................................................13, 15

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ................................................................................6

*Dietz v. Comcast Corp.*,
No. C 06-06352 WHA, 2006 WL 3533025 (N.D. Cal. Dec. 7, 2006).........7

*Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008).....................................................................2

*Germain v. J.C. Penny*,
No. CV 09-2847 CAS, 2009 WL 1971336 (C.D. Cal. Jul. 6, 2009) .........14

*Hicks v. PGA Tour, Inc.*,
No. 15–cv–00489–VC, 2016 WL 928728 (N.D. Cal. Feb. 9, 2016) ....14, 15

*In re Anthem, Inc. Data Breach Litigation*,
No. 15-MD-02617, 2016 WL 589760 (N.D. Cal. Feb. 14, 2016) .........9, 10, 14

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .................................................9, 10

-ii-

*In re: Facebook Privacy Litig.*,
   No. 10-CV-02389-RMW, 2016 WL 3523850 (N.D. Cal. June 28, 2016)..........................10, 11

*In re Facebook Privacy Litigation*,
   572 F. Appx. 494 (9th Cir. 2014)........................................................................................9, 10

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..............................8, 9

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ..........................5, 6, 9, 11

*In re Google, Inc. Privacy Policy Litigation*,
   No. 5:12-CV-001382-PSG, 2015 WL 4317479 (N.D. Cal. July 15, 2015) ...................1, 5, 6, 9

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...................................................................................4

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14, 28 (D.D.C. 2014) .......................................................................................8

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996)....................................................................................................7

*Kosta v. Del Monte Corp.*,
   No. 12-cv-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ..................................11

*Kwikset Corp. v. Sup.Ct.*,
   51 Cal. 4th 310 (2011) ...........................................................................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003)..................................................................................................5

*Low v. LinkedIn Corp.*,
   No. 11–cv–01468–LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)..................................5

*Meneses v. U-Haul Int'l, Inc.*,
   No. C-11-03615 DMR, 2012 WL 669518 (N.D. Cal. Feb. 29, 2012) .....................................11

*Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*,
   No. 08 C 3908, 2015 WL 3561439 (N.D. Ill. June 9, 2015), *appeal dismissed*
   (Aug. 3, 2015) ........................................................................................................................10

*New Sensations, Inc. v. Does 1-426*,
   No. 12-3800 JSC, 2012 WL 4675281 (N.D. Cal. Oct. 1, 2012) ...............................................6

-iii-

# TABLE OF AUTHORITIES

Page

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ..........................................................10, 11, 12

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...................................................................12

*Opperman v. Path, Inc.*,
    No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) .....................12

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal. App. 2d 506 (1967)..................................................................................12

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
    752 F.3d 807 (9th Cir. 2014)............................................................................11, 13

*Roberts v. Los Angeles Cty. Bar Ass'n*,
    105 Cal. App. 4th 604 (2003) ................................................................................12

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010)...............................................................................14

*Rudgayzer v. Yahoo! Inc.*,
    No. 5:12-CV-01399 EJD, 2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ................10

*Ruiz v. Gap, Inc.*,
    380 F. Appx. 689 (9th Cir. 2010)...........................................................................12

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717, 724 (2014)................................................................................3

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)...............................................................................14

*U.S. v. Reingold*,
    731 F.3d 204 (2d Cir. 2013).....................................................................................6

*U.S. v. Spriggs*,
    666 F.3d 1284 (11th Cir. 2012)............................................................................6, 7

*Unicon Fin. Servs., Inc. v. InterCept, Inc.*,
    256 F. Appx. 27 (9th Cir. 2007).............................................................................12

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*,
    710 F.3d 470 (2d Cir. 2013)...................................................................................11

-iv-

*Villiarimo v. Aloha Island Air Inc.*,
    281 F.3d 1054 (9th Cir. 2002)...................................................................................................4

**STATUTES**

Cal. Bus. & Prof. Code § 22575(a) ..........................................................................................13

Cal. Bus. & Prof. Code § 22576 ..............................................................................................13

Cal. Bus. & Prof. Code § 22577(c) ..........................................................................................13

Cal. Civ. Code § 3301 ..............................................................................................................12

Cal. Civ. Code § 3360 .................................................................................................10, 12, 13

**OTHER AUTHORITIES**

The American Heritage Dictionary of the English Language (3d ed. 1992) ..................................6

The Oxford American Dictionary and Thesaurus (2003) ...............................................................6

Webster's Third New International Dictionary..............................................................................6

# I.    INTRODUCTION

Svenson's Opposition ("Opp.") confirms that there is no difference between the undisputed record in this case and the record in *In re Google, Inc. Privacy Policy Litigation* ("*Privacy Policy Litigation*"), No. 5:12-CV-001382-PSG, 2015 WL 4317479, at *4 (N.D. Cal. July 15, 2015), which led to complete dismissal for lack of Article III standing. Just like the plaintiffs in *Privacy Policy Litigation*, Svenson now admits she has no proof that the Seller of her app *ever* accessed *any* of her personal information. The necessary result of that concession is that there is no evidence of "dissemination" of her information to the Seller, and thus no possible basis to prove it was "shared." As a matter of law this renders Svenson's entire case conjectural, and lacking the injury in fact Article III requires. *Id.* at *4. Svenson insists that, to prove harm, she need only show that her information was (at one time) "available" to the App Seller. But the court in *Privacy Policy Litigation* rejected this, too, as the kind of speculative theory of harm that is neither "concrete and particularized" nor "actual and imminent." *Id.*

Hoping to distract the Court from this fundamental flaw in her case, Svenson argues that she lost the "benefit of her bargain" when Defendants breached privacy promises she paid for. But apart from the fact that Defendants did not breach their promises, the undisputed evidence shows that Svenson paid nothing for them: they were made, and agreed to, when Svenson created her (free) Google account, and registered for (free) Google Wallet, before she bought her app, and Svenson offers no evidence to the contrary. When Svenson paid, it was for her app, which she loved. She received exactly what she paid for.

Svenson also argues that she suffered injury in fact because the value of her information was diminished by Defendants' conduct, but the undisputed evidence shows otherwise. Svenson gave her name and zip code away when she publicly published them on her Facebook page and elsewhere, and she admitted in discovery that she gave her Seller free access to her email when she registered the app she bought. This is the only evidence of the value of the information at issue here (her "Buyer Information"). And Svenson has no evidence that whatever value her Buyer Information had, it decreased because of something Defendants did.

-1-

1
Perhaps sensing the futility of her first two theories, Svenson debuts two new theories of injury in the Opp. In the first, she urges the Court to find she has standing because a California statute allows a plaintiff who has established breach of contract to recover nominal damage. But that statute applies only if both breach and the fact of damage are established, neither of which is true here, and nominal damages cannot substitute for the injury in fact required by Article III. In her second new theory, Svenson contends that it is enough for her to assert "viable theories of economic loss" under California's Unfair Competition Law. But that argument conflates the standing inquiry and the merits inquiry. Moreover, these so-called "viable theories" are indistinguishable from Svenson's benefit of the bargain and diminished value theories, and fail for the same reasons in this context.

Finally, as explained in Defendants' opening brief ("Motion"), even if Svenson has standing (she does not), her claims fail on the merits. Her contract claim requires breach and damage, which she cannot establish, and her UCL and implied covenant claims duplicate her flawed breach of contract claim and so cannot proceed as a matter of law.

To survive summary judgment, Svenson must present actual evidence, specific to her, that shows she has a claim and standing to assert it. Her Opp. makes clear that she has no such evidence. This case should not be in federal court, and it certainly should not go to a jury. The Court should grant Defendants' Motion and dismiss Svenson's claims.

## II.    ARGUMENT

### A.    Svenson Has Failed to Show She Has Article III Standing.

Although Svenson urges the Court to consider the merits of her claims at the outset, Article III standing, which is "distinct from the merits of the claims," is a threshold issue that must be addressed first. *Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."); *see also* Motion at 10. At this stage of the proceedings, Article III requires Svenson to offer evidence that shows she suffered a concrete and particularized injury in fact that is traceable to the challenged conduct. Svenson's Opp. shows that she cannot do so.

**1.     Svenson's "benefit of the bargain" theory fails.**

Svenson argues that part of the $1.77 she paid for the app was in fact paid to Defendants in return for their privacy promises, and she therefore lost the "benefit of the bargain" when Defendants broke those promises. *See, e.g.*, Opp. at 17:24-18:26, 21:15-22:16; *see also* First Am. Compl. ("FAC") (Dkt. No. 84) ¶¶ 86, 159.  To establish standing under this theory, Svenson must show, at a minimum, that: (1) she paid something in return for the privacy promises, and (2) Defendants breached them. She has no evidence of either one.

**a.     The privacy promises were free.**

The undisputed evidence shows that Svenson paid nothing for Defendants' privacy promises. *First*, Svenson concedes (as she must) that the privacy promises were set forth in the Wallet Privacy Notice (the "Wallet PN") and the Google Privacy Policy (the "GPP").  Opp. at 3:10-3:17.  *Second*, she concedes that the privacy promises were made and agreed before she bought her app or paid any money.  *See, e.g.*, Opp. at 7:17-18 ("In creating her [Wallet] account, Svenson assented to the Wallet ToS and incorporated Privacy Policies."); Motion for Class Cert. (Dkt. 158-4) at 12:20-12:22 (privacy promises unchanged throughout relevant period).  In other words, Svenson already had Defendants' privacy promises in hand when she bought her app.  She did not need to pay for them, nor did she.[1]  *Third*, the undisputed evidence shows that what Svenson paid $1.77 for was her app, not the privacy promises.  *See* Motion at 4-5 (service is free

---

[1] As she did with her fictional "Buyers' Contract," Svenson tries to confuse the analysis by arguing that (1) she agreed to the Play Terms of Service ("Play TOS") when she bought her app, (2) the Play TOS incorporate the Wallet PN and the GPP, so (3) she agreed to—and paid for—the Wallet PN and GPP privacy promises when she bought her app. Opp. at 20.  But she already had the privacy promises in hand.  So even assuming *arguendo* that she paid something for the new terms in the Play TOS (she did not), what she paid for was not the privacy promises.  Omnibus Declaration of Charles C. Sipos, filed July 8, 2016 (Dkt. No. 168) ("Sipos Ex."), Ex 19.  Svenson did not "enter[] into a new or different agreement upon purchase of the App that could have given rise to new or additional privacy protections," and has not shown she paid anything for additional privacy protections. *Svenson v. Google Inc.,* 65 F. Supp. 3d 717, 724 (2014).  Additionally, Svenson has never alleged the Play TOS were breached, only that the privacy promises were, so she cannot show she lost any portion of her app payment as the result of breach of the Play TOS. *See* FAC; Sipos Ex. 30 (Svenson Tr. at 89:11-25 (contracts at issue as Wallet ToS and a "couple of privacy policies")).

to Buyers; per Svenson's receipt she bought an app from the Seller for $1.77; Svenson testified that the price "for the app" was $1.77); *see also* Opp. at 7:25 (Svenson paid $1.77 "for the app").

In response, Svenson argues that her deposition testimony and that of her expert support the fiction that she paid for the privacy promises, Opp. at 8:17-20, but the cited testimony does not come close to doing so. What Svenson testified was that she "thinks" she paid a portion of the $1.77 in return for the privacy promises, but she had no evidence to support that thought. Supplemental Declaration of Charles C. Sipos ("Supp. Ex."), Ex. B (Svenson Tr. at 123:22-123:25, 128:5-20). As the Ninth Circuit has made clear, "uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). And Svenson's expert did not opine regarding any payment Svenson made, or her Buyer Information: his Report merely reflects his calculation of whether consumers would be more or less willing to buy an app, under hypothetical conditions that differed from the app sales actually made on Google Play. Svenson's expert testimony has nothing to do with the terms of Svenson's contract with Defendants, or what she actually paid. Sipos Ex. 4 at 9-16.

Svenson also argues that Defendants received a transaction fee in connection with her app purchase, but this red herring cannot help show that she paid anything in return for the privacy promises. The transaction fee was paid by the Seller, not by Svenson, and had nothing to do with Defendants' privacy promises to Svenson. *See* Motion at 5. Svenson's own evidence supports this. *See* Opp. at 8:1-8 (citing interrogatory answer that the "Seller paid" the transaction fee). Consistent with this, Svenson first heard about the transaction fee not when she agreed to the privacy promises, or even when she says she paid for them, but later, from her lawyers. Sipos Ex. 30 (Svenson Tr. at 110:15-111:19). And the transaction fee is mentioned not in Svenson's agreements with Google, but the Seller's. *See* Motion at 12.

Because Svenson must now respond with *evidence,* not just allegations, she can no longer avoid the consequences of the undisputed facts. Because she paid nothing for the privacy promises, she cannot show that she lost any part of any payment when the privacy promises were breached, and her "benefit of the bargain" theory cannot confer standing. *See In re LinkedIn User*

*Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (dismissing claims for lack of standing where plaintiffs asserted they paid for privacy promises made to all members for free); *see also Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 863 (D. Minn. 2015) (rejecting plaintiff's argument for standing based on a benefit of the bargain theory where, as here, the privacy promises at issue were offered for free).

### b.  Defendants honored their privacy promises.

To establish injury in fact sufficient to confer Article III standing, Svenson must offer evidence that Defendants breached their promises and caused an injury to her, not to hypothetical other Buyers. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Conceding that she has no evidence her information was sent to, accessed, or viewed by YCDroid, Opp. at 13-14, Svenson argues instead that Defendants breached their privacy promises merely by making her information available for YCDroid to query.  But merely making information available does not amount to injury in fact.  For example, in *Privacy Policy Litigation*, the plaintiffs—like Svenson—bought apps on Google Play.  Also like Svenson, they argued that they had standing because "for a period of time it was possible for developers to look up the record of a particular transaction on a Google server and also access the user's email and rough address." *Privacy Policy Litig.*, 2015 WL 4317479, at *4.  Judge Grewal disagreed and dismissed plaintiffs' claims, explaining that the theoretical possibility of future access, without more, did not amount to an Article III injury in fact.[2]  *See id.*; *see also Low v. LinkedIn Corp.*, No. 11–cv–01468–LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009)) (finding lack of standing because of the risk of

---

[2] Svenson half-heartedly tries to distinguish *Privacy Policy Litigation* by arguing that the plaintiffs in that case failed to allege that their information was "disseminated."  Opp. at 12.  But in fact, the plaintiffs in that case alleged that their information was "disseminated" in precisely the same way as Svenson does: they claimed that their information was made available "for developers to look up." *Privacy Policy Litig.*, 2015 WL 4317479, at *4.

future harm from disclosure of information that had not been transmitted to third parties too conjectural, abstract, and hypothetical).  And time and again, the Supreme Court has held that theoretical and potential harms do not confer standing, especially if they are attributable to third parties (like YCDroid).  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 (2013) (emphasizing that "[a]llegations of possible future injury are not sufficient" to establish standing, and noting courts' "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors").

Moreover, as Judge Grewal recognized, Svenson's information was not "shared," because "sharing" is commonly understood to involve not one, but two people.  *Privacy Policy Litig.*, 2015 WL 4317479, at *4.  Svenson's information was held on Google servers, and Svenson admits she has no evidence it was accessed or viewed by YCDroid. It was not "shared" under any common definition of the word,[3] so Svenson tries to redefine sharing to mean something that can be done solo.  *See* Opp. at 1:20.  But her new definition of sharing is inconsistent with her own definition of the term: she testified that sharing means not just "giving," but also receiving.  Sipos Ex. 30 (Svenson Tr. at 53:11-54:1 ("shar[ing]" means "[g]iven to and received by")).  Svenson's own understanding should be given more weight than the "digital" definitions offered by her counsel (Opp. at 11:18-24).  *Cacciaguidi v. Elliott*, 39 Cal. App. 3d 261, 265 (1974) ("When the evidence is uncontradicted as to the intent of the contracting parties, the understanding of people in general is not relevant.").  And the authority Svenson cites to support her exotic definition of "sharing," Opp. at 12, is inapposite.[4]

---

[3] *See, e.g.,* Motion at 16-17 (Webster's Third New International Dictionary, MacMillan's Dictionary define "share" to enjoy "*with others*" or to use or have with "*someone else*"); The Oxford American Dictionary and Thesaurus (2003) ("share (v.) . . . use or benefit from *jointly with others*"); The American Heritage Dictionary of the English Language (3d ed. 1992) ("share (v.) . . . to participate in, use, enjoy, or experience *jointly with another or others*").

[4] *New Sensations, Inc. v. Does 1-426*, a mass copyright infringement case, describes how sharing, "swarms," and "seeders" worked in the P2P system at issue.  It does not define "share." No. 12-3800 JSC, 2012 WL 4675281, at *2 (N.D. Cal. Oct. 1, 2012).  *U.S. v. Reingold*, 731 F.3d 204 (2d Cir. 2013), and *U.S. v. Spriggs*, 666 F.3d 1284 (11th Cir. 2012), discuss whether placing files in a shared folder on a P2P network constitutes "distribution" under child pornography sentencing guidelines, and the court in *Spriggs* notes that the commentary to the sentencing guidelines defines "distribution" to include "*any* act, including possession with intent to distribute, *related to*

In addition, although Svenson now argues that Buyer Information would be "automatically displayed" to Sellers if they logged in to a vendor portal and clicked on the right tab,[5] Opp. at 5:13-14, she admits she has no evidence that this happened for her Buyer Information, which is what matters for summary judgment—not speculative assertions about non-parties. *Dietz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3533025, at *4 (N.D. Cal. Dec. 7, 2006) ("Any injury that unnamed members of the proposed class may have suffered is irrelevant to the question whether our named plaintiff is entitled to the [] relief he seeks.") (granting summary judgment based on defect in named plaintiff's claim). Svenson does not dispute that her information was stored on Google's secure servers when Svenson supplied it, and has remained there ever since. *See* Opp. at 3:2-3. To obtain Svenson's Buyer Information, Svenson concedes YCDroid would have had to log on to a secure portal, then query for the information. Opp. at 5:11-12. But Svenson has pointed to no evidence that YCDroid did so, and this Court has no responsibility on summary judgment to "scour the record in search of a genuine issue of fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, even if her Buyer Information was shared (it was not), it would not necessarily be a breach of Defendants' privacy policies. The privacy promises permit Defendants to "share" a Buyer's personal information under certain circumstances. And Svenson concedes that if YCDroid were someday to obtain her Buyer Information, it might not breach the privacy policies. Opp. at 15:22-23 ("YCDroid may have eventually needed Svenson's Personal Information, for instance to process a refund or provide customer service.").

---

the transfer of material . . . ." *Spriggs*, 666 F.3d at 1287 (emphasis supplied, citation omitted). Svenson's other cases regard the term "disclosure," not "share."

[5] Svenson quibbles over how difficult it would have been for YCDroid to obtain her Buyer Information had it tried. Opp. at 5. Not that it matters for purposes of deciding this Motion, but for clarity, Svenson's understanding of how the Merchant Center operates is both incorrect and contradicted by the evidence. The page relied upon by Svenson in her Opp. at 5:12-14 was available only to those Sellers who clicked on a specific order or performed a search for the information. *See* Supp. Ex. D (Thomas Tr. at 24:7-25:10, 31:7-32:18, 46:21-47:4); Supp. Ex. E (Thomas PPL Tr. at 44:8-16; 45:8-46:4). A Seller who logged in to the Merchant Center would not see Buyer Information on the page displayed under the "Orders" tab. Supp. Ex. E (Thomas PPL Tr. at 13:25-14:20 (pages of Merchant Center), 44:8-25 (describing order summary page)); Supp. Ex. F (GOOG00003434, at 3441 (Mockup of Wallet Merchant Center overview page)).

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(Case No. CV-13-04080-BLF)
LEGAL132240759

In short, "[e]xisting case law and legislation support [a] common-sense intuition: If no one has viewed [a plaintiff's] private information (or is about to view it imminently), then [that plaintiff's] privacy has not been violated," and that plaintiff lacks standing. *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014).

### 2. Svenson's "diminished value" theory fails.

Svenson continues to argue that she suffered an injury in fact because Defendants diminished the value of her Buyer Information when they made it accessible to YCDroid. To prevail on this theory, she must show (1) that a market exists for her personal information and (2) that Defendants diminished the value of that information in that market. *See* Motion at 14-15. But nothing in the record establishes either element. As to the first, Svenson has not shown there is a market for her Buyer Information, and her testimony suggests there is none. She admits that she has not tried to sell her Buyer Information, and does not know of anyone who would buy it. *See* Sipos Ex. 30 (Svenson Tr. at 66:25-67:7, 67:8-11,67:12-68:12, 74:11-20, 140:22-141:5). The best she can muster is a passing reference to her expert's report. Opp. at 23:2-3. But her expert testified that he "does not know" whether a market to sell individual information to individual Sellers even exists. Supp. Ex. C (Fishkind Tr. at 226:4-15). And his report has no bearing on Svenson's information or on YCDroid's willingness to buy it; the report discusses different information than is at issue here, and potential buyers who are not Sellers like YCDroid.

Lacking a better option, Svenson seeks refuge in a slogan: She says that her personal information, "like the personal information of any consumer in the digital age, is a sought-after commodity." Opp. at 22. Of course, that directly contradicts her claim that Defendants diminished the value of her Buyer Information. Even more importantly, it illustrates the yawning gap between Svenson's standing theory and the record in this case. At this stage, Svenson cannot rely on vague pronouncements about "any consumer in the digital age"; she must come forward with evidence that there is a market for *her* information. She has not. She therefore lacks standing. *See, e.g.*, *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013) ("[A]lthough Plaintiffs allege that a market

exists that could provide them the opportunity to sell their PII, *none* of the Plaintiffs specifically tie those allegations to them.") (emphasis in original).

As to the second element, Svenson admits that she has no idea whether the value of her information changed as the result of Defendants' conduct. *See* Sipos Ex. 30 (Svenson Tr. at 142:14-25, 144:11-145:10). And the fact that she freely gave away her personal information[6] further undermines her argument—as it did for the *Privacy Policy Litigation* plaintiffs. 2015 WL 4317479, at *5 (holding that even if disclosure did occur, plaintiffs failed to establish injury where, among other things, they freely published their names and emails publicly).

Hoping to obscure those fatal flaws, Svenson speculates that YCDroid might have bought her information if given the opportunity. *See* Opp. at 8:27-28. But Svenson offers no evidence that YCDroid would have been a willing buyer, and the record shows the opposite is true: YCDroid did not want Svenson's information even when it was free for YCDroid. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 931-32 (N.D. Cal. 2015) (no standing where plaintiffs failed to show "that they personally lost the opportunity to sell their information or that the value of their information was somehow diminished"); *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) (no standing where plaintiffs failed to explain how Google's use of information "deprived Plaintiffs of economic value from that same information").

Courts routinely reject diminished value theories where, as here, there is no market for the information at issue or there is no evidence that Defendants' actions diminished its value. *See, e.g.*, *Privacy Policy Litig.*, 2015 WL 4317479, at *5; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32; *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5; *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *4; *see also* Motion at 15, n.9 (citing cases). This court should reach the same result.[7]

---

[6] *See* Sipos Ex. 30 (Svenson Tr. at 75:2-13, 76:22-77:17), Ex. 21 (Svenson published her name and zip on the Internet); Sipos Ex. 2 (Answer to Interrogatory No. 9 at 9 (Svenson enabled the YCDroid App at issue to access her text messages, email, and phone contacts list)).

[7] Svenson cites *In re Facebook Privacy Litigation*, 572 F. Appx. 494 (9th Cir. 2014), and *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617, 2016 WL 589760 (N.D. Cal. Feb. 14,

**3.    Svenson's (new) "nominal damages" theory fails.**

Svenson also argues—for the first time in this case—that because she would be entitled to nominal damages for her breach of contract claim under California Civil Code Section 3360, she suffered an injury in fact sufficient to confer standing.  Opp. at 23:9-22, 25:15-21.  But even if she were entitled to nominal damages for her breach of contract claim (she is not, as discussed *infra* at Section III.B), a nominal damages claim "does not relieve the plaintiff of proving injury" sufficient to confer Article III standing.  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990–91 (N.D. Cal. 2015) ("Section 3360 sets forth the rule that a plaintiff who has suffered an injury, but whose damages are speculative, is entitled to nominal damages. . . . But the statute does not relieve the plaintiff of proving injury."); *see also Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*, No. 08 C 3908, 2015 WL 3561439, *13 (N.D. Ill. June 9, 2015), *appeal dismissed* (Aug. 3, 2015) (claim for nominal damages insufficient where plaintiff had no evidence of concrete or particularized injury); *Rudgayzer v. Yahoo! Inc.*, No. 5:12-CV-01399 EJD, 2012 WL 5471149, at *6-7 (N.D. Cal. Nov. 9, 2012) (plaintiff who alleged that disclosure of his first and last name breached Yahoo!'s Terms of Service had failed to show an injury in fact for purposes of standing where Plaintiff failed to allege actual harm, relying solely on nominal damages).  "[W]hether damages are nominal or substantial, there still must be a concrete, personal injury in fact that is fairly traceable to the defendant."  *Native Am. Arts*, 2015 WL 3561439, at *13.

The two cases on which Svenson relies to establish standing through nominal damages are unpersuasive.  *See* Opp. at 25:15-21.  While the court in *In re Facebook Privacy Litigation* found that nominal damages could serve as injury in fact for a plaintiff who had established breach of contract, none of the cases on which the court relied addressed standing issues.  *See* No. 10-CV-

2016), to support her theory of standing based on diminished value.  But the Ninth Circuit's decision in *In re Facebook* did not address standing at all.  And while both cases allow for the possibility that diminished value of personal information might be a cognizable economic harm, depending on the evidence, neither case excuses Svenson from the requirement to come forward with evidence to support her theory at this late stage in the litigation.  Svenson can no longer rest on her allegations, as could the plaintiffs in *In re Facebook* and *In re Anthem*.

02389-RMW, 2016 WL 3523850, at *4-6 (N.D. Cal. June 28, 2016).[8]  Moreover, the Court

addressed nominal damages only after finding that there was actual harm based on a benefit of the

bargain theory after finding that the plaintiff had submitted evidence that Facebook had

"transmitted" her information directly to third-party advertisers—which she cannot establish here.

*See id.* at *4.  And the Facebook court dismissed one of the two plaintiffs (plaintiff Pohl) for lack

of standing because, like Svenson, her information was never transmitted or disclosed to a third

party.  *Id.* at *3.  Svenson's second case, *United Steel, Paper & Forestry, Rubber, Mfg., Energy,*

*Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, did not even

involve a claim for nominal damages.  710 F.3d 470, 475 (2d Cir. 2013) (holding that union had

standing to bring a breach of contract claim against a former employer that failed to pay

retirement benefits promised to union members, based on finding that the defendant's failure

deprived the union of the benefit of its bargain).

### 4. Svenson's (new) "UCL injuries" theory fails.

Citing *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413 (N.D. Cal.

May 15, 2013), Svenson argues that she has Article III standing merely because she has alleged

cognizable damages under California's Unfair Competition Law ("UCL").  *See* Opp. at 25:10-15.

But *Kosta* does not help Svenson. First, Svenson's "UCL injuries" are the same as her benefit of

the bargain and diminished value theories, and fail for the reasons discussed above.  *See supra*

Section II.A.  Second, *Kosta* does not excuse Svenson of the obligation to present actual evidence

of her economic loss, which she has not done.

### B. Svenson's Breach of Contract Claim Fails on the Merits.

Svenson's Opp. makes clear that she has no evidence of breach or actual damage, both of

which are required elements of her contract claim.  *See Pyramid Techs., Inc. v. Hartford Cas. Ins.*

*Co.*, 752 F.3d 807, 818 (9th Cir. 2014) (elements of contract claim); *see supra Section* II.A.1.b

---

[8] Only three cases cited in *Facebook*'s discussion of nominal damages addressed standing.  The
court cited all three when summarizing the *defendant's* arguments. 2016 WL 3523850, at *4-5;
*see also Opperman v. Path, Inc.*, 84 F. Supp. 3d at 990–91 (N.D. Cal. 2015); *In re Google, Inc.
Privacy Policy Litig.*, 2013 WL 6248499, at *6; *Meneses v. U-Haul Int'l, Inc.*, No. C-11-03615
DMR, 2012 WL 669518, at *5 (N.D. Cal. Feb. 29, 2012).

(no breach), Section II.A.1.a (no benefit of the bargain damage), Section II.A.1.c (no diminished value damage). In California breach of contract cases, California state courts and the Ninth Circuit have long required a showing of appreciable and actual damage. *See, e.g.*, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").[9]

Svenson nonetheless argues she is excused from the requirement to show damage by California Civil Code Section 3360, which provides, "[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." But while that statute might permit the award of nominal damage where the *amount* of damage is uncertain, it cannot excuse the requirement to show the *fact* of damage. Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."); *see, e.g.*, *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (1972) (nominal damages recoverable where, "although there have been real, actual injury and damages suffered by a plaintiff, the extent of plaintiff's injury and damages cannot be determined from the evidence presented"). And the statute applies only where breach is established, which is not true here.[10]

_____

[9] *See also Ruiz v. Gap, Inc.*, 380 F. Appx. 689, 692 (9th Cir. 2010) (summary judgment on breach of contract warranted where plaintiff failed to show actual damage, despite claim for nominal damages); *Unicon Fin. Servs., Inc. v. InterCept, Inc.*, 256 F. Appx. 27, 28 (9th Cir. 2007) ("Under applicable California law, Unicon had the burden of producing evidence supporting its claim that it sustained damages as a result of InterCept's alleged breach of their contract."); *Roberts v. Los Angeles Cty. Bar Ass'n*, 105 Cal. App. 4th 604, 617 (2003) ("Actual damage as opposed to mere nominal damages is another essential element of a cause of action for breach of contract."); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable.").

[10] *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016), does not support Svenson's argument that she "is entitled to nominal damages" for her contract claim. Opp. at 23 (citing *Opperman*). The *Opperman* court's class certification decision did not consider the question of the availability of nominal damages for a breach of contract claim, because there was no contract at issue in the case. *Opperman*, 2016 WL 3844326, at *2 (summarizing causes of action and discussing intrusion upon seclusion as primary claim). Moreover, earlier orders in the same case illustrate the importance establishing injury in fact: the court allowed the intrusion upon seclusion claim to proceed based on allegations that the plaintiffs suffered damages such as embarrassment (recoverable under California law), *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014), while dismissing a conversion claim based on a failure to allege injury, and rejecting a claim for nominal damages under California Civil Code Section 3360. *Opperman*, 84 F. Supp. 3d at 990–91.

Cal. Civ. Code § 3360 (requiring a "breach of duty"); *Pyramid Techs.*, 752 F.3d at 818 (breach required element of contract claim).

**C.      Svenson's UCL Claim Fails For the Same Reasons as Her Contract Claim.**

Svenson's claims under both the "unlawful" and "unfair" prongs of the UCL are duplicative of her breach of contract claim, and they fail for the same reasons. Svenson premises her "unlawful" claim on an alleged violation of the California Online Privacy Protection Act ("OPPA"). Opp. at 10-11. But the relevant OPPA provision makes clear that a violation is entirely dependent on a breach of the privacy policies: OPPA is violated if the operator of an online service "fails to comply *with the provisions of its posted privacy policy*." Cal. Bus. & Prof. Code § 22576 (emphasis added). Here, the "posted privacy policy" at issue under OPPA is the same Wallet PN and GPP that form the basis of Plaintiff's breach of contract claim. From the beginning, this is how Svenson has characterized her claim.[11] Her "unlawful" claim is therefore coextensive with, and fails for the same reasons as, her breach of contract claim. *See, e.g.*, *Chandler v. Wells Fargo Bank, N.A.*, 637 F. Appx. 413, 414 (9th Cir. 2016) (affirming dismissal of UCL unlawful claim with dismissal of breach of contract claim, where both claims "predicated on substantially the same allegations").[12]

Svenson's UCL "unfair" claim fails for the same reasons. Svenson has long maintained that the purportedly "unfair" conduct is the alleged breach of Defendants' privacy policies. FAC ¶ 227; *see also* Mot. for Class Cert. at 24. "[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the

---

[11] In her FAC, Svenson alleged that Defendants' practices "unlawful [under UCL] because they violate the Buyer Contracts and Wallet Terms." FAC ¶ 224; *see also* Mot. for Class Cert. (Dkt. No. 166) at 23 (UCL unlawful claim "rooted in Defendants' disclosure of Buyers' information in violation of the Privacy Policies").

[12] Svenson's OPPA claim fails for the separate, and independent, reason that as an Illinois resident, Svenson cannot assert such a claim. As the statute repeatedly and expressly states, claims for violation of OPPA are limited to California residents. *See* Cal. Bus. & Prof. Code § 22576 (limiting claims to people who "reside in California"); *id.* § 22577(c) ("operator" of website defined as limited to those who collect data "from a consumer residing in California"); *id.* § 22575(a) (privacy policy under OPPA directed to collection of data "about individual consumers residing in California"). Svenson resides in Illinois, not in California. FAC ¶ 16.

other claims." *Hicks v. PGA Tour, Inc.*, No. 15–cv–00489–VC, 2016 WL 928728, at *7 (N.D. Cal. Feb. 9, 2016) (dismissal of UCL unfair claim because allegations overlapped with dismissed breach of contract claim) ("Because the conduct the [plaintiffs] assert is unfair under the UCL overlaps completely with the allegations the Court has held fails to state a claim for breach of contract . . . the [plaintiffs'] UCL claim fails as a matter of law, too."). As in *Hicks*, Svenson's UCL "unfair" claim must "fall[]" with her breach of contract claim. *Id.* at *7.[13]

Plaintiff's authorities are not to the contrary. They stand for the unremarkable—and in the context of this case, irrelevant—proposition that unfair or unlawful conduct untethered to a contract can violate the UCL. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010) (affirming dismissal of breach of contract claim because a solicitation was merely a non-binding contractual offer and not an enforceable contract); *In re: Anthem Data Breach Litig.*, 2016 WL 589760, at *12 (affirming dismissal of breach of contract claim for failure to plead the specific provisions of the contract at issue); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-53 (9th Cir. 2008) (noting plaintiff's inability to bring claims that sound in contract law for statements in agreements that plaintiff was not a party to); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1331 (C.D. Cal. 2013) (dismissing claim for breach of express warranty because there was no privity between parties).[14]

---

[13] Svenson's inability to prove damages also bars her UCL unfair claim, because she must prove economic injury to establish that claim. *See Kwikset Corp. v. Sup.Ct.*, 51 Cal. 4th 310, 313 (2011). She cannot prove that injury because she received what she paid YCDroid for—a functioning app that she loved—and paid nothing to Defendants for the purportedly breached privacy promises. *See Germain v. J.C. Penny*, No. CV 09-2847 CAS (FMOx), 2009 WL 1971336, at *7 (C.D. Cal. Jul. 6, 2009) ("Furthermore, plaintiffs are not entitled to restitution of monies paid in processing and mailing forms because those monies were not paid to defendants.") (dismissing UCL unfair claim where economic injury not premised on any money plaintiff paid to defendants).

[14] Svenson's remaining authority, *Bekins v. Zheleznyak*, No. CV15-4478-CAS(ASx), 2016 WL 1091057 (C.D. Cal. Mar. 21, 2016), actually helps illustrate why her "UCL independence" argument is so wrong. Opp. at 17. In *Bekins*, plaintiffs alleged that defendants agreed to hire plaintiffs as sales representatives, but then failed to properly compensate them or to reimburse them for work-incurred expenses. 2016 WL 1091057, at *1-2. The court held that defendants' failure to pay the plaintiffs' as promised stated a claim for breach. *Id.* at *5. The court separately allowed plaintiffs' UCL claims to go forward, but only after it determined that the allegations supporting those claims were "entirely distinct from the allegations' supporting plaintiffs' claim

None of this authority supports the proposition that a UCL "unfair" claim based on the same set of facts as a contract claim, for which there is no cognizable injury, remains actionable once the contract claim is dismissed. The law is the opposite: A UCL claim that is premised on the same factual allegations as a breach of contract claim cannot survive once the contract claim is dismissed. *Hicks*, 2016 WL 928728, at *7; *Chandler*, 637 F. Appx. at 413.

### D. The Court Should Dismiss Svenson's Implied Covenant Claim as Superfluous.

Svenson's implied covenant claim rests on her allegations of a "bad faith" or "blanket" disclosure, but she has no evidence of this. Her implied covenant theory is the same as the one alleged in her first Complaint: Defendants breached the implied covenant because they "shared [Buyer Information] automatically," without "legitimate need," in a manner that frustrated the terms of the Wallet ToS. *See* Opp. at 24. Where, as here, implied covenant claims "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). This is exactly what Svenson's implied covenant claim does, and it fails for exactly the reason the Court identified in its August 12, 2014 Order.[15] The Court should dismiss Svenson's implied covenant claim as superfluous. Alternatively, the Court should dismiss this claim for the same reasons as Plaintiff's breach of contract claim. *See supra* Section II.B.

### III. CONCLUSION

For the reasons discussed above and in the Motion, the Court should enter summary judgment in Defendants' favor.

---

for breach of contract." *Id.* at *10 (allowing UCL claim to proceed based on distinct allegations regarding violation of labor laws that gave rise to independent legal basis for compensation, and for failure to maintain workers' compensation insurance). Here the "allegations supporting [Svenson's] claim for breach of contract" are not "entirely distinct" from the UCL allegations. *Id.* They are *identical* to the UCL allegations. *Bekins* supports dismissal of Plaintiff's UCL claim.

[15] Svenson's implied covenant claim fails for the additional reason that Svenson cannot establish that she suffered any damage as a result of Defendants' alleged breach. *See* Motion at 18-19.

-15-

DATED:  August 10, 2016                         **PERKINS COIE LLP**


                                                By: _s/ Susan D. Fahringer_
                                                    Susan D. Fahringer

                                                Attorneys for Defendants
                                                Google Inc. and Google Payment Corporation

# CERTIFICATE OF SERVICE

I, Susan D. Fahringer, an attorney, hereby certify that on August 10, 2016, caused the above and foregoing to be sent to the following counsel of record by electronic mail:

**Diemer Whitman & Cardosi, LLP**
Kathryn S. Diemer
kdiemer@diemerwhitman.com
Dominique Ann Sopko
dsopko@diemerwhitman.com

**Progressive Law Group, LLC**
Frank Jablonski
frankj@progressivelaw.com

**Progressive Law Group, LLC**
Mark Anthony Bulgarelli
markb@progressivelaw.com
Elizabeth Roberson-Young
liza@progressivelaw.com

**Stepick Law, LLC**
Alex Stepick , IV
alex@stepicklaw.com

**Edelson PC**
Alexander T.H. Nguyen
anguyen@edelson.com
Jay Edelson
jedelson@edelson.com
Benjamin Harris Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com


DATED:  August 10, 2016                    By:  *s/ Susan D. Fahringer*
                                                      Susan D. Fahringer